1  G. David Godwin, No. 148272
   Raymond J. Tittmann, No. 191298
2  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
3  44 Montgomery Street, Suite 400
   San Francisco, CA 94104
4  Telephone:    415.989.5900
   Facsimile:    415.989.0932
5  Email:    dgodwin@cbmlaw.com
             rtittmann@cbmlaw.com
6
   Attorneys for Defendant
7  The Continental Insurance Company

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  Franklin Ham and Dana Ham,

13              Plaintiffs,

14         v.

15  The Continental Insurance Company;
    and Does 1 through 50,

16

17              Defendants.

**CV 08    1551**

No. 08

**DEFENDANT THE CONTINENTAL INSURANCE COMPANY'S NOTICE OF REMOVAL**

18      PLEASE TAKE NOTICE that defendant The Continental Insurance Company

19  gives notice of removal and hereby removes the above-captioned action, *Franklin Ham*

20  *and Dana Ham v. The Continental Insurance Company*, Case No. CGC-08-471943 (San

21  Francisco Super. Ct., filed Feb. 14, 2008) (this "Action"), from the Superior Court of the

22  State of California County of San Francisco, pursuant to 28 U.S.C. § 1441 *et seq.*  In

23  support of this removal, The Continental Insurance Company alleges as follows:

24                        **BACKGROUND**

25      1.  In August 2006, Plaintiffs Franklin and Dana Ham added Ecklund

26  Insulation, Inc. ("Ecklund Insulation") to an asbestos personal injury lawsuit titled

27  *Franklin Ham and Dana Ham v. Acco-Air Conditioning Co., et al.*, Case No. 455063 (San

28

CBM-IPG\SF396728.1

1   Francisco Super Ct., filed Aug. 11, 2006) (the "Underlying Action"). *See* Complaint[1], Ex.

2   D. Ecklund Insulation, which is not a party to this Action, is a "defunct" corporation,

3   according to Plaintiffs. *See* Complaint, ¶ 12. Ecklund Insulation therefore did not answer

4   the complaint in the Underlying Action, and Plaintiffs obtained a default judgment in the

5   amount of $2,671,000 million. Complaint, ¶ 14.

6            2.    Though Ecklund Insulation is defunct company and not entitled to engage

7   in business, Jerry Ecklund, purporting to act as President of Ecklund Insulation, attempted

8   to assign to Plaintiffs any rights Ecklund Insulation had under an alleged/missing

9   insurance policy. Complaint ¶ 18, Ex. F. Plaintiffs bring the current Action against The

10  Continental Insurance Company pursuant to that alleged assignment. *Id.*

11           3.    Plaintiffs have not presented a copy of the alleged/missing insurance

12  policy, but submitted a "Certificate of Insurance" allegedly issued by another entity.

13  Complaint ¶ 13, Ex. A. Plaintiffs alleged that the alleged/missing insurance policy covers

14  Ecklund and specifically its liability for the default judgment. Although the per person

15  bodily injury limit stated in the Certificate is $100,000, Plaintiffs seek recovery for the

16  entire default judgment, $2,671,000.

17           4.    Plaintiffs served the Complaint on The Continental Insurance Company

18  on February 20, 2008, which was the first service in this Action. The Complaint alleges

19  breach of contract, breach of the implied covenant of good faith and fair dealing, and

20  declaratory relief against Continental.

21                          **DIVERSITY JURISDICTION**

22           5.    Pursuant to Civil L.R. 3-5(a), this Court has subject matter jurisdiction

23  over this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse

24  and the amount in controversy exceeds $75,000.

25

26  _____

27  [1] The "Complaint" refers to Plaintiffs Franklin and Dana Ham's First Amended Complaint in this Action, filed February 14, 2008. The Complaint and all exhibits are attached as Ex. A to Declaration of Raymond Tittmann in Support of Defendant The Continental

28  Insurance Company's Notice of Removal ("Tittmann Decl.").

CBM-IPG\SF396728.1                          -2-

THE CONTINENTAL INSURANCE CO.'S NOTICE OF REMOVAL

1      6.   Amount in controversy: Plaintiffs seek $2,671,000 in damages.

2 Complaint, Prayer, ¶ 1, at 9:10.  In addition, Plaintiffs allege $100,000 policy limits for

3 the alleged/missing policy based on an unauthenticated certificate of insurance, and no

4 other documentation or evidence is provided to support the alleged/missing policy.

5 Complaint ¶ 7.

6      7.   Domicile of Plaintiffs: Plaintiffs Franklin Ham and Dana Ham are

7 individuals domiciled in Yerington, Nevada.  Complaint, ¶ 9; Tittmann Decl., Ex. B at

8 2:18-22 (Preliminary Fact Sheet/New Filing/Asbestos Litigation, filed by Plaintiffs in the

9 underlying Action on Aug. 11, 2006).

10     8.   Domicile of Defendant: The Continental Insurance Company is a

11 Pennsylvania company with its principal place of business in Chicago, Illinois.  Tittmann

12 Decl., ¶ 4, Ex. C.

13     9.   The Doe defendants may be ignored for purposes of determining

14 diversity.  28 USC § 1441(a) ("For purposes of removal ... the citizenship of defendants

15 sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157

16 F.3d 686, 690–691 (9th Cir. 1998) (inclusion of "Doe" defendants in a state court

17 complaint has no effect on removability; in determining whether diversity of citizenship

18 exists, only the named defendants are considered).

19    10.   No other parties are named, and consequently the diversity between

20 Continental and Plaintiffs establishes diversity.

21                      **REMOVAL IS PROPER**

22    11.   This Court has subject matter jurisdiction over this matter pursuant to 28

23 U.S.C. § 1332.

24    12.   This action is removable pursuant to 28 U.S.C. § 1441 because it

25 originally could have been brought in this Court.

26    13.   Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice

27 of Removal has been given to all adverse parties and a copy of the Notice has been filed

28 with the clerk of the Superior Court of the County of San Francisco, California.

CBM-IPG\SF396728.1                -3-

14.    Pursuant to 28 U.S.C. § 1446(a), a true copy of all process, pleadings, and orders served on Continental are attached to the Notice of Removal as Exhibit A, including all documents that have been filed with the Superior Court, County of San Francisco, California, in this action.

15.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is made within 30 days of the service of the Summons and Complaint.

## INTRADISTRICT ASSIGNMENT

16.    Pursuant to Civil L.R. 3-2(d) and 3-5(b), this Action should be assigned to the San Francisco Division because it is removed from the Superior Court of the County of San Francisco, California.

WHEREFORE, Continental respectfully requests that this cause proceed in this Court as an action properly removed thereto.

Dated:  March 19, 2008

CARROLL, BURDICK & McDONOUGH LLP

By _____
         Raymond J. Tittmann
Attorneys for Defendant
The Continental Insurance Company

# EXHIBIT A

# SUMMONS (First Amended)
## (CITACIÓN JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THE CONTINENTAL INSURANCE COMPANY; and
DOES 1 through 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANKLIN HAM AND DANA HAM

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California
County of San Francisco
400 McAllister Street
San Francisco, CA  94102

**CASE NUMBER:**
*(Número del Caso):* CGC-08-471943

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jack K. Clapper          (415) 332-4262
Clapper, Patti, Schweizer & Mason
2330 Marinship Way, Suite 140
Sausalito, CA  94965

DATE: **FEB 14 2008**          Clerk, by          GORDON PARK-LI          SSALY E. DE LA VEGA NAVARRO , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1  Jack K. Clapper, Esq. (State Bar No. 83207)
   Steven J. Patti (State Bar No. 163773)
2  Christine A. Renken (State Bar No. 232797)
   Clapper, Patti, Schweizer & Mason
3  Marina Office Plaza
   2330 Marinship Way, Suite 140
4  Sausalito, CA 94965
   Telephone: (415) 332-4262
5  Facsimile: (415) 331-5387

6  Attorney for Plaintiffs

**FILED**

San Francisco County Superior Court

FEB 1 4 2008

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,           )  Case No.  CGC-08-471943
                                         )
12          Plaintiffs,                  )  FIRST AMENDED COMPLAINT FOR:
                                         )  (1)  BREACH OF INSURANCE
13  v.                                   )       CONTRACT;
                                         )  (2)  BREACH OF THE IMPLIED
14  THE CONTINENTAL INSURANCE            )       COVENANT OF GOOD FAITH AND
    COMPANY; and DOES 1 through 50,      )       FAIR DEALING;
15                                       )  (3)  DECLARATORY RELIEF
            Defendants                   )
16  _____)

17

18          Plaintiffs, Franklin Ham and Dana Ham (collectively "Plaintiffs") allege as follows:

19                              GENERAL ALLEGATIONS

20          1.      Plaintiffs are informed and believe and thereon allege that Glen Falls Insurance Company

21  at all relevant times was a corporation, authorized to transact, and transacting, business in the State of

22  California. Plaintiffs are further informed and believe and thereon allege that The Continental Insurance

23  Company is the successor-in-interest to Glen Falls Insurance Company, and is a corporation, authorized

24  to transact, and currently transacting business in the State of California.  Both entities will collectively

25  be referred to as "CNA."

26          2.      Plaintiffs are ignorant of the true names and capacities, whether individual, corporate,

27  associate, governmental or otherwise of defendants sued as DOES 1 through 50, inclusive, and sues

28  these defendants by such fictitious names. Plaintiffs, after obtaining leave of Court, if necessary, will

1    amend this Complaint to show such true names and capacities when the same have been ascertained.

2        3.    At all times herein mentioned, each of the Defendants, except as otherwise alleged, was

3    the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said

4    times, each Defendant was acting in the full course and scope of said agency, service, employment

5    and/or joint venture. Certain Defendants agreed and conspired among themselves, and with certain other

6    individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Insured;

7    and such Defendants, as co-conspirators, are liable for the acts, or failures to act, of the other conspiring

8    Defendants.    Plaintiffs are informed and believe, and allege, that at all times herein mentioned

9    Defendants FIRST DOE through FIFTIETH DOE, inclusive, were and are authorized to do business in

10   the State of California, that said Defendants have regularly conducted business in the County of San

11   Francisco, State of California, and that certain of said Defendants have designated the County of San

12   Francisco as their principal place of doing business within the State of California.

13       4.    At all times herein mentioned, each of the Defendants was the successor, successor in

14   business, assign, predecessor, predecessor in business, parent, subsidiary, alter-ego, agent and/or

15   fiduciary wholly or partially owned by, or the whole or partial owner of or member of the other

16   Defendants. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein

17   named Defendants are liable for the tortious conduct of each successor, successor in business, assign,

18   predecessor, predecessor in business, parent, subsidiary, whole or partial owner, or wholly or partially

19   owned entity, or entity that it was a member of. The following Defendants, and each of them, are liable

20   for the acts of each and every "alternate entity," and each of them, in that there has been a virtual

21   destruction of Plaintiffs' remedy against each such "alternate entity;" Defendants, and each of them, have

22   acquired the assets, product line, or a portion thereof, of each such "alternate entity;" Defendants, and

23   each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such

24   Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each

25   such Defendant enjoys the goodwill originally attached to each such "alternate entity."

26   //

27   //

28   //

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY | GLENS FALLS INSURANCE COMPANY CNA INSURANCE COMPANIES |
| | FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY |

### FIRST CAUSE OF ACTION

**(Breach of Insurance Contract against CNA and Does 1-50)**

5.      Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 4 of the Complaint as set forth above.

6.      The above and below-described actions of CNA and Does 1-50 ("Defendants"), and each of them, constitute Breach of Insurance Contract.

7.      In or about June of 1964, in consideration of the payment of a premium, Defendants, by its duly authorized agents, executed and delivered to ECKLUND INSULATION, INC., hereinafter referred to as "the Insured," in the City of Reno, County of Washoe, State of Nevada, its Comprehensive General Liability Insurance policy bearing number PCL 50-09-99 with a policy limit for bodily injury of $100,000 each person and $300,000 each accident.  Plaintiffs are informed and believe and thereon allege that additional insurance policies exist that were issued by Defendants to the Insured for multiple years after 1966.  These insurance policies were also Comprehensive General Liability policies.  The policy limits for these additional insurance policies were the same or more than the 1966 Policy.  These policies will collectively be referred to as "the Policies."  Under the Policies, Defendants undertook to and did insure for both products liability and general liability and agreed to indemnify and defend the Insured in any civil action or suit seeking such damages.  Plaintiffs are informed and believe and thereon allege that the Policies did not contain any exclusions referencing asbestos, asbestos products or asbestos-related injuries.  A copy of the 1966 Policy's Certificate of Insurance is attached hereto as Exhibit "A" and incorporated by reference.

8.      While the Policies were in full force and effect, the Insured sold asbestos-containing products and performed work as a contractor using asbestos-containing products that exposed Plaintiff, Franklin Ham to asbestos dust.  Mr. Ham worked with the Insured's employees on multiple work sites

1   from the early 1960's through the early 1970's, at least, as they exposed him to asbestos dust by their use

2   of rigid split asbestos pipe covering and dry asbestos cement.  The Insured's employees failed to warn

3   Mr. Ham about the hazards inherent in breathing the dust from their work or take precautions to protect

4   him from the dust. Mr. Ham breathed asbestos fibers that were created when the Insured's employees

5   performed work as a contractor using asbestos-containing products, thereby causing injuries to Mr. Ham.

