1  G. David Godwin, No. 148272
   Raymond J. Tittmann, No. 191298
2  **CARROLL, BURDICK & McDONOUGH** LLP
   Attorneys at Law
3  44 Montgomery Street, Suite 400
   San Francisco, CA  94104
4  Telephone:      415.989.5900
   Facsimile:      415.989.0932
5  Email:        dgodwin@cbmlaw.com
              rtittmann@cbmlaw.com
6
   Attorneys for Defendant
7  The Continental Insurance Company

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  Franklin Ham and Dana Ham,           No. CV 08 1551 SC

13              Plaintiffs,          **DEFENDANT THE CONTINENTAL
                                     INSURANCE COMPANY'S MOTION TO
14       v.                          STRIKE PLAINTIFFS' CLAIM FOR
                                     PUNITIVE DAMAGES AND TO DISMISS
15  The Continental Insurance Company;   CERTAIN CLAIMS; MEMORANDUM OF
    and Does 1 through 50,             POINTS AND AUTHORITIES IN SUPPORT
16                                    THEREOF
              Defendants.
17                                   **Date:          July 11, 2008
                                     Time:          10:00 a.m.
18                                   Courtroom:      1**

19                                   **Hon. Samuel Conti**

20

21

22

23

24

25

26

27

28
   CBM-IPG\SF405603.3
   ─────────────────────────────────────────────
   **CONTINENTAL'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS**

1

TABLE OF CONTENTS

2

**Page**

3    I.    NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' CLAIM FOR
      PUNITIVE DAMAGES AND TO DISMISS CERTAIN CLAIMS ........................................... 1

4

5    II.    MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 3

      A.    Statement of Issues To Be Decided [Pursuant to Civil L.R. 7-4(3) ] ................ 3

6

7    B.    Factual and Procedural Background ................................................................. 5

      C.    Legal Analysis ................................................................................................. 6

8

9          1.    The Court Should Strike Plaintiffs' Claims for Punitive Damages
                Because California Does Not Allow Assignment of Punitive
                Damages ................................................................................................. 6

10

11         2.    The Court Should Strike Plaintiffs' Conspiracy Claim Because It Is
                Conclusory ............................................................................................. 8

12

13         3.    The Court Should Dismiss Plaintiffs' Third Cause of Action for
                Breach of Duty To Settle Because Plaintiffs Do Not Allege an
                Actual Pre-Judgment Settlement Demand Within Limits ....................... 9

14

15         4.    The Court Should Dismiss Plaintiffs' Fourth Cause of Action for
                Breach of Nevada's Claims Practices Statute Because the Statute Is
                Expressly Limited to Practices in Nevada ............................................. 12

16

17         5.    The Court Should Dismiss Plaintiffs' Seventh Cause of Action "by
                Third Party Tort Claimant" Because Neither California Nor Nevada
                Law Allow Such Direct Actions ............................................................. 14

18   III.    CONCLUSION ................................................................................................................ 14

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Archdale v. American International Spec. Lines Insur. Co.*,
  154 Cal. App. 4th 449 (2007) ................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
  __ U.S. __ , 127 S.Ct. 1955 (2007) .................................................. 1, 3, 8

*Bureerong v. Uvawas*,
  922 F.Supp. 1450 (C.D. Cal. 1996) ...................................................... 7

*Comunale v. Traders & Gen. Insur. Co.*,
  50 Cal. 2d 654 (1958) .................................................................. 10, 11

*Darden v. Secure Horizons*,
  Case No. 06-15133, 2007 WL 2461833, *1 (9th Cir. Aug. 22, 2007) ...................... 9

*Denham v. Farmers Insur. Co.*,
  213 Cal. App. 3d 1061 (1989) ........................................................... 13

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ............................................................ 1

*Fireman's Fund Insur. Co. v. National Bank for Cooperatives*,
  Case No. 92-2667, 1993 WL 341274, *12 (N.D. Cal. Aug. 27, 1993) ...................... 6

*Frontier Oil Corp. v. RLI Insur. Co.*,
  153 Cal. App. 4th 1436 (2007) .......................................................... 13

*Gunny v. Allstate Ins. Co.*,
  830 P.2d 1335 (Nev. 1992) ........................................................... 2, 5, 14

*Hall v. Enterprise Leasing Co.-West*,
  137 P.3d 1104 (Nev. 2006) ............................................................. 14

*Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*,
  Case No. 06-56024, 2008 WL 731050, *1 (9th Cir. Mar. 17, 2008) ................... 1, 3, 8

*Jackson v. Rogers & Wells*,
  210 Cal. App. 3d 336 (1989) ............................................................. 7

*Loubser v. Thacker*,
  440 F.3d 439 (7th Cir. 2006) ............................................................ 9

*McLoughlin v. National Union Fire Insur.*,
  23 Cal. App. 4th 1132 (1994) ...................................................... 2, 4, 10

*Moradi-Shalal v. Fireman's Fund Ins. Cos.*,
  46 Cal. 3d 287 (1988) ................................................................. 14

TABLE OF AUTHORITIES
(continued)

Page(s)

*Murphy v. Allstate Ins. Co.*,
  17 Cal. 3d 937 (1976) ..................................................................................... 1, 3, 6, 7

*Mutz v. Wallace*,
  214 Cal. App. 2d 100 (1963) ..................................................................................... 12

*People v. Superior Court*,
  9 Cal. 3d 283 (1973) ..................................................................................................... 7

*Rivera v. Southern Pacific Transp. Co.*,
  217 Cal. App. 3d 294 (1990) ..................................................................................... 13

*Royal Surplus Lines Ins. Co., Inc. v. Ranger Ins. Co.*,
  100 Cal. App. 4th 193 (2002) ............................................................................. 2, 5, 14

*Ryan v. Mary Immaculate Queen Center*,
  188 F.3d 857 (7th Cir. 1999) ....................................................................................... 9

*Tapley v. Lockwood Green Engineers, Inc.*,
  502 F.2d 559 (8th Cir. 1974) ....................................................................................... 7

*Washington Mut. Bank v. Superior Ct.*,
  24 Cal. 4th 906 (2001) ........................................................................................... 1, 13

*Wilkerson v. Butler*,
  229 F.R.D. 166 (E.D. Cal. 2005) ................................................................................. 7

**Statutes**

California Civil Code
  Section 1646........................................................................................................... 13
  Section 790 *et seq*. ................................................................................................. 13

Federal Rule of Civil Procedure
  8(a) ......................................................................................................................... 3, 8
  11 ................................................................................................................................. 8
  12(f) ............................................................................................................................. 7

Federal Rule of Evidence 4(m) ......................................................................................... 9

Nevada Revised Statute
  Section 686A.020 ................................................................................................. 4, 12
  Section 686A.20 ......................................................................................................... 2
  Section 686A.310 ..................................................................................................... 12

**Rules**

Civil Local Rule 7-4(3) ................................................................................................... 3

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

**Treatises**

4

1 Witkin, Summary of Cal. Law, Contracts, § 145 (9th ed. 1987) ................................... 12

5

Hon. H. W. Croskey, et al., California Practice Guide: Insurance Litigation
¶ 15.44 (The Rutter Group 2001) ................................................................................. 14

6

Restatement Second of Contracts, § 33 ........................................................................... 12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CERTAIN CLAIMS

On July 11, 2008 at 10:00 a.m., in the courtroom of the Honorable Samuel Conti, Defendant The Continental Insurance Co. ("Continental") will move and hereby does move to strike and dismiss ("Motion To Strike and Dismiss") as follows:

(1) To strike Plaintiffs Franklin and Dana Ham's ("Plaintiffs") claim for punitive damages because Plaintiffs base their claims on an assignment from Continental's alleged policyholder, Ecklund Insulation, Inc. ("Ecklund Insulation"). Complaint[1] ¶ 27, at 7:23; ¶ 32, at 8:12; ¶ 37, at 8:28; and ¶ 44, at 10:27 (Plaintiffs' allegations seeking punitive damages); ¶ 19, at 6:17 (acknowledging that Plaintiffs are suing as assignees).  California law does not allow assignment of punitive damages. *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976).[2]

(2)  To strike Plaintiffs' conspiracy claim (*see* Complaint ¶ 3, at 2:5-15) because Plaintiffs allege only a conclusory conspiracy claim among "Certain Defendants," without any reference to who, when, where, why, what, or how.  *See Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, Case No. 06-56024, 2008 WL 731050, *1 (9th Cir. Mar. 17, 2008) ("conclusory allegations [of conspiracy] are insufficient even under the notice pleading of Rule 8(a)") (citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __ , 127 S.Ct. 1955, 1964-65 (2007)).

(3)  To dismiss Plaintiffs' Third Cause of Action alleging a breach of duty to settle (*see* Complaint ¶¶ 28-32, at 7:28 – 8:12) because Plaintiffs do not allege that

---

[1] "Complaint" refers to Plaintiffs' Second Amended Complaint, filed April 23, 2008.  The Complaint and all of its exhibits are attached as Exhibit 1 to the Declaration of Raymond J. Tittmann in Support of Continental's Motion To Strike Plaintiffs' Claim for Punitive Damages and Dismiss Certain Claims, filed simultaneously.

[2] As a general matter, Continental will rely on California law for this Motion To Strike and Dismiss because "generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state."  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006 (9th Cir. 2001) (citing *Washington Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001)).  Nothing in this brief waives or should be construed to waive any argument that other law should apply.

1  Continental rejected a settlement demand **before** the judgment was entered in the

2  underlying litigation, a "pivotal element" of the claim.  *McLoughlin v. National Union*

3  *Fire Insur.*, 23 Cal. App. 4th 1132, 1146 (1994).

4      (4)  To dismiss Plaintiffs' Fourth Cause of Action alleging a breach of

5  Nevada's claims practices statute (*see* Complaint ¶¶ 33-37, at 8:13-28) because Nevada's

6  claims practices statute does not apply when the underlying litigation is in California and

7  all conduct at issue occurred outside of Nevada.  *See* N.R.S. § 686A.20 ("A person shall

8  not engage ***in this state*** in any practice which is defined in NRS 686A.010 to 686A.310,

9  inclusive, as, or determined pursuant to NRS 686A.170 to be, an unfair ….").

10      (5)  To dismiss Plaintiffs' Seventh Cause of Action "by Third Party Tort

11  Claimant" (*see* Complaint ¶¶ 50-53, at 11:19 – 12:2) because California law does not

12  allow third-party direct actions by the underlying claimant against insurance companies.

13  *Royal Surplus Lines Ins. Co., Inc. v. Ranger Ins. Co.*, 100 Cal. App. 4th 193, 200 (2002)

14  ("Liability insurance is not a contract for the benefit of the injured party so as to allow it

15  to sue the insurer directly."); *see also Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1335-35

16  (Nev. 1992) (third party claimant "lacks standing to sue because he had no contractual

17  relationship with [insurer]").

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Statement of Issues To Be Decided [Pursuant to Civil L.R. 7-4(3) ]

Continental's Motion To Strike and Dismiss presents the Court with the following issues:

(1) Motion to strike punitive damage claim

- Whether Plaintiffs' Complaint is based on an assignment from the alleged policyholder Ecklund Insulation. *See* Complaint ¶ 19, at 6:17 ("Plaintiffs sue the Defendants as the assignee of the Insured's causes of action. This included the causes of action alleged in this Complaint.").

- Whether California law prohibits the assignment of a claim for punitive damages. *See Murphy*, 17 Cal. 3d at 942 ("[B]ecause a purely personal tort cause of action is not assignable in California, … damage for emotional distress is not assignable. The same is true of a claim for punitive damage.").

(2) Motion to strike Plaintiffs' conspiracy claim

- Whether Plaintiffs' Complaint alleges sufficient facts supporting the existence of a conspiracy, including the parties, purpose of conspiracy, and its approximate dates. *See* Complaint ¶ 3, at 2:5-15 (alleging merely that "Certain Defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Insured.")

- Whether a conclusory allegation of conspiracy is sufficient at the pleading stage under Rule[3] 8(a) . *See Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 2008 WL 731050, *1 ("conclusory allegations [of conspiracy] are insufficient"); *Bell Atlantic Corp.*, __ U.S. __ , 127 S.Ct. at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions").

---

[3] All references to a "Rule" are to the Federal Rules of Civil Procedure.

CONTINENTAL'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS

(3)  Motion to dismiss claim for breach of duty to settle

- Whether, assuming the truth of Plaintiffs' allegations, Continental rejected a *pre*-judgment settlement demand within limits.  *See* Complaint ¶ 14 (judgment was entered *June* 28, 2007), ¶ 15 (Plaintiffs sent settlement letter *December* 26, 2007).

- Whether an actual pre-judgment settlement demand within limits is essential to a claim for excess judgment based on breach of duty to settle.  *See McLoughlin*, 23 Cal. App. 4th at 1146 ("a pivotal element" of a claim for breach of duty to settle is "a settlement offer within policy limits ….").

- Whether Plaintiffs alleged settlement demand for payment of "the Policies' limits" is valid when both the number of alleged policies and the limits of those alleged policies are both unknown.  Complaint ¶¶ 5-6, 15; *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761 (1993) ("Under basic contract law '[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.'").

(4)  Motion to dismiss claim for breach of Nevada's claims practices statute

- Whether the claims practices alleged against Continental in this case occurred in the state of Nevada.  *See* Complaint ¶ 8 (underlying complaint filed in San Francisco), ¶ 10 (insured/underlying defendant served in the state of Washington), ¶ 11 (alleging that the insured, in Washington, tendered defense to Continental, in Chicago; and that Continental, in Chicago, allegedly failed to respond), ¶ 13 (Continental's alleged failure to defend the insured in the San Francisco litigation resulted in default in the San Francisco Superior Court).

- Whether the Nevada claims practices statute governs when none of the acts or failures to act at issue occurred in Nevada.  *See* N.R.S. § 686A.020 ("A person shall not engage ***in this state*** in any practice which is defined in NRS 686A.010 to 686A.310, inclusive, as, or determined pursuant to NRS 686A.170 to be, an . . . unfair or deceptive act or practice in the business of insurance.") (emphasis added).

4

(5)   Motion to dismiss Plaintiffs' claim "by Third Party Tort Claimant"

- Whether direct third-party tort actions by underlying claimants are allowed against insurers in the absence of contractual privity.  *Royal Surplus Lines Ins. Co., Inc. v. Ranger Ins. Co.*, 100 Cal. App. 4th 193, 200 (2002) ("Liability insurance is not a contract for the benefit of the injured party so as to allow it to sue the insurer directly."); *Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1335-35 (Nev. 1992) (third party claimant "lacks standing to sue because he had no contractual relationship with [insurer]").

### B.    Factual and Procedural Background[4]

In August 2006, Plaintiffs Franklin and Dana Ham added Ecklund Insulation to an asbestos personal injury lawsuit titled *Franklin Ham and Dana Ham v. Acco-Air Conditioning Co., et al.*, Case No. 455063 (San Francisco Super Ct., filed Aug. 11, 2006) (the "Underlying Action").  Complaint, Ex. B.  Ecklund Insulation, which is not a party to this Action, is a "defunct" corporation whose corporate charter was revoked over 25 years ago.  Complaint, Ex. D at 2:5-6.  Ecklund Insulation did not answer the complaint in the Underlying Action, and Plaintiffs obtained a default judgment.  Complaint, Ex. D at 2:10-12.

Jerry Ecklund, President of Ecklund Insulation when it still existed, then purportedly assigned Ecklund Insulation's claims under an alleged insurance policy[5] claimed to have been issued over 40 years ago by Continental's predecessor by merger, The Glens Falls Insurance Co.  Complaint ¶ 19, Ex. F.

Pursuant to this alleged assignment, Plaintiffs filed suit against Continental, and served the First Amended Complaint on February 20, 2008.  Continental timely removed the action on March 20, 2008 to this United States District Court, Northern

---

[4] Because this Motion To Strike and Dismiss must assume the facts as pled, this factual background is based on Plaintiffs' allegations in their Complaint, and does not necessarily state Continental's position with respect to any fact.

[5] Plaintiffs have not presented a copy of the alleged insurance policy; an unauthenticated "Certificate of Insurance" from a third party is the sole evidence.  Complaint ¶ 11, Ex. A.

1  District of California.  Continental filed a motion to strike Plaintiffs' claim of punitive

2  damages on March 27, 2008.  At Plaintiffs' request, Continental agreed to withdraw its

3  motion to strike and permit Plaintiffs to file an amended complaint.  Stipulation and Order

4  Allowing Plaintiffs To File Second Amended Complaint, filed Apr. 17, 2008.  Plaintiffs

5  filed their Second Amended Complaint on April 23, 2008, alleging several new causes of

6  action.  Continental therefore brings the present Motion To Dismiss and Strike (a)

7  renewing its request to strike the punitive damage claims, and (b) asking for dismissal of

8  several of the newly added claims.

9      Plaintiffs' Second Amended Complaint, like the First Amended Complaint, is

10  premised entirely on the claimed assignment from Ecklund Insulation:  "Plaintiffs sue the

11  Defendants as the assignee of the Insured's causes of action.  This included the causes of

12  action alleged in this Complaint."  Complaint ¶ 19.

13      **C.   Legal Analysis**

14      **1.   The Court Should Strike Plaintiffs' Claims for Punitive
          Damages Because California Does Not Allow Assignment**

15      **of Punitive Damages**

16      Continental's motion to strike seeks simply to enforce a well-established

17  doctrine in California that a claim for punitive damages cannot be assigned:

18      [B]ecause a purely personal tort cause of action is not assignable in
        California, … damage for emotional distress is not assignable.  The

19      same is true of a claim for punitive damage.

20  *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976) (citations omitted).

21      More recently, California acknowledged this rule in the insurance context:

22      [The policyholder] could not, as a matter of law, have assigned to
        the [claimants/plaintiffs] any claim for … punitive damages ….

23      These are 'purely personal' claims and are not assignable.

24  *Archdale v. American International Spec. Lines Insur. Co.*, 154 Cal. App. 4th 449, 460

25  n.10 (2007) (Croskey, J.).

26      Finally, this Court has also applied the doctrine to strike a punitive damage

27  claim against an insurance company.  *Fireman's Fund Insur. Co. v. National Bank for*

28  *Cooperatives*, Case No. 92-2667, 1993 WL 341274, *12 (N.D. Cal. Aug. 27, 1993)

1  (Caufield, J.) ("as this court has already held, claims for punitive damages are not

2  assignable in California").

