1   Jack K. Clapper, Esq. (State Bar No. 83207)
     Steven J. Patti, Esq. (State Bar No. 163773)
2   Christine A. Renken, Esq. (State Bar No. 232797)
     Clapper, Patti, Schweizer & Mason
3   Marina Office Plaza
     2330 Marinship Way, Suite 140
4   Sausalito, CA 94965
     Telephone: (415) 332-4262
5   Facsimile: (415) 331-5387
     Email:     jkc@clapperlaw.com
6               steve@clapperlaw.com
                  christine@clapperlaw.com
7

   Attorneys for Plaintiffs
8                  UNITED STATE DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

10

11   FRANKLIN HAM and DANA HAM,   )   Case No. CV 08 1551 SC
                          )
12         Plaintiffs,       )   **PLAINTIFFS' OPPOSITION TO**
                          )   **DEFENDANT THE CONTINENTAL**
13   v.                        )   **INSURANCE COMPANY'S MOTION TO**
                          )   **STRIKE PLAINTIFFS' CLAIM FOR**
14   THE CONTINENTAL INSURANCE   )   **PUNITIVE DAMAGES AND TO DISMISS**
      COMPANY; and DOES 1 through 50,   )   **CERTAIN CLAIMS; MEMORANDUM**
15                          )   **OF POINTS AND AUTHORITIES**
         Defendants.       )
16                          )
                          )   **Date:**       **July 11, 2008**
17                          )   **Time:**      **10:00 a.m.**
                          )   **Courtroom:**  **1**
18                          )
                          )   **Hon. Samuel Conti**
19                          )
20   —————————————————)

21

22

23

24

25

26

27

28

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551

# TABLE OF CONTENTS

PAGE

I.    **STATEMENT OF ISSUES TO BE DECIDED**                                 1

    A.  MOTION TO STRIKE CONSPIRACY CLAIMS                             1

    B.  MOTION TO DISMISS CLAIM FOR BREACH OF DUTY TO SETTLE (THIRD
        CAUSE OF ACTION                                              1

    C.  MOTION TO DISMISS CLAIM FOR THIRD PARTY TORT ACTION (SEVENTH
        CAUSE OF ACTION                                              1

    D.  MOTION TO STRIKE PUNITIVE DAMAGES                            1

    E.  MOTION TO DISMISS FOURTH CAUSE OF ACTION FOR UNFAIR CLAIMS
        PRACTICES UNDER NEVADA STATUTE                               2

II.   **STATEMENT OF FACTS**                                               3

III.  **LEGAL ARGUMENT**                                                   5

    A.  PLAINTIFFS DO NOT OPPOSE THE MOTION TO STRIKE CONSPIRACY
        CLAIMS                                                       5

    B.  THE MOTION TO STRIKE THE THIRD CAUSE OF ACTION FOR BREACH
        OF THE DUTY TO SETTLE SHOULD BE DENIED                       5

        1.  An Insurer's Duty to Settle Is Not Extinguished Upon Entry of Judgment  5

        2.  Whether the Demand Was Sufficiently Definite to Have Been Breached
            by Continental is a Question of Fact                     7

    C.  PLAINTIFF'S THIRD PARTY TORT CLAIM (SEVENTH CAUSE OF
        ACTION) IS NOT A "DIRECT ACTION," AND IS AUTHORIZED BY BOTH
        CALIFORNIA AND NEVADA LAW                                    9

        1.  California Law Allows Suits against Insurance Companies by
            Third Party Judgment Creditors                          10

        2.  Nevada Law Allows Suits Against Insurance Companies by Third Party
            Judgment Creditors                                      11

    D.  THE MOTION TO STRIKE PUNITIVE DAMAGES SHOULD BE DENIED       14

        1.  The Motion to Strike Punitive Damages Must Be Denied Since it Fails to
            Address Plaintiffs' Claims That are Not Based on an Assignment  14

        2.  Punitive Damages Are Recoverable on a Third Party Claim of Bad Faith
            by a Judgment Creditor                                  14

        3.  The Assignment's Choice of Law Provision May Not Be Invoked by
            Continental, and Does Not Limit Plaintiffs' Remedies in This Lawsuit  15

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

1    4.    Under Illinois Law, Punitive Damages Are Assignable                16

2    5.    California Choice of Law Rules Mandate the Application of Illinois
          Law to the Availability of Punitive Damages                        17
3

4    E.  THE MOTION TO DISMISS THE FOURTH CAUSE OF ACTION
        FOR UNFAIR CLAIMS PRACTICES UNDER NEVADA STATUTE
5       SHOULD BE DENIED                                                     19

6        1.    NRS 686A.310 Encompasses Unfair Claims Practices Directed at
               Nevada Insureds, Whether Committed in or outside of Nevada    19
7

8        2.    Contrary to Continental's Assertion, Plaintiffs' Complaint Does Not
               Allege that All of the Offending Conduct Took Place Outside Nevada   21

9        3.    California Choice of Law Rules Favor Application of the Nevada Statute   22

10   IV.    **CONCLUSION**                                                   23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CPSM
3330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

**TABLE OF AUTHORITIES**

PAGE[S]

**CASES**

*Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev. 587, 763 P.2d 673 (1988)    15

*Allen v. Pomroy,* 277 A.2d 727 (Me. 1971)    11, 12

*Archdale v. Am. Int'l. Spec. Lines Ins. Co.,* 154 Cal. App. 4th 449, 64 Cal. Rptr. 3d 632 (2007)    18

*Arno v. Club Med Inc.,* 22 F.3d 1464, 1467 (9th Cir. 1994)    17

*Beckham v. Safeco Ins. Co.,* 691 F.2d 898 (9th Cir. 1982)    9

*Britton v. Co-op Banking Group,* 4 F.3d 742 (9th Cir. 1993)    15

*Campbell v.  Farmers Exch. Co.,* 44 Cal. App. 4th 1308, 52 Cal. Rptr. 2d 385 (1996)    6

*Chenoweth v. Fin. Indem. Co.,* 13 Ariz. App. 313, 476 P.2d 519 (1970)    2, 5, 6

*Columbia Natural Res., Inc. V. Tatum,* 58 F.3d 1101 (6th Cir. 1995)    21

*Communale v. Traders & Gen. Insur. Co.,* 50 Cal. 2d 654, 328 P.2d 198 (1958)    5, 6, 7

*F.D.I.C. v. W.R. Grace & Co.* 691 F.Supp.87, 1988 U.S. Dist. LEXIS 5447 (N.D. Ill. 1988)    17

*Farmers Ins. Exch. v. District Court*, 1993 Colo. LEXIS 940, 862 P.2d 944 (1993)    12

*French v. Orange County Inv. Corp.*, 125 Cal. App. 587, 13 P.2d 1046 (1932)    18

*Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997    21

*Gunny v. Allstate Ins. Co.,* 108 Nev. 344, 830 P.2d 1335 (1992)    13

*Hall v. Enterprise Leasing Co.-West*, 2006 Nev. LEXIS 81, 137 P.3d 1104 (2006)    12, 13

*Hand v. Farmers Ins. Exch.*, 23 Cal. App. 4th 1847, 29 Cal. Rptr. 2d 258 (1994)    2, 10, 11, 14

*Hart v. Prudential Prop. and Cas. Ins. Co.,* 848 F.Supp. 900, 1994 U.S. Dist. LEXIS 5043 (D. Nev. 1995)    21, 22

*Jordan v. Allstate Ins. Co.,* 148 Cal. App. 4th 1062, 56 Cal. Rptr. 3d 312 (2007)    8

*Kelsay v. Motorola, Inc.* 74 Ill.2d 172, 384 N.E.2d 353 (1978)    16, 19

*Kirchner Bros. Oil v. Natomas Co.,* 185 Cal. App. 3d 784, 229 Cal. Rptr. 899 (1986)    8

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S. Ct. 1020 (1941)    17

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08-1551

iii

TABLE OF AUTHORITIES (cont.)