6   Those events will hereinafter be referred to as "the Occurrence."  Plaintiffs and the Insured gave

7   Defendants due and timely notice of the Occurrence, and Defendants, through its employees and agents,

8   failed to investigate the claim and to represent the Insured in the settlement negotiations and in the

9   defense of the underlying action hereinafter mentioned.

10      9.      There was a substantial likelihood that Plaintiffs' recovery in the underlying lawsuit

11  would exceed the Policies' limits.  Plaintiffs Franklin and Dana Ham have been married for 48 years.

12  Mr. Ham is 74 years old and Mrs. Ham is 67.  They reside in Yerington, Nevada, and are Nevada

13  citizens and have two daughters and a son. Mr. Ham was a remarkably healthy and active man before

14  his diagnosis of mesothelioma.  He is a lifetime non-smoker, apart from two years when he served in

15  the Navy.  Mr. Ham was diagnosed with malignant pleural mesothelioma in July of 2006.  Malignant

16  pleural mesothelioma is a terminal disease.  Mr. Ham was told by his treating physician that he could

17  expect to live from six to eighteen months from the time of his diagnosis.  Additional details of Mr.

18  Ham's exposure and injuries and Mrs. Ham's loss of consortium are set forth in Plaintiffs' Trial Brief

19  in Support of Request for Entry of Default Judgment, which was served on CNA and is attached hereto

20  as Exhibit "B" and incorporated by reference.

21      10.     On August 11, 2006, Plaintiffs' Complaint was filed in the Superior Court of San

22  Francisco, entitled *Franklin Ham and Dana Ham v. Acco-Air Conditioning Company, et al.*, case

23  number 455063, hereinafter referred to as "the Underlying Action," in which Plaintiffs sought recovery

24  of damages for Mr. Ham's injuries as a result of his occupational exposure to asbestos.  Plaintiffs named

25  several defendants, including several DOE defendants, in the Complaint.  A copy of the Complaint in

26  the Underlying Action is attached hereto as Exhibit "C" and incorporated by reference.

27      11.     On August 28, 2006, Plaintiffs filed an amendment to the Complaint substituting the true

28  name of the Insured for the Eleventh Doe.  The Complaint as amended alleges that the Insured is liable

1  to Plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of consortium. A copy

2  of the Amendment is attached hereto as Exhibit "D" and incorporated by reference.

3       12.    The Insured is a defunct Nevada corporation, but the corporation has never dissolved.

4  Plaintiffs served the Insured with the Summons and Complaint in the Underlying Action by personally

5  serving its President, Jerry Ecklund, at his home in Allyn, Washington.

6       13.    In or about August or September of 2006, the Insured tendered the defense of the

7  Underlying Action to CNA. CNA responded, stating that it would search for any insurance policies

8  issued to the Insured and requested any documentation related to the Policies. Plaintiffs are informed

9  and believe and thereon allege that the Insured sent CNA a copy of the Certificate of Insurance for the

10 1966 Policy. Plaintiffs also attempted to begin communications and settlement negotiations with CNA

11 by sending CNA a copy of the Certificate of Insurance for the 1966 Policy. CNA never responded to

12 the Insured or to Plaintiffs.

13      14.    As a result of CNA's refusal and failure to defend the Insured, upon Plaintiffs request,

14 the Clerk of the Court entered default against the Insured on November 30, 2006. Plaintiffs provided

15 notice to Jerry Ecklund, President of the Insured,---and to Richard Solski of CNA---of the Request for

16 Entry of Default and of all hearings, trial dates, court orders and depositions taken in the Underlying

17 Action. Plaintiffs also provided Mr. Ecklund and Defendants with notice of the Default Prove-up

18 Hearing, which stated that a judgment would be sought against the Insured in the Underlying Action.

19      15.    On June 28, 2007, the Court ordered judgment be entered in favor of Plaintiff Franklin

20 Ham in the amount of $671,000 for economic damages and $1,300,000 non-economic damages and in

21 favor of Plaintiff Dana Ham in the amount of $700,000 non-economic damages, for a total judgment in

22 favor of Plaintiffs and against the Insured in the amount of $2,671,000. A copy of the Notice of Entry

23 of Default Judgment Against Ecklund Insulation, Inc. and Default Judgment, which was served on CNA,

24 is attached hereto as Exhibit "E" and incorporated by reference.

25      16.    Plaintiffs sent CNA a letter via certified mail on December 26, 2007 offering to resolve

26 Plaintiffs' claims against CNA and the Insured for the Policies' limits. The December 26, 2007 letter

27 further stated that the offer to settle would remain open for 30 days from CNA's receipt of the letter.

28 CNA received the letter by January 2, 2008. CNA has not contacted Plaintiffs in response to Plaintiffs'

1  offer to settle within the Policies' limits.

2      17.   Defendants breached the Policies by (1) failing to and refusing to undertake any

3  investigation of the Occurrence; (2) failing to defend or respond to a proper request to defend the

4  Insured; and (3) failing to settle or engage in settlement discussions of the Underlying Action when

5  there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies'

6  limits. Even after the Insured and Plaintiffs sent Defendants the Certificate of Insurance setting forth

7  the specific policy number and policy amounts, Defendants failed to respond. Defendants continued to

8  fail to respond even when Plaintiffs offered to resolve the default judgment in the Underlying Action

9  within the Policies' limits.

10      18.   As consideration for Plaintiffs' agreement not to enforce the balance due and owing on

11  the Underlying Action's judgment, the Insured has assigned to Plaintiffs all assignable claims that the

12  Insured has against the Defendants. Plaintiffs sue the Defendants as the assignee of the Insured's causes

13  of action. This included the causes of action alleged in this Complaint. A copy of the assignment is

14  attached hereto as Exhibit "F" and incorporated by reference.

15      19.   Plaintiffs and the Insured have performed and complied with all of the terms, conditions

16  precedent, obligations and provisions contained in the Policies under which coverage is now sought,

17  including the payment of premiums and the giving of notice, except as to that performance which has

18  been excused, waived or prevented by the representations, acts or omissions of the Defendants. Thus,

19  Plaintiffs, as the assignees, are entitled to the full benefit of the insurance provided by the Policies.

20      20.   As a proximate result of Defendants' (1) failure to and refusal to undertake any

21  investigation of the Occurrence; (2) failure to defend or respond to a proper request to defend the

22  Insured; and (3) failure to settle or engage in settlement discussions of the Underlying Action when

23  there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies'

24  limits, the Insured was damaged in the sum of $2,671,000 together with interest thereon at the legal rate.

25  **SECOND CAUSE OF ACTION**

26  **(Breach of the Implied Covenant of Good Faith and Fair Dealing against CNA and Does 1-50)**

27      21.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

28  20 of the Complaint as set forth above.

22.    The above and below-described actions of CNA and Does 1-50 ("Defendants"), and each of them, constitute Breach of the Implied Covenant of Good Faith and Fair Dealing.

23.    There is implied in every contract a covenant by each party not to do anything which will deprive the other party thereto of the benefits of the contract. This would include an implied obligation to reasonably investigate all claims, to respond to requests to defend, to defend all claims and to settle all claims that may result in an amount in excess of the policy limits. In addition, this covenant not only imposes upon each party the duty to refrain from doing anything that would render performance of the contract impossible by any act of his own, but also to do everything that the contract presupposes will be done to accomplish the purpose of the contract.

24.    Plaintiffs are informed and believe, and thereon allege, that the Defendants breached the obligation to act fairly and in good faith toward the Insured by engaging in some or all of the following acts or omissions:

a.    Defendants failed to fully and fairly investigate claims arising under the Insured's Policies.

b.    Defendants failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Insured's Policies.

c.    Defendants, with full knowledge of the potentially catastrophic effect of a large judgment on the Insured, and in complete disregard of the likelihood of a judgment being entered against the Insured far in excess of the Policies' limits, refused to settle within policy limits despite its reasonable opportunities to do so. Plaintiffs are informed and believe, and thereon allege, that Defendants, in refusing to consider those settlement opportunities, were motivated by a dishonest intent to deprive the Insured of its benefits under the Policies, including the benefit of Defendants' duty to consider settlement of the action to avoid the possibility of catastrophic excess liability being imposed on the Insured.

d.    Defendants were fully aware of the Insured's interest in avoiding the catastrophic effect of a judgment far in excess of the Policies' limits and that such a judgment was likely, but nevertheless refused all reasonable opportunities to settle the action. Plaintiffs are informed and believe, and thereon allege, that Defendants, in refusing to consider those settlement opportunities, did not consider the Insured's interest in avoiding an excess judgment to be as important as Defendants' interest in reducing

1  liability to below the Policies' limits.

2       e.     Defendants knew, or in the exercise of reasonable care in investigation should have

3  known, that there was a considerable likelihood that the Insured would be found liable, and that the

4  resultant damages would probably greatly exceed the Policies' limits. Despite the existence of facts

5  indicating that a large excess judgment was likely, Defendants did not settle the action when it had the

6  reasonable opportunity to do so. Had Defendants exercised due care in settling the action, the possibility

7  of an excess judgment may have been precluded.

8       25.     Plaintiffs are informed and believe, and thereon allege, that Defendants have breached

9  the duty of good faith and fair dealing owed to the Insured by other acts or omissions of which the

10  Plaintiffs are presently unaware. Plaintiffs will seek leave of the Court to amend this Complaint at such

11  time as they discover the other acts or omissions of Defendants constituting such breach.

12       26.     As a direct and proximate result of the aforementioned wrongful conduct of Defendants,

13  the Insured became personally liable to the Plaintiffs in the amount of $2,671,000 together with interest

14  thereon at the legal rate. This judgment has not been satisfied.

15       27.     In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

16  the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

17  knowledge that Defendants' conduct would cause the Insured harm. Plaintiffs are therefore entitled to

18  recover punitive damages.

19                  **THIRD CAUSE OF ACTION**

20            **(Declaratory Relief against CNA and Does 1-50)**

21       28.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

22  27 of the Complaint as set forth above.

23       29.     The above and below-described actions of CNA and Does 1-50 ("Defendants"), and each

24  of them, necessitate Declaratory Relief.

25       30.     An actual controversy has arisen and now exists relating to the rights and duties of the

26  parties herein in that Plaintiffs contend that Defendants have breached the Policies by (1) failing to and

27  refusing to undertake any investigation of the Occurrence; (2) failing to defend or respond to a proper

28  request to defend the Insured;  and (3) failing to settle or engage in settlement discussions of the

1  Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in

2  excess of the Policies' limits, whereas Defendants, through their refusal to respond, appear to contend

3  that the Policy does not cover the Occurrence.

4        31.    Plaintiffs now desire a judicial determination of their rights and duties, and a declaration

5  as to which party's interpretation of the Policies are correct.

6        32.    A judicial declaration is necessary and appropriate at this time under these circumstances

7  in order that Plaintiffs may ascertain its rights and duties vis-à-vis the Policies.

8

9                                      **PRAYER**

10       1.    For the sum of $2,671,000, together with interest thereon at the legal rate from June 28,

11 2007 until paid;

12       2.    For exemplary damages;

13       3.    For attorneys' fees;

14       4.    For a declaration that the Occurrence fell under the Policies and that as Defendants failed

15 to settle within the Policies' limits, Defendants are liable for the entire judgment of $2,671,000;

16       5.    For costs of suit herein incurred; and

17       6.    For such other and further relief as the Court may deem proper.

18 Dated: February 11, 2008.                    Clapper, Patti, Schweizer & Mason

19

20                                      By:_____
                                           Jack K. Clapper, Esq.
21                                          Steven J. Patti, Esq.
                                           Christine A. Renken, Esq.
22                                          Attorneys for Plaintiffs

23

24

25

26

27

28

**EXHIBIT** A

RICHARD J. NEUTRA - F. A. I. A.