3         "No further discussion of this point is necessary." *Jackson v. Rogers & Wells*,

4  210 Cal. App. 3d 336, 349 (1989) (summarily affirming order striking a claim for punitive

5  damages *without* leave to amend in light of the established California Supreme Court

6  authority) (citing *People v. Superior Court*, 9 Cal. 3d 283, 287 (1973) and *Murphy*).

7         Here, Plaintiffs readily admit that their claims are based on the assignment

8  from the alleged policyholder, Ecklund Insulation: "Plaintiffs sue the Defendants as the

9  assignee of the Insured's causes of action. This included the causes of action alleged in

10  this Complaint." Complaint ¶ 19. The assignment also provides that it "shall be governed

11  by and interpreted in accordance with the laws of the State of California." Complaint,

12  Ex. F, ¶ 9. Consequently, that assignment could not, by law, include any claim for

13  punitive damages.

14        Plaintiffs' claims for punitive damages are therefore "redundant, immaterial,

15  impertinent or scandalous matter" within the meaning of Rule 12(f). *See Tapley v.*

16  *Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir. 1974) (striking prayer for

17  damages in wrongful death action because it exceeded maximum permitted by statute);

18  *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 n.34 (C.D. Cal. 1996) (striking claim for

19  punitive damages because "a motion to strike may be used to strike any part of the prayer

20  for relief when the damages sought are not recoverable as a matter of law"). "A motion to

21  strike is appropriate to address requested relief, such as punitive damages, which is not

22  recoverable as a matter of law." *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal.

23  2005) (striking claim for punitive damages).

24        Plaintiffs cannot recover punitive damages as a matter of law and those claims

25  should therefore be stricken. Moreover, the Court should strike that claim *without* leave

26  to amend, as the Court did in *Jackson v. Rogers & Wells*, 210 Cal. 3d at 349.

27  Plaintiffs have already acknowledged by pleading that their suit is based on an assignment

28

1    from the alleged policyholder, and any allegation to the contrary would not comply with

2    Rule 11.

3          Continental therefore asks the Court to strike Plaintiffs' claims for punitive

4    damages (Complaint ¶ 27, at 7:23; ¶ 32, at 8:12; ¶ 37, at 8:28; and ¶ 44, at 10:27) without

5    leave to amend.

6          **2.     The Court Should Strike Plaintiffs' Conspiracy Claim
                    Because It Is Conclusory**
7
          Plaintiffs' Complaint makes a bare conspiracy claim that is conclusory in the
8
     extreme:
9
> Certain Defendants agreed and conspired among themselves, and
10 > with certain other individuals and/or entities, to act, or not to act, in
   > such a manner that resulted in injury to the Insured; and such
11 > Defendants, as co-conspirators, are liable for the acts, or failures to
   > act, of the other conspiring Defendants.

12   Complaint ¶ 3, at 2:8-11.  Plaintiffs allege no names, dates, terms of the agreement,

13   specification of injury or damage, description of the acts in furtherance, etc.  Nothing but

14   a vague conclusion.

15          This allegation is plainly insufficient to allege a civil conspiracy because it

16   does not give Continental any notice at all of the basis, as required by Rule 8(a).

17          In *Impac Warehouse Lend. Gr.*, the Ninth Circuit affirmed dismissal of a

18   similarly vague conspiracy claim: "that defendants 'knowingly, and willfully agreed and

19   conspired' to engage in fraudulent conduct."  2008 WL 731050, *1.  The allegation was

20   insufficient:

21 > [It] provides no facts supporting the existence of a[ conspiratorial]
   > agreement … Such conclusory allegations are insufficient even
22 > under the notice pleading of Rule 8(a) …

23   *Id.*  The Ninth Circuit also quoted the Supreme Court's recent ruling in *Bell Atlantic*:

24 > A plaintiff's obligation to provide the 'grounds' of his 'entitlement
   > to relief' requires more than labels and conclusions, and a formulaic
25 > recitation of the elements of a cause of action will not do.

26   *Bell Atlantic*, __ U.S. __, 127 S. Ct. at 1964-65.

27          Plaintiffs' formulaic conspiracy claim likewise "will not do."  It provides no

28   information whatsoever regarding the who, what, when, where, why, or how of any

1    supposed conspiracy.  *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006)

2    (plaintiffs required "to allege the parties, the general purpose, and the approximate date of

3    the conspiracy").[6]

4          Plaintiffs' conspiracy claim should also be stricken because the alleged

5    "conspiracy" is among unnamed "Certain Defendants."  Not only does it fail to name the

6    members of the alleged conspiracy, it of necessity must include unserved "Doe"

7    defendants since there is only one named defendant (Continental).  The Federal Rules do

8    not allow for "Doe" defendants because all parties must be served within 120 days under

9    Rule 4(m).  The Ninth Circuit affirmed dismissal of a conspiracy claim precisely because

10   of the improper inclusion of "Doe" defendants in *Garter-Bare Co. v. Munsingwear, Inc.*,

11   650 F.2d 975, 981 (9th Cir. 1980): "Their inclusion destroys that jurisdiction and the

12   claim was properly dismissed, if only for this reason."

13         Plaintiffs' conspiracy claim and the "Doe" defendants should be stricken.

14         **3.    The Court Should Dismiss Plaintiffs' Third Cause of
            Action for Breach of Duty To Settle Because Plaintiffs Do
15          Not Allege an Actual Pre-Judgment Settlement Demand
            Within Limits**

16         Plaintiffs' Third Cause of Action fails because the wrongful conduct alleged

17   post-dates the damage it is alleged to have caused.  In the absence of time travel, it is

18   impossible for later events to proximately cause earlier events.

19         Plaintiffs' Third Cause of Action alleges that Continental failed to settle the

20   Underlying Action within policy limits, and ***as a proximate result*** Ecklund Insulation

21   became liable to Plaintiffs in the amount of $2,671,000.  Complaint ¶ 30.  Obviously the

22   alleged failure to settle within policy limits had to occur ***before*** the liability was set if the

23   former is to be a proximate cause of the latter.

24

25   [6] *See also Darden v. Secure Horizons*, Case No. 06-15133, 2007 WL 2461833, *1 (9th
     Cir. Aug. 22, 2007) (affirming dismissal of "conclusory allegations of conspiracy"); *Ryan
26   v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999) (dismissing
     conspiracy claim because "notice implies some description of the defendant's
27   complained-of conduct"; "the court [should] determine at the outset of the litigation,
     before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis
28   of suit").

CONTINENTAL'S MOTION TO STRIKE  PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS

To the contrary, however, Plaintiffs allege a settlement demand only *after* the liability was set.  Complaint ¶ 14 (judgment was entered **June** 28, 2007), ¶ 15 (the only settlement opportunity alleged is in a letter dated **December** 26, 2007).  Plaintiffs' Third Cause of Action therefore fails as a simple matter of chronology.

It also fails as a matter of California law.  California permits policyholders to seek judgments in excess of policy limits when the excess judgment is caused by an earlier failure to settle.  The tendered insurer must have (1) "refus[ed] to accept an offer within the policy limits" (2) resulting "in a judgment against the insured in excess of those limits":

> A breach which prevents the making of an advantageous settlement when there is a great risk of liability in excess of the policy limits will, in the ordinary course of things, result in a judgment against the insured in excess of those limits.  Section 3300 of the Civil Code provides that the measure of damages for a breach of contract is the amount which will compensate the aggrieved for all the detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result fom it.

*Comunale v. Traders & Gen. Insur. Co.*, 50 Cal. 2d 654, 660-61 (1958).

For purposes of the present motion, two points in *Comunale* are significant.  *First*, there must be an *actual* offer of settlement to trigger this theory, as the California Supreme Court explained in *Comunale*:

> The *decisive factor* in fixing the extent of [the insurer's] liability is not the refusal to defend; it is **the refusal to accept an offer of settlement within the policy limits**.  Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs.

*Comunale*, 50 Cal. 2d at 659 (emphasis added).  Thus, a "pivotal element" in any claim for breach of duty to settle under California law is "a settlement offer within policy limits."  *McLoughlin v. National Union Fire Insur.*, 23 Cal. App. 4th 1132, 1146 (1994).

Here, the only settlement demand that Plaintiffs allege occurred *after* the judgment, which raises the *second* point in *Comunale* that is significant to this discussion: not only must the insurer reject an actual settlement demand within limits, the rejection must "result in a judgment against the insured in excess of those limits."  *Comunale*, 50

10

Cal. 2d at 660-61. The theory in *Comunale* is that if an insurer tortiously breaches a duty to settle a claim below limits, the insurer is responsible for the consequential damages, i.e., a subsequent foreseeable judgment in excess of limits. The Court in *Comunale* explained that allowing the policyholder to recover the excess judgment "will not give the insured any additional advantage but merely place him in the same position as if the contract had been performed." *Id.* at 661.

But Continental's alleged failure to respond to the December 2007 settlement demand obviously could not have been a cause of the earlier judgment. Consequently the claim fails to allege rejection of an ***actual*** settlement offer within limits ***pre***-judgment, and therefore fails as a matter of California law and basic logic.

Even if Plaintiffs were to argue that Nevada law governs, they fare no better. Though Nevada law does not apply, it also has not recognized a cause of action for breach of the duty to settle in such a way that the policyholder may recover an excess judgment that disregards the policy limits.

The alleged December 26, 2007, demand is also void for vagueness because, according to the Complaint, it demands a settlement of "the Policies' limits." Complaint ¶ 15. The Complaint alleges one policy with a $100,000 per person limit, and unknown additional policies on information and belief "for multiple years after 1966" with limits "the same or more" than the alleged $100,000 policy. Complaint ¶¶ 5-6. Regardless of whether Continental could agree with Plaintiffs' understanding of the phrase "the Policies' limits," Plaintiffs do not even know themselves what that phrase means. Obviously limits cannot be converted to a specific dollar amount if the number of policies and the limits are both unknown.

Plaintiffs did not make a valid (or serious) settlement demand and their attempt to set up this cause of action simply fails. "Under basic contract law '[a]n offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.'" *Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761 (1993) (citing 1 Witkin, Summary of Cal. Law, Contracts, § 145, p. 169

1   (9th ed. 1987) , Rest.2d Contracts, § 33; *Mutz v. Wallace,* 214 Cal. App. 2d 100, 109

2   (1963) , among other cases).

3           For this multitude of reasons, Plaintiffs' Third Cause of Action must be

4   dismissed.

5           **4.     The Court Should Dismiss Plaintiffs' Fourth Cause of**

                **Action for Breach of Nevada's Claims Practices Statute**

6                   **Because the Statute Is Expressly Limited to Practices** *in*

                ***Nevada***

7

8           Plaintiffs' Fourth Cause of Action alleges a breach of the statutory duties in

9   Section 686A.310 of the Nevada Revised Statutes.  This cause of action fails for two

10   simple reasons.  First, the Nevada statute is expressly limited to claims practices in

11   Nevada:

12            A person shall not engage ***in this state*** in any practice which is

         defined in NRS 686A.010 to 686A.310, inclusive, as, or determined

13            pursuant to NRS 686A.170 to be, . . an unfair or deceptive act or

         practice in the business of insurance.

14   N.R.S. § 686A.020 (emphasis added).

15

16           Here, none of the conduct complained of transpired in Nevada.  Plaintiffs sued

     Ecklund Insulation *in California*, and they contend that Continental should have defended

17   that suit *in California*.  *See* Complaint ¶ 8 (underlying litigation was in San Francisco);

18   ¶ 13 (alleging that Continental's failure to defend the insured in the San Francisco

19   litigation resulted in a default judgment in San Francisco).

20           The claims handling involved communications among the states of Illinois

21   (Continental), Washington (Mr. Ecklund), and California (Plaintiffs' counsel).

22   Complaint, ¶ 10 (the insured-defendant was served in the underlying litigation where the

23   former President resides, in the state of Washington), ¶ 11 (alleging that the insured, in

24   Washington, tendered defense to Continental, in Chicago; Continental, in Chicago,

25   allegedly failed to respond).  The Nevada statute – governing claims practices only "in

26   this state," i.e. Nevada – does not govern claims practices entirely out of the state.

27

28

CONTINENTAL'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS

Second, the Nevada statute does not apply under a choice-of-law analysis either.  California resolves choice of law issues under the governmental interest test.  *See Washington Mut. Bank*, 24 Cal. 4th at 919-20 (describing the governmental interest test).[7] The first step in application of the governmental interest test is to "identify the applicable rule of law in each potentially concerned state and show it materially differs from the law of California."  *Washington Mut. Bank*, 24 Cal. 4th at 919-20.  Here, Plaintiffs have not shown that the Nevada claims practices statute "materially differs" from the California claims practices statute in Insurance Code section 790 *et seq*.  And because they have not established a conflict between the statutes, the Court should apply the statute of the forum state, California.  *See Rivera v. Southern Pacific Transp. Co.*, 217 Cal. App. 3d 294, 298 (1990) (finding no conflict because a California statute and Arizona common law were "reasonably identical").

Nevada also has no "legitimate interest" in imposing its regulatory scheme on claims handling communications that transpired between an Illinois corporation, an insured in Washington state, and attorneys in California, with respect to underlying litigation in California.  *See Denham v. Farmers Insur. Co.*, 213 Cal. App. 3d 1061, 1066 (1989) (a state cannot have any "legitimate interest" in regulating insurers' conduct out of the state; any such alleged interest is "irrelevant" to the choice-of-law analysis).

Plaintiffs also have no interest in imposing Nevada's regulations in this circumstance.  After suing on an assignment that Plaintiffs dictated should be governed by California law, Plaintiffs are simply trying to cherry-pick Nevada law to escape an aspect of California law they do not like.  California does not allow a private right of action under the claims practices statute: "Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer." *Moradi-Shalal v.*

---

[7] A recent decision from the California Court of Appeal ruled that Civil Code section 1646, rather than the governmental interest test, governs the choice-of-law analysis for policy interpretation issues.  *Frontier Oil Corp. v. RLI Insur. Co.*, 153 Cal. App. 4th 1436, 1442-43 (2007).  But section 1646 does not govern the choice-of-law analysis for coverage issues that do not interpret the insurance policy.

1  *Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 304 (1988).  Allowing Plaintiffs to impose

2  Nevada's regulatory scheme here would create regulatory chaos for policyholders and

3  insurers alike.

4  　　　Both under a plain interpretation of the statue and under a choice-of-law

5  analysis, Plaintiffs' Fourth Cause of Action, for violation of Nevada's claims practices

6  statute, should be dismissed with prejudice.

7  　　　**5.  The Court Should Dismiss Plaintiffs' Seventh Cause of
        Action "by Third Party Tort Claimant" Because Neither**
8  　　　**California Nor Nevada Law Allow Such Direct Actions**

9  　　　Plaintiffs' Seventh Cause of Action alleges a direct third party tort action

10  against Continental, but California law prohibits such actions because there is no privity.

11  As the California Court of Appeal explained:  "Liability insurance is not a contract for the

12  benefit of the injured party so as to allow it to sue the insurer directly."  *Royal Surplus*

13  *Lines Ins. Co., Inc. v. Ranger Ins. Co.*, 100 Cal. App. 4th 193, 200 (2002) (citing Hon. H.

14  W. Croskey, et al., California Practice Guide: Insurance Litigation ¶ 15.44 (The Rutter

15  Group 2001) – the issue is addressed in ¶ 15.6 of the 2007 edition).

16  　　　In their Complaint, Plaintiffs mistakenly cite *Hall v. Enterprise Leasing Co.-*

17  *West*, 137 P.3d 1104, 1109 (Nev. 2006) to support this cause of action, but *Hall* merely

18  construes a statute limited to automobile rentals.  It has no application here.  The Nevada

19  Supreme Court has, like California, ruled that a third party claimant "lacks standing to sue

20  because he had no contractual relationship with [the insurer]."  *Gunny v. Allstate Ins. Co.*,

21  830 P.2d 1335, 1335-36 (Nev. 1992).

22  　　　The Seventh Cause of Action should be dismissed without leave to amend.

23  **III.  CONCLUSION**

24  　　　Continental respectfully asks the Court to strike Plaintiffs' punitive damages

25  and conspiracy claims, and dismiss the Third, Fourth, and Seventh Causes of Action.

26

27

28

**CONTINENTAL'S MOTION TO STRIKE  PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS**

1

Dated:  May __, 2008

2

CARROLL, BURDICK & McDONOUGH LLP

3

4

By _____/S/_____

5

G. David Godwin
Raymond J. Tittmann

6

Attorneys for Defendant
The Continental Insurance Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONTINENTAL'S MOTION TO STRIKE  PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CLAIMS

1  G. David Godwin, No. 148272
   Raymond J. Tittmann, No. 191298
2  **CARROLL, BURDICK & McDONOUGH LLP**
   Attorneys at Law
3  44 Montgomery Street, Suite 400
   San Francisco, CA  94104
4  Telephone:     415.989.5900
   Facsimile:      415.989.0932
5  Email:          dgodwin@cbmlaw.com

6  Attorneys for Defendant
   The Continental Insurance Company
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  Franklin Ham and Dana Ham,          No. CV 08 1551 SC

13              Plaintiffs,             **[PROPOSED] ORDER GRANTING
                                        DEFENDANT THE CONTINENTAL
14       v.                             INSURANCE COMPANY'S MOTION
                                        TO STRIKE AND DISMISS CERTAIN
15  The Continental Insurance Company;  CLAIMS**
    and Does 1 through 50,
16                                      **Date:          July 11, 2008**
                Defendants.            **Time:          10:00 a.m.**
17                                      **Courtroom:  1**

18                                      **Honorable Samuel Conti**

19
            Defendant The Continental Insurance Company's ("Continental") motion to
20
    strike Plaintiffs Franklin and Dana Ham's ("Plaintiffs") punitive damages and conspiracy
21
    claims, and to dismiss Plaintiffs' Third, Fourth, and Seventh causes of action, came on for
22
    hearing by the Court on July 11, 2008.  All parties appeared and were represented by their
23
    counsel of record.
24
            Upon consideration of all evidence and authorities presented by the parties, and
25
    good cause appearing,
26
            IT IS ORDERED:
27

28
    CBM-IPG\SF398819.1

    **[PRPOSED] ORDER GRANTING DEF. CONTINENTAL'S MOT. TO STRIKE AND DISMISS CERTAIN CLAIMS**

1    The Court grants Continental's motions as follows:

2    (1) <u>Motion To Strike Plaintiffs' Punitive Damage Claim</u>

3    Plaintiffs seek punitive damages in their Complaint[1] against Continental.  *See*

4    Complaint ¶ 27, at 7:23; ¶ 32, at 8:12; ¶ 37, at 8:28; and ¶ 44, at 10:27.

5    Plaintiffs' Complaint is based on an assignment from the alleged policyholder

6    Ecklund Insulation, Inc.   *See* Complaint ¶ 19, at 6:17 ("Plaintiffs sue the Defendants as

7    the assignee of the Insured's causes of action.  This included the causes of action alleged

8    in this Complaint.").