| | PAGE[S] |
|---|---|
| *Kleinwort Benson NA, Inc. v. Quantum Fin. Svcs.* 181 Ill.2d 214, 692 N.E.2d 269 (1998) | 16, 18, 19 |
| *Kneivel v. E.S.P.N.*, 393 F.3d 1068 (9th Cir. 2004) | 7 |
| *Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8., 908 P.2d 724 (1996) | 2, 12, 13 |
| *Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761, 23 Cal. Rptr. 2d 810 (1993) | 7 |
| *Moradi-Shalal v. Fireman's Fund Ins.*, 46 Cal. 3d 287, 758 P.2d 58 (1988) | 22 |
| *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 553 P.2d 584, 588 (1976 | 10, 18 |
| *O'Neill v. Gallant Ins. Co.*, 329 Ill. App. 3d 1166, 769 N.E.2d 100 (2002) | 2, 16, 18, 19 |
| *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) | 2, 15 |
| *Peloz v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) | 22 |
| *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.* 863 F.Supp. 1237 (D. Nev. 1994) | 2, 20, 21 |
| *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 962 P.2d 596 (1998) | 15 |
| *Roberts v. Farmers Ins. Co.*, 91 Nev. 199; 533 P.2d 158 (1975 | 11, 13 |
| *Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.*, 100 Cal. App. 4th 193, 122 Cal. Rptr. 2d 459 (2002 | 11 |
| *Searles v. Cincinnati Ins. Co.* 998 F.2d 728 (9th Cir. 1993) | 9 |
| *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059 (8th Cir. 2000) | 14 |
| *Swallow v. Tungsten Prod. Co.*, 205 Cal. 207, 217, 270 P. 366, 370 | 18 |
| *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001) | 17 |
| *Weast v. Travelers Ins. Co.*, 7 F.Supp.2d 1129 (D.Nev. 1998) | 9 |

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

1

<u>TABLE OF AUTHORITIES</u> (cont.)

<u>PAGE[S]</u>

2

**<u>OTHER AUTHORITIES</u>**

3

California Civil Code

4      Section 3300                                                    7

5    California Insurance Code

6      Section 11580(b)                                            10, 12

Federal Rules of Civil Procedure

7      Rule 12(b)(6)                                                   21

8    M.R.S tit.24-A § 2904                                        12

9    Nevada Revised Statute

10      686A.20                                                    20, 21

Nevada Revised Statute

11      686A.310                                       2, 20, 21, 22, 23

12    United States Code

Title 28

13        Section 1332(c)                                             9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

# I. STATEMENT OF ISSUES TO BE DECIDED

## A. MOTION TO STRIKE CONSPIRACY CLAIMS

Plaintiffs do not oppose this motion to strike.

## B. MOTION TO DISMISS CLAIM FOR BREACH OF DUTY TO SETTLE (THIRD CAUSE OF ACTION)

Question 1: Can an insurer breach the duty to settle after a judgment exceeding policy limits is entered against its insured, by failing to accept a demand to settle within policy limits?

Answer: Yes, the duty to settle is **heightened** post-judgment, since the consequences to the insured of failing to settle are no longer merely potential, but are certain. *See Chenoweth v. Fin. Indem. Co.,* 13 Ariz. App. 313, 476 P.2d 519 (1970).

Question 2: Can this Court decide, at the pleading stage, that a policy limits demand made to Continental by letter is "void for vagueness" when the letter is not before the court?

Answer: *No. Plaintiffs' pleading, alleging that a policy limits demand was made to* Continental on December 27, 2007, is sufficient to state a cause of action for breach of the duty to settle.

## C. MOTION TO DISMISS CLAIM FOR THIRD PARTY TORT ACTION (SEVENTH CAUSE OF ACTION)

Question 1: Can a judgment creditor assert a third party tort action against the insurer of the judgment debtor for bad faith?

Answer: Yes. In both California and Nevada, a judgment creditor has an independent right to maintain his own action against the insurer. A judgment creditor has standing to sue, unlike a "direct action" plaintiff who has not yet obtained a judgment. *See Hand v. Farmers Ins. Exch.*, 23 Cal. App. 4th 1847, 29 Cal. Rptr. 2d 258 (1994); *Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8., 908 P.2d 724 (1996).

## D. MOTION TO STRIKE PUNITIVE DAMAGES

Question 1: Is Continental's Motion to Strike Punitive Damages defective, because it fails to address the availability of punitive damages under each of plaintiffs' causes of action?

Answer: Yes. The motion to strike should be denied, because it only attacks the availability of punitive damages flowing from the assignment from Ecklund Insulation. It does not address the

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          1

1    punitive damages recoverable by Plaintiffs under their Third Party Tort Claimant Cause of Action

2    (Seventh Cause of Action).

3          Question 2:  Can Continental invoke the choice of law provision in a contract to which it was

4    not a party, to limit the Hams's remedies against it in this lawsuit?

5          Answer:  No.  Parties who are strangers to a contract cannot enforce its choice of law

6    provisions.  *See Paracor Fin., Inc. v. GE Capital Corp.,* 96 F.3d 1151, 1165 (9th Cir. 1996.)  Thus, a

7    choice of law clause between Ecklund Insulation and Plaintiffs cannot be invoked in this lawsuit, which

8    involves the breach of a completely different contract.

9          Question 3:   Are punitive damages assignable under the law applicable to this case?

10         Answer:   Yes.  Illinois law, the law of Continental's principal place of business, allows the

11   assignment of punitive damages in an insurance bad faith case. *O'Neill v. Gallant Ins. Co.,* 329 Ill. App.

12   3d 1166, 769 N.E.2d 100 (2002).  Based upon the decisional law of Illinois and California, Illinois has

13   the superior interest in having its law applied to this issue.

14   **E.   MOTION TO DISMISS FOURTH CAUSE OF ACTION FOR UNFAIR CLAIMS**

15   **PRACTICES UNDER NEVADA STATUTE**

16         Question 1:  Were the alleged wrongful acts of Continental done "in the state" of Nevada

17   within the meaning of Nevada Revised Statute 686A.310, so as to allow application of Nevada's claims

18   handling law to those activities?

19         Answer:  Yes.  By insuring a Nevada corporation doing business in Nevada, Continental has

20   engaged in the insurance business in Nevada. Consequently, Continental is subject to Nevada insurance

21   law, and to the dictates of Nevada Revised Statute 686A.310.  *See Pioneer Chlor Alkali Co. v. Nat'l*

22   *Union Fire Ins. Co.,* 863 F.Supp. 1237, 1241 (D. Nev. 1994).

23         Question 2:  Do California choice of law rules favor application of the Nevada claims handling

24   statute, where the claim in question involved a tender by a Nevada corporation of a claim by a Nevada

25   resident under a policy executed and delivered in Nevada?

26         Answer:  Yes.  California has no interest in preventing Nevada, which allows its citizens a

27   private cause of action for violation of its claims handling standards, from applying its law to this case.

28

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551    2

## II. <u>STATEMENT OF FACTS</u>

This is an insurance bad faith and breach of contract action arising out of the failure of The Continental Insurance Company ("Continental") to defend and indemnify its insured, Ecklund Insulation Inc. ("Ecklund Insulation"). Continental is a Pennsylvania Corporation with its principal place of business in Chicago, Illinois. (Request for Judicial Notice.)

On August 11, 2006, the Plaintiffs, Franklin and Dana Ham, filed an action for personal injuries and loss of consortium in San Francisco Superior Court, seeking damages arising out of Mr. Ham's diagnosis of malignant mesothelioma, a terminal cancer caused by asbestos. (*See* Complaint, Ex. B, Cover page and ¶9.) The Complaint was amended to add Ecklund Insulation as a Defendant on or about August 28, 2006. (*See* Complaint, Ex. C.) Ecklund Insulation is a Nevada corporation. (Request for Judicial Notice.) Mr. Ham alleged in his personal injury suit that he worked as a pipefitter and controls technician in Nevada and Northern California, and that he worked at several sites in the presence of Ecklund Insulation employees from the early 1960's through the 1970's. (*See* Complaint, Ex. B, ¶ 8; and Ex. D p. 4, line 3 to p. 5, line 7.) He alleged that the Ecklund Insulation employees cut and installed asbestos-containing insulation in his presence, thereby exposing him to asbestos dust that caused his mesothelioma. (*See id.*)

The Complaint in the personal injury action was served on Ecklund Insulation's President, Jerry Ecklund, at his home in the State of Washington. (Complaint at ¶ 10.) Throughout the 1960's, Mr. Ecklund had purchased multiple policies of Comprehensive General Liability insurance for Ecklund Insulation from Glens Falls Insurance Company ("Glens Falls"). (Complaint at ¶¶ 5 and 6.) These policies provided coverage for products liability and general liability. (*Id.*) They were executed and delivered to Ecklund Insulation in Reno, Nevada. (*Id.*) In approximately September of 2006, Mr. Ecklund tendered the Hams's personal injury Complaint to Continental, which is the successor-in-interest to Glens Falls. (Complaint at ¶¶ 1 and 7.)