IN COLLABORATION WITH LOCKARD, CASAZZA & PARSONS

and ASSOCIATES, ARCHITECTS & ENGINEERS

137 WEST FIRST ST. • RENO, NEVADA • PHONE FA 2-9475

June 6, 1964

Washoe County Fair and Recreation Board
P. O. Box 837
Reno, Nevada

Subject:  Reno-Sparks Arena-Convention Hall
          Reno, Nevada

Gentlemen:

We are enclosing the following certificates of insurance for the
subject project:

      Comprehensive Liability Insurance:

          Ecklund Insulation, Inc.
          1400 Montello Street
          Reno, Nevada

          Geremia Concrete
          1327 - 65th Street
          Sacramento, California

      Workmen's Compensation*:

          Cupples Products Corp.
          1450 Rincon Street
          Corona, California

    * In lieu of the N.I.C. Certificate

            Very truly yours,

            RICHARD J. NEUTRA, F.A.I.A.
            In Collaboration with
            LOCKARD, CASAZZA & PARSONS AND
            ASSOCIATES, ARCHITECTS & ENGINEERS

        By _Mary Johnson_
            Mary Johnson, Secretary

1 cc
3 cc Stolte Inc.
1 cc Project Engineer

E. KEITH LOCKARD, A.I.A., Manager • RALPH CASAZZA, A.I.A. • EDWARD S. PARSONS, A.I.A. • PETER G. GUISTI, C.E.

 THE *Glens Falls* GROUP
INSURANCE WITH INTEGRITY

## CERTIFICATE OF INSURANCE

GLENS FALLS INSURANCE COMPANY, Glens Falls, N.Y.
KANSAS CITY FIRE & MARINE INS CO., Kansas City, Mo

NAME AND ADDRESS OF INSURED
**ECKLUND INSULATION, INC., 1400 MONTELLO STREET, RENO, NEVADA**

LOCATION OF OPERATIONS TO WHICH THIS CERTIFICATE APPLIES
**RECREATION CENTER, RENO, NEVADA**

McNEILL - McNEAR
Real Estate-Insurance
1195 So. Wells Ave.
Reno, Nev.-Ph.: FA 3-3167

DESCRIPTION OF OPERATIONS OR AUTOMOBILES
**PIPE AND DUCT INSULATION**

This certifies that the policies of insurance described below have been issued and are in force. The insurance afforded is only with respect to the coverages indicated by specific limits of liability and is subject to all the terms of the policy having reference to those coverages. If such policies are canceled or changed, written notice will be mailed to the party to whom this certificate is issued, **10 days prior to such change or cancellation**

STOLTE, INC.
501 N. VIRGINIA STREET
RENO, NEVADA

← NAME AND ADDRESS OF PARTY TO WHOM THIS CERTIFICATE IS ISSUED

| POLICY NUMBER | EXPIRATION DATE | BODILY INJURY | | | PROPERTY DAMAGE | | KIND OF INSURANCE |
|---|---|---|---|---|---|---|---|
| | | each person $ | each accident $ | each accident x x x | each accident $ | aggregate $ | Manufacturers or Contractors Liability |
| | | each person $ | each accident $ | x x x | each accident $ | aggregate $ | Owners/Contractors Protective Liability |
| | | each person $ | each accident $ | aggregate | each accident $ | aggregate $ | Products Liability |
| | | each person $ | each accident $ | | each accident $ | aggregate $ | Contractual Liability |
| | | each person $ | each accident $ | x x x | each accident $ | | Owners, Landlords & Tenants Liability |
| | | each person $ | each accident $ | x x x | each accident $ | x x x | Automobile Liability |
| PCL 50-09-99 | 11/14/66 | each person $ 100,000. | each accident $ 300,000. | aggregate $300,000. | each accident $ 10,000. | aggregate 25,000. | Comprehensive General Liability |
| PCL 50-09-99 | 11/14/66 | each person $ 100,000. | each accident $ 300,000. | x x x | each accident $ 10,000. | x x x | Comprehensive Automobile Liability |
| | | each person $ | each accident $ | aggregate $ | each accident $ | aggregate $ | |
| | | As provided by the Workmen's Compensation Law of the State(s) of | | | | | Workmen's Compensation |

DATE SIGNED
**June 4, 1964**

SIGNATURE OF AUTHORIZED REPRESENTATIVE

Form 10209 Rev 11-62    *Applies to the Products Hazard only. Absence of an entry means the Products Hazard is not insured

EXHIBIT B

1  Jack K. Clapper, (State Bar No. 83207)
   Steven J. Patti, (State Bar No. 163773)
2  Clapper, Patti, Schweizer & Mason
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5
   Attorney for Plaintiffs
6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,            )    Case No. 455063
                                          )
12         Plaintiffs,                    )    PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF
                                          )    REQUEST FOR ENTRY OF DEFAULT
13  v.                                    )    JUDGMENT; DECLARATION OF STEVEN J.
                                          )    PATTI; PLAINTIFFS' REQUEST FOR
14  ACCO-AIR CONDITIONING COMPANY et     )    JUDICIAL NOTICE
    al,                                   )
15                                        )
           Defendants.                    )
16  _____ )    Date: June 28, 2007
                                               Time: 10:00 a.m.
17                                             Dept: 502

18                      I. Procedural Background

19       This is an action for personal injuries and loss of consortium. The plaintiffs are Franklin and

20  Dana Ham, husband and wife. On August 11, 2006, their complaint was filed alleging that Mr. Ham

21  sustained injuries as a result of his occupational exposure to asbestos. He named several defendants,

22  including several DOE defendants, in the complaint. On August 29, 2006, plaintiffs filed an

23  amendment to the complaint substituting the true name of Ecklund Insulation, Inc. (hereinafter

24  "Ecklund Insulation") for the Eleventh Doe. The complaint as amended alleges that Ecklund

25  Insulation is liable to plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of

26  consortium. Plaintiffs allege that Ecklund Insulation sold asbestos-containing products and

27  performed work as a contractor that exposed Mr. Ham to asbestos dust, thereby causing his injuries.

28  Plaintiffs' causes of action alleged against Ecklund Insulation include negligence and strict products

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

1  liability (design defect and failure to warn). Along with the summons and complaint plaintiffs

2  served Ecklund Insulation with a Statement of Damages, which specified that plaintiffs sought

3  compensatory damages in this action totaling $18,500,000. (See Plaintiffs' Request for Judicial

4  Notice.)

5      Ecklund Insulation is a defunct Nevada corporation. Its charter was revoked in the State of

6  Nevada in 1981, but the corporation has never dissolved. (See Exhibit A to the Declaration of

7  Steven J. Patti ("SJP Decl").) Plaintiffs served Ecklund Insulation with the summons and complaint

8  in this action by personally serving its President, Jerry Ecklund, at his home in Allyn, Washington.

9  (See Exhibit B to SJP Decl.) Although Mr. Ecklund apparently tendered the defense of the lawsuit

10  to the CNA Insurance Companies (see Exhibit C to SJP Decl.), no responsive pleading was ever

11  filed on behalf of Ecklund Insulation. Upon plaintiffs' request, the Clerk of the Court entered default

12  against Ecklund Insulation on November 30, 2006. (See Request for Judicial Notice.) Plaintiffs

13  provided notice to Jerry Ecklund---and to Richard Solski of CNA insurance---of the Request for

14  Entry of Default and of all hearings, trial dates, court orders and depositions taken in this matter.

15  Most recently, plaintiffs provided Mr. Ecklund and CNA insurance with notice of the instant Default

16  Prove-up Hearing, which stated that a judgment would be sought against Ecklund Insulation in this

17  matter. (See Exhibit D to SJP Declaration.)

18              II. **Standard of Proof.**

19      The correct standard of proof in a default prove-up setting requires that the plaintiff merely

20  establish a prima facie case. *Johnson v. Stanhiser* (1999) 72 Cal.App. 4th 357, 361. "Generally

21  speaking, the party who makes default thereby confesses the material allegations of the complaint.

22  [Citation.] It is also true that *where a cause of action is stated* in the complaint and evidence is

23  introduced to establish a prima facie case the trial court may not disregard the same, but must hear

24  the evidence offered by the plaintiff and must render judgment in his favor for such sum, not

25  exceeding the amount stated in the complaint...as appears from the evidence to be just." *Id.*, quoting

26  *Taliaferro v. Damvis* (1963) 216 Cal.App.2d 398, 408-409 (original italics). In *Johnson*, the court

27  held that the trial court incorrectly applied a preponderance of the evidence standard, and ordered the

28  court to reconsider the issue of damages after the trial court declined to award damages to the

CPSM
2130 Maysuby Way, #140
Sausalito, CA 04965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

2

1    plaintiff.

2    ## III. Statement of Facts

3    Franklin and Dana Ham have been married for 48 years. He is 74 years old and she is 67.
4    They reside in Yerington, Nevada. They have two daughters and a son. Mr. Ham was a remarkably
5    healthy and active man before his diagnosis of mesothelioma. He is a lifetime non-smoker, apart
6    from two years when he served in the navy. He was in the process of building a solar-powered home
7    made of straw bales and other recycled materials when he was diagnosed with malignant pleural
8    mesothelioma in July of 2006. Malignant pleural mesothelioma is a terminal disease. Mr. Ham was
9    told by his treating physician that he could expect to live from six to eighteen months from the time
10   of his diagnosis.

11   ### 1.    Mr. Ham's Exposure

12   The only established cause of mesothelioma in the United States is occupational exposure to
13   asbestos. Mr. Ham had asbestos exposure over his long career as a plumber and pipe fitter. After
14   serving as a cook for three years in the United States Navy, he began in the plumbing trade in
15   approximately 1957. From 1963 to 1973, he lived in the Reno area and worked for several different
16   employers at job sites in Nevada and Northern California where he installed plumbing and heating
17   systems. Much of his work was in mechanical rooms where he installed boilers and other high-heat
18   equipment. This work was often done in the proximity of insulation contractors who would install
19   rigid split asbestos pipe covering and dry asbestos cement on pipes, boilers and fittings

20   Mr. Ham testified that, during the 1963 to 1973 period, he became familiar with three
21   insulators in particular because of the large number of jobs at which he saw them: Bill Brokavich,
22   Lonnie Treadway and Ernie Schoppe. Mr. Ham stated that these insulators performed almost all of
23   their work for Jerry Ecklund of Ecklund Insulation. Mr. Ham also became familiar with Jerry
24   Ecklund, whom he would see on jobs. Mr. Ecklund brought the asbestos insulation materials that
25   the other three would work with in Mr. Ham's presence. Their work caused Mr. Ham to be exposed
26   to asbestos dust from the mixing of the dry cement with water and from the cutting of the rigid split
27   asbestos pipe covering. This work occurred in confined spaces that Mr. Ham shared with the
28   insulators, so that he would be forced to breathe the dust. The Ecklund Insulators never warned him

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

3

1    about the hazards inherent in breathing the dust from their work, or took precautions to protect him

2    from the dust. (See Plaintiffs' Deposition of Franklin Ham at 49:17 to 53:1, Exhibit E to SJP Decl.).

3         During the defense portion of his deposition, Mr. Ham testified about a number of specific

4    projects during which he recalled working with Ecklund Insulation workers as they exposed him to

5    asbestos dust by their use of rigid split asbestos pipe covering and dry asbestos cement. In particular,

6    he recalled working in the same room with Ecklund Insulation workers at the Washoe Medical

7    center in the 1959-1964 when he was employed by Johnson Controls. The Ecklund Insulators used

8    asbestos insulation materials to cover pipes. (See Deposition of Franklin Ham at 469:24 to 472:15,

9    Exhibit E to SJP Decl.). He also recalled working with Ecklund insulators on another Johnson

10   Controls job at the University of Nevada Reno's girls' dormitory during the same period. Again, the

11   Ecklund insulators used asbestos cement and split pre-formed asbestos pipe covering. (See id. at

12   845:7 to 847:23.) Mr. Ham also recalled working with Ecklund Insulators on the new construction

13   of the University's sports complex during the 1959 to 1964 period. He worked in the same

14   mechanical room with Ecklund Insulators as they used asbestos-containing insulation materials.

15   (See id. at 855:2 to 858:25)

16        Mr. Ham also recalled working under similar circumstances with Ecklund Insulation at the

17   Nugget Casino during the 1959 to 1964 period. (See Deposition of Franklin Ham at 529:3 to

18   538:21). At the Nugget, he specifically recalled that the Ecklund Insulators suppled and used Kaylo

19   high temperature insulation. (See id. at 531:21 through 540:5). Kaylo insulation was, at the time,

20   an Owens Corning Fiberglas product that contained 15% asbestos. (See Request for Judicial Notice,

21   EPA product information published in accordance with Asbestos Information Act, at 55 Federal

22   Register 5144(20).)

23        From 1972 to 1973, Mr. Ham worked for a plumbing contractor called H.L. Murphy (See

24   Social Security records of Franklin Ham, at Exhibit F to SJP Decl.) Mr. Ham testified that Murphy

25   subcontracted almost all of his insulation work to Ecklund Insulation. (See Deposition of Franklin

26   Ham at 722:2-13, Exhibit E to SJP Decl.) Mr. Ham worked with Ecklund Insulators as they created

27   dust from their use of asbestos products at the Colonial Motor Lodge during the 1972 to 1973 period,

28   when he was employed by H.L. Murphy. (See id. at 695:21 to 702:16.) Mr. Ham worked for

CPSM
21st Marzalup Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

4

1   Murphy during the same period on the construction of the Park & Walk hotel, where he also worked
2   in the presence of Ecklund insulators who were creating dust with asbestos products. (See id. at
3   708:3 to 711:6.) He recalled working at Titanium West in the early 1970's, where he spent three or
4   four days in the presence of Ecklund insulators who were installing insulation. (See id. at 713:9-
5   715:25.) Mr. Ham worked at the Overland Hotel in Reno on an H.L. Murphy remodel job where
6   Ecklund Insulation workers used asbestos insulation materials in his presence. (See id. at 719:7 to
7   725:15.)

8       Jerry D. Ecklund, President of Ecklund Insulation signed a declaration for this case (an
9   admission of a party within the meaning of Evidence Code § 1220). (See Declaration of Jerry D.
10  Ecklund at Exhibit G to SJP Decl.) In it, he states that his company was engaged in both the
11  installation and the sale of insulation from the 1960's through 1977. He states that his company
12  installed asbestos-containing rigid split pipe insulation and asbestos-containing insulating cement.
13  He confirms that Bill Brokavich, Lonnie Treadway and Ernie Schoppe were in fact employed by his
14  company. Mr. Ecklund recalls working with Frank Ham, whom he recalls as an instrument tech and
15  plumber who worked on jobs in the Reno during the 1964 to 1977 time period. Moreover, Mr.
16  Ecklund recalls installing asbestos rigid split pipe insulation and asbestos insulating cement on job
17  sites during this period where Mr. Ham was present. He identified several job sites that he had in
18  common with Mr. Ham, at which Ecklund installed asbestos insulating products: Fallon Naval Air
19  Station, Proctor Hug High School, Harvey's Wagon Wheel Casino, Harold's Club Casino, Harrah's
20  Casino, University of Nevada-Reno and St. Mary's Medical Center. (See Declaration of Jerry D.
21  Ecklund at Exhibit G to Patti Decl.)