9    California law prohibits the assignment of a claim for punitive damages.  *See*

10   *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976) ("[B]ecause a purely personal tort

11   cause of action is not assignable in California, … damage for emotional distress is not

12   assignable.  The same is true of a claim for punitive damage.").

13   Plaintiffs' claims for punitive damages are therefore stricken.

14   (2) <u>Motion To Strike Plaintiffs' Conspiracy Claim</u>

15   Plaintiffs' Complaint alleges a conspiracy against unknown "Certain

16   Defendants" as follows: "Certain Defendants agreed and conspired among themselves,

17   and with certain other individuals and/or entities, to act, or not to act, in such a manner

18   that resulted in injury to the Insured."  Complaint ¶ 3, at 2:5-15.

19   A conclusory allegation of conspiracy such as this is not sufficient at the

20   pleading stage under Rule[2] 8(a).  *See Impac Warehouse Lending Group v. Credit Suisse*

21   *First Boston LLC*, 2008 WL 731050, *1 ("conclusory allegations [of conspiracy] are

22   insufficient"); *Bell Atlantic Corp.*, __ U.S. __ , 127 S.Ct. at 1964-65 ("[A] plaintiff's

23   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

24   labels and conclusions").

25

26

27   [1] "Complaint" refers to Plaintiffs' Second Amended Complaint, filed April 23, 2008.

28   [2] All references to a "Rule" are to the Federal Rules of Civil Procedure.

1    In addition, Plaintiffs conspiracy claim is among unnamed "Certain

2    Defendants," which must include unserved "Doe" defendants since there is only one

3    named defendant (Continental).  The Federal Rules do not allow for "Doe" defendants

4    because all parties must be served within 120 days under Rule 4(m).  The Ninth Circuit

5    affirmed dismissal of a conspiracy claim precisely because of the improper inclusion of

6    "Doe" defendants in *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F2d 975, 981 (9th Cir.

7    1980): "Their inclusion destroys that jurisdiction and the claim was properly dismissed, if

8    only for this reason."

9    Plaintiffs' conspiracy claim and their allegations against "Doe" defendants are

10    therefore stricken from the Complaint.

11    (3)  <u>Motion To Dismiss Plaintiffs' Third Cause of Action for Breach of Duty</u>

12    <u>To Settle</u>

13    Plaintiffs' Third Cause of Action alleges that Continental's failure to settle the

14    underlying claim caused the insured, Ecklund Insulation, Inc., to incur a judgment in

15    excess of the alleged policy limits.  However, the only settlement demand is alleged to

16    have been sent in **December** 2007.  *See* Complaint ¶ 15.  The judgment was entered in

17    **June** 2007.  Complaint ¶ 14.

18    An actual pre-judgment settlement demand within limits is essential to a claim

19    for excess judgment based on breach of duty to settle.  *See Comunale v. Traders & Gen.*

20    *Insur. Co.*, 50 Cal. 2d 654, 659-61 (1958); *McLoughlin*, 23 Cal. App. 4th 1132, 1146

21    (1994) ("a pivotal element" of a claim for breach of duty to settle is "a settlement offer

22    within policy limits ….").  Rejection of a settlement demand can not cause an excess

23    judgment when the settlement demand came ***after*** the judgment.

24    In addition, Plaintiffs' alleged settlement demand for payment of "the Policies'

25    limits" is not valid because it is too vague and not capable of conversion to a dollar

26    amount.  Both the number of alleged policies and the limits of those alleged policies are

27    unknown, according to Plaintiffs.  Complaint ¶¶ 5-6, 15.  "Under basic contract law '[a]n

28    offer must be sufficiently definite, or must call for such definite terms in the acceptance

1   that the performance promised is reasonably certain.'" *Ladas v. California State Auto.*
2   *Assn.*, 19 Cal. App. 4th 761 (1993).

3          Plaintiffs' Third Cause of Action is therefore dismissed.  Plaintiffs may amend
4   this cause of action to state a proper claim if it can be pled consistent with this Order and
5   Rule 11.

6          (4)  Motion To Dismiss Plaintiffs' Fourth Cause of Action for Breach of
7   Nevada's Claims Practices Statute

8          The claims practices that Plaintiffs alleged against Continental in this case
9   occurred outside the state of Nevada.  They involve communications between Continental
10  in Illinois, the alleged insured in Washington, and Plaintiffs' counsel in San Francisco,
11  California.   *See* Complaint ¶ 10 (insured/underlying defendant served in the state of
12  Washington), ¶ 11 (alleging that the insured, in Washington, tendered defense to
13  Continental, in Chicago; and that Continental, in Chicago, allegedly failed to respond).
14  Moreover, the alleged wrongdoing is failure to defend the alleged insured in California.
15  Complaint ¶ 8 (underlying complaint filed in San Francisco), ¶ 13 (Continental's alleged
16  failure to defend the insured in the San Francisco litigation resulted in default in the San
17  Francisco Superior Court).

18         The Nevada claims practices statute does not, by its own terms, govern claims
19  practices that transpired entirely outside the state of Nevada.  *See* N.R.S. § 686A.020 ("A
20  person shall not engage ***in this state*** in any practice which is defined in NRS 686A.010 to
21  686A.310, inclusive, as, or determined pursuant to NRS 686A.170 to be, an . . . unfair or
22  deceptive act or practice in the business of insurance.") (emphasis added).

23         Moreover, California does not allow a private right of action under the claims
24  practices statute: "Neither section 790.03 nor section 790.09 was intended to create a
25  private civil cause of action against an insurer." *Moradi-Shalal v. Fireman's Fund Ins.*
26  *Cos.*, 46 Cal. 3d 287, 304 (1988).

27         Plaintiffs therefore cannot assert a cause of action based on the claims practices
28  statutes in Nevada and cannot re-allege such a claim under California law.

1   Plaintiffs' Fourth Cause of action is dismissed with prejudice.

2   (5)   Motion To Dismiss Plaintiffs' Seventh Cause of Action "by Third Party

3   Tort Claimant"

4   Third-party direct actions by underlying claimants are not allowed against

5   insurers because there is no contractual privity.  *Royal Surplus Lines Ins. Co., Inc. v.*

6   *Ranger Ins. Co.*, 100 Cal. App. 4th 193, 200 (2002) ("Liability insurance is not a contract

7   for the benefit of the injured party so as to allow it to sue the insurer directly.").  Nevada

8   also does not allow direct third party tort actions.  *Gunny v. Allstate Ins. Co.*, 830 P.2d

9   1335, 1335-35 (Nev. 1992) (third party claimant "lacks standing to sue because he had no

10   contractual relationship with [insurer]").

11   Plaintiffs' Seventh Cause of Action is dismissed with prejudice.

12   Disposition

13   Plaintiffs shall have 21 days from entry of this order to file an amended

14   complaint in compliance with this Order.

15

16   Dated:  July __, 2008

17

18   _____

19   Hon. Samuel Conti

20

21

22

23

24

25

26

27

28

[PRPOSED] ORDER GRANTING DEF. CONTINENTAL'S MOT. TO STRIKE AND DISMISS CERTAIN CLAIMS

1    G. David Godwin, No. 148272
     Raymond J. Tittmann, No. 191298
2    **CARROLL, BURDICK & McDONOUGH LLP**
     Attorneys at Law
3    44 Montgomery Street, Suite 400
     San Francisco, CA 94104
4    Telephone:     415.989.5900
     Facsimile:      415.989.0932
5    Email:        dgodwin@cbmlaw.com

6    Attorneys for Defendant
     The Continental Insurance Company
7

8             UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10            SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12   Franklin Ham and Dana Ham, | No. CV 08 1551 SC |
| 13          Plaintiffs, | **DECLARATION OF RAYMOND J. TITTMANN IN SUPPORT OF DEFENDANT THE CONTINENTAL INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND DISMISS CERTAIN CLAIMS** |
| 14       v. | |
| 15   The Continental Insurance Company; and Does 1 through 50, | |
| 16 | |
| 17         Defendants. | **Date:**         **July 11, 2008** <br> **Time:**         **10:00 a.m.** <br> **Courtroom:**     **1** |
| 18 | |
| 19 | **Hon. Samuel Conti** |

20

21

22

23

24

25

26

27

28

CBM-IPG\SF398656.2
5/23/08

**DECLARATION OF RAYMOND J. TITTMANN IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE AND DISMISS**

1    I, Raymond J. Tittmann, declare as follows:

2        1.    I am an attorney licensed to practice law in the State of California, and a

3    partner of Carroll, Burdick & McDonough, LLP, attorneys of record for Defendant The

4    Continental Insurance Company.

5        2.    Attached as Exhibit 1 is a true and correct copy of Plaintiffs Franklin and

6    Dana Ham's Second Amended Complaint and exhibits filed with this court on April 23,

7    2008.

8        I declare under penalty of perjury under the laws of the State of California that

9    the foregoing is true and correct.

10        Executed this ___ day of May 2008, at San Francisco, California.

11

12                                            _____
                                                      /S/
13                                               Raymond J. Tittmann

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL

Jack K. Clapper, Esq. (State Bar No. 83207)
Steven J. Patti (State Bar No. 163773)
Christine A. Renken (State Bar No. 232797)
Clapper, Patti, Schweizer & Mason
Marina Office Plaza
2330 Marinship Way, Suite 140
Sausalito, CA 94965
Telephone: (415) 332-4262
Facsimile: (415) 331-5387
Email: jkc@clapperlaw.com
        steve@clapperlaw.com
        christine@clapperlaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANKLIN HAM and DANA HAM,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CONTINENTAL INSURANCE COMPANY; and DOES 1 through 50,<br><br>    Defendants. | Case No.  CV 08 1551 SC<br><br>SECOND AMENDED COMPLAINT FOR:<br>(1)    BREACH OF INSURANCE CONTRACT;<br>(2)    BREACH OF THE DUTY TO DEFEND;<br>(3)    BREACH OF THE DUTY TO SETTLE;<br>(4)    BREACH OF INSURER'S STATUTORY DUTY;<br>(5)    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH);<br>(6)    DECLARATORY RELIEF;<br>(7)    ACTION BY THIRD PARTY TORT CLAIMANT.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Franklin Ham and Dana Ham (collectively "Plaintiffs") allege as follows:

**GENERAL ALLEGATIONS**

1.    Plaintiffs are informed and believe and thereon allege that Glens Falls Insurance Company at all relevant times was a corporation, authorized to transact, and transacting, business in the State of California.  Plaintiffs are further informed and believe and thereon allege that The Continental Insurance Company is the successor-in-interest to Glens Falls Insurance Company, and is a corporation, authorized to transact, and currently transacting business in the State of California.  Both entities will collectively be referred to as "CNA."

2.      Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, governmental or otherwise of defendants sued as DOES 1 through 50, inclusive, and sues these Defendants by such fictitious names.  Plaintiffs, after obtaining leave of Court, if necessary, will amend this Complaint to show such true names and capacities when the same have been ascertained.

3.      At all times herein mentioned, each of the Defendants, except as otherwise alleged, was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.  Certain Defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Insured; and such Defendants, as co-conspirators, are liable for the acts, or failures to act, of the other conspiring Defendants.  Plaintiffs are informed and believe, and allege, that at all times herein mentioned Defendants FIRST DOE through FIFTIETH DOE, inclusive, were and are authorized to do business in the State of California, that said Defendants have regularly conducted business in the County of San Francisco, State of California, and that certain of said Defendants have designated the County of San Francisco as their principal place of doing business within the State of California.

4.      At all times herein mentioned, each of the Defendants was the successor, successor in business, assign, predecessor, predecessor in business, parent, subsidiary, alter-ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member of the other Defendants. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants are liable for the tortious conduct of each successor, successor in business, assign, predecessor, predecessor in business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of.  The following Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity."

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC                    2

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY | GLENS FALLS INSURANCE COMPANY<br>CNA INSURANCE COMPANIES<br><br>FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY |

## THE INSURANCE POLICIES

5.     On or about June of 1964, in consideration of the payment of a premium, Defendants, by their duly authorized agents, executed and delivered to ECKLUND INSULATION, INC., hereinafter referred to as "the Insured," in the City of Reno, County of Washoe, State of Nevada, their Comprehensive General Liability Insurance policy bearing number PCL 50-09-99 with a policy limit for bodily injury of $100,000 each person and $300,000 each accident.  Plaintiffs are informed and believe and thereon allege that this insurance policy's coverage began on or about June 1964 and expired on or about November 1966. This policy will referred to as the "1966 Policy."

6.     Plaintiffs are also informed and believe and thereon allege that additional insurance policies exist that were issued by Defendants to the Insured for multiple years after 1966.  These insurance policies were also Comprehensive General Liability policies.  The policy limits for these additional insurance policies were the same or more than the 1966 Policy.  The policies, including the 1966 Policy,  will collectively be referred to as "the Policies."  Under the Policies, Defendants undertook to and did insure for both products liability and general liability and agreed to indemnify and defend the Insured in any civil action or suit seeking such damages.  In doing so, Defendants entered into a fiduciary relationship with the Insured and became bound by their fiduciary duties to the Insured. Plaintiffs are informed and believe and thereon allege that the Policies did not contain any exclusions referencing asbestos, asbestos products or asbestos-related injuries.  A copy of the 1966 Policy's Certificate of Insurance is attached hereto as Exhibit "A" and incorporated by reference.

7.     While the Policies were in full force and effect, the Insured sold asbestos-containing products and performed work as a contractor using asbestos-containing products that exposed Plaintiff, Franklin Ham to asbestos dust. Mr. Ham worked with the Insured's employees on multiple work sites from the early 1960's through the early 1970's, at least, as they exposed him to asbestos dust by their use of rigid split asbestos pipe covering and dry asbestos cement. The Insured's employees failed to

1  warn Mr. Ham about the hazards inherent in breathing the dust from their work or take precautions to

2  protect him from the dust. Mr. Ham breathed asbestos fibers that were created when the Insured's

3  employees performed work as a contractor using asbestos-containing products, thereby causing injuries

4  to Mr. Ham. Those events will hereinafter be referred to as "the Occurrence." Plaintiffs and the Insured

5  gave Defendants due and timely notice of the Occurrence, and Defendants, through their employees and

6  agents, failed to investigate the claim, failed to represent the Insured in the settlement negotiations and

7  failed to defend the Insured in the underlying action hereinafter mentioned.

8  ## THE UNDERLYING ACTION

9      8.    On August 11, 2006, Plaintiffs' Complaint was filed in the Superior Court of San

10  Francisco, entitled *Franklin Ham and Dana Ham v. Acco-Air Conditioning Company, et al.*, case

11  number 455063, hereinafter referred to as "the Underlying Action," in which Plaintiffs sought recovery

12  of damages for Mr. Ham's injuries as a result of his occupational exposure to asbestos. Plaintiffs named

13  several defendants, including several DOE defendants, in the Complaint. A copy of the Complaint in

14  the Underlying Action is attached hereto as Exhibit "B" and incorporated by reference.

15      9.    On August 28, 2006, Plaintiffs filed an amendment to the Complaint substituting the true

16  name of the Insured for the Eleventh DOE. The Complaint as amended alleges that the Insured is liable

17  to Plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of consortium. A copy

18  of the Amendment is attached hereto as Exhibit "C" and incorporated by reference.

19      10.    The Insured is an inactive Nevada corporation, but the corporation has never dissolved.

20  Plaintiffs served the Insured with the Summons and Complaint in the Underlying Action by personally

21  serving its President, Jerry Ecklund, at his home in Allyn, Washington.

22      11.    In or about August or September of 2006, the Insured tendered the defense of the

23  Underlying Action to CNA. CNA responded, stating that it would search for any insurance policies

24  issued to the Insured and requested any documentation related to the Policies. Plaintiffs are informed

25  and believe and thereon allege that the Insured sent CNA a copy of the Certificate of Insurance for the

26  1966 Policy. Plaintiffs also attempted to begin communications and settlement negotiations with CNA

27  by sending CNA a copy of the Certificate of Insurance for the 1966 Policy. CNA never responded to

28  the Insured or to Plaintiffs.

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC    4

1    12.    There was a substantial likelihood that Plaintiffs' recovery in the underlying lawsuit

2 would exceed the Policies' limits.  Plaintiffs Franklin and Dana Ham have been married for 48 years.

3 Mr. Ham is 74 years old and Mrs. Ham is 67.  They reside in Yerington, Nevada, and are Nevada

4 citizens and have two daughters and a son.  Mr. Ham was a remarkably healthy and active man before

5 his diagnosis of mesothelioma.   He is a lifetime non-smoker, apart from two years when he served in

6 the Navy.  Mr. Ham was diagnosed with malignant pleural mesothelioma in July of 2006.   Malignant

7 pleural mesothelioma is a terminal disease.  Mr. Ham was told by his treating physician that he could

8 expect to live from six to eighteen months from the time of his diagnosis.  Additional details of Mr.

9 Ham's exposure and injuries and Mrs. Ham's loss of consortium are set forth in Plaintiffs' Trial Brief

10 in Support of Request for Entry of Default Judgment, which was served on CNA and is attached hereto

11 as Exhibit "D" and incorporated by reference.

12    13.    As a result of CNA's refusal and failure to defend the Insured, upon Plaintiffs request,

13 the Clerk of the Court entered default against the Insured on November 30, 2006.  Plaintiffs provided

14 notice to Jerry Ecklund, President of the Insured,---and to Richard Solski of CNA---of the Request for

15 Entry of Default and of all hearings, trial dates, court orders and depositions taken in the Underlying

16 Action.  Plaintiffs also provided Mr. Ecklund and Defendants with notice of the Default Prove-up

17 Hearing, which stated that a judgment would be sought against the Insured in the Underlying Action.

18    14.    On June 28, 2007, the Court ordered judgment be entered in favor of Plaintiff Franklin

19 Ham in the amount of $671,000 for economic damages and $1,300,000 non-economic damages and in

20 favor of Plaintiff Dana Ham in the amount of $700,000 non-economic damages, for a total judgment

21 in favor of Plaintiffs and against the Insured in the amount of $2,671,000.  A copy of the Notice of Entry

22 of Default Judgment Against Ecklund Insulation, Inc. and Default Judgment, which was served on CNA,

23 is attached hereto as Exhibit "E" and incorporated by reference.