Continental responded to Mr. Ecklund, stating that it would search for any insurance policies issued to Glens Falls and requesting any documentation related to the policies. Thereafter, Mr. Ecklund sent Continental a copy of a Certificate of Insurance issued by Glens Falls to Ecklund Insulation, describing a policy of Comprehensive General Liability coverage for a two year period from 1964 to

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551     3

1    1966. (Complaint at ¶ 11 and at Exhibit A.)  Continental never responded to this communication in any

2    way. (Complaint at ¶ 11.)  Continental also failed to provide a defense to Ecklund Insulation.  (*Id.* at

3    ¶ 13.)    Meanwhile, counsel for the Hams also attempted to open settlement negotiations with

4    Continental by sending it another copy of the Certificate of Insurance.  Continental never responded to

5    this communication.  (*Id.* at ¶ 11.)

6            On November 30, 2006, the Clerk of the San Francisco Superior Court entered default against

7    Ecklund Insulation.  Plaintiffs provided notice to Continental of the entry of default. (*Id.* at ¶ 13.)

8    Throughout the pendency of the personal injury case, Plaintiffs provided notice to Continental of the

9    Request for Entry of Default and of all hearings, trial dates, court orders and depositions.    (*Id.*)

10   Plaintiffs also provided Continental with timely notice of the Default Prove-up Hearing scheduled for

11   June 28, 2007 before the Honorable Charlotte Woolard, Judge of the Superior Court of San Francisco

12   County.  The notice stated that a judgment would be sought against Ecklund Insulation. (*Id.*)   At the

13   same time, Plaintiffs provided Continental with the trial brief and evidence submitted to Judge Woolard

14   in support of their request for entry of judgment.  (*Id.*)

15           On June 28, 2007, the Court entered judgment in favor of Plaintiff Franklin Ham in the amount

16   of $671,000 for economic damages and $1,300,000 non-economic damages, and in favor of Plaintiff

17   Dana Ham in the amount of $700,000 non-economic damages, for a total judgment in favor of Plaintiffs

18   and against Ecklund Insulation in the amount of $2,671,000.  (Complaint at ¶ 14 and Ex. E.)  A copy

19   of the Notice of Entry of Default Judgment Against Ecklund Insulation, Inc. was served on Continental

20   on or about June 28, 2007.  (*Id.*)

21           Plaintiffs sent Continental a letter via certified mail on December 26, 2007, offering to resolve

22   Plaintiffs' claims against Continental and Ecklund Insulation for policy limits.  The December 26, 2007

23   letter further stated that the offer to settle would remain open for 30 days from Continental's receipt of

24   the letter.  Continental received the letter on January 2, 2008.  Continental did not respond to Plaintiffs'

25   counsel within 30 days, or at any time before the instant lawsuit was filed.  (*Id.* at ¶ 15.)

26           Subsequent to the entry of judgment, Plaintiffs obtained an assignment from Ecklund Insulation

27   of all causes of action it had against Continental in exchange for a covenant not to execute. (Complaint,

28   Ex. F.)

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          4

# III. **LEGAL ARGUMENT**

## A.    **PLAINTIFFS DO NOT OPPOSE THE MOTION TO STRIKE CONSPIRACY CLAIMS**

Plaintiffs do not currently intend to assert a conspiracy claim against Continental, and therefore do not oppose Continental's motion to strike the passage quoted in its points and authorities (i.e., Complaint ¶ 3 at 2:8-11).

## B.    **THE MOTION TO STRIKE THE THIRD CAUSE OF ACTION FOR BREACH OF THE DUTY TO SETTLE SHOULD BE DENIED**

### 1.    **An Insurer's Duty to Settle Is Not Extinguished Upon Entry of Judgment**

Continental acknowledges that an insurer has a duty to its insured to accept a reasonable settlement offer within policy limits. Its motion to dismiss is premised on the argument that Continental was suddenly relieved of its duty when a judgment was rendered against its insured. Actually, the opposite is true. Since the adverse impact upon the insured of a failure to settle within policy limits was no longer merely potential, but was actually certain after judgment became final, the duty on the insurer to accept a reasonable settlement offer was ***heightened*** post-judgment.

The policy limits demand Plaintiffs extended was limited to a period of 30 days from Continental's receipt thereof. (*See* Complaint at ¶ 15.) Continental received the demand but failed to respond. (*See id.*) Having squandered its chance to settle within policy limits, Continental exposed its insured to certain and definite consequential damages, i.e., liability for the entire $2,671,000 judgment.

No California cases address the factual scenario where a policy limits demand was made post-judgment. The case principally relied on by Continental, *Communale v. Traders & Gen. Insur. Co.*, 50 Cal. 2d 654, 328 P.2d 198 (1958), did not involve or discuss the implications of a post-judgment settlement demand.

Conversely, the Arizona case of *Chenoweth v. Fin. Indem. Co.*, 13 Ariz. App. 313, 476 P.2d 519 (1970) is directly on point. There, the plaintiff obtained a $35,000 personal injury judgment against the insured, who subsequently filed for bankruptcy. The plaintiff made an offer to the insurer to resolve the judgment for less than policy limits, which offer was rejected. The plaintiff then received an assignment of the judgment debtor's rights against the insurer, and pursued an action for breach of the covenant of good faith and fair dealing. After reviewing the general duty of an insurer to exercise good

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551    5

1   faith in evaluating settlement demands, the Court held as follows:

2           In the instant case, the settlement offered and rejected occurred *after*
        *judgment*. A somewhat *more stringent rule* has been applied in such
3       cases. Both the annotation cited and 8 Blashfield, Automobile Law and
        Practice §343.4 (3rd Ed. 1966), with the cases cited therein, agree the rule
4       is as follows:

5           "A *greater duty* rests on an insurance company, *after a verdict in excess*
        *of the limits of the policy has been returned than exists before such*
6       *event*, to determine whether the litigation should be settled when it can be
        settled within the policy limits; and, where a verdict in excess of the policy
7       limits has been returned against the insured, and a settlement is offered
        within the policy limits, in order for the insurance company to insist on an
8       appeal in good faith, the facts for reversal must be very strong and the
        chances of success correspondingly greater than chances of failure."
9
            We find no express Arizona case on this point, but the logic and apparent
10      agreement as to this rule is compelling.

11  *Chenoweth*, 476 P.2d at 521 (emphasis added). Thus, the court concluded, "*in light of the high duty*

12  *placed on the insurance carrier in post-judgment cases*, the fact of a $35,000 judgment and a $ 9,500

13  offer raises the issue of bad faith for a jury." *Id.* (emphasis added).

14          Continental tortuously attempts to argue that *Communale* stands for the proposition that a pre-

15  judgment demand is required to implicate the duty to settle. Although *Communale* held that failure

16  to settle pre-judgment could lead to consequential damages in excess of policy limits, it did not hold

17  that such damages were not similarly available for post-judgment breaches. To the contrary,

18  "*Communale* and its progeny merely stand for the proposition that if an insurer rejects a reasonable

19  settlement offer within policy limits, it may become obligated to pay more than its policy limits."

20  *Campbell v. Farmers Exch. Co.*, 44 Cal. App. 4th 1308, 1318, 52 Cal. Rptr. 2d 385 (1996).

21          The Court in *Communale* began its analysis by recognizing the insurer's duty to settle, which

22  implicated the duty of good faith and fair dealing:

23          The insurer, in deciding whether a claim should be compromised, must
        take into account the interest of the insured and give it at least as much
24      consideration as it does to its own interest. [Citation.] When there is great
        risk of a recovery beyond the policy limits so that the most reasonable
25      manner of disposing of the claim is a settlement which can be made within
        those limits, a consideration in good faith of the insured's interest requires
26      the insurer to settle the claim. Its unwarranted refusal to do so constitutes
        a breach of the implied covenant of good faith and fair dealing.
27
28  *Communale*, 50 Cal. 2d at 659. This duty, as described by the California Supreme Court, has no

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551                    6

1    expiration date.

2          Next, the Court applied contract principles of consequential damages to conclude that a breach

3    of the duty to settle could lead to damages beyond policy limits:

4                    Section 3300 of the Civil Code provides that the measure of damages for
                     a breach of contract is the amount which will compensate the party
5                    aggrieved for all the detriment proximately caused by the breach, or
                     which, in the ordinary course of things, would be likely to result from it.
6                    .... It is clear that section 3300 of the Civil Code authorizes a recovery
                     in excess of the policy limits.