22  2.    **Liability and Causation**.

23      Allan Smith is a Professor of Epidemiology at the U.C. Berkeley School of Public Health.
24  He testified in deposition in this case that Mr. Ham's mesothelioma is caused by exposure to
25  asbestos. (See Deposition Excerpt and Curriculum Vitae of Allan Smith at Exhibit H to Patti
26  Declaration.) Barry Horn, M.D., is a board-certified pulmonary specialist who testified on behalf of
27  plaintiffs in deposition in this case. He testified that his opinions in the case are summarized in his
28  report, which was attached to the deposition as an exhibit. In the report, he states that he reviewed

CPSM
2130 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

5

1  Mr. Ham's medical records and pathology reports, and he confirms the diagnosis of malignant

2  pleural mesothelioma. He states that Mr. Ham's illness is incurable, and that he will die from the

3  disease. He states that, after reviewing Mr. Ham's deposition testimony, it is clear that he had "both

4  direct and bystander exposure to asbestos." He specifies that Mr. Ham was exposed to asbestos,

5  "when insulators were installing molded insulation and mixing up asbestos cement." He states that

6  Mr. Ham's asbestos exposure is confirmed pathologically by the presence of pleural plaques.

7  Finally, he opines that, "All of Mr. Ham's asbestos exposure should be considered a contributing

8  factor in the development of his malignancy."

9      An expert called by one of the defendants in the case, Industrial Hygienist Joel Cohen, opined

10 about the relative importance of Mr. Ham's various exposures. He testified that, "Mr. Ham's

11 greatest likelihood of what I'll refer to as significant exposure would have occurred from his work or

12 the work of others handling half-round type insulation material by far...." (See Deposition of Joel

13 Cohen at 19:3-9, Exhibit I to SJP Decl.)

14     Dr. Horn also testified about the medical and scientific "state of the art" concerning asbestos

15 hazards at his deposition. He defined this testimony as encompassing, "what was knowable to

16 anyone who would have been interested based upon what was published in the medical literature."

17 (Deposition of Barry Horn at 13:10-19, Exhibit J to SJP Decl.) He stated that, although much of the

18 relevant literature was medical in its focus, "there's plenty of literature that nonphysicians could

19 certainly understand." (Id. at 14:15-20.) Dr. Horn reviewed a vast array of such literature at his

20 deposition, going back to a 1918 publication by Hoffman which stated that the insurance industry

21 had already recognized the problem of asbestosis. (Id. at 20:8-13.) By 1924, an article by Cooke in

22 the *British Medical Journal* reported on a fatal case of asbestosis. Cooke wrote another article in

23 1927 in which he coined the term "asbestosis," and in the late 20's several more reports of asbestosis

24 appeared in the literature. (Id. at 21:7 - 17.)

25     In 1930 Merewether published a landmark study in the *Journal of Industrial Hygiene* looking

26 at the incidence of asbestosis among a population of asbestos workers. Also in 1930, Lynch and

27 Smith reported on four cases of asbestosis in the *Journal of the American Medical Association*. This

28 was widely distributed throughout the United States. In the same year, Wood and Gloyne published

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

6

1    an article on the clinical presentation of asbestosis, what caused the disease, the symptoms people
2    had, and how asbestosis could be prevented. According to Dr. Horn, the information in the Wood
3    and Gloyne article would still be valid if presented in a textbook today. (See Deposition of Barry
4    Horn at 23:1-25:12, Exhibit J to SJP Decl.)

5        After 1930, the publications concerning asbestos continued to mushroom, with epidemiologic
6    studies looking at the incidence of disease in various asbestos-exposed populations, including Lynch
7    and Smith (1935) and Dreesen (1938). Both Dreesen and Lynch and Smith wrote about how to
8    prevent asbestos diseases from occurring. By the late 30's, case reports were published of lung
9    cancer in asbestos workers. By 1944 Gloyne published the results of Dr. Wedler's research in
10   Germany. Dr. Wedler published a number of reports of lung cancer in individuals with asbestos
11   exposure. In 1949, a monograph was published in the *Journal of the American Medical Association*
12   linking lung cancer to asbestos exposure. By 1955 Sir Richard Doll had written his article
13   establishing the link between lung cancer and asbestos exposure epidemiologically. By 1960
14   Wagner had written his article establishing the link between asbestos and mesothelioma. Then, in
15   1964, Dr. Irving Selikoff held his international conference in New York City, the proceedings of
16   which were published in 1965, on the incidence of mesothelioma and lung cancer in insulators.
17   (Deposition of Barry Horn at 26:1-33:17, Exhibit J to SJP Decl.) By the mid-1960's, according to
18   Dr. Horn, the state-of-the-art with regard to asbestos disease was completely developed, and there
19   were no significant developments that occurred thereafter. (Id. at 33:18-22.)

20       At least as early as 1949, California's Division of Industrial Safety enacted General Industry
21   Safety Orders that governed the handling of hazardous dusts, including asbestos, in the workplace.
22   They required employers handling asbestos at potentially harmful levels to employ general
23   ventilation, local exhaust ventilation, isolation of dusty work, wetting down the work are to control
24   dust and substitution of nonhazardous material to prevent harmful exposures. Where such control
25   measures were impossible or impracticable, respiratory protection equipment was to be supplied and
26   worn. Workers potentially exposed to exposed to hazardous dust were to be trained in the use of
27   such equipment, and were to be provided with change rooms and sanitation facilities to prevent them
28   from taking hazardous dusts home on their person. Asbestos was specifically listed in the

CPSM
2330 Marinship Way, #140
Sausalito, CA  34965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

7

1    regulations one such hazardous dust to which the rules applied. These rules were in effect through

2    the 1960's. (See California Division of Industrial Safety General Industry Safety Orders, Title 8,

3    §§4100 et seq., attached to Request for Judicial Notice.)

4         No one from Ecklund Insulation ever warned Mr. Ham about the potential hazards of

5    exposure to the insulation products the company sold and installed. (Deposition of Franklin Ham at

6    52:23-53:1, Exhibit E to SJP Decl.) Nor did Ecklund Insulation take steps to protect Mr. Ham from

7    exposure to dust from their work. Nor did they employ wet-down, isolation, ventilation or the use of

8    respiratory equipment to prevent workers such as Mr. Ham from being exposed. Mr. Ham testified

9    in his deposition that he had no expectation that the asbestos products on his job sites could cause

10   him to develop cancer. (See Id. at 65:7-15.)

11   3.    **Damages**

12         A. **Economic Damages**

13         Barry Ben-Zion, PhD., a Professor of Economics at Sonoma State University, testified in this

14   case about his analysis of Mr. Ham's economic damages. His analysis was based upon a review of

15   documentation concerning Mr. Ham's income from pension and social security benefits, and upon

16   published data estimating the value of home services rendered by retired married men. Dr. Ben-Zion

17   prepared a report that summarized his findings. The components of economic damage that he

18   evaluated were future loss of Social Security retirement income ($171,700, reduced to present

19   value), future loss of union pension ($78,000), future loss of Sierra Pacific Power Company pension

20   ($77,575), and past and future loss of home services ($114,550). All of these amounts reflect a

21   reduction of the real figures to actuarial present value. Thus, the total economic damages calculated

22   by Dr. Ben-Zion are $441,825. (See excerpts from Deposition of Barry-Ben Zion, attached report

23   and supporting documents, Exhibit K to SJP Decl.) Dr. Ben-Zion's report states that his report does

24   not address Mr. Ham's past and future medical expenses, which are additional components of his

25   economic loss.

26         Dr. Barry Horn testified about the value of medical treatment that Mr. Ham was reasonably

27   likely to require in the future relating to his mesothelioma. He estimated these costs at between

28   $75,000 and $150,000. (Deposition of Barry Horn, p. 66, at Exhibit J to SJP Decl.) Dr. Ben-Zion

( PSM
21 M. Marsalus Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE                                    8

1   explained that, due to the fact that the increase in the costs of health care over time will likely exceed

2   the short term interest rate, no discount of those future costs to present value is necessary .

3   (Deposition of Barry Ben-Zion at p. 18:11-19:15.) Plaintiffs' bills for past medical expenses relating

4   to his mesothelioma total over $79,500.  (See Summary and Copies of Medical Bills, at Exhibit L to

5   SJP Decl.)  Thus, Mr. Ham has established **$671,000 in total economic damages.**

6       **B.  Non-economic Damages**

7       Mr. Ham's non-economic damages are related to his pain, discomfort, fears, anxiety, loss of

8   enjoyment of life and other mental and emotional distress caused by his mesothelioma.  See CACI

9   3905 A.  Mesothelioma is an exceptionally painful and unpleasant disease.  Dr. Horn testified that

10  the disease is terminal.  There is no cure.  Mesothelioma will kill Mr. Ham.  Mr. Ham testified that

11  he has been advised by his doctors that he has a life expectancy of between 6-18 months from

12  diagnosis.  (Deposition of Franklin Ham at 72:12-23, Exhibit E to SJP Decl.)  His tumor, which first

13  occurs in the pleura (the lining of the lung), will eventually grow to the point where it

14  circumferentially involves the lung, trapping and crushing the lung tissue to the point where the lung

15  cannot become oxygenated.  As a result, Mr. Ham can expect to experience increasing shortness of

16  breath, essentially a slow suffocation.

17      Dr. Horn has testified in the past about the extreme physical pain that a mesothelioma patient

18  can expect to experience as a result of the tumor growing in the chest wall, which eventually

19  involves the sensitive nerve roots between the ribs.  The tumor contacts and irritates the nerves, and

20  as a result Mr. Ham will have increasing pain and will require increasing doses of narcotics over

21  time.  Moreover, as the tumor gets larger it will consume more and more of Mr. Ham's resources and

22  energy.  He will lose weight, he will lose muscle mass, and eventually will be able to do less and less

23  for himself, requiring care 24 hours a day, 7 days a week.  (Deposition of Dr. Barry Horn in Rebecca

24  and Jess Soria, San Francisco Superior Court No. 429989, p. 33:22 - 35:10, at Exhibit M to SJP

25  Decl.)

26      Mr. Ham testified to already having experienced some of the physical pain and suffering that

27  Dr. Horn predicts.  Before being diagnosed he experienced constant fatigue and nagging pain in the

28  right lung and chest wall.  This was upsetting to him, as he had always been active and in excellent

( PSM
2130 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

9

1   health.  Although he made repeated trips to doctors in the months leading up to his diagnosis, they

2   could not find what was wrong.  (Deposition of Franklin Ham at 67:18-67:21, Exhibit E to SJP

3   Decl.)  Eventually, he had surgery in the form of a CT-guided biopsy, which itself was painful.  That

4   surgery led to Mr. Ham's diagnosis.  After the CT-guided biopsy he had a thoracentesis, which

5   involved multiple biopsies of the lymph nodes.  Emotionally, being diagnosed with mesothelioma

6   was devastating to both Mr. and Mrs. Ham.  (Deposition of Franklin Ham at 70:15-73:8, Exhibit E to

7   SJP Decl.)  Chemotherapy was recommended to Mr. Ham as the only available treatment.  He

8   underwent chemotherapy beginning in October of 2006.  The treatment causes him extreme nausea

9   and weakness, which lasts for at least three days.  (Deposition of Franklin Ham at 75:1-76:8, **Exhibit**

10  E to SJP Decl.)  He also experiences inability to eat, severe pain and constipation following the

11  chemotherapy.  (Deposition of Dana Ham at 25:14-18, Exhibit N to SJP Decl.)

12      Mr. Ham's mesothelioma has permanently and dramatically changed the quality of the Hams'

13  lives.  Before the disease, Mr. Ham was active and helpful, performing home maintenance,

14  housework and cooking in the household.  His primary avocation, however, was building their home,

15  which consumed about 40 or 50 hours of his time each week.  The home was planned as an

16  alternative, "green" residence made of straw bales and heated and powered using solar panels.  As

17  explained by Mrs. Ham, their plans for the home were inspired by their dream of "living a better

18  way."  Mr. Ham himself had done the underground wiring, the septic system, the rebar and the hay

19  bale construction.  (Deposition of Dana Ham at 16:8-18, and 26:13-27:8 Exhibit N to SJP Decl.)

20  Mrs. Ham explained that Mr. Ham, "loves to make things and do things, build things.  It makes him

21  very happy."  He recently helped his son Eric build his house in Winnemuca, Nevada.  Mr. Ham did

22  all of the electrical work and the heating system installation.  Mr. Ham even derived satisfaction

23  from helping neighbors and friends with electrical, piping and plumbing projects.  Since his

24  diagnosis, however, he has been unable to do household chores, unable to work on the house, and

25  unable to build things.  (Id. at 30:9-32:16.)