24    15.    Plaintiffs sent CNA a letter via certified mail on December 26, 2007 offering to resolve

25 Plaintiffs' claims against CNA and the Insured for the Policies' limits.  The December 26, 2007 letter

26 further stated that the offer to settle would remain open for 30 days from CNA's receipt of the letter.

27 CNA received the letter by January 2, 2008.  CNA has not contacted Plaintiffs in response to Plaintiffs'

28 offer to settle within the Policies' limits.

## FIRST CAUSE OF ACTION

### (Breach of Insurance Contract by CNA and DOES 1-50)

16.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15 of the Complaint as set forth above.

17.     The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, constitute Breach of Insurance Contract.

18.     Defendants breached the Policies by (1) failing to and refusing to undertake any investigation of the Occurrence; (2) failing to defend or respond to a proper request to defend the Insured; (3) failing to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits; and (4) breaching the implied covenant of good faith and fair dealing.  Even after the Insured and Plaintiffs sent Defendants the Certificate of Insurance setting forth the specific policy number and policy amounts, Defendants failed to respond.  Defendants continued to fail to respond even when Plaintiffs offered to resolve the default judgment in the Underlying Action within the Policies' limits.

19.     As consideration for Plaintiffs' agreement not to enforce the balance due and owing on the Underlying Action's judgment, the Insured has assigned to Plaintiffs all assignable claims that the Insured has against the Defendants.  Plaintiffs sue the Defendants as the assignee of the Insured's causes of action.  This included the causes of action alleged in this Complaint.  A copy of the assignment is attached hereto as Exhibit "F" and incorporated by reference.

20.     Plaintiffs and the Insured have performed and complied with all of the terms, conditions precedent, obligations and provisions contained in the Policies under which coverage is now sought, including the payment of premiums and the giving of notice, except as to that performance which has been excused, waived or prevented by the representations, acts or omissions of Defendants.  Thus, Plaintiffs, as the assignees, are entitled to the full benefit of the insurance provided by the Policies.

21.     As a proximate result of Defendants' (1) failure to and refusal to undertake any investigation of the Occurrence; (2) failure to defend or respond to a proper request to defend the Insured; (3) failure to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits;

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC          6

1    and (4) breach of the implied covenant of good faith and fair dealing, the Insured was damaged in the

2    sum of $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs

3    incurred in connection with the Underlying Claim and other foreseeable economical losses, all in a sum

4    to be shown by proof at trial.

5                              **SECOND CAUSE OF ACTION**

6                    **(Breach of the Duty to Defend by CNA and DOES 1-50)**

7            22.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

8    15, 19 and 20 of the Complaint as set forth above.

9            23.    The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

10    each of them, constitute Breach of the Duty to Defend.

11            24.    The Policies issued by Defendants under which Plaintiffs seek coverage herein obligated

12    the Insurer to defend the Insured with respect to the Underlying Claim.

13            25.    Defendants have breached the contracts of insurance issued to the Insured by refusing

14    and failing to perform their duty to defend the Insured with respect to the Underlying Claim, and by

15    refusing to reimburse the Insured for said defense and indemnity expenses.

16            26.    As a proximate result of Defendants' conduct, the Insured was damaged in the sum of

17    $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

18    in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

19    shown by proof at trial.

20            27.    In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

21    the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

22    knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

23    recover punitive damages.

24                              **THIRD CAUSE OF ACTION**

25                    **(Breach of the Duty to Settle by CNA and DOES 1-50)**

26            28.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

27    15, 19 and 20 of the Complaint as set forth above.

28            29.    The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

1  each of them, constitute Breach of the Duty to Settle.

2      30.    As a proximate result of Defendants' wrongful failure to settle the action within policy

3  limits when a reasonable opportunity to do so existed, the Insured became personally liable to Plaintiffs

4  in the amount of $2,671,000. This judgment has not been satisfied.

5      31.    As a proximate result of Defendants' conduct, the Insured was damaged in the sum of

6  $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

7  in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

8  shown by proof at trial.

9      32.    In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

10  the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

11  knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

12  recover punitive damages.

13  **FOURTH CAUSE OF ACTION**

14  **(Breach of Insurer's Statutory Duty by CNA and DOES 1-50)**

15      33.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

16  15, 19 and 20 of the Complaint as set forth above.

17      34.    The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

18  each of them, constitute Breach of Insurer's Statutory Duty.

19      35.    Defendants' actions set forth herein were in violation of Defendants' statutory duties

20  under Section 686A.310 of the Nevada Code.

21      36.    As a proximate result of Defendants' conduct, the Insured was damaged in the sum of

22  $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

23  in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

24  shown by proof at trial.

25      37.    In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

26  the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

27  knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

28  recover punitive damages.

**FIFTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

**by CNA and DOES 1-50)**

38.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 37 of the Complaint as set forth above.

39.     The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, constitute Breach of the Implied Covenant of Good Faith and Fair Dealing.

40.     There is implied in every contract a covenant by each party not to do anything which will deprive the other party thereto of the benefits of the contract. This would include an implied obligation to reasonably investigate all claims, to respond to requests to defend, to defend all claims and to settle all claims that may result in an amount in excess of the policy limits. In addition, this covenant not only imposes upon each party the duty to refrain from doing anything that would render performance of the contract impossible by any act of his own, but also to do everything that the contract presupposes will be done to accomplish the purpose of the contract.

41.     Plaintiffs are informed and believe, and thereon allege, that the Defendants breached the obligation to act fairly and in good faith toward the Insured by engaging in some or all of the following acts or omissions:

a.     Defendants refused to pay the judgment in the Underlying Action and have refused to settle despite their lack of reasonable basis for such a refusal. Defendants knew or should have known of their lack of reasonable basis for such refusal.

b.     Defendants failed to fully and fairly investigate claims arising under the Insured's Policies.

c.     Defendants failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Insured's Policies.

d.     Defendants, with full knowledge of the potentially catastrophic effect of a large judgment on the Insured, and in complete disregard of the likelihood of a judgment being entered against the Insured far in excess of the Policies' limits, refused to settle within policy limits despite their reasonable opportunities to do so. Plaintiffs are informed and believe, and thereon allege, that Defendants, in

1   refusing to consider those settlement opportunities, were motivated by a dishonest intent to deprive the

2   Insured of its benefits under the Policies, including the benefit of Defendants' duty to consider

3   settlement of the action to avoid the possibility of catastrophic excess liability being imposed on the

4   Insured.

5          e.      Defendants were fully aware of the Insured's interest in avoiding the catastrophic effect

6   of a judgment far in excess of the Policies' limits and that such a judgment was likely, but nevertheless

7   refused all reasonable opportunities to settle the action.  Plaintiffs are informed and believe, and thereon

8   allege, that Defendants, in refusing to consider those settlement opportunities, did not consider the

9   Insured's interest in avoiding an excess judgment to be as important as Defendants' interest in reducing

10  liability to below the Policies' limits.

11         f.      Defendants knew, or in the exercise of reasonable care in investigation should have

12  known, that there was a considerable likelihood that the Insured would be found liable, and that the

13  resultant damages would probably greatly exceed the Policies' limits.  Despite the existence of facts

14  indicating that a large excess judgment was likely, Defendants did not settle the action when it had the

15  reasonable opportunity to do so.  Had Defendants exercised due care in settling the action, the

16  possibility of an excess judgment may have been precluded.

17        42.     Plaintiffs are informed and believe, and thereon allege, that Defendants have breached

18  the duty of good faith and fair dealing owed to the Insured by other acts or omissions of which Plaintiffs

19  are presently unaware.  Plaintiffs will seek leave of the Court to amend this Complaint at such time as

20  they discover the other acts or omissions of Defendants constituting such breach.

21        43.     As a direct and proximate result of the aforementioned wrongful conduct of Defendants,

22  the Insured became personally liable to the Plaintiffs in the amount of $2,671,000 together with interest

23  thereon at the legal rate.  This judgment has not been satisfied.

24        44.     In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

25  the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

26  knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

27  recover punitive damages.

28  / / /

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

SIXTH CAUSE OF ACTION

(Declaratory Relief against CNA and DOES 1-50)

45. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 37 of the Complaint as set forth above.

46. The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, necessitate Declaratory Relief.

47. An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Plaintiffs contend that Defendants have breached the Policies as set forth herein, including, but not limited to, (1) failing to and refusing to undertake any investigation of the Occurrence; (2) failing to defend or respond to a proper request to defend the Insured; (3) failing to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits; and (4) breaching of the implied covenant of good faith and fair dealing, whereas Defendants, through their refusal to respond, appear to contend that the Policy does not cover the Occurrence.

48. Plaintiffs now desire a judicial determination of their rights and duties, and a declaration as to which party's interpretation of the Policies are correct.

49. A judicial declaration is necessary and appropriate at this time under these circumstances in order that Plaintiffs may ascertain its rights and duties vis-à-vis the Policies.

SEVENTH CAUSE OF ACTION

(Action by Third Party Tort Claimant against CNA and DOES 1-50)

50. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15 of the Complaint as set forth above.

51. A judgment of $2,671,000 was obtained against the Insured in the Underlying Action.

52. The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, permit this action by third party claimant against Defendants. *See Hall v. Enterprise Leasing Company-West* (Nev. 2006) 137 P.3d 1104.

53. As a proximate result of Defendants' conduct, Plaintiffs are damaged in the sum of $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

1    in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

2    shown by proof at trial.

3

4                                              **PRAYER**

5         1.      For the sum of $2,671,000, together with interest thereon at the legal rate from June 28,

6    2007 until paid;

7         2.      For exemplary damages;

8         3.      For attorneys' fees;

9         4.      For a declaration that the Occurrence fell under the Policies and that as Defendants failed

10   to settle within the Policies' limits, Defendants are liable for the entire judgment of $2,671,000, together

11   with interest thereon at the legal rate from June 28, 2007 until paid;

12        5.      For costs of suit herein incurred; and

13        6.      For such other and further relief as the Court may deem proper.

14

15   Dated: April **23**, 2008.                        Clapper, Patti, Schweizer & Mason

16

17                                    By: _____

18                                          Jack K. Clapper, Esq.
                                           Steven J. Patti, Esq.
                                           Christine A. Renken, Esq.
19                                         **Attorneys for Plaintiffs**

20

21

22

23

24

25

26

27

28

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC                          12

EXHIBIT $A$

# RICHARD J. NEUTRA - F. A. I. A.

### IN COLLABORATION WITH LOCKARD, CASAZZA & PARSONS

#### and ASSOCIATES, ARCHITECTS & ENGINEERS

WEST FIRST ST. • RENO, NEVADA • PHONE FA 2-9475



June 6, 1964

Washoe County Fair and
P. O. Box 837
Reno, Nevada

Subject:   Reno-Sparks Arena-Convention Hall
           Reno, Nevada

Gentlemen:

We are enclosing the following certificates of insurance for the
subject project:

        Comprehensive Liability Insurance:

            Ecklund Insulation, Inc.
            1400 Montello Street
            Reno, Nevada

            Geremia Concrete
            1327 - 65th Street
            Sacramento, California

    Workmen's Compensation*:

            Cupples Products Corp.
            1450 Rincon Street
            Corona, California

    * In lieu of the N.I.C. Certificate

                        Very truly yours,

                        RICHARD J. NEUTRA, F.A.I.A.
                        In Collaboration with
                        LOCKARD, CASAZZA & PARSONS AND
                        ASSOCIATES, ARCHITECTS & ENGINEERS

                    By  _Mary Johnson_
                        Mary Johnson, Secretary

1 cc
3 cc Stolte Inc.
1 cc Project Engineer

E. KEITH LOCKARD, A.I.A., Manager  •  RALPH CASAZZA, A.I.A.  •  EDWARD S. PARSONS, A.I.A.  •  PETER G. GUISTI, C.E.

THE **Glens Falls** GROUP
INSURANCE WITH INTEGRITY

## CERTIFICATE OF INSURANCE

GLENS FALLS INSURANCE COMPANY Glens Falls N.Y.
KANSAS CITY FIRE & MARINE INS CO. Kansas City Mo.

NAME AND ADDRESS OF INSURED

**ECKLUND INSULATION, INC., 1400 MONTELLO STREET, RENO, NEVADA**

LOCATION OF OPERATIONS TO WHICH THIS CERTIFICATE APPLIES

**RECREATION CENTER, RENO, NEVADA**

DESCRIPTION OF OPERATIONS OR AUTOMOBILES

**PIPE AND DUCT INSULATION**

McNEILL - McNEAR
Real Estate-Insurance
**1195 So. Wells Ave.**
Reno, Nev.-Ph.: FA 3-3167

This certifies that the policies of insurance described below have been issued and are in force. The insurance afforded is only with respect to the coverages indicated by specific limits of liability and is subject to all the terms of the policy having reference to those coverages. If such policies are canceled or changed, written notice will be mailed to the party to whom this certificate is issued, **10 days prior to such change or cancellation**

STOLTE, INC.
501 N. VIRGINIA STREET
RENO, NEVADA

← NAME AND ADDRESS OF PARTY TO WHOM THIS CERTIFICATE IS ISSUED

| POLICY NUMBER | EXPIRATION DATE | COVERAGES AND LIMITS OF LIABILITY | | | | | KIND OF INSURANCE |
|---|---|---|---|---|---|---|---|
| | | BODILY INJURY | | | PROPERTY DAMAGE | | |
| | | each person | each accident | | each accident | aggregate | |
| | | $ | $ | x x x | $ | $ | Manufacturers or Contractors Liability |
| | | each person | each accident | | each accident | aggregate | |
| | | $ | $ | x x x | $ | $ | Owners/Contractors Protective Liability |
| | | each person | each accident | aggregate | each accident | aggregate | |
| | | $ | $ | $ | $ | $ | Products Liability |
| | | each person | each accident | | each accident | aggregate | |
| | | $ | $ | x x x | $ | $ | Contractual Liability |
| | | each person | each accident | | each accident | | |
| | | $ | $ | x x x | $ | x x x | Owners, Landlords & Tenants Liability |
| PCL 50-09-99 | 11/14/66 | each person $100,000. | each accident $300,000. | aggregate* $300,000. | each accident $10,000. | aggregate $25,000. | Automobile Liability |
| PCL 50-09-99 | 11/14/66 | each person $100,000. | each accident $300,000. | | each accident $10,000. | | Comprehensive General Liability |
| | | each person $ | each accident $ | x x x aggregate* | each accident $ | x x x aggregate | Comprehensive Automobile Liability |
| | | As provided by the Workmen's Compensation Law of the State(s) of | | | | | Workmen's Compensation |

DATE SIGNED

**June 4, 1964**

SIGNATURE OF AUTHORIZED REPRESENTATIVE

*Ha McNeill*

Form 10209 Rev 11-62    *Applies to the Products Hazard only. Absence of an entry means the Products Hazard is not insured

*EXHIBIT* $\mathcal{B}$

1  Jack K. Clapper (State Bar No. 83207)
2  Steven J. Patti (State Bar No. 163773)
   CLAPPER, PATTI, SCHWEIZER & MASON
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5
6  Attorneys for Plaintiffs

**ENDORSED**
**FILED**
San Francisco County Superior Court

AUG 1 1 2006

CASE MANAGEMENT CONFERENCE SET

GORDON PARK-LI, Clerk
BY: _____
CRISTINA E. BAUTISTA
Deputy Clerk

AUG 1 5 2007  -1:00 PM

DEPARTMENT 206

7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9        CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION
10
11  FRANKLIN HAM and DANA HAM,          )  Case No. CGC-06-455063
12          Plaintiffs,                 )
        v.                              )  COMPLAINT FOR PERSONAL INJURY
13                                      )
    ACCO-AIR CONDITIONING COMPANY,      )  (ASBESTOS)
14  INC.; ACCO ENGINEERED SYSTEMS,      )
    INC.; AJAX BOILER, INC.; AJAX       )
15  BOILER & HEATER CO.; AMERICAN       )
    STANDARD INC.; ASBESTOS             )
16  CORPORATION, LTD.; CBS              )
    CORPORATION fka Viacom, Inc.,       )
17  Successor by merger to CBS          )
    Corporation; CERTAINTEED           )
18  CORPORATION; CRANE COMPANY; CSR     )
    Limited (Colonial Sugar            )
19  Refining); CROWN, CORK & SEAL       )
    COMPANY, INC.; D. CUMMINS           )
20  CORPORATION fka Valley Asbestos;    )
    D/C DISTRIBUTION CORPORATION fka    )
21  Moran Supply; FOSTER WHEELER        )
    CORPORATION; GENERAL ELECTRIC       )
22  COMPANY; GRINNELL CORPORATION;      )
    INTERNATIONAL ENVIRONMENTAL         )
23  SYSTEMS CORPORATION; J. T.          )
    THORPE & SON, INC.; KAISER          )
24  GYPSUM COMPANY; METALCLAD           )
    INSULATION CORPORATION; OWENS-      )
25  ILLINOIS, INC.; PARKER HANNIFIN     )
    CORPORATION; PIERCE LATHING         )
26  COMPANY fka Frank D. Smith;         )
    PLANT INSULATION COMPANY; PLANT     )
27  PRODUCTS & SUPPLY COMPANY;          )
    RECORD SUPPLY; THOMAS DEE           )
28  ENGINEERING COMPANY; UNIROYAL       )

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury

1  HOLDING, INC.; and DOES ONE        )
2  through SEVENTY-FIVE, inclusive,  )
                                      )
3       Defendants.                   )
                                      )
4  _____

5                    GENERAL ALLEGATIONS

6       1.   The true names and capacities, whether individual,

7  corporate, associate, governmental or otherwise, of defendants

8  FIRST DOE through SEVENTY-FIFTH DOE, inclusive, are unknown to

9  plaintiffs at this time, who therefore sue said defendants by such

10 fictitious names.  When the true names and capacities of said

11 defendants have been ascertained, plaintiffs will amend this

12 complaint accordingly.  Plaintiffs are informed and believe, and

13 thereon allege, that each defendant designated herein as a DOE is

14 responsible, negligently or in some other actionable manner, for

15 the events and happenings hereinafter referred to, and caused

16 injuries and damages proximately thereby to the plaintiff, as

17 hereinafter alleged.