7

8    *Communale*, 50 Cal.2d at 661. Continental argues that, because the judgment in this case was rendered

9    before the demand for policy limits was made, there could be no proximate cause and thus no damages

10   stemming from its failure to settle. Continental misses the point entirely.   The consequential damages

11   to Ecklund Insulation occurred after the settlement offer was made, when the settlement offer ***expired***.

12   Before that, Continental had the opportunity to put Ecklund Insulation's liability to rest for policy

13   limits. When the 30 day period for the offer expired, the damages to the insured were immediate and

14   entirely foreseeable. The proximate causation occurred when, as a consequence of Continental's breach,

15   the cost of resolution moved from policy limits to $2,671,000.

16        **2.        Whether the Demand Was Sufficiently Definite to Have Been Breached by**

17                    **Continental is a Question of Fact**

18          Finally, Continental argues that the demand Plaintiffs extended was "void for vagueness." This

19   argument is without merit, because the December 26, 2007 letter in which the demand was made is ***not***

20   ***before the Court***. Only the Complaint is before the Court. The Complaint alleges that a policy limits

21   demand was made, which is a sufficient allegation to support the claim that the duty to settle was

22   breached. (*See* Complaint at ¶ 15.) When ruling on a motion to dismiss, a court should accept all factual

23   allegations in the complaint as true and construe the pleadings in the light most favorable to the

24   nonmoving party. *Kneivel v. E.S.P.N.*, 393 F.3d 1068, 1072 (9th Cir. 2004).   Because the allegation in

25   the Complaint was sufficient to allege that a policy limits demand was made, any further consideration

26   of what the demand did or did not encompass is premature at the pleading stage.

27          Moreover, Continental's legal argument relies on an inapposite contracts case, *Ladas v. Cal.*

28   *State Auto. Assn.*, 19 Cal. App. 4th 761, 23 Cal. Rptr. 2d 810 (1993). In *Ladas*, the issue was whether

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          7

1  a particular contract term in an employment contract was sufficiently definite to be enforced. Neither

2  that case nor any other holds that, in order to invoke the duty to settle, a judgment creditor's offer must

3  be sufficiently definite to create an enforceable contract if accepted. The issue in this case is not

4  whether a contract was formed, since Continental failed to respond in any way to Plaintiffs' demand.

5  Instead, the issue is, upon receiving Plaintiffs' demand, did Continental breach its duty to settle? This

6  is not a question that is suitable for resolution at the pleading stage.

7      While the existence of a duty may be a question of law, whether or not that duty was breached

8  is a question of fact. *See Kirchner Bros. Oil v. Natomas Co.,* 185 Cal. App. 3d 784, 229 Cal. Rptr. 899

9  (1986). Continental is asking this Court to find that there was no breach of the duty to settle, because

10  the settlement offer was "vague." However the vagueness of the demand cannot be determined without

11  access to facts that are not yet in the record. At this early juncture, we have no evidence as to the

12  contents of the demand or as to how Continental perceived it. It may have been crystal clear to

13  Continental what the policy limits in question were. Hypothetically, if Continental had previously

14  located and analyzed its Ecklund Insulation policies, and determined that the applicable aggregate limit

15  was $300,000, a jury could reasonably conclude that it breached its duty to engage in settlement

16  negotiations. If the policy limits were clear to Continental, so was its duty to settle.

17      Even without such knowledge on Continental's part, a jury could conclude that Continental

18  breached its duty by failing to contact Plaintiffs' counsel to engage in settlement discussions, and that

19  Continental's duty to its insured encompassed the duty to investigate the policy limits, or to at least

20  engage in some communication with Plaintiffs' counsel about what those limits were. In California,

21  an insurer's duty to its insured include the duty to investigate. *See, e.g., Jordan v. Allstate Ins. Co.,*

22  148 Cal. App. 4th 1062, 56 Cal. Rptr. 3d 312 (2007). If a judgment creditor expresses a willingness

23  to settle for policy limits, it is reasonable to require the insurer to take steps to effectuate a settlement

24  and relieve its insured of the judgment, rather than do nothing on the ground that the demand was "too

25  vague."

26      In short, this Court should not accept Continental's invitation to hold that, as a matter of law,

27  the duty to settle was not breached based on the facts alleged in the Complaint. If the Court is inclined

28  to grant the motion to dismiss, Plaintiffs respectfully request leave to amend in order to allege that

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551    8

1 | Continental knew, or should have found out, what the policy limits in question were.

2 | C.    **PLAINTIFFS' THIRD PARTY TORT CLAIM (SEVENTH CAUSE OF ACTION) IS**

3 | **NOT A "DIRECT ACTION," AND IS AUTHORIZED BY BOTH CALIFORNIA AND**

4 | **NEVADA LAW**

5 |          Continental's Motion to Strike Plaintiffs' Seventh Cause of Action is premised on a faulty

6 | characterization of the Ham's claim as a "direct action" against an insurer.   The authorities relied on

7 | by Continental speak to attempts by a third party to sue an insurer ***without having first obtained a***

8 | ***judgment against the insured***.   In the instant case, the Hams have ***not*** attempted to leapfrog the

9 | tortfeasor by suing its insurer in a "direct action."  Instead, the Hams first sued Continental's insured,

10 | Ecklund Insulation, and obtained a final judgment.  As judgment creditors, they are third party

11 | beneficiaries to Continental's insurance contract with Ecklund Insulation, and are entitled to maintain

12 | an action against Continental for payment of the judgment and for breach of the covenant of good faith

13 | and fair dealing under both California and Nevada law.

14 |          Many Federal Court decisions have recognized the distinction between "direct actions,"

15 | "where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's

16 | liability insurer directly," and cases where a judgment creditor sues to enforce the insurer's duties under

17 | the insurance contract.  *See, e.g., Searles v. Cincinnati Ins. Co.* 998 F.2d 728, 729 (9th Cir. 1993);

18 | *Beckham v. Safeco Ins. Co.,* 691 F.2d 898, 901-902 (9th Cir. 1982); *Weast v. Travelers Ins. Co.,* 7

19 | F.Supp.2d 1129, 1132 (D.  Nev. 1998).   These cases have involved the proper interpretation of 28

20 | U.S.C. §1332(c), which "eliminate[s] from diversity jurisdiction tort claims in which both the injured

21 | party and the tortfeasor are local residents, but which, under state 'direct action' statutes, are brought

22 | against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant."

23 | *Beckham,* 691 F.2d at 901. Actions by judgment creditors, including "bad faith" actions, are not "direct

24 | actions" within the meaning of that statute.  *Id.*; *Searles,* 998 F.2d at 729.  Although the context here

25 | is different, the distinction is equally relevant to Continental's motion to dismiss.  Although neither

26 | California nor Nevada is a "direct action" state, both allow suits by judgment creditors to enforce the

27 | terms of insurance policies.

28 | */ / /*

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

1.    **California Law Allows Suits against Insurance Companies by Third Party Judgment Creditors**

The leading case in California on this issue is *Hand v. Farmers Ins. Exch.,* 23 Cal. App. 4th 1847, 29 Cal. Rptr. 2d 258 (1994). In *Hand*, the plaintiff obtained a personal injury judgment against the defendant's insured. *Id.* at 1852. When Farmers refused to pay the judgment, the plaintiff filed suit against Farmers for breach of the covenant of good faith and for intentional infliction of emotional distress. She sought punitive damages in both causes of action. *Id. at* 1852. She did *not* have an assignment from the insured. The trial court granted summary judgment to Farmers on both causes of action, and the Court of Appeal reversed. In so doing, the Court of Appeal explained that in California, judgment creditors become third party beneficiaries of the judgment debtor's insurance policies. *Id.* at 1157, citing *Murphy v. Allstate Ins. Co.,* 17 Cal. 3d 937, 943, 553 P.2d 584, 588 (1976). Thus, a judgment debtor's insurer owes the judgment creditor a duty to pay adjudicated claims, as well as a duty to exercise good faith in not withholding such payments:

> [T]he insurer's policy duty to pay adjudicated liabilities is in place as much to protect adjudicated injured parties from uncompensated loss as to protect the insured from personal financial disaster.
>
> To this end, once having secured a final judgment for damages, the plaintiff becomes a third party beneficiary of the policy, entitled to recover on the judgment on the policy. At that point the insurer's duty to pay runs contractually to the plaintiff as well as the insured. And the plaintiff having also become a beneficiary of the covenant of good faith [citation], the duty to exercise good faith in not withholding adjudicated damages necessarily is owing to the plaintiff also.