26      Before Mr. Ham became sick he and Mrs. Ham enjoyed raising and riding their Arabian

27  horses.  They enjoyed taking walks together and traveling around the country.  Mr. Ham was an avid

28  fisherman and hunter.  In terms of their future, they planned to travel to Australia for an outback

LPSM
2130 Mariership Way, #140
Nossauro, CA 04065
(415) 111-4202

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

10

1  horseback riding tour, and Mr. Ham was looking forward to showing his wife some parts of the

2  United States that she had not yet seen. Now, however, Mr. Ham is unable to walk, or hike, ride,

3  fish or hunt. The Hams' traveling plans are on permanent hold. His day generally consists of the

4  following, according to Mrs. Ham: "He has no activities to speak of now...[He] goes out to the

5  house, builds a fire and does a lot of contemplating. He sits there. I leave him alone, let him do

6  what he wants to do, and that's pretty much it." (Id. at 27:24-28:5 and 32:2-16.)

7       Obviously, this has been devastating for both of them emotionally as well. Mr. Ham is

8  suffering from emotional trauma, according to his wife. He is frustrated by his inability to walk or

9  work without shortness of breath or fatigue. (Id. at 28:25-29:5.) He has bouts of moodiness and

10  irritability, which was never the case before his diagnosis: "One minute he's as sweet as he's always

11  been and the next minute he's cantankerous and irritable." Mrs. Ham understands that this is a

12  consequence of the suffering Mr. Ham is undergoing with his illness: "I know what he's going

13  through. I know he wouldn't be that way if he could help it." (Id. at 27:6-23.)

14       In terms of the impact on her, Mrs. Ham explained how happy and appreciative she was of

15  her husband before his illness. "We had a great life together, and I thought about how lucky I was to

16  have him. And how–being a stupid teenager when I got married, how lucky I was that it turned out

17  so well. And I counted my blessings every day." (Id. at 29:6-23.) Now, her thoughts are consumed

18  with worries about how long Frank will be around, and she spends time praying for Frank rather than

19  counting her blessings. (Id. at 29:6-23.) She is no longer making any plans for her future with her

20  husband. Instead, Mrs. Ham explains, "I'm just living day to day and doing the best I can, and I'm

21  trying to be there for him." (Id. at 34:1-4.)

22

## IV. Conclusion

23       Plaintiffs have presented more than a prima facie case supporting their prayer for damages.

24  In fact, plaintiffs have presented the court with overwhelming evidence, including an admission from

25  the President of Ecklund Insulation, of Mr. Ham's exposure to the work, activities and products of

26  Ecklund Insulation. According to the medical experts proffered by plaintiffs, this exposure was a

27  cause of Mr. Ham's mesothelioma. According to at least one expert who was deposed, his exposure

28  to the sorts of products used by Ecklund Insulation was "far and away" his most significant.

CPSM
2140 Marship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

11

1   Plaintiffs have presented evidence establishing economic damages in this case of $671,000.

2   Plaintiffs have also presented evidence of both Mr. and Mrs. Hams' extreme non-economic damages

3   and loss of consortium. This evidence is sufficient to establish a prima facie case for the

4   $15,000,000 in non-economic damages prayed for in plaintiffs' Statement of Damages ($5,000,000

5   pain, suffering and inconvenience; $5,000,000 emotional distress; $5,000,000 loss of consortium),

6   which, in the absence of any kind of denial, should be awarded. Thus, plaintiffs respectfully request

7   that the court enter judgment in favor of plaintiffs in the amount of $15,671,000.

8   Dated: June 25, 2007.

                                  Clapper, Patti, Schweizer & Mason

                                    By:

                                    Steven J. Patti

                                    Attorney for Plaintiff

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

12

PROOF OF SERVICE

I declare that I am employed in the County of Marin, California; I am over the age of eighteen years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140, Sausalito, California 94965.

On June 26, 2007, I served PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE on the interested parties in this action by placing a true copy thereof, enclosed in a sealed box, all charges paid, addressed as follows:

ECKLUND INSULATION, INC.
Jerry D. Ecklund
141 E. Olympic Ct
Allyn, WA 98524

Richard J. Solski
Law Department
Environmental & Mass Tort Claims
CNA Plaza - 19 South
333 S. Wabash Avenue
Chicago, IL 60685

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for pick up and delivery by United Parcel Service.

The foregoing sealed box was placed for pick up and delivery this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with all charges thereon fully paid with United Parcel Service at Sausalito, California, in the ordinary course of such business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June 26, 2007, at Sausalito, California.

Lenette Lew

*EXHIBIT* C

1  Jack K. Clapper (State Bar No. 83207)
   Steven J. Patti (State Bar No. 163773)
2  CLAPPER, PATTI, SCHWEIZER & MASON
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5

6  Attorneys for Plaintiffs

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9     CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,              )  Case No. CGC-06-455063
                                            )
12        Plaintiffs,                       )  COMPLAINT FOR PERSONAL INJURY
                                            )
13  v.                                      )
                                            )  (ASBESTOS)
14  ACCO-AIR CONDITIONING COMPANY,          )
    INC.; ACCO ENGINEERED SYSTEMS,          )
15  INC.; AJAX BOILER, INC.; AJAX           )
    BOILER & HEATER CO.; AMERICAN           )
16  STANDARD INC.;ASBESTOS                   )
    CORPORATION, LTD.; CBS                   )
17  CORPORATION fka Viacom, Inc.,           )
    Successor by merger to CBS              )
18  Corporation; CERTAINTEED                )
    CORPORATION; CRANE COMPANY; CSR         )
19  Limited (Colonial Sugar                 )
    Refining); CROWN, CORK & SEAL           )
20  COMPANY, INC.; D. CUMMINS               )
    CORPORATION fka Valley Asbestos;        )
21  D/C DISTRIBUTION CORPORATION fka        )
    Moran Supply; FOSTER WHEELER            )
22  CORPORATION; GENERAL ELECTRIC           )
    COMPANY; GRINNELL CORPORATION;          )
23  INTERNATIONAL ENVIRONMENTAL             )
    SYSTEMS CORPORATION; J. T.              )
24  THORPE & SON, INC.; KAISER              )
    GYPSUM COMPANY; METALCLAD               )
25  INSULATION CORPORATION; OWENS-          )
    ILLINOIS, INC.; PARKER HANNIFIN         )
26  CORPORATION; PIERCE LATHING             )
    COMPANY fka Frank D. Smith;             )
27  PLANT INSULATION COMPANY; PLANT         )
    PRODUCTS & SUPPLY COMPANY;              )
28  RECORD SUPPLY; THOMAS DEE               )
    ENGINEERING COMPANY; UNIROYAL           )

ENDORSED
F I L E D
San Francisco County Superior Court

AUG 1 1 2006

GORDON PARK-LI, Clerk
BY:
CRISTINA E. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

AUG 1 5 2007 -1:30PM

DEPARTMENT 206

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury

1  HOLDING, INC.; and DOES ONE          )
2  through SEVENTY-FIVE, inclusive,     )
                                        )
3      Defendants.                      )
                                        )
4  ─────────────────────────────────────

5              GENERAL ALLEGATIONS

6      1.   The true names and capacities, whether individual,
7  corporate, associate, governmental or otherwise, of defendants
8  FIRST DOE through SEVENTY-FIFTH DOE, inclusive, are unknown to
9  plaintiffs at this time, who therefore sue said defendants by such
10 fictitious names.  When the true names and capacities of said
11 defendants have been ascertained, plaintiffs will amend this
12 complaint accordingly.  Plaintiffs are informed and believe, and
13 thereon allege, that each defendant designated herein as a DOE is
14 responsible, negligently or in some other actionable manner, for
15 the events and happenings hereinafter referred to, and caused
16 injuries and damages proximately thereby to the plaintiff, as
17 hereinafter alleged.

18     2.   At all times herein mentioned, each of the defendants,
19 except as otherwise alleged, was the agent, servant, employee
20 and/or joint venturer of his co-defendants, and each of them, and
21 at all said times, each defendant was acting in the full course and
22 scope of said agency, service, employment and/or joint venture.
23 Plaintiffs do not allege that Asbestos Corporation Ltd. was the
24 agent, servant, employee and/or joint venturer of any entity during
25 any of the years Asbestos Corporation Ltd. was owned by any
26 governmental agency.  Certain defendants agreed and conspired among
27 themselves, and with certain other individuals and/or entities, to
28 act, or not to act, in such a manner that resulted in injury to the

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                          2

1 plaintiff; and such defendants, as co-conspirators, are liable for
2 the acts, or failures to act, of the other conspiring defendants.
3 Plaintiffs do not allege that Asbestos Corporation Ltd. conspired
4 with any entity during any of the years Asbestos Corporation Ltd.
5 was owned by any governmental agency. Plaintiffs are informed and
6 believe, and allege, that at all times herein mentioned defendants
7 FIRST DOE through SEVENTY-FIFTH DOE, inclusive, were and are
8 authorized to do business in the State of California, that said
9 defendants have regularly conducted business in the County of San
10 Francisco, State of California, and that certain of said defendants
11 have designated the County of San Francisco as their principal
12 place of doing business within the State of California.

13                    FIRST CAUSE OF ACTION -- NEGLIGENCE
14        PLAINTIFF COMPLAINS OF DEFENDANTS ACCO-AIR CONDITIONING
15 COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.;
16 AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS
17 CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by
18 merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY;
19 CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY,
20 INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION
21 CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL
22 ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL
23 SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM
24 COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;
25 PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D.
26 Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY;
27 RECORD SUPPLY; THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING,

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
415) 332-4262

Franklin Ham/Complaint for Personal Injury                    3

1  INC., NAMED IN THE FIRST CAUSE OF ACTION, AND DOES ONE THROUGH

2  TWENTY-FIVE, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

3       3.    Plaintiffs are informed and believe, and thereon allege

4  that at all times herein mentioned, defendants ACCO-AIR

5  CONDITIONING COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX

6  BOILER, INC.; AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.;

7  ASBESTOS CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc.,

8  Successor by merger to CBS Corporation; CERTAINTEED CORPORATION;

9  CRANE COMPANY; CSR Limited (Colonial Sugar Refining); CROWN, CORK &

10 SEAL COMPANY, INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C

11 DISTRIBUTION CORPORATION fka Moran Supply; FOSTER WHEELER

12 CORPORATION; GENERAL ELECTRIC COMPANY; GRINNELL CORPORATION;

13 INTERNATIONAL ENVIRONMENTAL SYSTEMS CORPORATION; J. T. THORPE &

14 SON, INC.; KAISER GYPSUM COMPANY; METALCLAD INSULATION CORPORATION;

15 OWENS-ILLINOIS, INC.; PARKER HANNIFIN CORPORATION; PIERCE LATHING

16 COMPANY fka Frank D. Smith; PLANT INSULATION COMPANY; PLANT

17 PRODUCTS & SUPPLY COMPANY; RECORD SUPPLY; THOMAS DEE ENGINEERING

18 COMPANY; UNIROYAL HOLDING, INC., and FIRST DOE through SEVENTY-

19 FIFTH DOE, inclusive, were and are corporations organized and

20 existing under and by virtue of the laws of the State of

21 California, or the laws of some other state or foreign

22 jurisdiction, and that said defendants, and each of them, were and

23 are authorized to do and are doing business in the State of

24 California, that said defendants have regularly conducted business

25 in the County of San Francisco, State of California, and that

26 certain of said defendants have designated the County of San

27 Francisco as their principal place of doing business within the

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                    4

1 | State of California.

2 |    4.   At all times herein mentioned, each of the defendants was
3 | the successor, successor in business, successor in product line or
4 | a portion thereof, assign, predecessor, predecessor in business,
5 | predecessor in product line or a portion thereof, parent,
6 | subsidiary, alter-ego, agent and/or fiduciary wholly or partially
7 | owned by, or the whole or partial owner of or member in an entity
8 | researching, studying, manufacturing, fabricating, designing,
9 | labeling, assembling, distributing, leasing, buying, offering for
10 | sale, selling, inspecting, servicing, installing, contracting for
11 | installation, repairing, marketing, warranting, rebranding,
12 | manufacturing for others, packaging and advertising a certain
13 | substance, the generic name of which is asbestos, and other
14 | products containing said substance.  Said entities shall
15 | hereinafter collectively be called "alternate entities".  Each of
16 | the herein named defendants are liable for the tortious conduct of
17 | each successor, successor in business, successor in product line or
18 | a portion thereof, assign, predecessor, predecessor in business,
19 | predecessor in product line or a portion thereof, parent,
20 | subsidiary, whole or partial owner, or wholly or partially owned
21 | entity, or entity that it was a member of, or funded, that
22 | researched, studied, manufactured, fabricated, designed, labeled,
23 | assembled, distributed, leased, bought, offered for sale, sold,
24 | inspected, serviced, installed, contracted for installation,
25 | repaired, marketed, warranted, rebranded, manufactured for others
26 | and advertised a certain substance, the generic name of which is
27 | asbestos, and other products containing said substance.  The
28 |

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury          5

1  following defendants, and each of them, are liable for the acts of
2  each and every "alternate entity", and each of them, in that there
3  has been a virtual destruction of plaintiff's remedy against each
4  such "alternate entity"; defendants, and each of them, have
5  acquired the assets, product line, or a portion thereof, of each
6  such "alternate entity"; defendants, and each of them, caused the
7  destruction of plaintiff's remedy against each such "alternate
8  entity"; each such defendant has the ability to assume the risk-
9  spreading role of each such "alternate entity"; and that each such
10 defendant enjoys the goodwill originally attached to each such
11 "alternate entity."