18      2.   At all times herein mentioned, each of the defendants,

19 except as otherwise alleged, was the agent, servant, employee

20 and/or joint venturer of his co-defendants, and each of them, and

21 at all said times, each defendant was acting in the full course and

22 scope of said agency, service, employment and/or joint venture.

23 Plaintiffs do not allege that Asbestos Corporation Ltd. was the

24 agent, servant, employee and/or joint venturer of any entity during

25 any of the years Asbestos Corporation Ltd. was owned by any

26 governmental agency.  Certain defendants agreed and conspired among

27 themselves, and with certain other individuals and/or entities, to

28 act, or not to act, in such a manner that resulted in injury to the

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
-415) 332-4262

Franklin Hanv/Complaint for Personal Injury                    2

1  plaintiff; and such defendants, as co-conspirators, are liable for
2  the acts, or failures to act, of the other conspiring defendants.
3  Plaintiffs do not allege that Asbestos Corporation Ltd. conspired
4  with any entity during any of the years Asbestos Corporation Ltd.
5  was owned by any governmental agency. Plaintiffs are informed and
6  believe, and allege, that at all times herein mentioned defendants
7  FIRST DOE through SEVENTY-FIFTH DOE, inclusive, were and are
8  authorized to do business in the State of California, that said
9  defendants have regularly conducted business in the County of San
10 Francisco, State of California, and that certain of said defendants
11 have designated the County of San Francisco as their principal
12 place of doing business within the State of California.

13                  FIRST CAUSE OF ACTION -- NEGLIGENCE
14        PLAINTIFF COMPLAINS OF DEFENDANTS ACCO-AIR CONDITIONING
15 COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.;
16 AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS
17 CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by
18 merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY;
19 CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY,
20 INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION
21 CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL
22 ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL
23 SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM
24 COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;
25 PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D.
26 Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY;
27 RECORD SUPPLY; THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING,
28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                3

1    INC., NAMED IN THE FIRST CAUSE OF ACTION, AND DOES ONE THROUGH

2    TWENTY-FIVE, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

3        3.    Plaintiffs are informed and believe, and thereon allege

4    that at all times herein mentioned, defendants ACCO-AIR

5    CONDITIONING COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX

6    BOILER, INC.; AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.;

7    ASBESTOS CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc.,

8    Successor by merger to CBS Corporation; CERTAINTEED CORPORATION;

9    CRANE COMPANY; CSR Limited (Colonial Sugar Refining); CROWN, CORK &

10   SEAL COMPANY, INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C

11   DISTRIBUTION CORPORATION fka Moran Supply; FOSTER WHEELER

12   CORPORATION; GENERAL ELECTRIC COMPANY; GRINNELL CORPORATION;

13   INTERNATIONAL ENVIRONMENTAL SYSTEMS CORPORATION; J. T. THORPE &

14   SON, INC.; KAISER GYPSUM COMPANY; METALCLAD INSULATION CORPORATION;

15   OWENS-ILLINOIS, INC.; PARKER HANNIFIN CORPORATION; PIERCE LATHING

16   COMPANY fka Frank D. Smith; PLANT INSULATION COMPANY; PLANT

17   PRODUCTS & SUPPLY COMPANY; RECORD SUPPLY; THOMAS DEE ENGINEERING

18   COMPANY; UNIROYAL HOLDING, INC., and FIRST DOE through SEVENTY-

19   FIFTH DOE, inclusive, were and are corporations organized and

20   existing under and by virtue of the laws of the State of

21   California, or the laws of some other state or foreign

22   jurisdiction, and that said defendants, and each of them, were and

23   are authorized to do and are doing business in the State of

24   California, that said defendants have regularly conducted business

25   in the County of San Francisco, State of California, and that

26   certain of said defendants have designated the County of San

27   Francisco as their principal place of doing business within the

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Winship Way
Suite 140
Sausalito, CA 94965
415-332-4262

1    State of California.

2        4.   At all times herein mentioned, each of the defendants was

3    the successor, successor in business, successor in product line or

4    a portion thereof, assign, predecessor, predecessor in business,

5    predecessor in product line or a portion thereof, parent,

6    subsidiary, alter-ego, agent and/or fiduciary wholly or partially

7    owned by, or the whole or partial owner of or member in an entity

8    researching, studying, manufacturing, fabricating, designing,

9    labeling, assembling, distributing, leasing, buying, offering for

10   sale, selling, inspecting, servicing, installing, contracting for

11   installation, repairing, marketing, warranting, rebranding,

12   manufacturing for others, packaging and advertising a certain

13   substance, the generic name of which is asbestos, and other

14   products containing said substance.  Said entities shall

15   hereinafter collectively be called "alternate entities".  Each of

16   the herein named defendants are liable for the tortious conduct of

17   each successor, successor in business, successor in product line or

18   a portion thereof, assign, predecessor, predecessor in business,

19   predecessor in product line or a portion thereof, parent,

20   subsidiary, whole or partial owner, or wholly or partially owned

21   entity, or entity that it was a member of, or funded, that

22   researched, studied, manufactured, fabricated, designed, labeled,

23   assembled, distributed, leased, bought, offered for sale, sold,

24   inspected, serviced, installed, contracted for installation,

25   repaired, marketed, warranted, rebranded, manufactured for others

26   and advertised a certain substance, the generic name of which is

27   asbestos, and other products containing said substance.  The

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332 4262

Franklin Harr/Complaint for Personal Injury                5

1  following defendants, and each of them, are liable for the acts of
2  each and every "alternate entity", and each of them, in that there
3  has been a virtual destruction of plaintiff's remedy against each
4  such "alternate entity"; defendants, and each of them, have
5  acquired the assets, product line, or a portion thereof, of each
6  such "alternate entity"; defendants, and each of them, caused the
7  destruction of plaintiff's remedy against each such "alternate
8  entity"; each such defendant has the ability to assume the risk-
9  spreading role of each such "alternate entity"; and that each such
10 defendant enjoys the goodwill originally attached to each such
11 "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AMERICAN STANDARD, INC. | AMERICAN RADIATOR & STANDARD SANITARY CORP.<br>TRANE COMPANY<br>KEWANEE BOILER CO.<br>MURRAY IRON WORKS COMPANY<br>AMSTAN SUPPLY DIVISION<br>WESTINGHOUSE AIR BRAKE COMPANY (WABCO) |
| CERTAINTEED CORPORATION | KEASBEY & MATTISON<br>GUSTIN BACON MANUFACTURING CO. |
| CRANE CO. | CRANE SUPPLY CO.<br>PACIFIC STEEL BOILER CORPORATION |
| CROWN, CORK & SEAL COMPANY, INC. | MUNDET CORK CORPORATION |
| CSR LIMITED | COLONIAL SUGAR REFINING CO., LTD. |
| D. CUMMINS CORPORATION | VALLEY ASBESTOS |
| D/C DISTRIBUTION CORPORATION | AMFAC<br>HEICK & MORAN<br>MORAN SUPPLY |
| INTERNATIONAL ENVIRONMENTAL SYSTEMS CORPORATION | IBW ENVIRONMENTAL SYSTEMS CORP.<br>INTERNATIONAL BOILER WORKS COMPANY<br>LAMONT BOILER |

CLAPPER, PATTI
& HAUSELLE & MASON
2410 Mariposa Way
Suite 140
Sausalito CA 94965
(415) 331-4262

Franklin Harv/Complaint for Personal Injury                6

| | |
|---|---|
| KAISER GYPSUM COMPANY, INC. | PERMANENTE CEMENT COMPANY |
| | KAISER CEMENT & GYPSUM CORPORATION |
| | KAISER CEMENT CORPORATION |
| METALCLAD INSULATION CORPORATION | NORTHERN CALIFORNIA INSULATION COMPANY |
| OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| | OWENS-ILLINOIS GLASS CO. |
| | AMERICAN STRUCTURAL PRODUCTS CO. |
| PARKER-HANNIFIN CORP. | SACOMO |
| | SACOMO MANUFACTURING, INC. |
| | SACOMO SIERRA, INC. |
| | EIS |
| PLANT INSULATION COMPANY | ASBESTOS COMPANY OF CALIFORNIA |
| | PLANT ASBESTOS COMPANY |
| UNIROYAL HOLDING, INC. | UNIROYAL, INC. |
| | U. S. RUBBER |

5. At all times herein mentioned, defendants, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, supplying, inspecting, servicing, installing, contracting for installation, repairing, removing and/demolishing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

6. At all times herein mentioned, defendants, and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, tested or failed to test, warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, sold, supplied, inspected, serviced, installed, contracted for installation, contracting for

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                7

1  fabrication, repaired, removed and/or demolished, marketed,

2  warranted, rebranded, manufactured for others, packaged and

3  advertised, a certain substance, the generic name of which is

4  asbestos, and other products containing said substance, in that

5  said substance proximately caused personal injuries to users,

6  consumers, workers, bystanders and others, including the Plaintiff

7  herein, (hereinafter collectively called "exposed persons"), while

8  being used in a manner that was reasonably foreseeable, thereby

9  rendering said substances unsafe and dangerous for use by "exposed

10 persons".

11      7.    Defendants, and each of them, had a duty to exercise due

12 care in the pursuance of the activities mentioned above and

13 defendants, and each of them, breached said duty of due care.

14      8.  Plaintiff has used, handled or been otherwise exposed to

15 asbestos and asbestos-containing products referred to herein in a

16 manner that was reasonably foreseeable.  Plaintiff's exposure to

17 asbestos and asbestos-containing products occurred at various

18 locations both within and outside the State of California. During

19 the following years plaintiff was employed by the following

20 companies: 1954, 1955, and 1956 employed by American Rubber Mfg.

21 Co. on the assembly line in Emeryville, California; 1957, 1958,

22 1959, and 1964 - 1965 by employed Boothe Sales, Inc., of Lafayette,

23 California, and worked on jobs at Heinz Ketchup, in Tracy,

24 California, and at a Santa Rosa automobile dealership, as a

25 pipefitter; 1958, 1959 employed by Gay Engineering Corp., of Los

26 Angeles, California, and worked on jobs at Olympic Village, Squaw

27 Valley, California, as a pipefitter; 1959, 1960, 1962, 1963, 1964,

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2180 Mountain Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harn/Complaint for Personal Injury                    8

1   1980, 1981, 1982, 1984, 1985, employed by Johnson Controls, and

2   worked at various sites both as an instrument technician and as a

3   pipefitter; 1975, 1976, 1977, employed by Bechtel Power Corp., of

4   San Francisco, California, and worked at various locations,

5   including sites within California, as a pipefitter.  Plaintiff does

6   not claim he was exposed to Asbestos Corporation Ltd.'s asbestos

7   fibers during any of the years Asbestos Corporation Ltd. was owned

8   by any governmental agency.

9       Plaintiff's disability within the meaning of CCP 340.2 either

10  has yet to occur or occurred less than a year before the filing of

11  this complaint.

12      9.   As a direct and proximate result of the conduct of the

13  defendants, and each of them, as aforesaid, plaintiff's exposure to

14  defendants' asbestos fibers and defendants' asbestos-containing

15  products caused severe and permanent injury to the plaintiff

16  including, but not limited to, mesothelioma.

17      10.  Plaintiff is informed and believes, and thereon alleges,

18  that progressive lung disease, lung cancer and mesothelioma are

19  caused by inhalation of asbestos fibers without perceptible trauma

20  and that said disease results from exposure to asbestos and

21  asbestos-containing products over a period of time.

22      11.  Plaintiff suffers from mesothelioma, a condition related

23  to exposure to asbestos and asbestos-containing products.

24  Plaintiff was not aware at the time of exposure that asbestos or

25  asbestos-containing products presented any risk of injury and/or

26  disease.  The asbestos fibers and asbestos-containing products of

27  each named defendant and each DOE defendant were a substantial

28

CLAPPER, PATTI,
& SWEZZER & MASON
1110 Mar Way
Suite 140
Sausalito, CA 94965
.4151 332-4262

Franklin Ham/Complaint for Personal Injury                    9

1   factor in contributing to, and in causing, injury to plaintiff as
2   set forth herein.

3        12.   As a direct and proximate result of the aforesaid conduct
4   of defendants, and each of them, plaintiff has suffered, and
5   continues to suffer, permanent injuries and/or future increased
6   risk of injuries to his person, body and health, including, but not
7   limited to mesothelioma, and the mental and emotional distress
8   attendant thereto, all to his general damage in the sum in excess
9   of the jurisdictional limits of the Municipal Court.

10       13.   As a direct and proximate result of the aforesaid conduct
11  of the defendants, and each of them, plaintiff has incurred, is
12  presently incurring, and will incur in the future, liability for
13  physicians, surgeons, nurses, hospital care, medicine, hospices, x-
14  rays and other medical treatment, the true and exact amount thereof
15  being unknown to plaintiff at this time, and plaintiff prays leave
16  to amend this complaint accordingly when the true and exact cost
17  thereof is ascertained.

18       14.   As a further direct and proximate result of the said
19  conduct of the defendants, and each of them, plaintiff has
20  incurred, and will incur, loss of income, wages, profits and
21  commissions, a diminishment of earning potential, and other
22  pecuniary losses, the full nature and extent of which are not yet
23  known to plaintiff; and leave is requested to amend this complaint
24  to conform to proof at the time of trial.

25       WHEREFORE, plaintiff prays judgment against defendants, and
26  each of them, as hereinafter set forth.

27  / / / / / / / / / / / /

28

CLAPPER, PATTI
S HWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
415; 332-4262

Franklin Harv/Complaint for Personal Injury                    10

<u>SECOND CAUSE OF ACTION -- STRICT LIABILITY</u>

1

2     PLAINTIFFS COMPLAIN OF DEFENDANTS ACCO-AIR CONDITIONING

3  COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.;

4  AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS

5  CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by

6  merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY;

7  CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY,

8  INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION

9  CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL

10  ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL

11  SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM

12  COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;

13  PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D.

14  Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY;

15  RECORD SUPPLY; THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING,

16  INC. AND DOES ONE THROUGH FIFTY, AND FOR A CAUSE OF ACTION FOR

17  STRICT LIABILITY ALLEGES:

18     15.  Plaintiff incorporates herein by reference, as though

19  fully set forth herein, paragraphs 1 through 4, and paragraphs 7

20  through 14.

21     16.  FIRST DOE through TENTH DOE is responsible for, and

22  liable for the acts of ELEVENTH DOE through FIFTIETH DOE,

23  inclusive. The defendants, their "alternate entities", and each of

24  them, are corporations organized and existing under and by virtue

25  of the laws of the State of California, or the laws of some other

26  state or foreign jurisdiction, and said defendants, their

27  "alternate entities", and each of them, were and are authorized to

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Hanv/Complaint for Personal Injury                11

1   do and are doing business in the State of California, and said

2   defendants, their "alternate entities", and each of them, have

3   regularly conducted business in the City and County of San

4   Francisco, State of California, during the period of Plaintiff's

5   employment.

6       17.  Defendants, their "alternate entities", and each of them,

7   researched, manufactured, fabricated, designed, tested or failed to

8   test, labeled, assembled, distributed, leased, bought, offered for

9   sale, sold, inspected, serviced, installed, contracted for

10  installation, repaired, marketed, warranted, rebranded,

11  manufactured for others, packaged and advertised a certain

12  substance, the generic name of which is asbestos, and other

13  products containing said substance.

14      18.  Defendants, their "alternate entities", and each of them,

15  knew and intended that the above referenced asbestos and other

16  products containing asbestos would be used by the purchaser or user

17  without inspection for defects therein or in any of its component

18  parts and without knowledge of the hazards involved in such use.

19      19.  Defendants, their "alternate entities," and each of them,

20  knew, or should have known, and intended that the aforementioned

21  asbestos and products containing asbestos would be used for

22  insulation purposes, would require sawing, chipping, hammering,

23  scraping, sanding, breaking, removal, "rip-out," and other

24  manipulation which would result in the release of airborne asbestos

25  fibers, and that through such foreseeable use "exposed persons"

26  would use or be in proximity to and exposed to said asbestos

27  fibers.

28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

20.   Said asbestos and products containing asbestos were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their alternate entities, and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons" while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use.

21.   "Exposed persons" did not know of the substantial danger of using said products.  Said dangers were not readily recognizable by "exposed persons".  Said defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

22.   Plaintiff alleges that the aforementioned defendants, their "alternate entities", and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos- containing products created an unreasonable risk of bodily harm to exposed persons.

23.   Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332 4262

Franklin Hairr/Complaint for Personal Injury                    13

1  advertised by the aforementioned defendants, their "alternate

2  entities", and each of them and that plaintiff cannot identify

3  precisely which asbestos or asbestos-containing product(s) caused

4  the injuries complained of herein.

5      24.  In researching, mining, shipping, manufacturing,

6  fabricating, designing, testing or failing to test, warning or

7  failing to warn, labeling, assembling, distributing, leasing,

8  buying, offering for sale, selling, inspecting, servicing,

9  installing, contracting for installation, repairing, marketing,

10 warranting, rebranding, manufacturing for others, packaging and

11 advertising asbestos and asbestos-containing products, defendants,

12 their "alternate entities", and each of them, did so with conscious

13 disregard for the safety of "exposed persons" who came in contact

14 with said asbestos and asbestos-containing products, in that said

15 defendants, their "alternate entities", and each of them, had prior

16 knowledge that there was a substantial risk of injury or death

17 resulting from exposure to asbestos or asbestos-containing

18 products, including, but not limited to, asbestosis, other lung

19 disabilities and cancer.  Said knowledge was obtained, in part,

20 from scientific studies performed by, at the request of, or with

21 the assistance of, said defendants, their "alternate entities", and

22 each of them, and which knowledge was obtained by said defendants,

23 their "alternate entities", and each of them on or before 1930, and

24 thereafter.

25      25.  On or before 1930, and thereafter, said defendants, their

26 "alternate entities" and each of them, were aware that members of

27 the general public and other "exposed persons", who would come in

28

CLAPPER, PATTI
SCHWEIZER & MASON
2410 Mariorship Way
Suite 140
Sausalito CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                    14

1   contact with asbestos and asbestos-containing products, had no

2   knowledge or information indicating that asbestos or

3   asbestos-containing products could cause injury, and said

4   defendants, their "alternate entities", and each of them, knew that

5   members of the general public and other "exposed persons", who came

6   in contact with asbestos and asbestos-containing products, would

7   assume, and in fact did assume, that exposure to asbestos and

8   asbestos-containing products was safe, when in fact said exposure

9   was extremely hazardous to health and human life.