*Hand,* 23 Cal. App. 3d at 1858. Thus, the Court allowed the judgment creditor to pursue her bad faith cause of action against the insured. *Id.* at 1860.

In *Hand*, the plaintiff's suit was based on California Insurance Code § 11580(b), which mandates that insurance policies are read in California to include a provision allowing judgment creditors to pursue lawsuits against the insurers of insolvent judgment creditors. However the *Hand* Court noted that the duty of good faith owed by insurers to judgment creditors in California exists independently of the statute:

> [C]ontrary to Farmers's insinuation, a right of action for breach of the implied covenant of good faith and *need not be sought or found in the statute*, because the actionable duty has always been implied by law from

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551    10

1  and into the contract itself.  Although particular legislation might possibly
2  supersede or "repeal" the implied covenant, it is nowise the necessary
   source of it.

3  *Hand.* 23 Cal. App. 3d at 1859 (emphasis added).

4       The sole California case cited by Continental on this issue, *Royal Surplus Lines Ins. Co. v.*
5  *Ranger Ins. Co.*, 100 Cal. App. 4th 193, 122 Cal. Rptr. 2d 459 (2002), is not on point.  That case held that
6  a property owner listed as an additional insured in a contract with its subcontractor ***may*** join both the
7  subcontractor and its insurance company in a bad faith action.   The dicta quoted by Continental served
8  merely to distinguish that factual scenario from the "direct action" scenario, where an injured third party
9  ***joins an insurer and its insured in one lawsuit***.  *See Royal Surplus,* 100 Cal. App. 4th at 200.  The case
10 had nothing to do with the right of a judgment creditor to sue an insurer for bad faith.

11      2.       **Nevada Law Allows Suits Against Insurance Companies by Third Party**
12               **Judgment Creditors**

13      Plaintiffs in this lawsuit have stated a valid third party claim against Continental under Nevada
14 law as well.  Three separate Nevada Supreme Court decisions state that a judgment creditor in Nevada
15 can maintain a cause of action against the tortfeasor's liability insurer.  Each such decision distinguishes
16 an action by a judgment creditor (which is permitted) from a "direct action" by an injured third party
17 who has not yet obtained a judgment (which is not permitted).

18      The first such case is *Roberts v. Farmers Ins. Co.*, 91 Nev. 199; 533 P.2d 158 (1975).  In
19 *Roberts*, the plaintiff was injured in an automobile collision and sued the driver of the adverse vehicle,
20 joining his insurance company, Farmers.  The Supreme Court affirmed the District Court's dismissal of
21 the claims against Farmers.  The Court held that, until the plaintiff obtained a judgment against the
22 insured, there was no breach by Farmers of the insurer's contractual obligations, and thus "...the
23 plaintiff's right against Farmers will not mature until she first has recovered a judgment against the
24 insured." *Roberts,* 533 P.2d at 159.  The Court went on to explain, "[A] final judgment against the
25 insured is a precondition to the plaintiff's right to relief against Farmers." *Id.*, citing *Allen v. Pomroy,*
26 277 A.2d 727 (Me. 1971).

27      The *Roberts* Court cited *Allen v. Pomroy* with approval.  *Allen* was a decision of the Maine
28 Supreme Court.  The facts of *Allen* were substantially the same as in *Roberts*: a plaintiff injured in an

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          11

1  automobile accident sued two alleged tortfeasors and joined their insurers in the suit. The Maine court

2  similarly affirmed dismissals of the two insurers, relying on language in Maine's "Reach and Apply"

3  statute (M.R.S tit.24-A § 2904). That statute, similar to California's Insurance Code § 11580(b), gives

4  judgment creditors the right to pursue the judgment from the tortfeasor's insurer, but states that they may

5  not bring such an action "until 20 days have elapsed from the rendition of the final judgment against the

6  judgment debtors." *See Allen*, 277 A.2d at 728. Thus, the Nevada Supreme Court approved the same

7  framework of third party judgment creditor lawsuits as the one adopted in both Maine and California.

8         In *Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8, 908 P.2d 724 (1996), the plaintiff was hit

9  by a car driven by Cunningham. Cunningham had a motorcycle insurance policy with Progressive, and

10  the plaintiff submitted a claim to Progressive. Progressive denied the claim on the ground that

11  Cunningham's use of the car was not covered under the motorcycle policy. The plaintiff filed a complaint

12  for injuries against Cunningham, and included another cause of action for declaratory relief against

13  Progressive. The trial court dismissed the declaratory relief action for failure to state a claim, and the

14  Supreme Court affirmed the dismissal. In doing so, the Supreme Court cited with approval a Colorado

15  Supreme Court case, *Farmers Ins. Exch. v. District Court*, 1993 Colo. LEXIS 940, 862 P.2d 944 (1993).

16  The Nevada Court explained that case thusly:

17         The Colorado Supreme Court held that a plaintiff does not have standing
       to sue for declaratory relief against a defendant's insurer ***before obtaining***
18       ***a judgment against the defendant***. [Citation.]The court concluded that the
       plaintiff had 'no legally protected right or cognizable interest at stake
19       ***unless and until she has established [the defendant's] liability***.'

20  *Knittle*, 908 P.2d at 725, citing *Farmers Ins. Exchange*, 862 P.2d at 948 (emphasis added). The Nevada

21  Court followed *Farmers Ins. Exchange* and held: "We therefore conclude that since Knittle's rights

22  against Progressive are ***contingent on her successful litigation of a pending tort suit***, Knittle can assert

23  no legally protectible interest creating a justiciable controversy ripe for declaratory relief." *Knittle*, 908

24  P.2d at 726 (emphasis added). The corollary of this holding is that, once a judgment is obtained, the

25  necessary contingency has been satisfied and the plaintiff has a legally protectible interest in the insurance

26  policy, to which enforceable duties attach on the part of the insurer.

27         Most recently, the Nevada Supreme Court addressed this issue in *Hall v. Enterprise Leasing*

28  *Co.-West*, 2006 Nev. LEXIS 81, 137 P.3d 1104 (2006). In *Hall*, the plaintiff was injured in an automobile

1  accident involving the driver/lessee of a vehicle leased from Enterprise.  The plaintiff settled with the

2  driver by accepting an "offer of judgment" in the amount of the driver's policy limits.  The plaintiff then

3  sued Enterprise in a separate action in an attempt to recover the remaining damages.  The basis for the

4  second suit was that, as required by Nevada statute, Enterprise had provided the driver/lessee with

5  additional insurance in the form of Nevada's statutorily mandated minimum coverage for vehicle lessees.

6  Essentially, the plaintiff sought recovery directly from Enterprise in its capacity as the driver/lessee's

7  excess insurer.  The Nevada Supreme Court affirmed dismissal of the suit, holding that, as an insurer for

8  the lessee, Enterprise could only be liable to the plaintiff if the liability of the lessee were first established:

9  
> In short, Nevada is not a 'direct action' state, but rather, allows actions by
> third-party tort claimants against third-party liability coverage providers
> **only after a judgment against the tortfeasor has been obtained.**

10  

11  *Hall*, 137 P.3d at 1109.  In so holding, the Nevada Supreme Court again recognized that the establishment

12  of the tortfeasor's legal liability was a "condition precedent to the right to collect" from the insurer. *Id.*

13  at 1109.

14          In the instant case, the Hams have satisfied the "condition precedent" of obtaining a judgment

15  against Ecklund Insulation, thereby entitling them to maintain an action against Continental.

16  Continental's attempt to distinguish the *Hall* case on the ground that it "merely construes a statute limited

17  to automobile rentals" should fail.  Although the *Hall* Court does construe the statute in question as

18  placing the lessor in the position of excess insurer, the Court's approval of suits by judgment creditors

19  is equally applicable in any insurance context.

20          The sole Nevada case cited by Continental, *Gunny v. Allstate Ins. Co.,* 108 Nev. 344, 830 P.2d

21  1335 (1992), is not on point, since the plaintiff in *Gunny* was not a judgment creditor.  Gunny was injured

22  in a water-skiing accident when he was hit by the propeller of a boat driven by his father.  His father was

23  insured by Allstate.  Gunny made a claim to Allstate and when Allstate failed to pay in a timely fashion,

24  he filed suit against Allstate.  He had not sued his father, nor had he obtained any kind of a judgment.