12 **DEFENDANT**                              **ALTERNATE ENTITY**

13 AMERICAN STANDARD, INC.                    AMERICAN RADIATOR & STANDARD SANITARY
14                                            CORP.
                                             TRANE COMPANY
15                                            KEWANEE BOILER CO.
                                             MURRAY IRON WORKS COMPANY
16                                            AMSTAN SUPPLY DIVISION
                                             WESTINGHOUSE AIR BRAKE COMPANY
17                                            (WABCO)

18 CERTAINTEED CORPORATION                    KEASBEY & MATTISON
                                             GUSTIN BACON MANUFACTURING CO.
19 CRANE CO.
                                             CRANE SUPPLY CO.
20                                            PACIFIC STEEL BOILER CORPORATION
   CROWN, CORK & SEAL COMPANY,
21 INC.                                       MUNDET CORK CORPORATION

22 CSR LIMITED
                                             COLONIAL SUGAR REFINING CO., LTD.
23 D. CUMMINS CORPORATION
                                             VALLEY ASBESTOS
24 D/C DISTRIBUTION CORPORATION               AMFAC
25                                            HEICK & MORAN
                                             MORAN SUPPLY
26 INTERNATIONAL ENVIRONMENTAL
   SYSTEMS CORPORATION                        IBW ENVIRONMENTAL SYSTEMS CORP.
27                                            INTERNATIONAL BOILER WORKS COMPANY
                                             LAMONT BOILER
28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harr/Complaint for Personal Injury                                    6

| | |
|---|---|
| 1   KAISER GYPSUM COMPANY, INC. | PERMANENTE CEMENT COMPANY |
| 2 | KAISER CEMENT & GYPSUM CORPORATION |
|   | KAISER CEMENT CORPORATION |
| 3   METALCLAD INSULATION | NORTHERN CALIFORNIA INSULATION |
|   CORPORATION | COMPANY |
| 4 | |
| 5   OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS |
|   | CORPORATION |
| 6 | OWENS-ILLINOIS GLASS CO. |
|   | AMERICAN STRUCTURAL PRODUCTS CO. |
| 7   PARKER-HANNIFIN CORP. | SACOMO |
|   | SACOMO MANUFACTURING, INC. |
| 8 | SACOMO SIERRA, INC. |
|   | EIS |
| 9 | |
|   PLANT INSULATION COMPANY | ASBESTOS COMPANY OF CALIFORNIA |
| 10 | PLANT ASBESTOS COMPANY |
| 11   UNIROYAL HOLDING, INC. | UNIROYAL, INC. |
|   | U. S. RUBBER |
| 12 | |

13      5. At all times herein mentioned, defendants, and each of

14  them, were and are engaged in the business of researching,

15  manufacturing, fabricating, designing, labeling, assembling,

16  distributing, leasing, buying, offering for sale, selling,

17  supplying, inspecting, servicing, installing, contracting for

18  installation, repairing, removing and/demolishing, marketing,

19  warranting, rebranding, manufacturing for others, packaging and

20  advertising a certain substance, the generic name of which is

21  asbestos, and other products containing said substance.

22      6. At all times herein mentioned, defendants, and each of

23  them, singularly and jointly, negligently and carelessly

24  researched, manufactured, fabricated, designed, tested or failed to

25  test, warned or failed to warn, labeled, assembled, distributed,

26  leased, bought, offered for sale, sold, supplied, inspected,

27  serviced, installed, contracted for installation, contracting for

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332 4262

Franklin Harv/Complaint for Personal Injury              7

1  fabrication, repaired, removed and/or demolished, marketed,
2  warranted, rebranded, manufactured for others, packaged and
3  advertised, a certain substance, the generic name of which is
4  asbestos, and other products containing said substance, in that
5  said substance proximately caused personal injuries to users,
6  consumers, workers, bystanders and others, including the Plaintiff
7  herein, (hereinafter collectively called "exposed persons"), while
8  being used in a manner that was reasonably foreseeable, thereby
9  rendering said substances unsafe and dangerous for use by "exposed
10 persons".

11     7.  Defendants, and each of them, had a duty to exercise due
12 care in the pursuance of the activities mentioned above and
13 defendants, and each of them, breached said duty of due care.

14     8.  Plaintiff has used, handled or been otherwise exposed to
15 asbestos and asbestos-containing products referred to herein in a
16 manner that was reasonably foreseeable.  Plaintiff's exposure to
17 asbestos and asbestos-containing products occurred at various
18 locations both within and outside the State of California. During
19 the following years plaintiff was employed by the following
20 companies: 1954, 1955, and 1956 employed by American Rubber Mfg.
21 Co. on the assembly line in Emeryville, California; 1957, 1958,
22 1959, and 1964 - 1965 by employed Boothe Sales, Inc., of Lafayette,
23 California, and worked on jobs at Heinz Ketchup, in Tracy,
24 California, and at a Santa Rosa automobile dealership, as a
25 pipefitter; 1958, 1959 employed by Gay Engineering Corp., of Los
26 Angeles, California, and worked on jobs at Olympic Village, Squaw
27 Valley, California, as a pipefitter; 1959, 1960, 1962, 1963, 1964,

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harr/Complaint for Personal Injury                8

1980, 1981, 1982, 1984, 1985, employed by Johnson Controls, and worked at various sites both as an instrument technician and as a pipefitter; 1975, 1976, 1977, employed by Bechtel Power Corp., of San Francisco, California, and worked at various locations, including sites within California, as a pipefitter. Plaintiff does not claim he was exposed to Asbestos Corporation Ltd.'s asbestos fibers during any of the years Asbestos Corporation Ltd. was owned by any governmental agency.

Plaintiff's disability within the meaning of CCP 340.2 either has yet to occur or occurred less than a year before the filing of this complaint.

9.    As a direct and proximate result of the conduct of the defendants, and each of them, as aforesaid, plaintiff's exposure to defendants' asbestos fibers and defendants' asbestos-containing products caused severe and permanent injury to the plaintiff including, but not limited to, mesothelioma.

10.    Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, lung cancer and mesothelioma are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

11.    Plaintiff suffers from mesothelioma, a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease. The asbestos fibers and asbestos-containing products of each named defendant and each DOE defendant were a substantial

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
415) 332-4262

1  factor in contributing to, and in causing, injury to plaintiff as
2  set forth herein.

3      12.  As a direct and proximate result of the aforesaid conduct
4  of defendants, and each of them, plaintiff has suffered, and
5  continues to suffer, permanent injuries and/or future increased
6  risk of injuries to his person, body and health, including, but not
7  limited to mesothelioma, and the mental and emotional distress
8  attendant thereto, all to his general damage in the sum in excess
9  of the jurisdictional limits of the Municipal Court.

10     13.  As a direct and proximate result of the aforesaid conduct
11 of the defendants, and each of them, plaintiff has incurred, is
12 presently incurring, and will incur in the future, liability for
13 physicians, surgeons, nurses, hospital care, medicine, hospices, x-
14 rays and other medical treatment, the true and exact amount thereof
15 being unknown to plaintiff at this time, and plaintiff prays leave
16 to amend this complaint accordingly when the true and exact cost
17 thereof is ascertained.

18     14.  As a further direct and proximate result of the said
19 conduct of the defendants, and each of them, plaintiff has
20 incurred, and will incur, loss of income, wages, profits and
21 commissions, a diminishment of earning potential, and other
22 pecuniary losses, the full nature and extent of which are not yet
23 known to plaintiff; and leave is requested to amend this complaint
24 to conform to proof at the time of trial.

25     WHEREFORE, plaintiff prays judgment against defendants, and
26 each of them, as hereinafter set forth.

27 / / / / / / / / / / / /

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    10

SECOND CAUSE OF ACTION -- STRICT LIABILITY

PLAINTIFFS COMPLAIN OF DEFENDANTS ACCO-AIR CONDITIONING
COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.;
AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS
CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by
merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY;
CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY,
INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION
CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL
ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL
SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM
COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;
PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D.
Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY;
RECORD SUPPLY; THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING,
INC. AND DOES ONE THROUGH FIFTY, AND FOR A CAUSE OF ACTION FOR
STRICT LIABILITY ALLEGES:

15.  Plaintiff incorporates herein by reference, as though
fully set forth herein, paragraphs 1 through 4, and paragraphs 7
through 14.

16.  FIRST DOE through TENTH DOE is responsible for, and
liable for the acts of ELEVENTH DOE through FIFTIETH DOE,
inclusive. The defendants, their "alternate entities", and each of
them, are corporations organized and existing under and by virtue
of the laws of the State of California, or the laws of some other
state or foreign jurisdiction, and said defendants, their
"alternate entities", and each of them, were and are authorized to

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harn/Complaint for Personal Injury                    11

1  do and are doing business in the State of California, and said
2  defendants, their "alternate entities", and each of them, have
3  regularly conducted business in the City and County of San
4  Francisco, State of California, during the period of Plaintiff's
5  employment.

6      17.  Defendants, their "alternate entities", and each of them,
7  researched, manufactured, fabricated, designed, tested or failed to
8  test, labeled, assembled, distributed, leased, bought, offered for
9  sale, sold, inspected, serviced, installed, contracted for
10  installation, repaired, marketed, warranted, rebranded,
11  manufactured for others, packaged and advertised a certain
12  substance, the generic name of which is asbestos, and other
13  products containing said substance.

14      18.  Defendants, their "alternate entities", and each of them,
15  knew and intended that the above referenced asbestos and other
16  products containing asbestos would be used by the purchaser or user
17  without inspection for defects therein or in any of its component
18  parts and without knowledge of the hazards involved in such use.

19      19.  Defendants, their "alternate entities," and each of them,
20  knew, or should have known, and intended that the aforementioned
21  asbestos and products containing asbestos would be used for
22  insulation purposes, would require sawing, chipping, hammering,
23  scraping, sanding, breaking, removal, "rip-out," and other
24  manipulation which would result in the release of airborne asbestos
25  fibers, and that through such foreseeable use "exposed persons"
26  would use or be in proximity to and exposed to said asbestos
27  fibers.

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    12

20.  Said asbestos and products containing asbestos were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their alternate entities, and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons" while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use.

21.  "Exposed persons" did not know of the substantial danger of using said products.  Said dangers were not readily recognizable by "exposed persons".  Said defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

22.  Plaintiff alleges that the aforementioned defendants, their "alternate entities", and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos- containing products created an unreasonable risk of bodily harm to exposed persons.

23.  Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and

CLAPPER, PATTI
SCHWEIGER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332 4262

Franklin Hairr/Complaint for Personal Injury                13

1  advertised by the aforementioned defendants, their "alternate

2  entities", and each of them and that plaintiff cannot identify

3  precisely which asbestos or asbestos-containing product(s) caused

4  the injuries complained of herein.

5      24.   In researching, mining, shipping, manufacturing,

6  fabricating, designing, testing or failing to test, warning or

7  failing to warn, labeling, assembling, distributing, leasing,

8  buying, offering for sale, selling, inspecting, servicing,

9  installing, contracting for installation, repairing, marketing,

10  warranting, rebranding, manufacturing for others, packaging and

11  advertising asbestos and asbestos-containing products, defendants,

12  their "alternate entities", and each of them, did so with conscious

13  disregard for the safety of "exposed persons" who came in contact

14  with said asbestos and asbestos-containing products, in that said

15  defendants, their "alternate entities", and each of them, had prior

16  knowledge that there was a substantial risk of injury or death

17  resulting from exposure to asbestos or asbestos-containing

18  products, including, but not limited to, asbestosis, other lung

19  disabilities and cancer.  Said knowledge was obtained, in part,

20  from scientific studies performed by, at the request of, or with

21  the assistance of, said defendants, their "alternate entities", and

22  each of them, and which knowledge was obtained by said defendants,

23  their "alternate entities", and each of them on or before 1930, and

24  thereafter.

25      25.   On or before 1930, and thereafter, said defendants, their

26  "alternate entities" and each of them, were aware that members of

27  the general public and other "exposed persons", who would come in

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                    14

1  contact with asbestos and asbestos-containing products, had no
2  knowledge or information indicating that asbestos or
3  asbestos-containing products could cause injury, and said
4  defendants, their "alternate entities", and each of them, knew that
5  members of the general public and other "exposed persons", who came
6  in contact with asbestos and asbestos-containing products, would
7  assume, and in fact did assume, that exposure to asbestos and
8  asbestos-containing products was safe, when in fact said exposure
9  was extremely hazardous to health and human life.

10      26.  With said knowledge, said defendants, their "alternate
11 entities", and each of them, opted to research, manufacture, mine,
12 ship, fabricate, design, label, assemble, distribute, lease, buy,
13 offer for sale, inspect, service, install, contract for
14 installation, repair, market, warrant, rebrand, manufacture for
15 others, package and advertise said asbestos and asbestos-
16 containing products without attempting to protect "exposed
17 persons" from or warn "exposed persons" of, the high risk of injury
18 or death resulting from exposure to asbestos and
19 asbestos-containing products.  Rather than attempting to protect
20 "exposed persons" from, or warn "exposed persons" of, the high risk
21 of injury or death resulting from exposure to asbestos and
22 asbestos-containing products, defendants, their "alternate
23 entities", and each of them, intentionally failed to reveal their
24 knowledge of said risk, and consciously and actively concealed and
25 suppressed said knowledge from "exposed persons" and members of the
26 general public, thus impliedly representing to "exposed persons"
27 and members of the general public that asbestos and

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    15

1  asbestos-containing products were safe for all reasonably
2  foreseeable uses.  Defendants, their "alternate entities", and each
3  of them, engaged in this conduct and made these implied
4  representations with the knowledge of the falsity of said implied
5  representations.