10       26.   With said knowledge, said defendants, their "alternate

11   entities", and each of them, opted to research, manufacture, mine,

12   ship, fabricate, design, label, assemble, distribute, lease, buy,

13   offer for sale, inspect, service, install, contract for

14   installation, repair, market, warrant, rebrand, manufacture for

15   others, package and advertise said asbestos and asbestos-

16   containing products without attempting to protect "exposed

17   persons" from or warn "exposed persons" of, the high risk of injury

18   or death resulting from exposure to asbestos and

19   asbestos-containing products.   Rather than attempting to protect

20   "exposed persons" from, or warn "exposed persons" of, the high risk

21   of injury or death resulting from exposure to asbestos and

22   asbestos-containing products, defendants, their "alternate

23   entities", and each of them, intentionally failed to reveal their

24   knowledge of said risk, and consciously and actively concealed and

25   suppressed said knowledge from "exposed persons" and members of the

26   general public, thus impliedly representing to "exposed persons"

27   and members of the general public that asbestos and

28

CLOPTON, PATTI
& WHEELER & MASON
2100 Marinship Way
Suite 40
Sausalito, CA 94965
415: 332 4262

1  asbestos-containing products were safe for all reasonably

2  foreseeable uses.  Defendants, their "alternate entities", and each

3  of them, engaged in this conduct and made these implied

4  representations with the knowledge of the falsity of said implied

5  representations.

6      27.  The above-referenced conduct of said defendants, their

7  "alternate entities", and each of them, was motivated by the

8  financial interest of said defendants, their "alternate entities",

9  and each of them, in the continuing, uninterrupted research,

10 manufacture, fabrication, design, labeling, assembly, design,

11 distribution, lease, purchase, sale, offer for sale, inspection,

12 installation, contracting for installation, repair, marketing,

13 warranting, rebranding, manufacturing for others, packaging and

14 advertising of asbestos and asbestos-containing products.  In

15 pursuance of said financial motivation, said defendants, their

16 "alternate entities", and each of them, consciously disregarded the

17 safety of "exposed persons" and were in fact consciously willing

18 and intended to permit asbestos and asbestos-containing products to

19 cause injury to "exposed persons" and induced persons to work with

20 and be exposed thereto, including plaintiff.

21     28.  Plaintiff relied upon defendants', their "alternate

22 entities" and each of their representations, lack of warnings, and

23 implied warranties of fitness of asbestos and their

24 asbestos-containing products.  As a direct, foreseeable and

25 proximate result thereof, plaintiff has been injured permanently as

26 alleged herein.

27     29.  Defendants, their "alternate entities, and each of them,

28

CLAPPER, PATTI,
& HWI IZLR & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 331-4262

Franklin Harv/Complaint for Personal Injury                    16

1  and their officers, directors and managing agents participated in,
2  authorized, expressly and impliedly ratified, and had full
3  knowledge of, or should have known of, each of the acts set forth
4  herein.

5      30.  Defendants, and each of them, are liable for the
6  fraudulent, oppressive, and malicious acts of their "alternate
7  entities", and each of them, and each defendants' officers,
8  directors and managing agents participated in , authorized,
9  expressly and impliedly ratified, and had full knowledge of, or
10  should have known of, the acts of each of their "alternate
11  entities" as set forth herein.  Plaintiffs do not allege any such
12  fraudulent, oppressive, or malicious acts by Asbestos Corporation
13  Ltd. during the years Asbestos Corporation Ltd. was owned by any
14  governmental agency.

15      31.  The above-referenced conduct of said defendants, their
16  "alternate entities", and each of them, was and is willful,
17  despicable, malicious, fraudulent, outrageous and in conscious
18  disregard and indifference to the safety and health of "exposed
19  persons".  Plaintiff, for the sake of example and by way of
20  punishing said defendants, seeks punitive damages according to
21  proof.

22      32.  As a direct and proximate result thereof, plaintiff has
23  suffered the injuries and damages previously alleged.

24  THIRD CAUSE OF ACTION - PREMISES OWNERS/GENERAL CONTRACTORS -
25  MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT

26      AS AND FOR A THIRD, SEPARATE, CAUSE OF ACTION FOR
27  MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT, PLAINTIFF

28

CLAPPER, PATTI
SCHWEIZER & MASON
.3 10 Mannahar Way
Suite 140
Sausalito CA 94965
.415) 332-4262

Franklin Ham/Complaint for Personal Injury                17

1  COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF
2  THEM, AND ALLEGES AS FOLLOWS:

3      33.   Plaintiff realleges and incorporates herein by reference
4  paragraphs 1 through 14 as though fully set forth herein.

5      34.   At relevant times defendants, and each of them, owned,
6  managed, and/or controlled certain premises in which asbestos-
7  containing products had been installed, maintained, used, and/or
8  replaced and as a result, dangerous quantities of asbestos fibers
9  were present on said premises.

10     35.   At relevant times said defendants knew that the asbestos-
11  containing products and the asbestos fibers released therefrom
12  created an unreasonable risk of harm to persons entering said
13  premises.

14     36.   At relevant times said defendants knew, or in the
15  exercise of ordinary care should have known, that said premises
16  would be entered by persons without knowledge of, or inspection
17  for, defects or dangerous conditions and that said persons would
18  not be aware of the aforesaid unreasonable risk of harm.
19  Defendants had a duty to disclose the presence of, and dangers
20  presented by, the asbestos-containing products and the asbestos
21  fibers released therefrom.

22     37.   Despite said knowledge, defendants misrepresented that
23  their premises was safe and free of defects, and/or failed to
24  disclose, and concealed, the presence of the asbestos-containing
25  products and asbestos fibers which created the unreasonable risk of
26  harm to persons entering said premises.

27     38.   In reliance upon the foregoing, plaintiff entered and

28

COOPER, PATEL,
KWFLER & MASON
2130 Mariposa Way
Suite 140
Sausalito, CA 94965
(415) 331-4262

Franklin Hann/Complaint for Personal Injury                    18

performed work in said premises which was to defendants' benefit
and advantage and at defendants' request and invitation.  In so
doing, plaintiff was exposed to dangerous quantities of asbestos
fibers.

39.  Plaintiff was unaware of the unreasonable risk of harm
created by the aforesaid presence of asbestos-containing products
and asbestos fibers on said premises.

40.  As a legal consequence of the foregoing, plaintiff
developed asbestos-related illness from which he suffers as
previously set forth and plaintiff has suffered general and special
damages as herein being alleged in an amount in excess of the
jurisdictional limits of the Municipal Court.

FOURTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT EXERCISE OF
RETAINED CONTROL - RESTATEMENT SECOND OF TORTS, SECTION 414

AS AND FOR A FOURTH, SEPARATE, CAUSE OF ACTION FOR PREMISES
LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,
inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

41.  Plaintiff realleges and incorporates herein by reference
paragraphs 1 through 14 as though fully set forth herein.

42.  At all relevant times defendants, and each of them,
owned, managed, and/or controlled certain premises in which
asbestos-containing products were being, or had been, installed,
maintained, used, removed and/or replaced.

43.  At all relevant times said defendants knew, or in the
exercise of ordinary care should have known, that the presence,
and/or disturbance, of the asbestos-containing products would
create an unreasonable risk of harm to persons entering said

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 331-4262

1   premises.

2       44.  At all relevant times said defendants knew, or in the
3   exercise of ordinary and reasonable care should have known, that
4   work would be performed on said premises by persons without
5   knowledge of, or inspection for, defects or dangerous conditions
6   and that said persons would not be aware of the aforesaid
7   unreasonable risk of harm, and that without the implementation of
8   proper safety precautions, and/or the use of proper work practices,
9   the risk of serious personal injury would result.

10      45.  Despite said knowledge of the aforesaid unreasonable risk
11  of harm, defendants retained control of the work and negligently
12  failed to implement, and/or failed to have others implement, proper
13  safety precautions, and/or the use of proper work practices, with
14  the result that the asbestos-containing products created an
15  unreasonable risk of harm to persons entering said premises.

16      46.  Plaintiff entered and performed work in said premises
17  which was to defendants' benefit and advantage and at defendants'
18  request and invitation.  In so doing, plaintiff was exposed to
19  dangerous quantities of asbestos fibers.

20      47.  Plaintiff was unaware of the risk of harm created by the
21  aforesaid presence of asbestos products and materials on said
22  premises.

23      48.  At all times mentioned herein, said defendants, and each
24  of them, controlled the operative details of the work and
25  negligently failed to maintain, manage, inspect, survey, or control
26  said premises, or to abate or correct, or to warn plaintiff of the
27  existence of the aforesaid dangerous conditions and hazards on said

28

CLAPPER PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
4151 331 4262

Franklin Harr/Complaint for Personal Injury                           20

1  premises.

2      49.  As a legal consequence of the foregoing, plaintiff

3  developed asbestos-related illness from which he suffered as

4  previously set forth and plaintiff has suffered general and special

5  damages as herein being alleged in an amount in excess of the

6  jurisdictional limits of the Municipal Court.

7  FIFTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT PROVISION OF

8  UNSAFE EQUIPMENT - RESTATEMENT SECOND OF TORTS, SECTION 414

9      AS AND FOR A FIFTH, SEPARATE, CAUSE OF ACTION FOR PREMISES

10  LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,

11  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12      50.  Plaintiff realleges and incorporates herein by reference

13  paragraphs 1 through 14 as though fully set forth herein.

14      51.  At all relevant times defendants, and each of them,

15  owned, managed, and/or controlled certain premises in which

16  asbestos-containing products were being, or had been, installed,

17  maintained, used, removed and/or replaced.

18      52.  At all relevant times said defendants knew, or in the

19  exercise of ordinary care should have known, that the presence,

20  and/or disturbance, of the asbestos-containing products would

21  create a risk of harm to persons entering said premises.

22      53.  At all relevant times said defendants knew, or in the

23  exercise of ordinary and reasonable care should have known, that

24  work would be performed on said premises by persons without

25  knowledge of, or inspection for, defects or dangerous conditions

26  and that without the proper equipment the risk of serious personal

27  injury would result.

28

CLAPPER, PATTI
WILKINSON & MASON
2150 Mariposa Way
Suite 140
Vacaville, CA 14965
(415) 332-4262

Franklin Harr/Complaint for Personal Injury          21

54.   Despite said knowledge of the aforesaid risk of harm, defendants negligently provided unsafe equipment which created a risk of harm to persons entering said premises.

55.   Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation.  In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers.

56.   Plaintiff was unaware of the risk of harm created by the aforesaid presence of asbestos products and materials on said premises.

57.   As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special damages as herein being alleged in an amount in excess of the jurisdictional limits of the Municipal Court.

### SIXTH CAUSE OF ACTION - CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON PREMISES

AS AND FOR A SIXTH, SEPARATE, CAUSE OF ACTION FOR A CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON THE PREMISES, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

58.   Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

59   At relevant times defendants, and each of them, owned, managed, contracted to perform work within and/or controlled certain premises in which asbestos-containing products had been, or were being, installed, maintained, used, and/or replaced.

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Manning Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury                    22

60.  At relevant times said defendants knew, or in the exercise of ordinary care should have known, that the presence of the asbestos-containing products and asbestos fibers created a concealed, per-existing hazardous condition on its premises.

61.  At relevant times said defendants knew, or in the exercise of ordinary care should have known, that said premises would be entered by persons, including contractors and/or sub-contractors, who would be without knowledge of, or reasonably could ascertain the condition.

62.  Despite said knowledge, defendants failed to maintain the premises free of defects, and/or failed to abate the asbestos-containing products and asbestos fibers which created the unreasonable risk of harm to persons entering said premises and failed to warn the persons entering said premises, including contractors and/or sub-contractors.

63.  Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. Due to defendants' negligent conduct, and/or the negligent conduct of persons for whom defendant is responsible, plaintiff was exposed to the aforementioned dangerous quantities of asbestos fibers which were present at said premises.

64.  Both plaintiff and plaintiff's employer were unaware of, and could not reasonably ascertain, the aforesaid dangerous condition on said premises.

65.  As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special

CLAPPER, PATTI,
H HARCZER & MASON
2150 Marinship Way
Suite 140
Sausalito, CA 94965
+4151 312 4362

Franklin Harv/Complaint for Personal Injury                     23

1  damages as herein being alleged in an amount in excess of the

2  jurisdictional limits of the Municipal Court.

3      <u>SEVENTH CAUSE OF ACTION - NEGLIGENT UNDERTAKING</u>

4  AS AND FOR A SEVENTH, SEPARATE, CAUSE OF ACTION FOR NEGLIGENT

5  PERFORMANCE OF AN UNDERTAKING - <u>RESTATEMENT SECOND OF TORTS,</u>

6  <u>SECTION 324A</u>, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,

7  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

8      66.  Plaintiff realleges and incorporates herein by reference

9  paragraphs 1 through 14 as though fully set forth herein.

10     67.  At relevant times defendants, and each of them, owned,

11 managed, and/or controlled certain premises in which asbestos-

12 containing products had been installed, maintained, used, and/or

13 replaced.

14     68. At relevant times defendants, and each of them, undertook,

15 gratuitously or for consideration, to render services which said

16 defendants should have recognized as necessary for the protection

17 of plaintiff.  Plaintiff suffered the harm complained of herein due

18 to defendants failure to exercise reasonable care in said

19 undertaking so that  (a) defendants failure to exercise reasonable

20 care increased the risk of harm to plaintiff, or (b) defendant

21 undertook to perform a duty owed to plaintiff by another, or (c)

22 said harm was suffered because of plaintiff's reliance, or the

23 reliance of another, upon the undertaking by defendant.

24     69.  As a legal consequence of the foregoing, plaintiff

25 developed asbestos-related illness from which he suffered as

26 previously set forth and plaintiff has suffered general and special

27 damages as herein being alleged in an amount in excess of the

28

CLAPPER, PATTI
SCHWEFER & MASINI
110 Marshway Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Hann/Complaint for Personal Injury          24

jurisdictional limits of the Municipal Court.

## EIGHTH CAUSE OF ACTION - LOSS OF CONSORTIUM

AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF DANA HAM COMPLAINS OF DEFENDANTS, INCLUDING DOE DEFENDANTS AND EACH OF THEM AND ALLEGES:

70. Plaintiff incorporates herein by reference, as set forth fully herein, all paragraphs of the First through Seventh Causes of Action herein.

71. Plaintiffs currently are, and at all relevant times were, husband and wife.

72. Plaintiff Franklin Ham sustained injuries caused by inhalation of asbestos fibers. Prior to the aforesaid injuries, said spouse was able to and did perform duties as a spouse. Subsequent to the injuries, and as a proximate result thereof, said spouse was unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home. By reason thereof, plaintiff Dana Ham has been deprived of the consortium of plaintiff's spouse, including the performance of said duties, all to plaintiff's damages.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as follows:

1. For plaintiff's general damages according to proof;

2. For plaintiff's loss of income, wages and earning potential according to proof;

3. For plaintiff's medical and related expenses according to proof;

CLAPPER, PATTI
WHEELER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Ham/Complaint for Personal Injury

25

4.    For plaintiff's cost of suit herein;

5.    For exemplary or punitive damages according to proof; and

6.    For such other and further relief as the court may deem just and proper, including costs as provided in CCP §998, CCP §1032 and related provisions of law.

Dated: August 11, 2006.

CLAPPER, PATTI, SCHWEIZER & MASON

By: _____
Jack K. Clapper
Attorneys for Plaintiffs

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332 4262

Franklin Harv/Complaint for Personal Injury                    26

*EXHIBIT* C

1  Jack K. Clapper,  (State Bar No. 83207)
   John P. Mason, (State Bar No. 193949)
2  Clapper, Patti, Schweizer & Mason
   2330 Marinship Way, Suite 140
3  Sausalito, CA 94965
   Telephone: (415) 332-4262
4  Facsimile: (415) 331-5387

5  Attorney for Plaintiffs

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8      CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

9

10

11  FRANKLIN HAM and                    )   Case No. CGC-06-455063
    DANA HAM,                           )
12                                      )   AMENDMENT TO COMPLAINT
              Plaintiffs,               )   SUBSTITUTING TRUE NAMES
13                                      )   FOR FICTITIOUS NAMES
         v.                             )
14                                      )
    ACCO-AIR CONDITIONING COMPANY,      )
15  INC., et al.                        )
                                        )
16            Defendants.               )

17

18      On filing the complaint herein, plaintiffs were ignorant of the true names of certain

19  defendants and designated such defendants in the complaint by fictitious name Eleventh Doe.

20  Plaintiffs, having discovered the true name of Eleventh Doe to be Ecklund Insulation, Inc. hereby

21  amends their complaint by inserting such true name in the place and stead of the fictitious name

22  wherever it appears in the complaint.

23      Ecklund Insulation, Inc. as Eleventh Doe.

24  Dated: August 28, 2006.

25                                        Clapper, Patti, Schweizer & Mason

26
                                          By: [signature]
27                                           John P. Mason
                                             Attorney for Plaintiffs
28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

AMENDMENT TO COMPLAINT SUBSTITUTING TRUE NAMES FOR FICTITIOUS NAMES

*EXHIBIT* D

1  Jack K. Clapper, (State Bar No. 83207)
   Steven J. Patti, (State Bar No. 163773)
2  Clapper, Patti, Schweizer & Mason
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5
6  Attorney for Plaintiffs

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,          )   Case No. 455063
                                        )
12          Plaintiffs,                 )   PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF
                                        )   REQUEST FOR ENTRY OF DEFAULT
13  v.                                  )   JUDGMENT; DECLARATION OF STEVEN J.
                                        )   PATTI; PLAINTIFFS' REQUEST FOR
14  ACCO-AIR CONDITIONING COMPANY et    )   JUDICIAL NOTICE
    al,                                 )
15                                      )
                                        )
16          Defendants.                 )   Date: June 28, 2007
                                        )   Time: 10:00 a.m.
17  _____     Dept: 502

18                      I. **Procedural Background**

19          This is an action for personal injuries and loss of consortium. The plaintiffs are Franklin and

20  Dana Ham, husband and wife. On August 11, 2006, their complaint was filed alleging that Mr. Ham

21  sustained injuries as a result of his occupational exposure to asbestos. He named several defendants,

22  including several DOE defendants, in the complaint. On August 29, 2006, plaintiffs filed an

23  amendment to the complaint substituting the true name of Ecklund Insulation, Inc. (hereinafter

24  "Ecklund Insulation") for the Eleventh Doe. The complaint as amended alleges that Ecklund

25  Insulation is liable to plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of

26  consortium. Plaintiffs allege that Ecklund Insulation sold asbestos-containing products and

27  performed work as a contractor that exposed Mr. Ham to asbestos dust, thereby causing his injuries.