25  The *Gunny* Court affirmed the District Court's granting of summary judgment on the ground that Gunny

26  had no contractual relationship with his father's insurance company.  *Gunny,* 830 P.2d at 1335-6.  Thus,

27  the case was in accord with *Roberts, Knittle* and *Hall* in holding that Nevada is not a "direct action" state,

28  but unlike those cases it did not address the third party beneficiary status of judgment creditors, or their

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          13

1  right to recovery from the judgment debtor's insurer.

2         Thus, under both California and Nevada law, Plaintiffs have stated a cause of action for a third

3  party action by a judgment creditor. Continental's motion to dismiss must be denied.

4  **D.    THE MOTION TO STRIKE PUNITIVE DAMAGES SHOULD BE DENIED**

5         **1.    The Motion to Strike Punitive Damages Must Be Denied Since it Fails to Address**

6              **Plaintiffs' Claims That are Not Based on an Assignment**

7         Continental's Motion to Strike Plaintiffs' punitive damage claims is premised on the mistaken

8  contention that **all** of Plaintiffs' punitive damage claims are based on the assignment from Ecklund

9  Insulation. They are not. Continental correctly quotes Plaintiffs' Complaint, which acknowledges,

10 "Plaintiffs sue the Defendants as the assignee of the Insured's causes of action." However this is not the

11 **exclusive** basis of Plaintiffs' lawsuit. Plaintiffs have asserted their own third party cause of action against

12 Continental (*see* Section C, *supra*), which is not dependent on an assignment from Ecklund Insulation.

13        If Continental's motion to dismiss Plaintiffs' third party claim is denied, so too must its motion

14 to strike be denied, since the motion limits itself to the question of whether punitive damages are

15 assignable. The motion does not address the availability of punitive damages based on Plaintiffs' third

16 party cause of action as judgment creditors. Thus, it should fail. Motions to strike are disfavored,

17 because of the policy favoring resolution on the merits. *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059,

18 1063 (8th Cir. 2000) . This being the case, the Court should not, sua sponte, broaden Continental's

19 Motion to Strike to address the availability of punitive damages under causes of action not discussed in

20 the motion.

21        **2.    Punitive Damages Are Recoverable on a Third Party Claim of Bad Faith by a**

22              **Judgment Creditor**

23        As explained above, California law allows a judgment creditor without an assignment to pursue

24 a bad faith action, seeking punitive damages, against the judgment debtor's insurer. *Hand,* 23 Cal. App.

25 4th 1847. This is precisely the type of claim involved in the instant suit. As explained above, the *Hand*

26 Court held that a duty of good faith and fair dealing extends to judgment creditors under an insurance

27 contract, and that the breach of the duty to third party judgment creditors is tortious. *Id.* at 1858-1860.

28 Similarly, the Nevada courts have recognized the right of third party judgment creditors to sue the

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551        14

1  insurers of judgment debtors for payment of the judgment. (*See*, Section C2, *supra*.) As in California,

2  judgment creditors must gain their standing to sue the insurer as third party beneficiaries to the insurance

3  contract. Like California, Nevada recognizes that the duty of good faith and fair dealing is implied in all

4  insurance contracts, and allows tort remedies, including punitive damages, when it is breached. *See, e.g.,*

5  *Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev. 587, 763 P.2d 673 (1988), overruled in part on different

6  grounds by *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 962 P.2d 596 (1998).

7      **3.**      **The Assignment's Choice of Law Provision May Not Be Invoked by**

8             **Continental, and Does Not Limit Plaintiffs' Remedies in This Lawsuit**

9           Continental's Motion to Strike asserts that California law, which has disallowed the assignment

10  of punitive damages, applies to Plaintiffs' punitive damage claims against Continental. This argument

11  is based upon a choice of law provision in the assignment between Ecklund Insulation and Plaintiffs.

12  However, as the Ninth Circuit has held, "A choice-of-law clause, like an arbitration clause, is a

13  contractual right and generally ***may not be invoked by one who is not a party to the contract*** in which

14  it appears." *Paracor Finance, Inc. v. General Electric Capital Corp.,* 96 F. 3d 1151, 1165 (9th Cir.

15  1996), citing *Britton v. Co-op Banking Group,* 4 F.3d 742, 744 (9th Cir. 1993) [emphasis added]. The

16  *Paracor* Court, deciding the case under California choice of law rules, identified three exceptions where

17  a non-signatory to a contract could invoke a choice of law provision in the contract: where he was a third-

18  party beneficiary to the contract, a successor in interest to the contract, or an agent intended to benefit

19  from the clause. *See Paracor,* 96 F.3d at 1165. Continental fits within none of these exceptions, and

20  therefore cannot invoke the assignment's choice of law provision to bar Plaintiffs' punitive damage

21  claims.

22           Moreover, the question of whether punitive damages are recoverable by an assignee does not

23  involve any issues of performance or breach under the assignment. This case does not involve allegations

24  that the assignment or the covenant not to execute were breached. Rather, the issue here is what remedies

25  are available to Plaintiffs for Continental's breach of the ***insurance contract***. There is no reason to

26  believe that the parties to the assignment had any intention of limiting or proscribing the remedies

27  available under whatever law is applicable to the bad faith dispute. The assignment does not purport to

28  choose the law applicable to the bad faith dispute, nor could the parties to the assignment effect such a

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08-1551    15

1    choice. Continental attempts to graft the assignment choice of law provision onto the insurance contract--

2    a different agreement involving different parties. This should not be permitted. Instead, the assignability

3    of punitive damages should be determined using the standard choice of law approach, i.e., California

4    choice of law rules. (*See*, Section 5, *infra*.)

5         **4.        Under Illinois Law, Punitive Damages Are Assignable**

6             As characterized by Continental's moving papers, Plaintiffs' Complaint alleges that Ecklund

7    Insulation tendered the defense of the Hams's claim "to Continental, in Chicago, and that Continental,

8    in Chicago, failed to respond." (*See* Continental's Memorandum of Points and Authorities at p. 12, lines

9    23-26, citing Complaint ¶1.) The reason that so many of the events giving rise to this lawsuit occurred

10   in Chicago is because Continental's principal place of business is there. (*See* Plaintiffs' Request for

11   Judicial Notice.)

12           Illinois law allows the assignment of punitive damage claims. In *Kleinwort Benson NA, Inc.*

13   *v. Quantum Fin. Svcs.* 181 Ill.2d 214, 692 N.E.2d 269 (1998), the Illinois Supreme Court held that

14   punitive damages were recoverable by the assignees of a common law fraud claim. In so holding, the

15   Court noted, "Today, assignability is the rule and nonassignability is the exception." *Id.* at 225. The

16   Court explained, "punitive damages are a component of the relief available in an action and are therefore

17   deemed a part of the underlying action. Punitive damages are a type of relief, not an independent cause

18   of action. [Citations]." *Id.* at 224. The Court also analyzed the public policy underlying punitive

19   damages, concluding that "allowing the assignees to seek punitive damages does not violate any public

20   policy." *Id.* at 226. The Court explained:

21                    In addition, we note that punitive damages generally serve to punish a
                     wrongdoer and to deter the wrongdoer and others from committing similar
22                   acts in the future. *See e.g.*, *Kelsay v. Motorola, Inc.* 74 Ill.2d 172...(1978).
                     These purposes are served in the instant case whether Quantum seeks such
23                   damages or whether its assignee seeks such damages. The same defendants
                     are involved regardless of the assignment.
24

25   Subsequently, the Illinois Appellate Court upheld the award of punitive damages in an insurance bad faith

26   case, where the plaintiff was the assignee of the insured's bad faith cause of action. See *O'Neill v.*

27   *Gallant Ins. Co.* 329 Ill. App. 3d 1166, 769 N.E.2d 100 (2002).

28   \\

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          16

1    **5.        Choice of Law Rules Mandate the Application of Illinois Law to the Availability**

2            **of Punitive Damages.**

3            A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon*

4   *Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020 (1941).  California applies a three-part

5   governmental interest test to determine which laws apply. *See Arno v. Club Med Inc.,* 22 F.3d 1464, 1467

6   (9th Cir. 1994). First, the Court determines whether the substantive law of the two states differs. *Id.*  If

7   so, the Court examines each state's interest in applying its law to determine if there is a true conflict. *Id.*

8    If each state has a legitimate interest in applying its law, the Court compares the impairment to each

9   jurisdiction under the other state's rule of law. *Id; see also Washington Mutual Bank, FA v. Superior*

10  *Court,* 24 Cal. 4th 906, 919, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001) [holding "California follows a

11  three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most

12  appropriate law applicable to the issues where there is no effective choice-of-law agreement"].