6      27.  The above-referenced conduct of said defendants, their
7  "alternate entities", and each of them, was motivated by the
8  financial interest of said defendants, their "alternate entities",
9  and each of them, in the continuing, uninterrupted research,
10  manufacture, fabrication, design, labeling, assembly, design,
11  distribution, lease, purchase, sale, offer for sale, inspection,
12  installation, contracting for installation, repair, marketing,
13  warranting, rebranding, manufacturing for others, packaging and
14  advertising of asbestos and asbestos-containing products.  In
15  pursuance of said financial motivation, said defendants, their
16  "alternate entities", and each of them, consciously disregarded the
17  safety of "exposed persons" and were in fact consciously willing
18  and intended to permit asbestos and asbestos-containing products to
19  cause injury to "exposed persons" and induced persons to work with
20  and be exposed thereto, including plaintiff.

21      28.  Plaintiff relied upon defendants', their "alternate
22  entities" and each of their representations, lack of warnings, and
23  implied warranties of fitness of asbestos and their
24  asbestos-containing products.  As a direct, foreseeable and
25  proximate result thereof, plaintiff has been injured permanently as
26  alleged herein.

27      29.  Defendants, their "alternate entities, and each of them,
28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury            16

1  and their officers, directors and managing agents participated in,
2  authorized, expressly and impliedly ratified, and had full
3  knowledge of, or should have known of, each of the acts set forth
4  herein.

5      30.  Defendants, and each of them, are liable for the
6  fraudulent, oppressive, and malicious acts of their "alternate
7  entities", and each of them, and each defendants' officers,
8  directors and managing agents participated in , authorized,
9  expressly and impliedly ratified, and had full knowledge of, or
10  should have known of, the acts of each of their "alternate
11  entities" as set forth herein.  Plaintiffs do not allege any such
12  fraudulent, oppressive, or malicious acts by Asbestos Corporation
13  Ltd. during the years Asbestos Corporation Ltd. was owned by any
14  governmental agency.

15      31.  The above-referenced conduct of said defendants, their
16  "alternate entities", and each of them, was and is willful,
17  despicable, malicious, fraudulent, outrageous and in conscious
18  disregard and indifference to the safety and health of "exposed
19  persons".  Plaintiff, for the sake of example and by way of
20  punishing said defendants, seeks punitive damages according to
21  proof.

22      32.  As a direct and proximate result thereof, plaintiff has
23  suffered the injuries and damages previously alleged.

24  THIRD CAUSE OF ACTION - PREMISES OWNERS/GENERAL CONTRACTORS -
25  MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT

26      AS AND FOR A THIRD, SEPARATE, CAUSE OF ACTION FOR
27  MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT, PLAINTIFF

28
CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

1  COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF
2  THEM, AND ALLEGES AS FOLLOWS:

3      33.  Plaintiff realleges and incorporates herein by reference
4  paragraphs 1 through 14 as though fully set forth herein.

5      34.  At relevant times defendants, and each of them, owned,
6  managed, and/or controlled certain premises in which asbestos-
7  containing products had been installed, maintained, used, and/or
8  replaced and as a result, dangerous quantities of asbestos fibers
9  were present on said premises.

10      35.  At relevant times said defendants knew that the asbestos-
11  containing products and the asbestos fibers released therefrom
12  created an unreasonable risk of harm to persons entering said
13  premises.

14      36.  At relevant times said defendants knew, or in the
15  exercise of ordinary care should have known, that said premises
16  would be entered by persons without knowledge of, or inspection
17  for, defects or dangerous conditions and that said persons would
18  not be aware of the aforesaid unreasonable risk of harm.
19  Defendants had a duty to disclose the presence of, and dangers
20  presented by, the asbestos-containing products and the asbestos
21  fibers released therefrom.

22      37.  Despite said knowledge, defendants misrepresented that
23  their premises was safe and free of defects, and/or failed to
24  disclose, and concealed, the presence of the asbestos-containing
25  products and asbestos fibers which created the unreasonable risk of
26  harm to persons entering said premises.

27      38.  In reliance upon the foregoing, plaintiff entered and

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harris/Complaint for Personal Injury                    18

1  performed work in said premises which was to defendants' benefit
2  and advantage and at defendants' request and invitation.  In so
3  doing, plaintiff was exposed to dangerous quantities of asbestos
4  fibers.

5      39.  Plaintiff was unaware of the unreasonable risk of harm
6  created by the aforesaid presence of asbestos-containing products
7  and asbestos fibers on said premises.

8      40.  As a legal consequence of the foregoing, plaintiff
9  developed asbestos-related illness from which he suffers as
10  previously set forth and plaintiff has suffered general and special
11  damages as herein being alleged in an amount in excess of the
12  jurisdictional limits of the Municipal Court.

13  FOURTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT EXERCISE OF
14  RETAINED CONTROL - RESTATEMENT SECOND OF TORTS, SECTION 414

15      AS AND FOR A FOURTH, SEPARATE, CAUSE OF ACTION FOR PREMISES
16  LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,
17  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

18      41.  Plaintiff realleges and incorporates herein by reference
19  paragraphs 1 through 14 as though fully set forth herein.

20      42.  At all relevant times defendants, and each of them,
21  owned, managed, and/or controlled certain premises in which
22  asbestos-containing products were being, or had been, installed,
23  maintained, used, removed and/or replaced.

24      43.  At all relevant times said defendants knew, or in the
25  exercise of ordinary care should have known, that the presence,
26  and/or disturbance, of the asbestos-containing products would
27  create an unreasonable risk of harm to persons entering said

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    19

premises.

44. At all relevant times said defendants knew, or in the exercise of ordinary and reasonable care should have known, that work would be performed on said premises by persons without knowledge of, or inspection for, defects or dangerous conditions and that said persons would not be aware of the aforesaid unreasonable risk of harm, and that without the implementation of proper safety precautions, and/or the use of proper work practices, the risk of serious personal injury would result.

45. Despite said knowledge of the aforesaid unreasonable risk of harm, defendants retained control of the work and negligently failed to implement, and/or failed to have others implement, proper safety precautions, and/or the use of proper work practices, with the result that the asbestos-containing products created an unreasonable risk of harm to persons entering said premises.

46. Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers.

47. Plaintiff was unaware of the risk of harm created by the aforesaid presence of asbestos products and materials on said premises.

48. At all times mentioned herein, said defendants, and each of them, controlled the operative details of the work and negligently failed to maintain, manage, inspect, survey, or control said premises, or to abate or correct, or to warn plaintiff of the existence of the aforesaid dangerous conditions and hazards on said

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    20

1  premises.

2      49.  As a legal consequence of the foregoing, plaintiff

3  developed asbestos-related illness from which he suffered as

4  previously set forth and plaintiff has suffered general and special

5  damages as herein being alleged in an amount in excess of the

6  jurisdictional limits of the Municipal Court.

7  FIFTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT PROVISION OF

8  UNSAFE EQUIPMENT - RESTATEMENT SECOND OF TORTS, SECTION 414

9      AS AND FOR A FIFTH, SEPARATE, CAUSE OF ACTION FOR PREMISES

10  LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,

11  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12      50.  Plaintiff realleges and incorporates herein by reference

13  paragraphs 1 through 14 as though fully set forth herein.

14      51.  At all relevant times defendants, and each of them,

15  owned, managed, and/or controlled certain premises in which

16  asbestos-containing products were being, or had been, installed,

17  maintained, used, removed and/or replaced.

18      52.  At all relevant times said defendants knew, or in the

19  exercise of ordinary care should have known, that the presence,

20  and/or disturbance, of the asbestos-containing products would

21  create a risk of harm to persons entering said premises.

22      53.  At all relevant times said defendants knew, or in the

23  exercise of ordinary and reasonable care should have known, that

24  work would be performed on said premises by persons without

25  knowledge of, or inspection for, defects or dangerous conditions

26  and that without the proper equipment the risk of serious personal

27  injury would result.

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                21

54.  Despite said knowledge of the aforesaid risk of harm, defendants negligently provided unsafe equipment which created a risk of harm to persons entering said premises.

55.  Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation.  In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers.

56.  Plaintiff was unaware of the risk of harm created by the aforesaid presence of asbestos products and materials on said premises.

57.  As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special damages as herein being alleged in an amount in excess of the jurisdictional limits of the Municipal Court.

SIXTH CAUSE OF ACTION - CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON PREMISES

AS AND FOR A SIXTH, SEPARATE, CAUSE OF ACTION FOR A CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON THE PREMISES, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

58.  Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

59  At relevant times defendants, and each of them, owned, managed, contracted to perform work within and/or controlled certain premises in which asbestos-containing products had been, or were being, installed, maintained, used, and/or replaced.

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                22

60. At relevant times said defendants knew, or in the exercise of ordinary care should have known, that the presence of the asbestos-containing products and asbestos fibers created a concealed, per-existing hazardous condition on its premises.

61. At relevant times said defendants knew, or in the exercise of ordinary care should have known, that said premises would be entered by persons, including contractors and/or sub-contractors, who would be without knowledge of, or reasonably could ascertain the condition.

62. Despite said knowledge, defendants failed to maintain the premises free of defects, and/or failed to abate the asbestos-containing products and asbestos fibers which created the unreasonable risk of harm to persons entering said premises and failed to warn the persons entering said premises, including contractors and/or sub-contractors.

63. Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. Due to defendants' negligent conduct, and/or the negligent conduct of persons for whom defendant is responsible, plaintiff was exposed to the aforementioned dangerous quantities of asbestos fibers which were present at said premises.

64. Both plaintiff and plaintiff's employer were unaware of, and could not reasonably ascertain, the aforesaid dangerous condition on said premises.

65. As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

1  damages as herein being alleged in an amount in excess of the
2  jurisdictional limits of the Municipal Court.

3       SEVENTH CAUSE OF ACTION - NEGLIGENT UNDERTAKING
4  AS AND FOR A SEVENTH, SEPARATE, CAUSE OF ACTION FOR NEGLIGENT
5  PERFORMANCE OF AN UNDERTAKING - RESTATEMENT SECOND OF TORTS,
6  SECTION 324A, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,
7  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

8       66.  Plaintiff realleges and incorporates herein by reference
9  paragraphs 1 through 14 as though fully set forth herein.

10      67.  At relevant times defendants, and each of them, owned,
11  managed, and/or controlled certain premises in which asbestos-
12  containing products had been installed, maintained, used, and/or
13  replaced.

14      68. At relevant times defendants, and each of them, undertook,
15  gratuitously or for consideration, to render services which said
16  defendants should have recognized as necessary for the protection
17  of plaintiff.  Plaintiff suffered the harm complained of herein due
18  to defendants failure to exercise reasonable care in said
19  undertaking so that  (a) defendants failure to exercise reasonable
20  care increased the risk of harm to plaintiff, or (b) defendant
21  undertook to perform a duty owed to plaintiff by another, or (c)
22  said harm was suffered because of plaintiff's reliance, or the
23  reliance of another, upon the undertaking by defendant.

24      69.  As a legal consequence of the foregoing, plaintiff
25  developed asbestos-related illness from which he suffered as
26  previously set forth and plaintiff has suffered general and special
27  damages as herein being alleged in an amount in excess of the
28

CLAPPER, PATTI
CLAWFGER & MASON
2140 Mornshan Way
Suite 140
Novolato, CA 94965
(415) 332 4262

1    jurisdictional limits of the Municipal Court.

2    <u>EIGHTH CAUSE OF ACTION - LOSS OF CONSORTIUM</u>

3    AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF
4    ACTION, PLAINTIFF DANA HAM COMPLAINS OF DEFENDANTS, INCLUDING DOE
5    DEFENDANTS AND EACH OF THEM AND ALLEGES:

6    70.  Plaintiff incorporates herein by reference, as set forth
7    fully herein, all paragraphs of the First through Seventh Causes of
8    Action herein.

9    71.  Plaintiffs currently are, and at all relevant times were,
10   husband and wife.

11   72.  Plaintiff Franklin Ham sustained injuries caused by
12   inhalation of asbestos fibers.  Prior to the aforesaid injuries,
13   said spouse was able to and did perform duties as a spouse.
14   Subsequent to the injuries, and as a proximate result thereof, said
15   spouse was unable to perform the necessary duties as a spouse and
16   the work and service usually performed in the care, maintenance and
17   management of the family home.  By reason thereof, plaintiff Dana
18   Ham has been deprived of the consortium of plaintiff's spouse,
19   including the performance of said duties, all to plaintiff's
20   damages.

21   WHEREFORE, plaintiffs pray judgment against defendants, their
22   "alternate entities", and each of them, as follows:

23   1.  For plaintiff's general damages according to proof;

24   2.  For plaintiff's loss of income, wages and earning
25   potential according to proof;

26   3.  For plaintiff's medical and related expenses according to
27   proof;

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

1    4.    For plaintiff's cost of suit herein;

2    5.    For exemplary or punitive damages according to proof; and

3    6.    For such other and further relief as the court may deem

4    just and proper, including costs as provided in CCP §998, CCP §1032

5    and related provisions of law.