28  Plaintiffs' causes of action alleged against Ecklund Insulation include negligence and strict products

1 liability (design defect and failure to warn). Along with the summons and complaint plaintiffs

2 served Ecklund Insulation with a Statement of Damages, which specified that plaintiffs sought

3 compensatory damages in this action totaling $18,500,000. (See Plaintiffs' Request for Judicial

4 Notice.)

5      Ecklund Insulation is a defunct Nevada corporation. Its charter was revoked in the State of

6 Nevada in 1981, but the corporation has never dissolved. (See Exhibit A to the Declaration of

7 Steven J. Patti ("SJP Decl.").) Plaintiffs served Ecklund Insulation with the summons and complaint

8 in this action by personally serving its President, Jerry Ecklund, at his home in Allyn, Washington.

9 (See Exhibit B to SJP Decl.) Although Mr. Ecklund apparently tendered the defense of the lawsuit

10 to the CNA Insurance Companies (see Exhibit C to SJP Decl.), no responsive pleading was ever

11 filed on behalf of Ecklund Insulation. Upon plaintiffs' request, the Clerk of the Court entered default

12 against Ecklund Insulation on November 30, 2006. (See Request for Judicial Notice.) Plaintiffs

13 provided notice to Jerry Ecklund---and to Richard Solski of CNA insurance---of the Request for

14 Entry of Default and of all hearings, trial dates, court orders and depositions taken in this matter.

15 Most recently, plaintiffs provided Mr. Ecklund and CNA insurance with notice of the instant Default

16 Prove-up Hearing, which stated that a judgment would be sought against Ecklund Insulation in this

17 matter. (See Exhibit D to SJP Declaration.)

18         **II. Standard of Proof.**

19      The correct standard of proof in a default prove-up setting requires that the plaintiff merely

20 establish a prima facie case. *Johnson v. Stanhiser* (1999) 72 Cal.App. 4th 357, 361. "Generally

21 speaking, the party who makes default thereby confesses the material allegations of the complaint.

22 [Citation.] It is also true that *where a cause of action is stated* in the complaint and evidence is

23 introduced to establish a prima facie case the trial court may not disregard the same, but must hear

24 the evidence offered by the plaintiff and must render judgment in his favor for such sum, not

25 exceeding the amount stated in the complaint...as appears from the evidence to be just." *Id.*, quoting

26 *Taliaferro v. Damvis* (1963) 216 Cal.App.2d 398, 408-409 (original italics). In *Johnson*, the court

27 held that the trial court incorrectly applied a preponderance of the evidence standard, and ordered the

28 court to reconsider the issue of damages after the trial court declined to award damages to the

( PS4
3130 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
2

1   plaintiff.

2   ### III. Statement of Facts

3      Franklin and Dana Ham have been married for 48 years. He is 74 years old and she is 67.

4   They reside in Yerington, Nevada. They have two daughters and a son. Mr. Ham was a remarkably

5   healthy and active man before his diagnosis of mesothelioma. He is a lifetime non-smoker, apart

6   from two years when he served in the navy. He was in the process of building a solar-powered home

7   made of straw bales and other recycled materials when he was diagnosed with malignant pleural

8   mesothelioma in July of 2006. Malignant pleural mesothelioma is a terminal disease. Mr. Ham was

9   told by his treating physician that he could expect to live from six to eighteen months from the time

10  of his diagnosis.

11  ### 1. Mr. Ham's Exposure

12     The only established cause of mesothelioma in the United States is occupational exposure to

13  asbestos. Mr. Ham had asbestos exposure over his long career as a plumber and pipe fitter. After

14  serving as a cook for three years in the United States Navy, he began in the plumbing trade in

15  approximately 1957. From 1963 to 1973, he lived in the Reno area and worked for several different

16  employers at job sites in Nevada and Northern California where he installed plumbing and heating

17  systems. Much of his work was in mechanical rooms where he installed boilers and other high-heat

18  equipment. This work was often done in the proximity of insulation contractors who would install

19  rigid split asbestos pipe covering and dry asbestos cement on pipes, boilers and fittings

20     Mr. Ham testified that, during the 1963 to 1973 period, he became familiar with three

21  insulators in particular because of the large number of jobs at which he saw them: Bill Brokavich,

22  Lonnie Treadway and Ernie Schoppe. Mr. Ham stated that these insulators performed almost all of

23  their work for Jerry Ecklund of Ecklund Insulation. Mr. Ham also became familiar with Jerry

24  Ecklund, whom he would see on jobs. Mr. Ecklund brought the asbestos insulation materials that

25  the other three would work with in Mr. Ham's presence. Their work caused Mr. Ham to be exposed

26  to asbestos dust from the mixing of the dry cement with water and from the cutting of the rigid split

27  asbestos pipe covering. This work occurred in confined spaces that Mr. Ham shared with the

28  insulators, so that he would be forced to breathe the dust. The Ecklund Insulators never warned him

CPSM
2310 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

3

1    about the hazards inherent in breathing the dust from their work, or took precautions to protect him

2    from the dust. (See Plaintiffs' Deposition of Franklin Ham at 49:17 to 53:1, Exhibit E to SJP Decl.).

3       During the defense portion of his deposition, Mr. Ham testified about a number of specific

4    projects during which he recalled working with Ecklund Insulation workers as they exposed him to

5    asbestos dust by their use of rigid split asbestos pipe covering and dry asbestos cement. In particular,

6    he recalled working in the same room with Ecklund Insulation workers at the Washoe Medical

7    center in the 1959-1964 when he was employed by Johnson Controls. The Ecklund Insulators used

8    asbestos insulation materials to cover pipes. (See Deposition of Franklin Ham at 469:24 to 472:15,

9    Exhibit E to SJP Decl.). He also recalled working with Ecklund insulators on another Johnson

10    Controls job at the University of Nevada Reno's girls' dormitory during the same period. Again, the

11    Ecklund insulators used asbestos cement and split pre-formed asbestos pipe covering. (See id. at

12    845:7 to 847:23.) Mr. Ham also recalled working with Ecklund Insulators on the new construction

13    of the University's sports complex during the 1959 to 1964 period. He worked in the same

14    mechanical room with Ecklund Insulators as they used asbestos-containing insulation materials.

15    (See id. at 855:2 to 858:25)

16       Mr. Ham also recalled working under similar circumstances with Ecklund Insulation at the

17    Nugget Casino during the 1959 to 1964 period. (See Deposition of Franklin Ham at 529:3 to

18    538:21). At the Nugget, he specifically recalled that the Ecklund Insulators suppled and used Kaylo

19    high temperature insulation. (See id. at 531:21 through 540:5). Kaylo insulation was, at the time,

20    an Owens Corning Fiberglas product that contained 15% asbestos. (See Request for Judicial Notice,

21    EPA product information published in accordance with Asbestos Information Act, at 55 Federal

22    Register 5144(20).)

23       From 1972 to 1973, Mr. Ham worked for a plumbing contractor called H.L. Murphy (See

24    Social Security records of Franklin Ham, at Exhibit F to SJP Decl.) Mr. Ham testified that Murphy

25    subcontracted almost all of his insulation work to Ecklund Insulation. (See Deposition of Franklin

26    Ham at 722:2-13, Exhibit E to SJP Decl.) Mr. Ham worked with Ecklund Insulators as they created

27    dust from their use of asbestos products at the Colonial Motor Lodge during the 1972 to 1973 period,

28    when he was employed by H.L. Murphy. (See id. at 695:21 to 702:16.) Mr. Ham worked for

CPSM
2161 Manning Way, #140
Sausalito, CA 94965
(415) 332-4262

1   Murphy during the same period on the construction of the Park & Walk hotel, where he also worked

2   in the presence of Ecklund insulators who were creating dust with asbestos products. (See id. at

3   708:3 to 711:6.)  He recalled working at Titanium West in the early 1970's, where he spent three or

4   four days in the presence of Ecklund insulators who were installing insulation. (See id. at 713:9-

5   715:25.)  Mr. Ham worked at the Overland Hotel in Reno on an H.L. Murphy remodel job where

6   Ecklund Insulation workers used asbestos insulation materials in his presence. (See id. at 719:7 to

7   725:15.)

8          Jerry D. Ecklund, President of Ecklund Insulation signed a declaration for this case (an

9   admission of a party within the meaning of Evidence Code § 1220).  (See Declaration of Jerry D.

10  Ecklund at Exhibit G to SJP Decl.)  In it, he states that his company was engaged in both the

11  installation and the sale of insulation from the 1960's through 1977.  He states that his company

12  installed asbestos-containing rigid split pipe insulation and asbestos-containing insulating cement.

13  He confirms that Bill Brokavich, Lonnie Treadway and Ernie Schoppe were in fact employed by his

14  company.  Mr. Ecklund recalls working with Frank Ham, whom he recalls as an instrument tech and

15  plumber who worked on jobs in the Reno during the 1964 to 1977 time period.  Moreover, Mr.

16  Ecklund recalls installing asbestos rigid split pipe insulation and asbestos insulating cement on job

17  sites during this period where Mr. Ham was present.  He identified several job sites that he had in

18  common with Mr. Ham, at which Ecklund installed asbestos insulating products: Fallon Naval Air

19  Station, Proctor Hug High School, Harvey's Wagon Wheel Casino, Harold's Club Casino, Harrah's

20  Casino, University of Nevada-Reno and St. Mary's Medical Center.   (See Declaration of Jerry D.

21  Ecklund at Exhibit G to Patti Decl.)

22  2.      **Liability and Causation**.

23          Allan Smith is a Professor of Epidemiology at the U.C. Berkeley School of Public Health.

24  He testified in deposition in this case that Mr. Ham's mesothelioma is caused by exposure to

25  asbestos. (See Deposition Excerpt and Curriculum Vitae of Allan Smith at Exhibit H to Patti

26  Declaration.)  Barry Horn, M.D.,  is a board-certified pulmonary specialist who testified on behalf of

27  plaintiffs in deposition in this case.  He testified that his opinions in the case are summarized in his

28  report, which was attached to the deposition as an exhibit.  In the report, he states that he reviewed

CPSM
2550 Mannship Way, #140
Sausalito, CA  94965
(415) 331-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
5

1   Mr. Ham's medical records and pathology reports, and he confirms the diagnosis of malignant

2   pleural mesothelioma. He states that Mr. Ham's illness is incurable, and that he will die from the

3   disease. He states that, after reviewing Mr. Ham's deposition testimony, it is clear that he had "both

4   direct and bystander exposure to asbestos." He specifies that Mr. Ham was exposed to asbestos,

5   "when insulators were installing molded insulation and mixing up asbestos cement." He states that

6   Mr. Ham's asbestos exposure is confirmed pathologically by the presence of pleural plaques.

7   Finally, he opines that, "All of Mr. Ham's asbestos exposure should be considered a contributing

8   factor in the development of his malignancy."

9          An expert called by one of the defendants in the case, Industrial Hygienist Joel Cohen, opined

10  about the relative importance of Mr. Ham's various exposures. He testified that, "Mr. Ham's

11  greatest likelihood of what I'll refer to as significant exposure would have occurred from his work or

12  the work of others handling half-round type insulation material by far...." (See Deposition of Joel

13  Cohen at 19:3-9, Exhibit I to SJP Decl.)

14         Dr. Horn also testified about the medical and scientific "state of the art" concerning asbestos

15  hazards at his deposition. He defined this testimony as encompassing, "what was knowable to

16  anyone who would have been interested based upon what was published in the medical literature."

17  (Deposition of Barry Horn at 13:10-19, Exhibit J to SJP Decl.) He stated that, although much of the

18  relevant literature was medical in its focus, "there's plenty of literature that nonphysicians could

19  certainly understand." (Id. at 14:15-20.) Dr. Horn reviewed a vast array of such literature at his

20  deposition, going back to a 1918 publication by Hoffman which stated that the insurance industry

21  had already recognized the problem of asbestos. (Id. at 20:8-13.) By 1924, an article by Cooke in

22  the *British Medical Journal* reported on a fatal case of asbestosis. Cooke wrote another article in

23  1927 in which he coined the term "asbestosis," and in the late 20's several more reports of asbestosis

24  appeared in the literature. (Id. at 21:7 - 17.)

25         In 1930 Merewether published a landmark study in the *Journal of Industrial Hygiene* looking

26  at the incidence of asbestosis among a population of asbestos workers. Also in 1930, Lynch and

27  Smith reported on four cases of asbestosis in the *Journal of the American Medical Association*. This

28  was widely distributed throughout the United States. In the same year, Wood and Gloyne published

LPSM
2550 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

6

1   an article on the clinical presentation of asbestosis, what caused the disease, the symptoms people

2   had, and how asbestosis could be prevented. According to Dr. Horn, the information in the Wood

3   and Gloyne article would still be valid if presented in a textbook today. (See Deposition of Barry

4   Horn at 23:1-25:12, Exhibit J to SJP Decl.)

5       After 1930, the publications concerning asbestos continued to mushroom, with epidemiologic

6   studies looking at the incidence of disease in various asbestos-exposed populations, including Lynch

7   and Smith (1935) and Dreesen (1938). Both Dreesen and Lynch and Smith wrote about how to

8   prevent asbestos diseases from occurring. By the late 30's, case reports were published of lung

9   cancer in asbestos workers. By 1944 Gloyne published the results of Dr. Wedler's research in

10   Germany. Dr. Wedler published a number of reports of lung cancer in individuals with asbestos

11   exposure. In 1949, a monograph was published in the *Journal of the American Medical Association*

12   linking lung cancer to asbestos exposure. By 1955 Sir Richard Doll had written his article

13   establishing the link between lung cancer and asbestos exposure epidemiologically. By 1960

14   Wagner had written his article establishing the link between asbestos and mesothelioma. Then, in

15   1964, Dr. Irving Selikoff held his international conference in New York City, the proceedings of

16   which were published in 1965, on the incidence of mesothelioma and lung cancer in insulators.

17   (Deposition of Barry Horn at 26:1-33:17, Exhibit J to SJP Decl.) By the mid-1960's, according to

18   Dr. Horn, the state-of-the-art with regard to asbestos disease was completely developed, and there

19   were no significant developments that occurred thereafter. (Id. at 33:18-22.)

20       At least as early as 1949, California's Division of Industrial Safety enacted General Industry

21   Safety Orders that governed the handling of hazardous dusts, including asbestos, in the workplace.

22   They required employers handling asbestos at potentially harmful levels to employ general

23   ventilation, local exhaust ventilation, isolation of dusty work, wetting down the work are to control

24   dust and substitution of nonhazardous material to prevent harmful exposures. Where such control

25   measures were impossible or impracticable, respiratory protection equipment was to be supplied and

26   worn. Workers potentially exposed to exposed to hazardous dust were to be trained in the use of

27   such equipment, and were to be provided with change rooms and sanitation facilities to prevent them

28   from taking hazardous dusts home on their person. Asbestos was specifically listed in the

LPSM
2135 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
7

1  regulations one such hazardous dust to which the rules applied.  These rules were in effect through

2  the 1960's.  (See California Division of Industrial Safety General Industry Safety Orders, Title 8,

3  §§4100 et seq., attached to Request for Judicial Notice.)

4       No one from Ecklund Insulation ever warned Mr. Ham about the potential hazards of

5  exposure to the insulation products the company sold and installed.  (Deposition of Franklin Ham at

6  52:23-53:1, Exhibit E to SJP Decl.)  Nor did Ecklund Insulation take steps to protect Mr. Ham from

7  exposure to dust from their work.  Nor did they employ wet-down, isolation, ventilation or the use of

8  respiratory equipment to prevent workers such as Mr. Ham from being exposed.  Mr. Ham testified

9  in his deposition that he had no expectation that the asbestos products on his job sites could cause

10  him to develop cancer.  (See Id. at 65:7-15.)

11  **3.**   **Damages**

12      **A. Economic Damages**

13      Barry Ben-Zion, PhD., a Professor of Economics at Sonoma State University, testified in this

14  case about his analysis of Mr. Ham's economic damages.  His analysis was based upon a review of

15  documentation concerning Mr. Ham's income from pension and social security benefits, and upon

16  published data estimating the value of home services rendered by retired married men.  Dr. Ben-Zion

17  prepared a report that summarized his findings.  The components of economic damage that he

18  evaluated were future loss of Social Security retirement income ($171,700, reduced to present

19  value), future loss of union pension ($78,000), future loss of Sierra Pacific Power Company pension

20  ($77,575), and past and future loss of home services ($114,550).  All of these amounts reflect a

21  reduction of the real figures to actuarial present value.  Thus, the total economic damages calculated

22  by Dr. Ben-Zion are $441,825.  (See excerpts from Deposition of Barry-Ben Zion, attached report

23  and supporting documents, Exhibit K to SJP Decl.)  Dr. Ben-Zion's report states that his report does

24  not address Mr. Ham's past and future medical expenses, which are additional components of his

25  economic loss.

26      Dr. Barry Horn testified about the value of medical treatment that Mr. Ham was reasonably

27  likely to require in the future relating to his mesothelioma.  He estimated these costs at between

28  $75,000 and $150,000.  (Deposition of Barry Horn, p. 66, at Exhibit J to SJP Decl.)  Dr. Ben-Zion

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

8

1    explained that, due to the fact that the increase in the costs of health care over time will likely exceed

2    the short term interest rate, no discount of those future costs to present value is necessary .