13          Despite materially different laws, "there is still no problem in choosing the applicable rule of

14  law where only one of the states has an interest in having its law applied." *Washington Mutual Bank, FA,*

15  24 Cal.4th at 920.

16              Only if the trial court determines that the laws are materially different *and*
                that each state has an interest in having its own law applied, thus reflecting
17              an actual conflict, must the court take the final step and select the law of the
                state whose interests would be 'more impaired' if its law were not applied.
18              *[Citation.]*  In making this comparative impairment analysis, the trial court
                must determine "the relative commitment of the respective states to the
19              laws involved" and consider "the history and current status of the states'
                laws" and "the function and purpose of those laws." *[Citations.]* These
20              rules apply whether the dispute arises out of contract or tort *[Citations]* ,
                and a separate conflict of laws inquiry must be made with respect to each
21              issue in the case.

22  *Id.*

23          As explained above, there are two "involved states."  First, there is California, the forum state

24  where Plaintiffs obtained a judgment, and second, Illinois, where Continental has argued that all of the

25  tortious conduct alleged by Plaintiffs occurred. [1]  The law of the two involved states differs.  Plaintiffs

26

---

27          [1]Although Nevada is clearly an "involved state," there is no Nevada law addressing the
    assignability of punitive damages, so that a conflict with the law of the forum state does not currently
28  exist, even if Nevada is more likely to follow the "majority rule" of assignability of punitive
    damages. *See F.D.I.C. v. W.R. Grace & Co.* 691 F.Supp.87, 92, 1988 U.S. Dist. LEXIS 5447 (N.D.
    Ill. 1988), *aff'd in part & rev'd in part on other grounds,* 877 F.2d 614 (7th Cir. 1989).

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551        17

1    concede that California law disallows the assignment of punitive damages.  Illinois law clearly allows

2    punitive damages to be assigned.  *See Kleinwort Benson NA, Inc.*, 181 Ill.2d 214;  *O'Neill*, 329 Ill. App.

3    3d 1166.

4           Thus, the next step in the choice of law analysis is to determine whether each of the two states

5    involved has "a legitimate interest in applying its law."  Such an analysis leads to the conclusion that

6    California has no interest in governing the assignability of punitive damages between a Nevada assignor

7    and a Nevada assignee, for a cause of action against a Pennsylvania corporation with its principal place

8    of business in Illinois, involving an insurance contract between Continental and a Nevada insured.

9           The California cases on non-assignability of punitive damages are notable for their lack of any

10   policy explanation for the rule.   The five cases cited by Continental on this point are devoid of any

11   reasoning or policy.  The closest we have is the following statement in *Murphy v. Allstate Ins. Co.*, 17

12   Cal. 3d 937, 942, 553 P.2d 584 (1976): "And because a personal tort cause of action is not assignable in

13   California, it must be concluded that damage for emotional distress is not assignable. [Citations.] The

14   same is true of a claim for punitive damage."

15          Another case cited by Continental, *Archdale v. Am. Int'l. Spec. Lines Ins. Co.*, 154 Cal. App.

16   4th 449, 460, 64 Cal. Rptr. 3d 632 (2007), traces the rule back to a 1932 California Supreme Court

17   decision, *French v. Orange County Inv. Corp.*, 125 Cal. App. 587, 591, 13 P.2d 1046 (1932). The *French*

18   Court's reasoning is similarly unrevealing:

19               In 8 Ruling Case Law page 595, it is said: 'Exemplary damages are
             allowed only to the immediate person receiving the injury, either in a suit
20           prosecuted by himself or by some one for his use.' This appears to be
             harmonious in principle with the rule that 'a bare right to file a bill in
21           equity for fraud committed upon the assignor will be denied because the
             transfer of such right is against public policy'. (*Swallow* v. *Tungsten Prod.*
22           *Co.*, 205 Cal. 207, 217 [270 P. 366, 370].)

23   *Id*. Exactly what that policy is, or how it impacts this case, is unclear.  In any event, California does not

24   have an identifiable policy interest that would be frustrated if its law were not applied in a case between

25   a Nevada assignee of a Nevada insured, against a Pennsylvania corporation with its principal place of

26   business in Illinois.

27          By contrast, Illinois has an interest in regulating corporations doing business in the state, and

28   in deterring their wrongful conduct.   The Illinois Supreme Court, in *Kleinwort Benson NA, Inc.*, held

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551     18

1  that "the question of whether punitive damages may be recovered following an assignment should be

2  determined primarily by public policy." *See Kleinwort Benson NA, Inc.,* 181 Ill.2d at 225.  The Court

3  went on to identify the operative policy of punishing wrongdoers and deterring others from committing

4  similar acts. *Id.* at 226, citing *Kelsay v. Motorola, Inc.* 74 Ill.2d 172, 384 N.E.2d 353 (1978).  On that

5  basis the Court allowed the assignability of punitive damages.

6          In the insurance bad faith context, the Illinois Appellate Court has expressed its punitive

7  damages policy in forceful and unambiguous terms:

8                    [P]unitive damages are designed to deter misconduct. Hopefully, the
                    availability of punitive damages can provide some degree of deterrent
9                    against unscrupulous insurers who would otherwise take advantage of
                    customers and abuse their fiduciary relationship in order to promote their
10                   own economic self-interest. Gallant needed to be told through the award of
                    punitive damages that it had to stop its common practice of ignoring
11                   policy-limit demands in serious cases where liability was clear-cut.

12  *O'Neill,* 329 Ill. App. 3d at 1178-1179.  This public policy of Illinois would be frustrated if its law of

13  assignability were not applied here.  An alleged corporate wrongdoer, doing business in the state of

14  Illinois, and undoubtedly responding to claims of Illinois residents as well as residents of other states,

15  would be insulated from punishment.  Likewise, the absence of punitive damages would frustrate Illinois'

16  policy of deterring Continental ***and others*** from engaging in similar misconduct in the future.

17          In sum, Plaintiffs maintain that there is no real conflict because California has no real interest

18  in having its law applied on this issue.  If the Court finds that a conflict does in fact exist, the

19  governmental interest analysis leads to the application of Illinois law, since the policies behind the law

20  of Illinois would be frustrated if it were not applied.  California law has no similar identified policy in

21  disallowing the assignment of punitive damages that would be frustrated if the Illinois law were applied

22  to this issue.

23  **E.    THE MOTION TO DISMISS THE FOURTH CAUSE OF ACTION FOR UNFAIR CLAIMS**

24       **PRACTICES UNDER NEVADA STATUTE SHOULD BE DENIED**

25       **1.      NRS 686A.310 Encompasses Unfair Claims Practices Directed at Nevada Insureds,**

26              **Whether Committed in or outside of Nevada**

27          Plaintiffs have alleged a cause of action for breach of Continental's statutory duties under

28  Nevada Revised Statute 686A.310.  Continental has moved to dismiss the cause of action based upon

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551       19

1   language in another section of the Nevada statute (i.e., 686A.20) stating that violations of NRS 686A.310

2   "in this state" are unlawful.

3          Continental's motion advances a dubious interpretation of the NRS 686A.20: that unfair

4   conduct by an out-of-state insured toward Nevada insureds does not occur "in Nevada" as long as the

5   insurer's employees commit the unfair practices from offices located out of state.   Under Continental's

6   interpretation, all an insurer must do to avoid compliance with the Unfair Claims Practices Act is to be

7   unfair to Nevada residents from a distance.

8          This exact argument has been rejected by at least one Federal District Court, in *Pioneer Chlor*

9   *Alkali Co. v. Nat'l Union Fire Ins. Co., 863 F. Supp. 1237*, 863 F.Supp.1237, 1994 U.S. Dist. LEXIS

10  18435 (D. Nev. 1994.) The defendant in that case had issued an insurance policy to a Texas corporation

11  that covered several premises, including one in Nevada where an alleged gas leak occurred. *Id.* at 1239-

12  1240.   The Court's own language best summarizes the issue and holding:

13          Pioneer's Second Claim for Relief is based on Chapter 686A of the Nevada
            Revised Statutes. In addition to arguing that Texas bad faith law controls
14          this action, National Union also argues that it is not subject to the standards
            set forth in Chapter 686A of the Nevada Revised Statutes. Under that
15          chapter, an insurer "shall not engage in this state in any practice which is
            . . . an unfair method of competition or an unfair or deceptive act or
16          practice in the business of insurance." NRS 686A.020.  The statute then
            lists identified acts which are declared to be unfair practices. *See* 686A.310.
17          A private cause of action is available to an insured for violations of NRS
            686A.310 by the insurer. *See* NRS 686A.310(2).