6    Dated: August 11, 2006.

CLAPPER, PATTI, SCHWEIZER & MASON

7

8                                  By: _____
9                                       Jack K. Clapper
                                        Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury

26

*EXHIBIT* D

1   Jack K. Clapper, (State Bar No. 83207)
    John P. Mason, (State Bar No. 193949)
2   Clapper, Patti, Schweizer & Mason
    2330 Marinship Way, Suite 140
3   Sausalito, CA 94965
    Telephone: (415) 332-4262
4   Facsimile: (415) 331-5387

5   Attorney for Plaintiffs

6

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8        CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

9

10

11  FRANKLIN HAM and              )   Case No. CGC-06-455063
    DANA HAM,                     )
12                                )   AMENDMENT TO COMPLAINT
              Plaintiffs,         )   SUBSTITUTING TRUE NAMES
13                                )   FOR FICTITIOUS NAMES
         v.                       )
14                                )
    ACCO-AIR CONDITIONING COMPANY,)
15  INC., et al.                  )
                                  )
16            Defendants.         )

17

18        On filing the complaint herein, plaintiffs were ignorant of the true names of certain

19  defendants and designated such defendants in the complaint by fictitious name Eleventh Doe.

20  Plaintiffs, having discovered the true name of Eleventh Doe to be Ecklund Insulation, Inc. hereby

21  amends their complaint by inserting such true name in the place and stead of the fictitious name

22  wherever it appears in the complaint.

23        Ecklund Insulation, Inc. as Eleventh Doe.

24  Dated: August 28, 2006.

25                                      Clapper, Patti, Schweizer & Mason

26
                                        By: _____
27                                           John P. Mason
                                             Attorney for Plaintiffs
28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

AMENDMENT TO COMPLAINT SUBSTITUTING TRUE NAMES FOR FICTITIOUS NAMES

EXHIBIT E

1   Steven J. Patti, (State Bar No. 163773)
    Clapper, Patti, Schweizer & Mason
2   Marina Office Plaza
    2330 Marinship Way, Suite 140
3   Sausalito, CA 94965
    Telephone: (415) 332-4262
4   Facsimile: (415) 331-5387

5   Attorney for Plaintiffs

6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9     CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11   FRANKLIN HAM and DANA HAM,    )   Case No. 455063
                                 )
12       Plaintiffs,             )   NOTICE OF ENTRY OF DEFAULT
                                 )   JUDGMENT AGAINST ECKLUND
13   v.                       )   INSULATION, INC.
                                 )
14   ACCO-AIR CONDITIONING COMPANY, et  )
    al.,                       )
15                                  )
      Defendant.             )
16                                  )

17     TO DEFENDANT ECKLUND INSULATION, INC.:

18       NOTICE IS HEREBY GIVEN that on June 28, 2007, judgment was entered in the above-

19 entitled action by the Honorable Charlotte W. Woolard, Judge of the Superior Court.

20       A true and correct copy of the Default Judgment Against Ecklund Insulation, Inc. entered in

21 the above-captioned action on June 28, 2007, by the Honorable Charlotte W. Woolard, is attached

22 hereto as Exhibit "A".

23 Dated: June 28, 2007.

24                             CLAPPER, PATTI, SCHWEIZER& MASON

25

26                  By:

27                      Steven J. Patti
                     Attorney for Plaintiffs

28

1  Steven J. Patti, (State Bar No. 163773)
   Clapper, Patti, Schweizer & Mason
2  Marina Office Plaza
   2330 Marinship Way, Suite 140
3  Sausalito, CA 94965
   Telephone: (415) 332-4262
4  Facsimile: (415) 331-5387

5  Attorney for Plaintiffs

6

7

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

JUN 2 8 2007

GORDON _____, Clerk
BY: _____ANNA PEDIGONDA_____
Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9      CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,          )  Case No. 455063
                                        )
12          Plaintiffs,                 )  DEFAULT JUDGMENT AGAINST
                                        )  ECKLUND INSULATION, INC.
13  v.                                  )
                                        )
14  ACCO-AIR CONDITIONING COMPANY, et   )
    al.,                                )
15                                      )
                                        )
16          Defendant.                  )

17      This action came on for a default prove-up hearing pursuant to California Code of Civil

18  Procedure Section 585 on June 28, 2006 in Department 502 of the above-entitled court, the

19  Honorable Charlotte W. Woolard presiding.  Plaintiffs Franklin Ham and Dana Ham were

20  represented by their attorney of record, Steven J. Patti.  Documentary evidence, recorded testimony

21  and affidavits were proffered and admitted.  After considering the documentary evidence, recorded

22  testimony, affidavits and arguments of counsel, the Court finds that a prima facie case of liability for

23  the supply of a defective asbestos-containing product and for negligence has been made against

24  defendant Ecklund Insulation, Inc., sued herein as "DOE XI," and that such conduct was a

25  substantial factor in causing plaintiffs' injuries and damages.

26      NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment be

27  entered in favor of plaintiffs Franklin Ham in the amount of $ 671,000ºº economic

28  damages and $ 1,300,000ºº non-economic damages, and in favor of Dana Ham in the

EXHIBIT A

1    amount of $ _700,000.00_ non-economic damages, for a total judgment to plaintiffs

2    of $ _2,671,000.00_ . This judgment is subject to the addition of costs and

3    interest in an amount to be later determined by the Court.

4    Dated: _June 28, 2007_

5                                        The Honorable Charlotte W. Woolard
                                        Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

I declare that I am employed in the County of Marin, California; I am over the age of eighteen years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140, Sausalito, California  94965.

On June 28, 2007, I served the attached: Notice of Entry of Default Judgment Against Ecklund Insulation, Inc. in said action,

<u>XXX</u>

By placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Sausalito, California addressed as

ECKLUND INSULATION, INC.
Jerry D. Ecklund
141 E. Olympic Ct
Allyn, WA  98524

Richard J. Solski
Law Department
Environmental & Mass Tort Claims
CNA Plaza - 19 South
333 S. Wabash
Chicago, IL 60685

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 28, 2007 at Sausalito, California.

Lenette Lew

*EXHIBIT* F

## COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS

THIS COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS ("Agreement") is entered into effective as of the 24th day of October, 2007, by and between FRANKLIN HAM and DANA HAM (hereinafter collectively referred to as "HAM") on the one hand, and ECKLUND INSULATION, INC. (hereinafter referred to as "ECKLUND") on the other hand (HAM and ECKLUND shall sometimes collectively be referred to herein as the "Parties" and separately as a "Party"), and is based upon the following facts:

### RECITALS

A.    On August 11, 2006, HAM filed a complaint for personal injuries and loss of consortium, alleging that Mr. Ham sustained injuries as a result of his occupational exposure to asbestos. HAM named several defendants, including DOE defendants, in the complaint.

B.    On August 29, 2006, HAM filed an amendment to the complaint substituting the true name of ECKLUND for the Eleventh DOE. The complaint alleges that ECKLUND sold asbestos-containing products and performed work as a contractor that exposed Mr. Ham to asbestos dust. Along with the summons and complaint, HAM served ECKLUND with a Statement of Damages, which specified that HAM sought compensatory damages totaling Eighteen Million Five Hundred Thousand Dollars ($18,500,000).

C.    ECKLUND tendered defense to CNA Insurance Companies. However, as no responsive pleading was filed on behalf of ECKLUND, HAM obtained a default against ECKLUND on November 30, 2006. After a default prove-up hearing on June 28, 2006, the Court entered a default judgment against ECKLUND on June 28, 2007 in favor of Franklin Ham in the amount of Six Hundred Seventy One Thousand Dollars ($671,000) economic damages and One Million Three Hundred Thousand Dollars ($1,300,000) non-economic damages and for Dana Ham in the amount of Seven Hundred Thousand Dollars ($700,000) non-economic damages, for a total of Two Million Six Hundred Seventy One Thousand Dollars ($2,671,000). The Court further ordered that the judgment was subject to the addition of costs and interest in an amount to be later determined by the Court. The damages, costs and interests are hereinafter collectively referred to as the "JUDGMENT."

D.    The Parties now desire to resolve and settle all disputes between them.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    **Assignment of Claims**. By execution of this Agreement, ECKLUND irrevocably

1

assigns, conveys, sells, grants and transfers to HAM any and all of ECKLUND'S rights, benefits and remedies, as well as any and all causes of action that ECKLUND might have or might have had against CNA Insurance Companies arising out of HAM's personal injury action, claims and JUDGMENT obtained against ECKLUND, and arising out of ECKLUND'S tender of defense thereof, including but not limited to, breach of the implied covenant of good faith and fair dealing, breach of the duty to defend, breach of the duty to settle and bad faith causes of action. ECKLUND further irrevocably assigns, conveys, sells, grants and transfers to HAM the right to prosecute such causes of action in HAM's name and to settle or otherwise resolve such causes of action as HAM sees fit, in HAM's sole and absolute discretion.

2.    **Covenant Not to Execute**. In exchange for and in consideration of ECKLUND'S agreement to assign claims as set forth in paragraph 1 above, HAM agrees that it will refrain from executing or garnishing on the JUDGMENT against ECKLUND or its principals, officers, affiliates, agents, heirs, successors in interest and predecessors in interest.

3.    **Representations and Warranties**. Each Party hereby agrees, represents and warrants to and for the benefit of the other Party as follows:

(a)    Each Party has read this Agreement and knows and understands its contents fully. Each voluntarily executes this Agreement and without being pressured or influenced by any statement or representation of any person, acting on behalf of any other Party, including any other Party's officers, directors, employees agents and attorneys.

(b)    Each Party has full power and authority to enter into this Agreement and to consummate the transactions described or contemplated herein.

4.    **Enforceability and Continuing Jurisdiction**. Notwithstanding the provisions of California Evidence Code Section 1152, this Agreement shall be admissible to enforce its terms and the Parties hereby stipulate and agree that the Superior Court of San Francisco shall have jurisdiction to enforce the terms and conditions of this settlement pursuant to Code of Civil Procedure Section 664.6 and to enter judgment pursuant to this Agreement.

5.    **No Presumption Against Preparer of Agreement**. The Parties hereby acknowledge and agree that each of the Parties have contributed to the drafting of this Agreement, and no provision hereof shall be construed against any Party as being the drafter hereof. This Agreement shall therefore be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted.

6.    **Invalid Provisions**. If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future laws, such provision shall be fully severable, and the remaining provisions shall constitute the parties' agreement and shall be enforced to the greatest extent permitted by applicable law.

2

7. **Cooperation**. Each Party hereto agrees to execute all documents and instruments and to take all actions as may be necessary to implement the Parties' intentions underlying, and the terms of, this Agreement.

8. **Amendment**. This Agreement may be amended, modified or terminated only by a written instrument executed by all Parties to this Agreement.

9. **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

10. **Entire Agreement**. This Agreement represents the entire agreement between the Parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous discussions, agreements and/or representations of or between the Parties hereto regarding the subject matter hereof.

11. **Counterparts Execution**. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the Parties hereby enter into this Agreement the day and year first above written.

Dated: October 24, 2007

ECKLUND INSULATION, INC.

By: _____

Its: PRESIDENT

Dated: October 5, 2007

By: _____
    FRANKLIN HAM

Dated: October ____ 2007

11/5/2007

By: _____
    DANA HAM

3

1   *Ham v. The Continental Insurance Company, est al.*

2   United States District Court, Northern District of California, Action No. _____

3                                  PROOF OF SERVICE

4           I declare that I am employed in the County of San Francisco, State of
    California.  I am over the age of eighteen years and not a party to the within cause; my
5   business address is 44 Montgomery Street, Suite 400, San Francisco, CA  94104.  On
    March 20, 2008, I served the enclosed:

6   **DEFENDANT THE CONTINENTAL INSURANCE COMPANY'S NOTICE OF REMOVAL**

7   **DECLARATION OF RAYMOND J. TITTMANN IN SUPPORT OF DEFENDANT THE
    CONTINENTAL INSURANCE COMPANY'S NOTICE OF REMOVAL**

8

9   on the following interested party(s) in said cause.

10

11  Jack K. Clapper                        Franklin Ham and Dana Ham
    Steven J. Patti
12  Christine A. Renken
    Clapper, Patti, Schweizer & Mason
13  Marina Office Plaza
    2330 Marinship Way, Suite 140
14  Sausalito, CA 94965
    Telephone: (415) 332-4262
15  Facsimile: (415) 331-5387

16  **VIA MAIL**

17  ☒   By enclosing a true and correct copy thereof in a sealed envelope and, following
        ordinary business practices, said envelope was placed for mailing and collection in
18      the offices of Carroll, Burdick & McDonough LLP in the appropriate place for mail
        collected for deposit with the United States Postal Service.  I am readily familiar
19      with the Firm's practice for collection and processing of correspondence/
        documents for mailing with the United States Postal Service and that said
20      correspondence/documents are deposited with the United States Postal Service in
        the ordinary course of business on this same day.

21  **VIA HAND DELIVERY**

22  ☐   By enclosing a true and correct copy thereof in a sealed envelope(s), addressed as
        above, and causing each envelope(s) to be hand-served on this day by courier
23      service following ordinary business practices.

24          I declare under penalty of perjury that the foregoing is true and correct, and
    that this declaration was executed on March 20, 2008, at San Francisco, California.

25

26

27                                  *Connie Fernandes*
                                    Connie Fernandes
28

CBM-IPG\SF397703.1

PROOF OF SERVICE