3    (Deposition of Barry Ben-Zion at p. 18:11-19:15.)  Plaintiffs' bills for past medical expenses relating

4    to his mesothelioma total over $79,500.   (See Summary and Copies of Medical Bills, at Exhibit L to

5    SJP Decl.)  Thus, Mr. Ham has established **$671,000 in total economic damages.**

6        **B. Non-economic Damages**

7        Mr. Ham's non-economic damages are related to his pain, discomfort, fears, anxiety, loss of

8    enjoyment of life and other mental and emotional distress caused by his mesothelioma. See CACI

9    3905 A. Mesothelioma is an exceptionally painful and unpleasant disease. Dr. Horn testified that

10    the disease is terminal.  There is no cure.  Mesothelioma will kill Mr. Ham.  Mr. Ham testified that

11    he has been advised by his doctors that he has a life expectancy of between 6-18 months from

12    diagnosis. (Deposition of Franklin Ham at 72:12-23, Exhibit E to SJP Decl.)  His tumor, which first

13    occurs in the pleura (the lining of the lung), will eventually grow to the point where it

14    circumferentially involves the lung, trapping and crushing the lung tissue to the point where the lung

15    cannot become oxygenated.  As a result, Mr. Ham can expect to experience increasing shortness of

16    breath, essentially a slow suffocation.

17        Dr. Horn has testified in the past about the extreme physical pain that a mesothelioma patient

18    can expect to experience as a result of the tumor growing in the chest wall, which eventually

19    involves the sensitive nerve roots between the ribs.  The tumor contacts and irritates the nerves, and

20    as a result Mr. Ham will have increasing pain and will require increasing doses of narcotics over

21    time.  Moreover, as the tumor gets larger it will consume more and more of Mr. Ham's resources and

22    energy.  He will lose weight, he will lose muscle mass, and eventually will be able to do less and less

23    for himself, requiring care 24 hours a day, 7 days a week.  (Deposition of Dr. Barry Horn in Rebecca

24    and Jess Soria, San Francisco Superior Court No. 429989, p. 33:22 - 35:10, at Exhibit M to SJP

25    Decl.)

26        Mr. Ham testified to already having experienced some of the physical pain and suffering that

27    Dr. Horn predicts.  Before being diagnosed he experienced constant fatigue and nagging pain in the

28    right lung and chest wall.  This was upsetting to him, as he had always been active and in excellent

( PSM
2130 Maready Way, #140
Sausalito, CA  94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
9

1    health. Although he made repeated trips to doctors in the months leading up to his diagnosis, they

2    could not find what was wrong. (Deposition of Franklin Ham at 67:18-67:21, Exhibit E to SJP

3    Decl.) Eventually, he had surgery in the form of a CT-guided biopsy, which itself was painful. That

4    surgery led to Mr. Ham's diagnosis. After the CT-guided biopsy he had a thoracentesis, which

5    involved multiple biopsies of the lymph nodes. Emotionally, being diagnosed with mesothelioma

6    was devastating to both Mr. and Mrs. Ham. (Deposition of Franklin Ham at 70:15-73:8, Exhibit E to

7    SJP Decl.) Chemotherapy was recommended to Mr. Ham as the only available treatment. He

8    underwent chemotherapy beginning in October of 2006. The treatment causes him extreme nausea

9    and weakness, which lasts for at least three days. (Deposition of Franklin Ham at 75:1-76:8, **Exhibit**

10    **E** to SJP Decl.) He also experiences inability to eat, severe pain and constipation following the

11    chemotherapy. (Deposition of Dana Ham at 25:14-18, Exhibit N to SJP Decl.)

12       Mr. Ham's mesothelioma has permanently and dramatically changed the quality of the Hams'

13    lives. Before the disease, Mr. Ham was active and helpful, performing home maintenance,

14    housework and cooking in the household. His primary avocation, however, was building their home,

15    which consumed about 40 or 50 hours of his time each week. The home was planned as an

16    alternative, "green" residence made of straw bales and heated and powered using solar panels. As

17    explained by Mrs. Ham, their plans for the home were inspired by their dream of "living a better

18    way." Mr. Ham himself had done the underground wiring, the septic system, the rebar and the hay

19    bale construction. (Deposition of Dana Ham at 16:8-18, and 26:13-27:8 Exhibit N to SJP Decl.)

20    Mrs. Ham explained that Mr. Ham, "loves to make things and do things, build things. It makes him

21    very happy." He recently helped his son Eric build his house in Winnemuca, Nevada. Mr. Ham did

22    all of the electrical work and the heating system installation. Mr. Ham even derived satisfaction

23    from helping neighbors and friends with electrical, piping and plumbing projects. Since his

24    diagnosis, however, he has been unable to do household chores, unable to work on the house, and

25    unable to build things. (Id. at 30:9-32:16.)

26       Before Mr. Ham became sick he and Mrs. Ham enjoyed raising and riding their Arabian

27    horses. They enjoyed taking walks together and traveling around the country. Mr. Ham was an avid

28    fisherman and hunter. In terms of their future, they planned to travel to Australia for an outback

1    horseback riding tour, and Mr. Ham was looking forward to showing his wife some parts of the

2    United States that she had not yet seen.  Now, however, Mr. Ham is unable to walk, or hike, ride,

3    fish or hunt.  The Hams' traveling plans are on permanent hold.  His day generally consists of the

4    following, according to Mrs. Ham: "He has no activities to speak of now...[He] goes out to the

5    house, builds a fire and does a lot of contemplating.  He sits there.  I leave him alone, let him do

6    what he wants to do, and that's pretty much it."  (Id. at 27:24-28:5 and 32:2-16.)

7         Obviously, this has been devastating for both of them emotionally as well.  Mr. Ham is

8    suffering from emotional trauma, according to his wife.  He is frustrated by his inability to walk  or

9    work without shortness of breath or fatigue.  (Id. at 28:25-29:5.)  He has bouts of moodiness and

10   irritability, which was never the case before his diagnosis: "One minute he's as sweet as he's always

11   been and the next minute he's cantankerous and irritable."  Mrs. Ham understands that this is a

12   consequence of the suffering Mr. Ham is undergoing with his illness: "I know what he's going

13   through.  I know he wouldn't be that way if he could help it."  (Id. at 27:6-23.)

14        In terms of the impact on her, Mrs. Ham explained how happy and appreciative she was of

15   her husband before his illness.  "We had a great life together, and I thought about how lucky I was to

16   have him.  And how—being a stupid teenager when I got married, how lucky I was that it turned out

17   so well.  And I counted my blessings every day."  (Id. at 29:6-23.)  Now, her thoughts are consumed

18   with worries about how long Frank will be around, and she spends time praying for Frank rather than

19   counting her blessings.  (Id. at 29:6-23.)  She is no longer making any plans for her future with her

20   husband.  Instead, Mrs. Ham explains, "I'm just living day to day and doing the best I can, and I'm

21   trying to be there for him."  (Id. at 34:1-4.)

22                          **IV.  Conclusion**

23        Plaintiffs have presented more than a prima facie case supporting their prayer for damages.

24   In fact, plaintiffs have presented the court with overwhelming evidence, including an admission from

25   the President of Ecklund Insulation, of Mr. Ham's exposure to the work, activities and products of

26   Ecklund Insulation.  According to the medical experts proffered by plaintiffs, this exposure was a

27   cause of Mr. Ham's mesothelioma.  According to at least one expert who was deposed, his exposure

28   to the sorts of products used by Ecklund Insulation was "far and away" his most significant.

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

11

1    Plaintiffs have presented evidence establishing economic damages in this case of $671,000.

2    Plaintiffs have also presented evidence of both Mr. and Mrs. Harris' extreme non-economic damages

3    and loss of consortium.  This evidence is sufficient to establish a prima facie case for the

4    $15,000,000 in non-economic damages prayed for in plaintiffs' Statement of Damages ($5,000,000

5    pain, suffering and inconvenience; $5,000,000 emotional distress; $5,000,000 loss of consortium),

6    which, in the absence of any kind of denial, should be awarded.   Thus, plaintiffs respectfully request

7    that the court enter judgment in favor of plaintiffs in the amount of $15,671,000.

8    Dated:  June 25, 2007.

                                        Clapper, Patti, Schweizer & Mason

                                        By:_____
                                            Steven J. Patti
                                            Attorney for Plaintiff

CPSM
2160 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE                                                          12

## PROOF OF SERVICE

I declare that I am employed in the County of Marin, California; I am over the age of eighteen years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140, Sausalito, California  94965.

On June 26, 2007, I served PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE on the interested parties in this action by placing a true copy thereof, enclosed in a sealed box, all charges paid, addressed as follows:

ECKLUND INSULATION, INC.
Jerry D. Ecklund
141 E. Olympic Ct
Allyn, WA  98524

Richard J. Solski
Law Department
Environmental & Mass Tort Claims
CNA Plaza - 19 South
333 S. Wabash Avenue
Chicago, IL  60685

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for pick up and delivery by United Parcel Service.

The foregoing sealed box was placed for pick up and delivery this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with all charges thereon fully paid with United Parcel Service at Sausalito, California, in the ordinary course of such business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June 26, 2007, at Sausalito, California.

_____
Lenette Lew

EXHIBIT $E$

1  Steven J. Patti, (State Bar No. 163773)
   Clapper, Patti, Schweizer & Mason
2  Marina Office Plaza
   2330 Marinship Way, Suite 140
3  Sausalito, CA 94965
   Telephone: (415) 332-4262
4  Facsimile: (415) 331-5387

5  Attorney for Plaintiffs

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,            )   Case No. 455063
                                          )
12          Plaintiffs,                   )   NOTICE OF ENTRY OF DEFAULT
                                          )   JUDGMENT AGAINST ECKLUND
13  v.                                    )   INSULATION, INC.
                                          )
14  ACCO-AIR CONDITIONING COMPANY, et     )
    al.,                                  )
15                                        )
            Defendant.                    )
16                                        )

17      TO DEFENDANT ECKLUND INSULATION, INC.:

18          NOTICE IS HEREBY GIVEN that on June 28, 2007, judgment was entered in the above-

19  entitled action by the Honorable Charlotte W. Woolard, Judge of the Superior Court.

20          A true and correct copy of the Default Judgment Against Ecklund Insulation, Inc. entered in

21  the above-captioned action on June 28, 2007, by the Honorable Charlotte W. Woolard, is attached

22  hereto as Exhibit "A".

23  Dated: June 28, 2007.

24                                            CLAPPER, PATTI, SCHWEIZER& MASON

25

26                                            By: _____
                                                  Steven J. Patti
27                                                Attorney for Plaintiffs

28

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

NOTICE OF ENTRY OF DEFAULT JUDGMENT AGAINST ECKLUND INSULATION, INC

1  Steven J. Patti, (State Bar No. 163773)
   Clapper, Patti, Schweizer & Mason
2  Marina Office Plaza
   2330 Marinship Way, Suite 140
3  Sausalito, CA 94965
   Telephone: (415) 332-4262
4  Facsimile: (415) 331-5387

5  Attorney for Plaintiffs

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

JUN 2 8 2007

GORDON PARK-LI, Clerk
BY: ____ANNA PEDIGONDA____
          Deputy Clerk

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11 FRANKLIN HAM and DANA HAM,                    )    Case No. 455063
                                                 )
12        Plaintiffs,                            )
                                                 )    DEFAULT JUDGMENT AGAINST
13     v.                                        )    ECKLUND INSULATION, INC.
                                                 )
14 ACCO-AIR CONDITIONING COMPANY, et            )
   al.,                                          )
15                                               )
          Defendant.                             )
16                                               )

17        This action came on for a default prove-up hearing pursuant to California Code of Civil

18 Procedure Section 585 on June 28, 2006 in Department 502 of the above-entitled court, the

19 Honorable Charlotte W. Woolard presiding.  Plaintiffs Franklin Ham and Dana Ham were

20 represented by their attorney of record, Steven J. Patti.  Documentary evidence, recorded testimony

21 and affidavits were proffered and admitted.  After considering the documentary evidence, recorded

22 testimony, affidavits and arguments of counsel, the Court finds that a prima facie case of liability for

23 the supply of a defective asbestos-containing product and for negligence has been made against

24 defendant Ecklund Insulation, Inc., sued herein as "DOE XI," and that such conduct was a

25 substantial factor in causing plaintiffs' injuries and damages.

26        NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment be

27 entered in favor of plaintiffs Franklin Ham in the amount of $ 671,000⁰⁰ economic

28 damages and $ 1,300,000⁰⁰ non-economic damages, and in favor of Dana Ham in the

CPSM
30 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Judgment Against Ecklund Insulation, Inc.

**EXHIBIT** A

1    amount of $ _700,000.00_ non-economic damages, for a total judgment to plaintiffs

2    of $ _2,671,000.00_. This judgment is subject to the addition of costs and

3    interest in an amount to be later determined by the Court.

4    Dated: _June 28, 2007_

5

                        The Honorable Charlotte W. Woolard
                        Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I declare that I am employed in the County of Marin, California; I am over the age of eighteen years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140, Sausalito, California 94965.

On June 28, 2007, I served the attached: Notice of Entry of Default Judgment Against Ecklund Insulation, Inc. in said action,

<u>XXX</u>   By placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Sausalito, California addressed as

ECKLUND INSULATION, INC.
Jerry D. Ecklund
141 E. Olympic Ct
Allyn, WA 98524

Richard J. Solski
Law Department
Environmental & Mass Tort Claims
CNA Plaza - 19 South
333 S. Wabash
Chicago, IL 60685

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 28, 2007 at Sausalito, California.

Lenette Lew

*EXHIBIT* F

## COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS

THIS COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS ("Agreement") is entered into effective as of the 24th day of October, 2007, by and between FRANKLIN HAM and DANA HAM (hereinafter collectively referred to as "HAM") on the one hand, and ECKLUND INSULATION, INC. (hereinafter referred to as "ECKLUND") on the other hand (HAM and ECKLUND shall sometimes collectively be referred to herein as the "Parties" and separately as a "Party"), and is based upon the following facts:

### RECITALS

A.     On August 11, 2006, HAM filed a complaint for personal injuries and loss of consortium, alleging that Mr. Ham sustained injuries as a result of his occupational exposure to asbestos. HAM named several defendants, including DOE defendants, in the complaint.

B.     On August 29, 2006, HAM filed an amendment to the complaint substituting the true name of ECKLUND for the Eleventh DOE. The complaint alleges that ECKLUND sold asbestos-containing products and performed work as a contractor that exposed Mr. Ham to asbestos dust. Along with the summons and complaint, HAM served ECKLUND with a Statement of Damages, which specified that HAM sought compensatory damages totaling Eighteen Million Five Hundred Thousand Dollars ($18,500,000).

C.     ECKLUND tendered defense to CNA Insurance Companies. However, as no responsive pleading was filed on behalf of ECKLUND, HAM obtained a default against ECKLUND on November 30, 2006. After a default prove-up hearing on June 28, 2006, the Court entered a default judgment against ECKLUND on June 28, 2007 in favor of Franklin Ham in the amount of Six Hundred Seventy One Thousand Dollars ($671,000) economic damages and One Million Three Hundred Thousand Dollars ($1,300,000) non-economic damages and for Dana Ham in the amount of Seven Hundred Thousand Dollars ($700,000) non-economic damages, for a total of Two Million Six Hundred Seventy One Thousand Dollars ($2,671,000). The Court further ordered that the judgment was subject to the addition of costs and interest in an amount to be later determined by the Court. The damages, costs and interests are hereinafter collectively referred to as the "JUDGMENT."

D.     The Parties now desire to resolve and settle all disputes between them.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     **Assignment of Claims**. By execution of this Agreement, ECKLUND irrevocably

1

assigns, conveys, sells, grants and transfers to HAM any and all of ECKLUND'S rights, benefits and remedies, as well as any and all causes of action that ECKLUND might have or might have had against CNA Insurance Companies arising out of HAM's personal injury action, claims and JUDGMENT obtained against ECKLUND, and arising out of ECKLUND'S tender of defense thereof, including but not limited to, breach of the implied covenant of good faith and fair dealing, breach of the duty to defend, breach of the duty to settle and bad faith causes of action. ECKLUND further irrevocably assigns, conveys, sells, grants and transfers to HAM the right to prosecute such causes of action in HAM's name and to settle or otherwise resolve such causes of action as HAM sees fit, in HAM's sole and absolute discretion.

2.    **Covenant Not to Execute**.  In exchange for and in consideration of ECKLUND'S agreement to assign claims as set forth in paragraph 1 above, HAM agrees that it will refrain from executing or garnishing on the JUDGMENT against ECKLUND or its principals, officers, affiliates, agents, heirs, successors in interest and predecessors in interest.

3.    **Representations and Warranties**.  Each Party hereby agrees, represents and warrants to and for the benefit of the other Party as follows:

(a)    Each Party has read this Agreement and knows and understands its contents fully.  Each voluntarily executes this Agreement and without being pressured or influenced by any statement or representation of any person, acting on behalf of any other Party, including any other Party's officers, directors, employees agents and attorneys.

(b)    Each Party has full power and authority to enter into this Agreement and to consummate the transactions described or contemplated herein.

4.    **Enforceability and Continuing Jurisdiction**.  Notwithstanding the provisions of California Evidence Code Section 1152, this Agreement shall be admissible to enforce its terms and the Parties hereby stipulate and agree that the Superior Court of San Francisco shall have jurisdiction to enforce the terms and conditions of this settlement pursuant to Code of Civil Procedure Section 664.6 and to enter judgment pursuant to this Agreement.

5.    **No Presumption Against Preparer of Agreement**.  The Parties hereby acknowledge and agree that each of the Parties have contributed to the drafting of this Agreement, and no provision hereof shall be construed against any Party as being the drafter hereof.  This Agreement shall therefore be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted.

6.    **Invalid Provisions**.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future laws, such provision shall be fully severable, and the remaining provisions shall constitute the parties' agreement and shall be enforced to the greatest extent permitted by applicable law.

2

7.   **Cooperation**.  Each Party hereto agrees to execute all documents and instruments and to take all actions as may be necessary to implement the Parties' intentions underlying, and the terms of, this Agreement.

8.   **Amendment**.  This Agreement may be amended, modified or terminated only by a written instrument executed by all Parties to this Agreement.

9.   **Governing Law**.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

10.   **Entire Agreement**.  This Agreement represents the entire agreement between the Parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous discussions, agreements and/or representations of or between the Parties hereto regarding the subject matter hereof.

11.   **Counterparts Execution**.  This Agreement may be signed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the Parties hereby enter into this Agreement the day and year first above written.

Dated: October 24, 2007

ECKLUND INSULATION, INC.

By: _____

Its: _____PRESIDENT_____

Dated: October __, 2007

By: _____
**FRANKLIN HAM**

Dated: ~~October __, 2007~~
11/5/2007

By: _____
**DANA HAM**

3