18          National Union asserts that Chapter 686A of the Nevada Revised Statutes
            does not apply to its handling of Pioneer's claim because National Union
19          did not engage in a practice "in this state [Nevada]," NRS 686A.020.
            National Union cites no authority supporting its interpretation of NRS
20          686A.020.

21          National Union's argument is completely without merit. Chapter 686A is
            part of a comprehensive plan to regulate insurance practice in Nevada. As
22          touched upon earlier in this Order, by insuring premises in Nevada,
            National Union has engaged in the insurance business in Nevada.
23          Consequently, National Union is subject to Nevada insurance law. That a
            National Union agent was sitting in another state when she decided to deny
24          Pioneer's claim provides no exemption to Nevada insurance law.

25  *Id.* at 1241.   Similarly, by insuring a Nevada insured in this case, Continental is subject to Nevada

26  insurance law, and cannot escape its application by maintaining its offices in a different state.

27          Moreover, the Continental/National Union position is at odds with the policy of the Nevada

28  law, which is part of a legislative effort to "establish a comprehensive plan to regulate the activities of

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551                20

1  the insurance industry within the state." See *Hart v. Prudential Prop. and Cas. Ins. Co.*, 848 F.Supp. 900,

2  902, 1994 U.S. Dist. LEXIS 5043 (D. Nev. 1995).   NRS 686A.310, originally codified in 1975, was a

3  means of increasing the regulatory power of the state Insurance Commissioner. *Pioneer Chlor Alkali Co.*,

4  863 F.Supp. at 1243.  In 1987, Nevada's legislature passed A.B. 811 which, among other things, added

5  subsection 2 to NRS 686A.310, expressly providing insureds with a private cause of action. *Id.*[2]

6         In the context of NRS 686A.310, "in this state" refers to claims practices directed at Nevada

7  losses and Nevada insureds.  The focus of the law is on deterring unfair claims practices affecting

8  Nevadans, and on providing a remedy to Nevadans who are victims of those practices.  If the unfair

9  practices occurred at the behest of office workers in Chicago, this would not take them outside of the

10 reach of the act.  Ecklund Insulation, the insured in this case, is a Nevada corporation, alleged to have

11 bought the policies in Nevada.  The claim tendered to Continental by Ecklund Insulation was a claim

12 made by a Nevada resident.  The unfair claims practices of Continental toward its Nevada insured are

13 actionable under NRS 686A.310.

14  **2.     Contrary to Continental's Assertion, Plaintiffs' Complaint Does Not Allege that All**

15  **of the Offending Conduct Took Place Outside Nevada**

16         Even if the Court were to adopt Continental's narrow reading of the "in this state" language

17 of NRS 686A.20, dismissal of the Fourth Cause of Action would be improper.  Continental interprets

18 Plaintiffs' Complaint to allege that "none of the conduct complained of transpired in Nevada."

19 (Continental's Points and Authorities, p. 12, line 15.)  Nowhere in Plaintiffs' Complaint does such an

20 assertion appear, nor is it reasonably deducible from the facts alleged.  Although Continental has not so

21 specified, Plaintiffs assume its motion is grounded on Rule 12(b)(6).  Such motions are viewed with

22 disfavor and rarely granted. *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When

23 a complaint's allegations are capable of more than one inference, the Court must adopt whichever

24 inference supports a valid claim. *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th Cir.

25 1995).  Courts must assume that all general allegations "embrace whatever specific facts might be

26

27        [2] Subsection 2 provides as follows:
           In addition to any rights or remedies available to the commissioner, an insurer is
28         liable to its insured for any damages sustained by the insured as a result of the
           commission of any act set forth in subsection 1 as an unfair practice.

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551     21

1   necessary to support them." *Peloz v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

2         Plaintiffs have properly pled a violation of Nevada Revised Statute 686A.310. To the extent

3   such a claim necessarily encompasses conduct occurring in Nevada, the Court should interpret the

4   Complaint in that manner, rather than in the exclusive manner urged by Continental. The Complaint

5   alleges, for instance, a "failure and refusal to undertake any investigation of the Occurrence." (Complaint

6   at ¶ 25.) This would constitute a violation of NRS 686A.310(c) ("Failing to adopt and implement

7   reasonable standards for the prompt investigation and processing of claims arising under insurance

8   policies"). Continental would have the Court assume, and conclusively determine, that such a failure

9   necessarily occurred in Illinois. There is no reason to embrace such an interpretation. More plausible

10  is that at least part of the failed investigation occurred in Nevada, where Mr. Ham lived and worked,

11  where Ecklund Insulation conducted its business, and where the alleged policies were initially delivered

12  to Ecklund Insulation. (*See* Complaint at ¶¶5 and 6.)

13        Moreover, Plaintiffs are entitled to pursue discovery to establish the extent to which the alleged

14  offending conduct occurred in Nevada. For instance, did Continental assign the claim for handling to a

15  Nevada adjuster? Did Continental employ a Nevada investigator? Did Continental contact the agent in

16  Nevada that sold the policy to Ecklund Insulation? Did that agent participate in the claims evaluation?

17  These questions are not appropriate to resolve at this point. Instead, the claim should proceed. If

18  Continental wishes to bring a summary judgment motion on this claim after discovery has occurred, that

19  would be a more appropriate time to evaluate whether its conduct had a sufficient nexus to Nevada to be

20  actionable. For now, Plaintiffs' allegations are sufficient.

21      **3.      California Choice of Law Rules Favor Application of the Nevada Statute**

22        There is a material difference between the Nevada Unfair Claims Handling Act and the

23  California equivalent. The Nevada act allows a private right of action. NRS 686A.310. The California

24  acts do not. *Moradi-Shalal v. Fireman's Fund Ins.*, 46 Cal. 3d 287, 304, 758 P.2d 58 (1988). As

25  outlined above, the policy of the Nevada law is to "establish a comprehensive plan to regulate the

26  activities of the insurance industry within the state." *Hart*, 848 F.Supp. at 902. California has no similar

27  interest in this controversy, since neither the insured, the claimant, nor the insurance company is a Nevada

28  resident. The insurance policy in question was delivered in Nevada to a Nevada corporation.

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551      22

1   California has no policy interest that would be frustrated if Plaintiffs, as assignees of Ecklund

2   Insulation, were prevented from maintaining a private cause of action for violation of the Nevada Claims

3   Handling Act.  By contrast, the Nevada policy of regulating and providing uniform standards of conduct

4   for insurers doing business in Nevada would be frustrated if Plaintiffs' claim were disallowed.  So too

5   would the obvious policy of providing remedies to Nevada residents for the breach of the Nevada claims

6   handling standards.

7   Continental argues that "allowing Plaintiffs to impose Nevada's regulatory scheme here would

8   create regulatory chaos for policyholders and insurers alike."  While this may be an argument to make

9   before the Nevada legislature, the Court's role here is not to reevaluate the wisdom of Nevada's

10  unambiguous statutory law.  Since California has no policy interest in preventing the maintenance of a

11  NRS 686A.310(2) claim by a Nevada corporation (or its assignee) arising out of a policy delivered in

12  Nevada, the Nevada claims handling statute should be applied.

13  ### IV.  CONCLUSION

14  For the foregoing reasons, Plaintiffs respectfully request that Continental's motions to strike

15  punitive damages and motions to dismiss the Third, Fourth and Seventh Causes of Action each be denied.

16  If the Court is inclined to grant any part of Defendant's motion (apart from the Motion to Strike the

17  conspiracy claims), Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend the

18  complaint to add additional allegations.

19  Dated:  June 20, 2008.                         CLAPPER, PATTI, SCHWEIZER & MASON

20

21                                                 By: _____

22                                                         Steven J. Patti
                                                         Attorney for Plaintiffs

23

24

25

26

27

28

CPSM
2330 Marinship Way, #140
Sausalito, CA  94965
(415) 332-4262

Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims - Case No. CV 08 1551          23