Jack K. Clapper,  (State Bar No. 83207)
Steven J. Patti, (State Bar No. 163773)
Clapper, Patti, Schweizer & Mason
Marina Office Plaza
2330 Marinship Way, Suite 140
Sausalito, CA 94965
Telephone: (415) 332-4262
Facsimile: (415) 331-5387

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANKLIN HAM and DANA HAM,<br><br>        Plaintiffs,<br><br>v.<br><br>THE CONTINENTAL INSURANCE COMPANY; and DOES 1 through 50,<br><br>        Defendants. | Case No. CV 08 1551 SC<br><br>**DECLARATION OF STEVEN J. PATTI IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CERTAIN CLAIMS** |

Date:       **July 11, 2008**
Time:       **10:00 a.m.**
Courtroom:  **1**

**Hon. Samuel Conti**

I, Steven J. Patti, declare:

1.  I am an attorney licensed to practice law in the State of California.  I am a principal in the law offices of Clapper, Patti, Schweizer & Mason, attorneys of record for plaintiffs.

2.  Attached hereto as Exhibit "A" is a true and correct copy of plaintiffs' Complaint herein, with the exhibits thereto.

3.  Attached hereto as Exhibit "B" is a true and correct copy of Articles of Incorporation of Ecklund Insulation, Inc. received by my office from the Nevada Secretary of State.

4.  Attached hereto as Exhibit "C" is a true and correct copy of The Continental Insurance

1    Company's filing with the Colorado Secretary of State, printed from the Colorado Secretary of State

2    website.

3            I declare under penalty of perjury under the laws of California that the foregoing is true and

4    correct.

5            Executed this 20th day of June, 2008, at Sausalito, California.

6

7                                                    By: _____

8                                                         Steven J. Patti
                                                         Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EXHIBIT* A

ORIGINAL

1  Jack K. Clapper, Esq. (State Bar No. 83207)
   Steven J. Patti (State Bar No. 163773)
2  Christine A. Renken (State Bar No. 232797)
   Clapper, Patti, Schweizer & Mason
3  Marina Office Plaza
   2330 Marinship Way, Suite 140
4  Sausalito, CA 94965
   Telephone: (415) 332-4262
5  Facsimile: (415) 331-5387
   Email: jkc@clapperlaw.com
6         steve@clapperlaw.com
          christine@clapperlaw.com
7
   Attorney for Plaintiffs
8

                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  FRANKLIN HAM and DANA HAM,          )  Case No. CV 08 1551 SC
                                        )
12          Plaintiffs,                 )  SECOND AMENDED COMPLAINT FOR:
                                        )  (1)   BREACH OF INSURANCE
13  v.                                  )  CONTRACT;
                                        )  (2)   BREACH OF THE DUTY TO
14  THE CONTINENTAL INSURANCE           )  DEFEND;
    COMPANY; and DOES 1 through 50,     )  (3)   BREACH OF THE DUTY TO SETTLE;
15                                      )  (4)   BREACH OF INSURER'S
            Defendants.                 )  STATUTORY DUTY;
16                                      )  (5)   BREACH OF THE IMPLIED
                                        )  COVENANT OF GOOD FAITH AND
17                                      )  FAIR DEALING (BAD FAITH);
                                        )  (6)   DECLARATORY RELIEF;
18                                      )  (7)   ACTION BY THIRD PARTY TORT
                                        )  CLAIMANT.
19                                      )
                                        )
20  _____ )  **DEMAND FOR JURY TRIAL**

21          Plaintiffs, Franklin Ham and Dana Ham (collectively "Plaintiffs") allege as follows:

22                          **GENERAL ALLEGATIONS**

23          1.      Plaintiffs are informed and believe and thereon allege that Glens Falls Insurance

24  Company at all relevant times was a corporation, authorized to transact, and transacting, business in the

25  State of California. Plaintiffs are further informed and believe and thereon allege that The Continental

26  Insurance Company is the successor-in-interest to Glens Falls Insurance Company, and is a corporation,

27  authorized to transact, and currently transacting business in the State of California. Both entities will

28  collectively be referred to as "CNA."

2. Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, governmental or otherwise of defendants sued as DOES 1 through 50, inclusive, and sues these Defendants by such fictitious names. Plaintiffs, after obtaining leave of Court, if necessary, will amend this Complaint to show such true names and capacities when the same have been ascertained.

3. At all times herein mentioned, each of the Defendants, except as otherwise alleged, was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Certain Defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Insured; and such Defendants, as co-conspirators, are liable for the acts, or failures to act, of the other conspiring Defendants. Plaintiffs are informed and believe, and allege, that at all times herein mentioned Defendants FIRST DOE through FIFTIETH DOE, inclusive, were and are authorized to do business in the State of California, that said Defendants have regularly conducted business in the County of San Francisco, State of California, and that certain of said Defendants have designated the County of San Francisco as their principal place of doing business within the State of California.

4. At all times herein mentioned, each of the Defendants was the successor, successor in business, assign, predecessor, predecessor in business, parent, subsidiary, alter-ego, agent and/or fiduciary wholly or partially owned by, or the whole or partial owner of or member of the other Defendants. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants are liable for the tortious conduct of each successor, successor in business, assign, predecessor, predecessor in business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY | GLENS FALLS INSURANCE COMPANY<br>CNA INSURANCE COMPANIES |
| | FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY |

## THE INSURANCE POLICIES

5.    On or about June of 1964, in consideration of the payment of a premium, Defendants, by their duly authorized agents, executed and delivered to ECKLUND INSULATION, INC., hereinafter referred to as "the Insured," in the City of Reno, County of Washoe, State of Nevada, their Comprehensive General Liability Insurance policy bearing number PCL 50-09-99 with a policy limit for bodily injury of $100,000 each person and $300,000 each accident. Plaintiffs are informed and believe and thereon allege that this insurance policy's coverage began on or about June 1964 and expired on or about November 1966. This policy will referred to as the "1966 Policy."

6.    Plaintiffs are also informed and believe and thereon allege that additional insurance policies exist that were issued by Defendants to the Insured for multiple years after 1966. These insurance policies were also Comprehensive General Liability policies. The policy limits for these additional insurance policies were the same or more than the 1966 Policy. The policies, including the 1966 Policy, will collectively be referred to as "the Policies." Under the Policies, Defendants undertook to and did insure for both products liability and general liability and agreed to indemnify and defend the Insured in any civil action or suit seeking such damages. In doing so, Defendants entered into a fiduciary relationship with the Insured and became bound by their fiduciary duties to the Insured. Plaintiffs are informed and believe and thereon allege that the Policies did not contain any exclusions referencing asbestos, asbestos products or asbestos-related injuries. A copy of the 1966 Policy's Certificate of Insurance is attached hereto as Exhibit "A" and incorporated by reference.

7.    While the Policies were in full force and effect, the Insured sold asbestos-containing products and performed work as a contractor using asbestos-containing products that exposed Plaintiff, Franklin Ham to asbestos dust. Mr. Ham worked with the Insured's employees on multiple work sites from the early 1960's through the early 1970's, at least, as they exposed him to asbestos dust by their use of rigid split asbestos pipe covering and dry asbestos cement. The Insured's employees failed to

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC                    3

warn Mr. Ham about the hazards inherent in breathing the dust from their work or take precautions to protect him from the dust. Mr. Ham breathed asbestos fibers that were created when the Insured's employees performed work as a contractor using asbestos-containing products, thereby causing injuries to Mr. Ham. Those events will hereinafter be referred to as "the Occurrence." Plaintiffs and the Insured gave Defendants due and timely notice of the Occurrence, and Defendants, through their employees and agents, failed to investigate the claim, failed to represent the Insured in the settlement negotiations and failed to defend the Insured in the underlying action hereinafter mentioned.

## THE UNDERLYING ACTION

8.      On August 11, 2006, Plaintiffs' Complaint was filed in the Superior Court of San Francisco, entitled *Franklin Ham and Dana Ham v. Acco-Air Conditioning Company, et al.*, case number 455063, hereinafter referred to as "the Underlying Action," in which Plaintiffs sought recovery of damages for Mr. Ham's injuries as a result of his occupational exposure to asbestos. Plaintiffs named several defendants, including several DOE defendants, in the Complaint. A copy of the Complaint in the Underlying Action is attached hereto as Exhibit "B" and incorporated by reference.

9.      On August 28, 2006, Plaintiffs filed an amendment to the Complaint substituting the true name of the Insured for the Eleventh DOE. The Complaint as amended alleges that the Insured is liable to Plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of consortium. A copy of the Amendment is attached hereto as Exhibit "C" and incorporated by reference.

10.     The Insured is an inactive Nevada corporation, but the corporation has never dissolved. Plaintiffs served the Insured with the Summons and Complaint in the Underlying Action by personally serving its President, Jerry Ecklund, at his home in Allyn, Washington.

11.     In or about August or September of 2006, the Insured tendered the defense of the Underlying Action to CNA. CNA responded, stating that it would search for any insurance policies issued to the Insured and requested any documentation related to the Policies. Plaintiffs are informed and believe and thereon allege that the Insured sent CNA a copy of the Certificate of Insurance for the 1966 Policy. Plaintiffs also attempted to begin communications and settlement negotiations with CNA by sending CNA a copy of the Certificate of Insurance for the 1966 Policy. CNA never responded to the Insured or to Plaintiffs.

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC                    4

12.     There was a substantial likelihood that Plaintiffs' recovery in the underlying lawsuit would exceed the Policies' limits. Plaintiffs Franklin and Dana Ham have been married for 48 years. Mr. Ham is 74 years old and Mrs. Ham is 67. They reside in Yerington, Nevada, and are Nevada citizens and have two daughters and a son. Mr. Ham was a remarkably healthy and active man before his diagnosis of mesothelioma. He is a lifetime non-smoker, apart from two years when he served in the Navy. Mr. Ham was diagnosed with malignant pleural mesothelioma in July of 2006. Malignant pleural mesothelioma is a terminal disease. Mr. Ham was told by his treating physician that he could expect to live from six to eighteen months from the time of his diagnosis. Additional details of Mr. Ham's exposure and injuries and Mrs. Ham's loss of consortium are set forth in Plaintiffs' Trial Brief in Support of Request for Entry of Default Judgment, which was served on CNA and is attached hereto as Exhibit "D" and incorporated by reference.

13.     As a result of CNA's refusal and failure to defend the Insured, upon Plaintiffs request, the Clerk of the Court entered default against the Insured on November 30, 2006. Plaintiffs provided notice to Jerry Ecklund, President of the Insured,---and to Richard Solski of CNA---of the Request for Entry of Default and of all hearings, trial dates, court orders and depositions taken in the Underlying Action. Plaintiffs also provided Mr. Ecklund and Defendants with notice of the Default Prove-up Hearing, which stated that a judgment would be sought against the Insured in the Underlying Action.

14.     On June 28, 2007, the Court ordered judgment be entered in favor of Plaintiff Franklin Ham in the amount of $671,000 for economic damages and $1,300,000 non-economic damages and in favor of Plaintiff Dana Ham in the amount of $700,000 non-economic damages, for a total judgment in favor of Plaintiffs and against the Insured in the amount of $2,671,000. A copy of the Notice of Entry of Default Judgment Against Ecklund Insulation, Inc. and Default Judgment, which was served on CNA, is attached hereto as Exhibit "E" and incorporated by reference.

15.     Plaintiffs sent CNA a letter via certified mail on December 26, 2007 offering to resolve Plaintiffs' claims against CNA and the Insured for the Policies' limits. The December 26, 2007 letter further stated that the offer to settle would remain open for 30 days from CNA's receipt of the letter. CNA received the letter by January 2, 2008. CNA has not contacted Plaintiffs in response to Plaintiffs' offer to settle within the Policies' limits.

# FIRST CAUSE OF ACTION

## (Breach of Insurance Contract by CNA and DOES 1-50)

16.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15 of the Complaint as set forth above.

17.    The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, constitute Breach of Insurance Contract.

18.    Defendants breached the Policies by (1) failing to and refusing to undertake any investigation of the Occurrence; (2) failing to defend or respond to a proper request to defend the Insured; (3) failing to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits; and (4) breaching the implied covenant of good faith and fair dealing.  Even after the Insured and Plaintiffs sent Defendants the Certificate of Insurance setting forth the specific policy number and policy amounts, Defendants failed to respond.  Defendants continued to fail to respond even when Plaintiffs offered to resolve the default judgment in the Underlying Action within the Policies' limits.

19.    As consideration for Plaintiffs' agreement not to enforce the balance due and owing on the Underlying Action's judgment, the Insured has assigned to Plaintiffs all assignable claims that the Insured has against the Defendants. Plaintiffs sue the Defendants as the assignee of the Insured's causes of action.  This included the causes of action alleged in this Complaint.  A copy of the assignment is attached hereto as Exhibit "F" and incorporated by reference.

20.    Plaintiffs and the Insured have performed and complied with all of the terms, conditions precedent, obligations and provisions contained in the Policies under which coverage is now sought, including the payment of premiums and the giving of notice, except as to that performance which has been excused, waived or prevented by the representations, acts or omissions of Defendants. Thus, Plaintiffs, as the assignees, are entitled to the full benefit of the insurance provided by the Policies.

21.    As a proximate result of Defendants' (1) failure to and refusal to undertake any investigation of the Occurrence; (2) failure to defend or respond to a proper request to defend the Insured; (3) failure to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits;

and (4) breach of the implied covenant of good faith and fair dealing, the Insured was damaged in the sum of $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be shown by proof at trial.

## SECOND CAUSE OF ACTION

### (Breach of the Duty to Defend by CNA and DOES 1-50)

22. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15, 19 and 20 of the Complaint as set forth above.

23. The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, constitute Breach of the Duty to Defend.

24. The Policies issued by Defendants under which Plaintiffs seek coverage herein obligated the Insurer to defend the Insured with respect to the Underlying Claim.

25. Defendants have breached the contracts of insurance issued to the Insured by refusing and failing to perform their duty to defend the Insured with respect to the Underlying Claim, and by refusing to reimburse the Insured for said defense and indemnity expenses.

26. As a proximate result of Defendants' conduct, the Insured was damaged in the sum of $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be shown by proof at trial.

27. In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All the alleged acts were performed or ratified by Defendants' managerial employees, who acted with knowledge that Defendants' conduct would cause the Insured harm. Plaintiffs are therefore entitled to recover punitive damages.

## THIRD CAUSE OF ACTION

### (Breach of the Duty to Settle by CNA and DOES 1-50)

28. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15, 19 and 20 of the Complaint as set forth above.

29. The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

CPSM
3330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC                7

1   each of them, constitute Breach of the Duty to Settle.

2       30.     As a proximate result of Defendants' wrongful failure to settle the action within policy

3   limits when a reasonable opportunity to do so existed, the Insured became personally liable to Plaintiffs

4   in the amount of $2,671,000. This judgment has not been satisfied.

5       31.     As a proximate result of Defendants' conduct, the Insured was damaged in the sum of

6   $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

7   in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

8   shown by proof at trial.

9       32.     In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

10   the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

11   knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

12   recover punitive damages.

13                              **FOURTH CAUSE OF ACTION**

14               **(Breach of Insurer's Statutory Duty by CNA and DOES 1-50)**

15       33.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

16   15, 19 and 20 of the Complaint as set forth above.

17       34.     The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

18   each of them, constitute Breach of Insurer's Statutory Duty.

19       35.     Defendants' actions set forth herein were in violation of Defendants' statutory duties

20   under Section 686A.310 of the Nevada Code.

21       36.     As a proximate result of Defendants' conduct, the Insured was damaged in the sum of

22   $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

23   in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be

24   shown by proof at trial.

25       37.     In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All

26   the alleged acts were performed or ratified by Defendants' managerial employees, who acted with

27   knowledge that Defendants' conduct would cause the Insured harm.  Plaintiffs are therefore entitled to

28   recover punitive damages.

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC            8

1

## FIFTH CAUSE OF ACTION

2

### (Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)

3

### by CNA and DOES 1-50)

4    38.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through

5    37 of the Complaint as set forth above.

6    39.    The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and

7    each of them, constitute Breach of the Implied Covenant of Good Faith and Fair Dealing.

8    40.    There is implied in every contract a covenant by each party not to do anything which will

9    deprive the other party thereto of the benefits of the contract. This would include an implied obligation

10   to reasonably investigate all claims, to respond to requests to defend, to defend all claims and to settle

11   all claims that may result in an amount in excess of the policy limits. In addition, this covenant not only

12   imposes upon each party the duty to refrain from doing anything that would render performance of the

13   contract impossible by any act of his own, but also to do everything that the contract presupposes will

14   be done to accomplish the purpose of the contract.

15   41.    Plaintiffs are informed and believe, and thereon allege, that the Defendants breached the

16   obligation to act fairly and in good faith toward the Insured by engaging in some or all of the following

17   acts or omissions:

18   a.    Defendants refused to pay the judgment in the Underlying Action and have refused to

19   settle despite their lack of reasonable basis for such a refusal. Defendants knew or should have known

20   of their lack of reasonable basis for such refusal.

21   b.    Defendants failed to fully and fairly investigate claims arising under the Insured's

22   Policies.

23   c.    Defendants failed to acknowledge and act reasonably promptly upon communications

24   with respect to claims arising under the Insured's Policies.

25   d.    Defendants, with full knowledge of the potentially catastrophic effect of a large judgment

26   on the Insured, and in complete disregard of the likelihood of a judgment being entered against the

27   Insured far in excess of the Policies' limits, refused to settle within policy limits despite their reasonable

28   opportunities to do so. Plaintiffs are informed and believe, and thereon allege, that Defendants, in

PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. CV 081551 SC          9

refusing to consider those settlement opportunities, were motivated by a dishonest intent to deprive the Insured of its benefits under the Policies, including the benefit of Defendants' duty to consider settlement of the action to avoid the possibility of catastrophic excess liability being imposed on the Insured.

e.    Defendants were fully aware of the Insured's interest in avoiding the catastrophic effect of a judgment far in excess of the Policies' limits and that such a judgment was likely, but nevertheless refused all reasonable opportunities to settle the action. Plaintiffs are informed and believe, and thereon allege, that Defendants, in refusing to consider those settlement opportunities, did not consider the Insured's interest in avoiding an excess judgment to be as important as Defendants' interest in reducing liability to below the Policies' limits.

f.    Defendants knew, or in the exercise of reasonable care in investigation should have known, that there was a considerable likelihood that the Insured would be found liable, and that the resultant damages would probably greatly exceed the Policies' limits. Despite the existence of facts indicating that a large excess judgment was likely, Defendants did not settle the action when it had the reasonable opportunity to do so. Had Defendants exercised due care in settling the action, the possibility of an excess judgment may have been precluded.

42.    Plaintiffs are informed and believe, and thereon allege, that Defendants have breached the duty of good faith and fair dealing owed to the Insured by other acts or omissions of which Plaintiffs are presently unaware. Plaintiffs will seek leave of the Court to amend this Complaint at such time as they discover the other acts or omissions of Defendants constituting such breach.

43.    As a direct and proximate result of the aforementioned wrongful conduct of Defendants, the Insured became personally liable to the Plaintiffs in the amount of $2,671,000 together with interest thereon at the legal rate. This judgment has not been satisfied.

44.    In committing the alleged acts, Defendants acted with oppression, fraud, and malice. All the alleged acts were performed or ratified by Defendants' managerial employees, who acted with knowledge that Defendants' conduct would cause the Insured harm. Plaintiffs are therefore entitled to recover punitive damages.

/ / /

## SIXTH CAUSE OF ACTION

### (Declaratory Relief against CNA and DOES 1-50)

45.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 37 of the Complaint as set forth above.

46.   The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, necessitate Declaratory Relief.

47.   An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Plaintiffs contend that Defendants have breached the Policies as set forth herein, including, but not limited to, (1) failing to and refusing to undertake any investigation of the Occurrence; (2) failing to defend or respond to a proper request to defend the Insured; (3) failing to settle or engage in settlement discussions of the Underlying Action when there was a substantial likelihood that Plaintiffs would recover an amount in excess of the Policies' limits; and (4) breaching of the implied covenant of good faith and fair dealing, whereas Defendants, through their refusal to respond, appear to contend that the Policy does not cover the Occurrence.

48.   Plaintiffs now desire a judicial determination of their rights and duties, and a declaration as to which party's interpretation of the Policies are correct.

49.   A judicial declaration is necessary and appropriate at this time under these circumstances in order that Plaintiffs may ascertain its rights and duties vis-à-vis the Policies.

### SEVENTH CAUSE OF ACTION

### (Action by Third Party Tort Claimant against CNA and DOES 1-50)

50.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 15 of the Complaint as set forth above.

51.   A judgment of $2,671,000 was obtained against the Insured in the Underlying Action.

52.   The above and below-described actions of CNA and DOES 1-50 ("Defendants"), and each of them, permit this action by third party claimant against Defendants. *See Hall v. Enterprise Leasing Company-West* (Nev. 2006) 137 P.3d 1104.

53.   As a proximate result of Defendants' conduct, Plaintiffs are damaged in the sum of $2,671,000 together with interest thereon at the legal rate, expenses, attorneys' fees and costs incurred

CPSM
2330 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

in connection with the Underlying Claim and other foreseeable economical losses, all in a sum to be shown by proof at trial.

**PRAYER**

1.   For the sum of $2,671,000, together with interest thereon at the legal rate from June 28, 2007 until paid;

2.   For exemplary damages;

3.   For attorneys' fees;

4.   For a declaration that the Occurrence fell under the Policies and that as Defendants failed to settle within the Policies' limits, Defendants are liable for the entire judgment of $2,671,000, together with interest thereon at the legal rate from June 28, 2007 until paid;

5.   For costs of suit herein incurred; and

6.   For such other and further relief as the Court may deem proper.

Dated: April 23, 2008.

Clapper, Patti, Schweizer & Mason

By: _____
Jack K. Clapper, Esq.
Steven J. Patti, Esq.
Christine A. Renken, Esq.
Attorneys for Plaintiffs

*EXHIBIT* A

# RICHARD J. NEUTRA · F. A. I. A.

IN COLLABORATION WITH **LOCKARD, CASAZZA & PARSONS**
and ASSOCIATES, ARCHITECTS & ENGINEERS
127 WEST FIRST ST · RENO, NEVADA · PHONE FA 2-9475



June 6, 1964

Washoe County Fair and Recreation
P. O. Box 837
Reno, Nevada

Subject:  Reno-Sparks Arena-Convention Hall
          Reno, Nevada

Gentlemen:

We are enclosing the following certificates of insurance for the
subject project:

      Comprehensive Liability Insurance:

          Ecklund Insulation, Inc.
          1400 Montello Street
          Reno, Nevada

          Geremia Concrete
          1327 - 65th Street
          Sacramento, California

      Workmen's Compensation*:

          Cupples Products Corp.
          1450 Rincon Street
          Corona, California

    * In lieu of the N.I.C. Certificate

          Very truly yours,

          RICHARD J. NEUTRA, F.A.I.A.
          In Collaboration with
          LOCKARD, CASAZZA & PARSONS AND
          ASSOCIATES, ARCHITECTS & ENGINEERS

        By _Mary Johnson_
          Mary Johnson, Secretary

1 cc
3 cc Stolte Inc.
1 cc Project Engineer

E. KEITH LOCKARD, A.I.A., Manager  ·  RALPH CASAZZA, A.I.A.  ·  EDWARD S. PARSONS, A.I.A.  ·  PETER G. GUISTI, C.E.



## CERTIFICATE OF INSURANCE

GLENS FALLS INSURANCE COMPANY Glens Falls N.Y.
KANSAS CITY FIRE & MARINE INS CO. Kansas City Mo.

NAME AND ADDRESS OF INSURED
**ECKLUND INSULATION, INC., 1400 MONTELLO STREET, RENO, NEVADA**

LOCATION OF OPERATIONS TO WHICH THIS CERTIFICATE APPLIES
**RECREATION CENTER, RENO, NEVADA**

DESCRIPTION OF OPERATIONS OR AUTOMOBILES
**PIPE AND DUCT INSULATION**

McNEILL · McNEAR
Real Estate-Insurance
1195 So. Wells Ave.
Reno, Nev.-Ph.: FA 3-3167

This certifies that the policies of insurance described below have been issued and are in force. The insurance afforded is only with respect to the coverages indicated by specific limits of liability and is subject to all the terms of the policy having reference to those coverages. If such policies are canceled or changed, written notice will be mailed to the party to whom this certificate is issued, **10 days prior to such change or cancellation**

        STOLTE, INC.
        501 N. VIRGINIA STREET
        RENO, NEVADA

← NAME AND ADDRESS OF PARTY TO WHOM THIS CERTIFICATE IS ISSUED

| POLICY NUMBER | EXPIRATION DATE | BODILY INJURY | | | PROPERTY DAMAGE | | KIND OF INSURANCE |
|---|---|---|---|---|---|---|---|
| | | each person $ | each accident $ | x x x | each accident $ | aggregate $ | Manufacturers or Contractors Liability |
| | | each person $ | each accident | | each accident $ | aggregate $ | Owners/Contractors Protective Liability |
| | | each person $ | each accident | x x x aggregate $ | each accident $ | aggregate $ | Products Liability |
| | | each person $ | each accident | | each accident $ | aggregate $ | Contractual Liability |
| | | each person $ | each accident | x x x | each accident $ | x x x | Owners, Landlords & Tenants Liability |
| PCL 50-09-99 | 11/14/66 | each person $ 100,000. | each accident $ 300,000. | x x x aggregate $ 300,000. | each accident $ 10,000. | x x x aggregate $ 25,000. | Automobile Liability |
| PCL 50-09-99 | 11/14/66 | each person $ 100,000. | each accident $ 300,000. | x x x | each accident $ 10,000. | x x x | Comprehensive General Liability |
| | | each person $ | each accident | aggregate $ | each accident $ | aggregate $ | Comprehensive Automobile Liability |
| | | As provided by the Workmen's Compensation Law of the State(s) of | | | | | Workmen's Compensation |

DATE SIGNED
**June 4, 1964**

SIGNATURE OF AUTHORIZED REPRESENTATIVE

Form 10209 Rev 11-62   *Applies to the Products Hazard only. Absence of an entry means the Products Hazard is not insured

*EXHIBIT* ℬ

1  Jack K. Clapper (State Bar No. 83207)
2  Steven J. Patti (State Bar No. 163773)
   CLAPPER, PATTI, SCHWEIZER & MASON
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5

ENDORSED
FILED
San Francisco County Superior Court

AUG 11 2006

CASE MANAGEMENT CONFERENCE

GORDON PARK-LI, Clerk
BY: _____
CRISTINA E. BAUTISTA
Deputy Clerk

6  Attorneys for Plaintiffs

AUG 15 2007  -1:00 PM

DEPARTMENT 206

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,          )  Case No. CGC-06-455063
                                        )
12        Plaintiffs,                   )
                                        )  COMPLAINT FOR PERSONAL INJURY
13   v.                                 )
                                        )
14  ACCO-AIR CONDITIONING COMPANY,      )  (ASBESTOS)
    INC.; ACCO ENGINEERED SYSTEMS,      )
15  INC.; AJAX BOILER, INC.; AJAX       )
    BOILER & HEATER CO.; AMERICAN       )
16  STANDARD INC.; ASBESTOS             )
    CORPORATION, LTD.; CBS              )
17  CORPORATION fka Viacom, Inc.,       )
    Successor by merger to CBS          )
18  Corporation; CERTAINTEED            )
    CORPORATION; CRANE COMPANY; CSR     )
19  Limited (Colonial Sugar             )
    Refining); CROWN, CORK & SEAL       )
20  COMPANY, INC.; D. CUMMINS           )
    CORPORATION fka Valley Asbestos;    )
21  D/C DISTRIBUTION CORPORATION fka    )
    Moran Supply; FOSTER WHEELER        )
22  CORPORATION; GENERAL ELECTRIC       )
    COMPANY; GRINNELL CORPORATION;      )
23  INTERNATIONAL ENVIRONMENTAL         )
    SYSTEMS CORPORATION; J. T.          )
24  THORPE & SON, INC.; KAISER          )
    GYPSUM COMPANY; METALCLAD           )
25  INSULATION CORPORATION; OWENS-      )
    ILLINOIS, INC.; PARKER HANNIFIN     )
26  CORPORATION; PIERCE LATHING         )
    COMPANY fka Frank D. Smith;         )
27  PLANT INSULATION COMPANY; PLANT     )
    PRODUCTS & SUPPLY COMPANY;          )
28  RECORD SUPPLY; THOMAS DEE           )
    ENGINEERING COMPANY; UNIROYAL       )

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
415. 332. 4262

Franklin Ham/Complaint for Personal Injury

HOLDING, INC.; and DOES ONE )
through SEVENTY-FIVE, inclusive, )
                                )
        Defendants.             )
                                )

## GENERAL ALLEGATIONS

1.   The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants FIRST DOE through SEVENTY-FIFTH DOE, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the plaintiff, as hereinafter alleged.

2.   At all times herein mentioned, each of the defendants, except as otherwise alleged, was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs do not allege that Asbestos Corporation Ltd. was the agent, servant, employee and/or joint venturer of any entity during any of the years Asbestos Corporation Ltd. was owned by any governmental agency.  Certain defendants agreed and conspired among themselves, and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                    2

1  plaintiff; and such defendants, as co-conspirators, are liable for
2  the acts, or failures to act, of the other conspiring defendants.
3  Plaintiffs do not allege that Asbestos Corporation Ltd. conspired
4  with any entity during any of the years Asbestos Corporation Ltd.
5  was owned by any governmental agency. Plaintiffs are informed and
6  believe, and allege, that at all times herein mentioned defendants
7  FIRST DOE through SEVENTY-FIFTH DOE, inclusive, were and are
8  authorized to do business in the State of California, that said
9  defendants have regularly conducted business in the County of San
10 Francisco, State of California, and that certain of said defendants
11 have designated the County of San Francisco as their principal
12 place of doing business within the State of California.

13                    FIRST CAUSE OF ACTION -- NEGLIGENCE

14      PLAINTIFF COMPLAINS OF DEFENDANTS ACCO-AIR CONDITIONING
15 COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.;
16 AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS
17 CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by
18 merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY;
19 CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY,
20 INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION
21 CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL
22 ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL
23 SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM
24 COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.;
25 PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D.
26 Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY;
27 RECORD SUPPLY: THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING,
28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 331-3262

1   INC., NAMED IN THE FIRST CAUSE OF ACTION, AND DOES ONE THROUGH

2   TWENTY-FIVE, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

3       3.   Plaintiffs are informed and believe, and thereon allege

4   that at all times herein mentioned, defendants ACCO-AIR

5   CONDITIONING COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX

6   BOILER, INC.; AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.;

7   ASBESTOS CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc.,

8   Successor by merger to CBS Corporation; CERTAINTEED CORPORATION;

9   CRANE COMPANY; CSR Limited (Colonial Sugar Refining); CROWN, CORK &

10  SEAL COMPANY, INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C

11  DISTRIBUTION CORPORATION fka Moran Supply; FOSTER WHEELER

12  CORPORATION; GENERAL ELECTRIC COMPANY; GRINNELL CORPORATION;

13  INTERNATIONAL ENVIRONMENTAL SYSTEMS CORPORATION; J. T. THORPE &

14  SON, INC.; KAISER GYPSUM COMPANY; METALCLAD INSULATION CORPORATION;

15  OWENS-ILLINOIS, INC.; PARKER HANNIFIN CORPORATION; PIERCE LATHING

16  COMPANY fka Frank D. Smith; PLANT INSULATION COMPANY; PLANT

17  PRODUCTS & SUPPLY COMPANY; RECORD SUPPLY; THOMAS DEE ENGINEERING

18  COMPANY; UNIROYAL HOLDING, INC., and FIRST DOE through SEVENTY-

19  FIFTH DOE, inclusive, were and are corporations organized and

20  existing under and by virtue of the laws of the State of

21  California, or the laws of some other state or foreign

22  jurisdiction, and that said defendants, and each of them, were and

23  are authorized to do and are doing business in the State of

24  California, that said defendants have regularly conducted business

25  in the County of San Francisco, State of California, and that

26  certain of said defendants have designated the County of San

27  Francisco as their principal place of doing business within the

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship #17
Suite 40
Sausalito, CA 94965
415-332-4262

Franklin Ham/Complaint for Personal Injury          4

1   State of California.

2       4.   At all times herein mentioned, each of the defendants was

3   the successor, successor in business, successor in product line or

4   a portion thereof, assign, predecessor, predecessor in business,

5   predecessor in product line or a portion thereof, parent,

6   subsidiary, alter-ego, agent and/or fiduciary wholly or partially

7   owned by, or the whole or partial owner of or member in an entity

8   researching, studying, manufacturing, fabricating, designing,

9   labeling, assembling, distributing, leasing, buying, offering for

10  sale, selling, inspecting, servicing, installing, contracting for

11  installation, repairing, marketing, warranting, rebranding,

12  manufacturing for others, packaging and advertising a certain

13  substance, the generic name of which is asbestos, and other

14  products containing said substance.  Said entities shall

15  hereinafter collectively be called "alternate entities".  Each of

16  the herein named defendants are liable for the tortious conduct of

17  each successor, successor in business, successor in product line or

18  a portion thereof, assign, predecessor, predecessor in business,

19  predecessor in product line or a portion thereof, parent,

20  subsidiary, whole or partial owner, or wholly or partially owned

21  entity, or entity that it was a member of, or funded, that

22  researched, studied, manufactured, fabricated, designed, labeled,

23  assembled, distributed, leased, bought, offered for sale, sold,

24  inspected, serviced, installed, contracted for installation,

25  repaired, marketed, warranted, rebranded, manufactured for others

26  and advertised a certain substance, the generic name of which is

27  asbestos, and other products containing said substance.  The

28

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 337-4262

Franklin Harn/Complaint for Personal Injury                    5

1  following defendants, and each of them, are liable for the acts of
2  each and every "alternate entity", and each of them, in that there
3  has been a virtual destruction of plaintiff's remedy against each
4  such "alternate entity"; defendants, and each of them, have
5  acquired the assets, product line, or a portion thereof, of each
6  such "alternate entity"; defendants, and each of them, caused the
7  destruction of plaintiff's remedy against each such "alternate
8  entity"; each such defendant has the ability to assume the risk-
9  spreading role of each such "alternate entity"; and that each such
10  defendant enjoys the goodwill originally attached to each such
11  "alternate entity."

12  **DEFENDANT**                              **ALTERNATE ENTITY**

13  AMERICAN STANDARD, INC.            AMERICAN RADIATOR & STANDARD SANITARY
14                                                          CORP.
                                                            TRANE COMPANY
15                                                          KEWANEE BOILER CO.
                                                            MURRAY IRON WORKS COMPANY
16                                                          AMSTAN SUPPLY DIVISION
                                                            WESTINGHOUSE AIR BRAKE COMPANY
17                                                          (WABCO)

18  CERTAINTEED CORPORATION            KEASBEY & MATTISON
                                                            GUSTIN BACON MANUFACTURING CO.
19  CRANE CO.
                                                            CRANE SUPPLY CO.
20                                                          PACIFIC STEEL BOILER CORPORATION

21  CROWN, CORK & SEAL COMPANY,        MUNDET CORK CORPORATION
    INC.
22  CSR LIMITED
                                                            COLONIAL SUGAR REFINING CO., LTD.
23  D. CUMMINS CORPORATION
                                                            VALLEY ASBESTOS
24  D/C DISTRIBUTION CORPORATION    AMFAC
25                                                          HEICK & MORAN
                                                            MORAN SUPPLY
26  INTERNATIONAL ENVIRONMENTAL
    SYSTEMS CORPORATION                    IBW ENVIRONMENTAL SYSTEMS CORP.
27                                                          INTERNATIONAL BOILER WORKS COMPANY
                                                            LAMONT BOILER
28

CLAPPER, PATTI,
SCHWEIZER & MASON
2 10 Mississippi Way
Suite 140
Sausalito, CA 94965
(415) 331-1242

| | |
|---|---|
| KAISER GYPSUM COMPANY, INC. | PERMANENTE CEMENT COMPANY<br>KAISER CEMENT & GYPSUM CORPORATION<br>KAISER CEMENT CORPORATION |
| METALCLAD INSULATION CORPORATION | NORTHERN CALIFORNIA INSULATION COMPANY |
| OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION<br>OWENS-ILLINOIS GLASS CO.<br>AMERICAN STRUCTURAL PRODUCTS CO. |
| PARKER-HANNIFIN CORP. | SACOMO<br>SACOMO MANUFACTURING, INC.<br>SACOMO SIERRA, INC.<br>EIS |
| PLANT INSULATION COMPANY | ASBESTOS COMPANY OF CALIFORNIA<br>PLANT ASBESTOS COMPANY |
| UNIROYAL HOLDING, INC. | UNIROYAL, INC.<br>U. S. RUBBER |

5.   At all times herein mentioned, defendants, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, supplying, inspecting, servicing, installing, contracting for installation, repairing, removing and/demolishing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

6.   At all times herein mentioned, defendants, and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, tested or failed to test, warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, sold, supplied, inspected, serviced, installed, contracted for installation, contracting for

CLAPPER, PATTI<br>SCHWEIZER & MASON<br>2330 Marinship Way<br>Suite 140<br>Sausalito, CA 94965<br>(415) 332 4262

1  fabrication, repaired, removed and/or demolished, marketed,
2  warranted, rebranded, manufactured for others, packaged and
3  advertised, a certain substance, the generic name of which is
4  asbestos, and other products containing said substance, in that
5  said substance proximately caused personal injuries to users,
6  consumers, workers, bystanders and others, including the Plaintiff
7  herein, (hereinafter collectively called "exposed persons"), while
8  being used in a manner that was reasonably foreseeable, thereby
9  rendering said substances unsafe and dangerous for use by "exposed
10 persons".

11     7.    Defendants, and each of them, had a duty to exercise due
12 care in the pursuance of the activities mentioned above and
13 defendants, and each of them, breached said duty of due care.

14     8.    Plaintiff has used, handled or been otherwise exposed to
15 asbestos and asbestos-containing products referred to herein in a
16 manner that was reasonably foreseeable.  Plaintiff's exposure to
17 asbestos and asbestos-containing products occurred at various
18 locations both within and outside the State of California. During
19 the following years plaintiff was employed by the following
20 companies: 1954, 1955, and 1956 employed by American Rubber Mfg.
21 Co. on the assembly line in Emeryville, California; 1957, 1958,
22 1959, and 1964 - 1965 by employed Boothe Sales, Inc., of Lafayette,
23 California, and worked on jobs at Heinz Ketchup, in Tracy,
24 California, and at a Santa Rosa automobile dealership, as a
25 pipefitter; 1958, 1959 employed by Gay Engineering Corp., of Los
26 Angeles, California, and worked on jobs at Olympic Village, Squaw
27 Valley, California, as a pipefitter; 1959, 1960, 1962, 1963, 1964,
28

CLAPPER, PATTI,
SCHWEIZER & MASON
2110 Morningside Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harn/Complaint for Personal Injury          8

1980, 1981, 1982, 1984, 1985, employed by Johnson Controls, and worked at various sites both as an instrument technician and as a pipefitter; 1975, 1976, 1977, employed by Bechtel Power Corp., of San Francisco, California, and worked at various locations, including sites within California, as a pipefitter. Plaintiff does not claim he was exposed to Asbestos Corporation Ltd.'s asbestos fibers during any of the years Asbestos Corporation Ltd. was owned by any governmental agency.

Plaintiff's disability within the meaning of CCP 340.2 either has yet to occur or occurred less than a year before the filing of this complaint.

9.   As a direct and proximate result of the conduct of the defendants, and each of them, as aforesaid, plaintiff's exposure to defendants' asbestos fibers and defendants' asbestos-containing products caused severe and permanent injury to the plaintiff including, but not limited to, mesothelioma.

10.   Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, lung cancer and mesothelioma are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

11.   Plaintiff suffers from mesothelioma, a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease. The asbestos fibers and asbestos-containing products of each named defendant and each DOE defendant were a substantial

CLAPPER, PATTI,
SCHWEIZER & MASON
1110 Mar Suite 140
Sausalito, CA 94965
415-332-4262

Franklin Harm/Complaint for Personal Injury                              9

1  factor in contributing to, and in causing, injury to plaintiff as
2  set forth herein.

3      12.  As a direct and proximate result of the aforesaid conduct
4  of defendants, and each of them, plaintiff has suffered, and
5  continues to suffer, permanent injuries and/or future increased
6  risk of injuries to his person, body and health, including, but not
7  limited to mesothelioma, and the mental and emotional distress
8  attendant thereto, all to his general damage in the sum in excess
9  of the jurisdictional limits of the Municipal Court.

10     13.  As a direct and proximate result of the aforesaid conduct
11  of the defendants, and each of them, plaintiff has incurred, is
12  presently incurring, and will incur in the future, liability for
13  physicians, surgeons, nurses, hospital care, medicine, hospices, x-
14  rays and other medical treatment, the true and exact amount thereof
15  being unknown to plaintiff at this time, and plaintiff prays leave
16  to amend this complaint accordingly when the true and exact cost
17  thereof is ascertained.

18     14.  As a further direct and proximate result of the said
19  conduct of the defendants, and each of them, plaintiff has
20  incurred, and will incur, loss of income, wages, profits and
21  commissions, a diminishment of earning potential, and other
22  pecuniary losses, the full nature and extent of which are not yet
23  known to plaintiff; and leave is requested to amend this complaint
24  to conform to proof at the time of trial.

25     WHEREFORE, plaintiff prays judgment against defendants, and
26  each of them, as hereinafter set forth.

27  / / / / / / / / / / /

28

CLAPPER, PATTI
& NWEELE & MASON
2330 Marinship Wry
Suite 140
Sausalito CA 94965
415, 332 4262

## SECOND CAUSE OF ACTION -- STRICT LIABILITY

PLAINTIFFS COMPLAIN OF DEFENDANTS ACCO-AIR CONDITIONING COMPANY, INC.; ACCO ENGINEERED SYSTEMS, INC.; AJAX BOILER, INC.; AJAX BOILER & HEATER CO.; AMERICAN STANDARD INC.; ASBESTOS CORPORATION, LTD.; CBS CORPORATION fka Viacom, Inc., Successor by merger to CBS Corporation; CERTAINTEED CORPORATION; CRANE COMPANY; CSR Limited (Colonial Sugar Refining); CROWN, CORK & SEAL COMPANY, INC.; D. CUMMINS CORPORATION fka Valley Asbestos; D/C DISTRIBUTION CORPORATION fka Moran Supply; FOSTER WHEELER CORPORATION; GENERAL ELECTRIC COMPANY; GRINNELL CORPORATION; INTERNATIONAL ENVIRONMENTAL SYSTEMS CORPORATION; J. T. THORPE & SON, INC.; KAISER GYPSUM COMPANY; METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.; PARKER HANNIFIN CORPORATION; PIERCE LATHING COMPANY fka Frank D. Smith; PLANT INSULATION COMPANY; PLANT PRODUCTS & SUPPLY COMPANY; RECORD SUPPLY; THOMAS DEE ENGINEERING COMPANY; UNIROYAL HOLDING, INC. AND DOES ONE THROUGH FIFTY, AND FOR A CAUSE OF ACTION FOR STRICT LIABILITY ALLEGES:

15.  Plaintiff incorporates herein by reference, as though fully set forth herein, paragraphs 1 through 4, and paragraphs 7 through 14.

16.  FIRST DOE through TENTH DOE is responsible for, and liable for the acts of ELEVENTH DOE through FIFTIETH DOE, inclusive. The defendants, their "alternate entities", and each of them, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and said defendants, their "alternate entities", and each of them, were and are authorized to

CLAPPER, PATTI
& HW1228 & MASON
310 Manning Way
Suite 330
Sausalito CA 94965
(415) 331-4262

Franklin Hanv/Complaint for Personal Injury            11

1    do and are doing business in the State of California, and said
2    defendants, their "alternate entities", and each of them, have
3    regularly conducted business in the City and County of San
4    Francisco, State of California, during the period of Plaintiff's
5    employment.

6    17.  Defendants, their "alternate entities", and each of them,
7    researched, manufactured, fabricated, designed, tested or failed to
8    test, labeled, assembled, distributed, leased, bought, offered for
9    sale, sold, inspected, serviced, installed, contracted for
10   installation, repaired, marketed, warranted, rebranded,
11   manufactured for others, packaged and advertised a certain
12   substance, the generic name of which is asbestos, and other
13   products containing said substance.

14   18.  Defendants, their "alternate entities", and each of them,
15   knew and intended that the above referenced asbestos and other
16   products containing asbestos would be used by the purchaser or user
17   without inspection for defects therein or in any of its component
18   parts and without knowledge of the hazards involved in such use.

19   19.  Defendants, their "alternate entities," and each of them,
20   knew, or should have known, and intended that the aforementioned
21   asbestos and products containing asbestos would be used for
22   insulation purposes, would require sawing, chipping, hammering,
23   scraping, sanding, breaking, removal, "rip-out," and other
24   manipulation which would result in the release of airborne asbestos
25   fibers, and that through such foreseeable use "exposed persons"
26   would use or be in proximity to and exposed to said asbestos
27   fibers.

28

CLAPPER, PATTI
SCHWEIZER & MASON
1180 Marketplace Way
Suite 140
Sausalito CA 94965
(415) 332-4262

20. Said asbestos and products containing asbestos were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their alternate entities, and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons" while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use.

21. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

22. Plaintiff alleges that the aforementioned defendants, their "alternate entities", and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos- containing products created an unreasonable risk of bodily harm to exposed persons.

23. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and

CLAPPER, PATTI
SCHWEIZER & MASON
2350 Montachie Way
Suite 40
Sausalito, CA 94965
(415) 331-4262

1  advertised by the aforementioned defendants, their "alternate

2  entities", and each of them and that plaintiff cannot identify

3  precisely which asbestos or asbestos-containing product(s) caused

4  the injuries complained of herein.

5       24.  In researching, mining, shipping, manufacturing,

6  fabricating, designing, testing or failing to test, warning or

7  failing to warn, labeling, assembling, distributing, leasing,

8  buying, offering for sale, selling, inspecting, servicing,

9  installing, contracting for installation, repairing, marketing,

10  warranting, rebranding, manufacturing for others, packaging and

11  advertising asbestos and asbestos-containing products, defendants,

12  their "alternate entities", and each of them, did so with conscious

13  disregard for the safety of "exposed persons" who came in contact

14  with said asbestos and asbestos-containing products, in that said

15  defendants, their "alternate entities", and each of them, had prior

16  knowledge that there was a substantial risk of injury or death

17  resulting from exposure to asbestos or asbestos-containing

18  products, including, but not limited to, asbestosis, other lung

19  disabilities and cancer.  Said knowledge was obtained, in part,

20  from scientific studies performed by, at the request of, or with

21  the assistance of, said defendants, their "alternate entities", and

22  each of them, and which knowledge was obtained by said defendants,

23  their "alternate entities", and each of them on or before 1930, and

24  thereafter.

25       25.  On or before 1930, and thereafter, said defendants, their

26  "alternate entities" and each of them, were aware that members of

27  the general public and other "exposed persons", who would come in

28

LAPPER PATEL
SHMIZER & MASON
...
...
...
...

Franklin Harv/Complaint for Personal Injury                    14

1  contact with asbestos and asbestos-containing products, had no
2  knowledge or information indicating that asbestos or
3  asbestos-containing products could cause injury, and said
4  defendants, their "alternate entities", and each of them, knew that
5  members of the general public and other "exposed persons", who came
6  in contact with asbestos and asbestos-containing products, would
7  assume, and in fact did assume, that exposure to asbestos and
8  asbestos-containing products was safe, when in fact said exposure
9  was extremely hazardous to health and human life.

10     26.  With said knowledge, said defendants, their "alternate
11  entities", and each of them, opted to research, manufacture, mine,
12  ship, fabricate, design, label, assemble, distribute, lease, buy,
13  offer for sale, inspect, service, install, contract for
14  installation, repair, market, warrant, rebrand, manufacture for
15  others, package and advertise said asbestos and asbestos-
16  containing products without attempting to protect "exposed
17  persons" from or warn "exposed persons" of, the high risk of injury
18  or death resulting from exposure to asbestos and
19  asbestos-containing products.  Rather than attempting to protect
20  "exposed persons" from, or warn "exposed persons" of, the high risk
21  of injury or death resulting from exposure to asbestos and
22  asbestos-containing products, defendants, their "alternate
23  entities", and each of them, intentionally failed to reveal their
24  knowledge of said risk, and consciously and actively concealed and
25  suppressed said knowledge from "exposed persons" and members of the
26  general public, thus impliedly representing to "exposed persons"
27  and members of the general public that asbestos and
28

1  asbestos-containing products were safe for all reasonably
2  foreseeable uses. Defendants, their "alternate entities", and each
3  of them, engaged in this conduct and made these implied
4  representations with the knowledge of the falsity of said implied
5  representations.

6      27.  The above-referenced conduct of said defendants, their
7  "alternate entities", and each of them, was motivated by the
8  financial interest of said defendants, their "alternate entities",
9  and each of them, in the continuing, uninterrupted research,
10 manufacture, fabrication, design, labeling, assembly, design,
11 distribution, lease, purchase, sale, offer for sale, inspection,
12 installation, contracting for installation, repair, marketing,
13 warranting, rebranding, manufacturing for others, packaging and
14 advertising of asbestos and asbestos-containing products.  In
15 pursuance of said financial motivation, said defendants, their
16 "alternate entities", and each of them, consciously disregarded the
17 safety of "exposed persons" and were in fact consciously willing
18 and intended to permit asbestos and asbestos-containing products to
19 cause injury to "exposed persons" and induced persons to work with
20 and be exposed thereto, including plaintiff.

21     28.  Plaintiff relied upon defendants', their "alternate
22 entities" and each of their representations, lack of warnings, and
23 implied warranties of fitness of asbestos and their
24 asbestos-containing products.  As a direct, foreseeable and
25 proximate result thereof, plaintiff has been injured permanently as
26 alleged herein.

27     29.  Defendants, their "alternate entities, and each of them,
28

CLAPPER, PATTI,
K HWESTER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Hanv/Complaint for Personal Injury          16

and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

30.   Defendants, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each defendants' officers, directors and managing agents participated in , authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.   Plaintiffs do not allege any such fraudulent, oppressive, or malicious acts by Asbestos Corporation Ltd. during the years Asbestos Corporation Ltd. was owned by any governmental agency.

31.   The above-referenced conduct of said defendants, their "alternate entities", and each of them, was and is willful, despicable, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons".   Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

32.   As a direct and proximate result thereof, plaintiff has suffered the injuries and damages previously alleged.

THIRD CAUSE OF ACTION - PREMISES OWNERS/GENERAL CONTRACTORS - MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT

AS AND FOR A THIRD, SEPARATE, CAUSE OF ACTION FOR MISREPRESENTATION AND/OR FRAUDULENT CONCEALMENT, PLAINTIFF

COOPER, PATEL
KNOWLEDGE & MASON
310 Marmalade Way
Suite 140
San Ramon CA 19965
(415) 121-4362

Franklin Harn/Complaint for Personal Injury                    17

COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

33.  Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

34.  At relevant times defendants, and each of them, owned, managed, and/or controlled certain premises in which asbestos-containing products had been installed, maintained, used, and/or replaced and as a result, dangerous quantities of asbestos fibers were present on said premises.

35.  At relevant times said defendants knew that the asbestos-containing products and the asbestos fibers released therefrom created an unreasonable risk of harm to persons entering said premises.

36.  At relevant times said defendants knew, or in the exercise of ordinary care should have known, that said premises would be entered by persons without knowledge of, or inspection for, defects or dangerous conditions and that said persons would not be aware of the aforesaid unreasonable risk of harm. Defendants had a duty to disclose the presence of, and dangers presented by, the asbestos-containing products and the asbestos fibers released therefrom.

37.  Despite said knowledge, defendants misrepresented that their premises was safe and free of defects, and/or failed to disclose, and concealed, the presence of the asbestos-containing products and asbestos fibers which created the unreasonable risk of harm to persons entering said premises.

38.  In reliance upon the foregoing, plaintiff entered and

CLAPPER, PATTI
& HWEUER & MASON
2110 Marning Way
Suite 140
Sausalito, CA  94965
(415) 332-4262

Franklin Harv Complaint for Personal Injury                18

performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers.

39. Plaintiff was unaware of the unreasonable risk of harm created by the aforesaid presence of asbestos-containing products and asbestos fibers on said premises.

40. As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffers as previously set forth and plaintiff has suffered general and special damages as herein being alleged in an amount in excess of the jurisdictional limits of the Municipal Court.

FOURTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT EXERCISE OF RETAINED CONTROL - RESTATEMENT SECOND OF TORTS, SECTION 414

AS AND FOR A FOURTH, SEPARATE, CAUSE OF ACTION FOR PREMISES LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

41. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

42. At all relevant times defendants, and each of them, owned, managed, and/or controlled certain premises in which asbestos-containing products were being, or had been, installed, maintained, used, removed and/or replaced.

43. At all relevant times said defendants knew, or in the exercise of ordinary care should have known, that the presence, and/or disturbance, of the asbestos-containing products would create an unreasonable risk of harm to persons entering said

CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
415-331-4262

Franklin Harn/Complaint for Personal Injury                    19

1 premises.

2    44.  At all relevant times said defendants knew, or in the

3 exercise of ordinary and reasonable care should have known, that

4 work would be performed on said premises by persons without

5 knowledge of, or inspection for, defects or dangerous conditions

6 and that said persons would not be aware of the aforesaid

7 unreasonable risk of harm, and that without the implementation of

8 proper safety precautions, and/or the use of proper work practices,

9 the risk of serious personal injury would result.

10    45.  Despite said knowledge of the aforesaid unreasonable risk

11 of harm, defendants retained control of the work and negligently

12 failed to implement, and/or failed to have others implement, proper

13 safety precautions, and/or the use of proper work practices, with

14 the result that the asbestos-containing products created an

15 unreasonable risk of harm to persons entering said premises.

16    46.  Plaintiff entered and performed work in said premises

17 which was to defendants' benefit and advantage and at defendants'

18 request and invitation.  In so doing, plaintiff was exposed to

19 dangerous quantities of asbestos fibers.

20    47.  Plaintiff was unaware of the risk of harm created by the

21 aforesaid presence of asbestos products and materials on said

22 premises.

23    48.  At all times mentioned herein, said defendants, and each

24 of them, controlled the operative details of the work and

25 negligently failed to maintain, manage, inspect, survey, or control

26 said premises, or to abate or correct, or to warn plaintiff of the

27 existence of the aforesaid dangerous conditions and hazards on said

28

CLAPPER PATTI
KHWFZER & MASON
2410 Mariner Way
Suite 100
Sausalito CA 94965
(415) 332-4262

Franklin Hairr/Complaint for Personal Injury          20

premises.

49.  As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special damages as herein being alleged in an amount in excess of the jurisdictional limits of the Municipal Court.

**FIFTH CAUSE OF ACTION - PREMISES LIABILITY - NEGLIGENT PROVISION OF UNSAFE EQUIPMENT - RESTATEMENT SECOND OF TORTS, SECTION 414**

AS AND FOR A FIFTH, SEPARATE, CAUSE OF ACTION FOR PREMISES LIABILITY, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

50.  Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

51.  At all relevant times defendants, and each of them, owned, managed, and/or controlled certain premises in which asbestos-containing products were being, or had been, installed, maintained, used, removed and/or replaced.

52.  At all relevant times said defendants knew, or in the exercise of ordinary care should have known, that the presence, and/or disturbance, of the asbestos-containing products would create a risk of harm to persons entering said premises.

53.  At all relevant times said defendants knew, or in the exercise of ordinary and reasonable care should have known, that work would be performed on said premises by persons without knowledge of, or inspection for, defects or dangerous conditions and that without the proper equipment the risk of serious personal injury would result.

CLAPPER, PATTI,
SCHWEIZER & MASON
[illegible address]
Suite 140
[illegible], CA [illegible]
[illegible phone]

Franklin Harv/Complaint for Personal Injury                    21

54. Despite said knowledge of the aforesaid risk of harm, defendants negligently provided unsafe equipment which created a risk of harm to persons entering said premises.

55. Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers.

56. Plaintiff was unaware of the risk of harm created by the aforesaid presence of asbestos products and materials on said premises.

57. As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special damages as herein being alleged in an amount in excess of the jurisdictional limits of the Municipal Court.

SIXTH CAUSE OF ACTION - CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON PREMISES

AS AND FOR A SIXTH, SEPARATE, CAUSE OF ACTION FOR A CONCEALED, PRE-EXISTING DANGEROUS CONDITION ON THE PREMISES, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE, inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

58. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14 as though fully set forth herein.

59. At relevant times defendants, and each of them, owned, managed, contracted to perform work within and/or controlled certain premises in which asbestos-containing products had been, or were being, installed, maintained, used, and/or replaced.

60. At relevant times said defendants knew, or in the exercise of ordinary care should have known, that the presence of the asbestos-containing products and asbestos fibers created a concealed, per-existing hazardous condition on its premises.

61. At relevant times said defendants knew, or in the exercise of ordinary care should have known, that said premises would be entered by persons, including contractors and/or sub-contractors, who would be without knowledge of, or reasonably could ascertain the condition.

62. Despite said knowledge, defendants failed to maintain the premises free of defects, and/or failed to abate the asbestos-containing products and asbestos fibers which created the unreasonable risk of harm to persons entering said premises and failed to warn the persons entering said premises, including contractors and/or sub-contractors.

63. Plaintiff entered and performed work in said premises which was to defendants' benefit and advantage and at defendants' request and invitation. Due to defendants' negligent conduct, and/or the negligent conduct of persons for whom defendant is responsible, plaintiff was exposed to the aforementioned dangerous quantities of asbestos fibers which were present at said premises.

64. Both plaintiff and plaintiff's employer were unaware of, and could not reasonably ascertain, the aforesaid dangerous condition on said premises.

65. As a legal consequence of the foregoing, plaintiff developed asbestos-related illness from which he suffered as previously set forth and plaintiff has suffered general and special

1  damages as herein being alleged in an amount in excess of the

2  jurisdictional limits of the Municipal Court.

3        SEVENTH CAUSE OF ACTION - NEGLIGENT UNDERTAKING

4  AS AND FOR A SEVENTH, SEPARATE, CAUSE OF ACTION FOR NEGLIGENT

5  PERFORMANCE OF AN UNDERTAKING - RESTATEMENT SECOND OF TORTS,

6  SECTION 324A, PLAINTIFF COMPLAINS OF DOES ONE THROUGH SEVENTY-FIVE,

7  inclusive, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

8        66.  Plaintiff realleges and incorporates herein by reference

9  paragraphs 1 through 14 as though fully set forth herein.

10        67.  At relevant times defendants, and each of them, owned,

11  managed, and/or controlled certain premises in which asbestos-

12  containing products had been installed, maintained, used, and/or

13  replaced.

14        68. At relevant times defendants, and each of them, undertook,

15  gratuitously or for consideration, to render services which said

16  defendants should have recognized as necessary for the protection

17  of plaintiff.  Plaintiff suffered the harm complained of herein due

18  to defendants failure to exercise reasonable care in said

19  undertaking so that  (a) defendants failure to exercise reasonable

20  care increased the risk of harm to plaintiff, or (b) defendant

21  undertook to perform a duty owed to plaintiff by another, or (c)

22  said harm was suffered because of plaintiff's reliance, or the

23  reliance of another, upon the undertaking by defendant.

24        69.  As a legal consequence of the foregoing, plaintiff

25  developed asbestos-related illness from which he suffered as

26  previously set forth and plaintiff has suffered general and special

27  damages as herein being alleged in an amount in excess of the

28

CLAPPER, PATTI
KNOPFER & MASUN
110 Watership Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                    24

jurisdictional limits of the Municipal Court.

## EIGHTH CAUSE OF ACTION - LOSS OF CONSORTIUM

AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF DANA HAM COMPLAINS OF DEFENDANTS, INCLUDING DOE DEFENDANTS AND EACH OF THEM AND ALLEGES:

70.  Plaintiff incorporates herein by reference, as set forth fully herein, all paragraphs of the First through Seventh Causes of Action herein.

71.  Plaintiffs currently are, and at all relevant times were, husband and wife.

72.  Plaintiff Franklin Ham sustained injuries caused by inhalation of asbestos fibers.  Prior to the aforesaid injuries, said spouse was able to and did perform duties as a spouse.  Subsequent to the injuries, and as a proximate result thereof, said spouse was unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home.  By reason thereof, plaintiff Dana Ham has been deprived of the consortium of plaintiff's spouse, including the performance of said duties, all to plaintiff's damages.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as follows:

1.   For plaintiff's general damages according to proof;

2.   For plaintiff's loss of income, wages and earning potential according to proof;

3.   For plaintiff's medical and related expenses according to proof;

CLAPPER, PATTI
WELDON & MASON
...
...
...
...

Franklin Ham/Complaint for Personal Injury

25

1      4.    For plaintiff's cost of suit herein;

2      5.    For exemplary or punitive damages according to proof; and

3      6.    For such other and further relief as the court may deem

4   just and proper, including costs as provided in CCP §998, CCP §1032

5   and related provisions of law.

6   Dated: August 11, 2006.            CLAPPER, PATTI, SCHWEIZER & MASON

7

8                                      By: _____

9                                          Jack K. Clapper
                                           Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
CLAPPER, PATTI,
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

Franklin Harv/Complaint for Personal Injury                26

*EXHIBIT C*

1    Jack K. Clapper, (State Bar No. 83207)
     John P. Mason, (State Bar No. 193949)
2    Clapper, Patti, Schweizer & Mason
     2330 Marinship Way, Suite 140
3    Sausalito, CA 94965
     Telephone: (415) 332-4262
4    Facsimile: (415) 331-5387

5    Attorney for Plaintiffs

6

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8      CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

9

10

11    FRANKLIN HAM and
     DANA HAM,
12

           Plaintiffs,
13

     v.
14

     ACCO-AIR CONDITIONING COMPANY,
15    INC., et al.

16          Defendants.

           Case No. CGC-06-455063

           AMENDMENT TO COMPLAINT
           SUBSTITUTING TRUE NAMES
           FOR FICTITIOUS NAMES

17

18        On filing the complaint herein, plaintiffs were ignorant of the true names of certain

19 defendants and designated such defendants in the complaint by fictitious name Eleventh Doe.

20 Plaintiffs, having discovered the true name of Eleventh Doe to be Ecklund Insulation, Inc. hereby

21 amends their complaint by inserting such true name in the place and stead of the fictitious name

22 wherever it appears in the complaint.

23        Ecklund Insulation, Inc. as Eleventh Doe.

24 Dated: August 28, 2006.

           Clapper, Patti, Schweizer & Mason
25

26            By:
27            John P. Mason
           Attorney for Plaintiffs
28

CLAPPER, PATTI
SCHWEIZER & MASON
2330 Marinship Way
Suite 140
Sausalito, CA 94965
(415) 332-4262

AMENDMENT TO COMPLAINT SUBSTITUTING TRUE NAMES FOR FICTITIOUS NAMES

*EXHIBIT* D

1  Jack K. Clapper, (State Bar No. 83207)
2  Steven J. Patti, (State Bar No. 163773)
   Clapper, Patti, Schweizer & Mason
   Marina Office Plaza
3  2330 Marinship Way, Suite 140
   Sausalito, CA 94965
4  Telephone: (415) 332-4262
   Facsimile: (415) 331-5387
5
6  Attorney for Plaintiffs
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9         CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION
10
11 FRANKLIN HAM and DANA HAM,            )    Case No. 455063
12          Plaintiffs,                  )
                                         )    PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF
13 v.                                    )    REQUEST FOR ENTRY OF DEFAULT
                                         )    JUDGMENT; DECLARATION OF STEVEN J.
14 ACCO-AIR CONDITIONING COMPANY et      )    PATTI; PLAINTIFFS' REQUEST FOR
   al,                                   )    JUDICIAL NOTICE
15                                       )
16          Defendants.                  )
                                         )    Date: June 28, 2007
17                                            Time: 10:00 a.m.
                                              Dept: 502
18
19                        I. **Procedural Background**
20        This is an action for personal injuries and loss of consortium.  The plaintiffs are Franklin and
21 Dana Ham, husband and wife.  On August 11, 2006, their complaint was filed alleging that Mr. Ham
22 sustained injuries as a result of his occupational exposure to asbestos.  He named several defendants,
23 including several DOE defendants, in the complaint.  On August 29, 2006, plaintiffs filed an
24 amendment to the complaint substituting the true name of Ecklund Insulation, Inc. (hereinafter
25 "Ecklund Insulation") for the Eleventh Doe.  The complaint as amended alleges that Ecklund
26 Insulation is liable to plaintiffs for damages arising out of Mr. Ham's injuries and Mrs. Ham's loss of
27 consortium. Plaintiffs allege that Ecklund Insulation sold asbestos-containing products and
28 performed work as a contractor that exposed Mr. Ham to asbestos dust, thereby causing his injuries.
   Plaintiffs' causes of action alleged against Ecklund Insulation include negligence and strict products

1   liability (design defect and failure to warn). Along with the summons and complaint plaintiffs

2   served Ecklund Insulation with a Statement of Damages, which specified that plaintiffs sought

3   compensatory damages in this action totaling $18,500,000. (See Plaintiffs' Request for Judicial

4   Notice.)

5        Ecklund Insulation is a defunct Nevada corporation. Its charter was revoked in the State of

6   Nevada in 1981, but the corporation has never dissolved. (See Exhibit A to the Declaration of

7   Steven J. Patti ("SJP Decl").) Plaintiffs served Ecklund Insulation with the summons and complaint

8   in this action by personally serving its President, Jerry Ecklund, at his home in Allyn, Washington.

9   (See Exhibit B to SJP Decl.) Although Mr. Ecklund apparently tendered the defense of the lawsuit

10  to the CNA Insurance Companies (see Exhibit C to SJP Decl.), no responsive pleading was ever

11  filed on behalf of Ecklund Insulation. Upon plaintiffs' request, the Clerk of the Court entered default

12  against Ecklund Insulation on November 30, 2006. (See Request for Judicial Notice.) Plaintiffs

13  provided notice to Jerry Ecklund—and to Richard Solski of CNA insurance—of the Request for

14  Entry of Default and of all hearings, trial dates, court orders and depositions taken in this matter.

15  Most recently, plaintiffs provided Mr. Ecklund and CNA insurance with notice of the instant Default

16  Prove-up Hearing, which stated that a judgment would be sought against Ecklund Insulation in this

17  matter. (See Exhibit D to SJP Declaration.)

18                          II. **Standard of Proof.**

19       The correct standard of proof in a default prove-up setting requires that the plaintiff merely

20  establish a prima facie case. *Johnson v. Stanhiser* (1999) 72 Cal.App. 4th 357, 361. "Generally

21  speaking, the party who makes default thereby confesses the material allegations of the complaint.

22  [Citation.] It is also true that *where a cause of action is stated* in the complaint and evidence is

23  introduced to establish a prima facie case the trial court may not disregard the same, but must hear

24  the evidence offered by the plaintiff and must render judgment in his favor for such sum, not

25  exceeding the amount stated in the complaint...as appears from the evidence to be just." *Id.*, quoting

26  *Taliaferro v. Damvis* (1963) 216 Cal.App.2d 398, 408-409 (original italics). In *Johnson*, the court

27  held that the trial court incorrectly applied a preponderance of the evidence standard, and ordered the

28  court to reconsider the issue of damages after the trial court declined to award damages to the

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

2

1  plaintiff.

2  ## III. Statement of Facts

3     Franklin and Dana Ham have been married for 48 years.  He is 74 years old and she is 67.

4  They reside in Yerington, Nevada.  They have two daughters and a son.  Mr. Ham was a remarkably

5  healthy and active man before his diagnosis of mesothelioma.  He is a lifetime non-smoker, apart

6  from two years when he served in the navy.  He was in the process of building a solar-powered home

7  made of straw bales and other recycled materials when he was diagnosed with malignant pleural

8  mesothelioma in July of 2006.   Malignant pleural mesothelioma is a terminal disease.  Mr. Ham was

9  told by his treating physician that he could expect to live from six to eighteen months from the time

10  of his diagnosis.

11  ## 1.  Mr. Ham's Exposure

12     The only established cause of mesothelioma in the United States is occupational exposure to

13  asbestos.  Mr. Ham had asbestos exposure over his long career as a plumber and pipe fitter.  After

14  serving as a cook for three years in the United States Navy, he began in the plumbing trade in

15  approximately 1957.  From 1963 to 1973, he lived in the Reno area and worked for several different

16  employers at job sites in Nevada and Northern California where he installed plumbing and heating

17  systems.  Much of his work was in mechanical rooms where he installed boilers and other high-heat

18  equipment.  This work was often done in the proximity of insulation contractors who would install

19  rigid split asbestos pipe covering and dry asbestos cement on pipes, boilers and fittings

20     Mr. Ham testified that, during the 1963 to 1973 period, he became familiar with three

21  insulators in particular because of the large number of jobs at which he saw them: Bill Brokavich,

22  Lonnie Treadway and Ernie Schoppe.  Mr. Ham stated that these insulators performed almost all of

23  their work for Jerry Ecklund of Ecklund Insulation.  Mr. Ham also became familiar with Jerry

24  Ecklund, whom he would see on jobs.  Mr. Ecklund brought the asbestos insulation materials that

25  the other three would work with in Mr. Ham's presence.  Their work caused Mr. Ham to be exposed

26  to asbestos dust from the mixing of the dry cement with water and from the cutting of the rigid split

27  asbestos pipe covering.  This work occurred in confined spaces that Mr. Ham shared with the

28  insulators, so that he would be forced to breathe the dust.  The Ecklund Insulators never warned him

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

3

1    about the hazards inherent in breathing the dust from their work, or took precautions to protect him

2    from the dust. (See Plaintiffs' Deposition of Franklin Ham at 49:17 to 53:1, Exhibit E to SJP Decl.)

3        During the defense portion of his deposition, Mr. Ham testified about a number of specific

4    projects during which he recalled working with Ecklund Insulation workers as they exposed him to

5    asbestos dust by their use of rigid split asbestos pipe covering and dry asbestos cement. In particular,

6    he recalled working in the same room with Ecklund Insulation workers at the Washoe Medical

7    center in the 1959-1964 when he was employed by Johnson Controls. The Ecklund Insulators used

8    asbestos insulation materials to cover pipes. (See Deposition of Franklin Ham at 469:24 to 472:15,

9    Exhibit E to SJP Decl.). He also recalled working with Ecklund insulators on another Johnson

10    Controls job at the University of Nevada Reno's girls' dormitory during the same period. Again, the

11    Ecklund insulators used asbestos cement and split pre-formed asbestos pipe covering. (See id. at

12    845:7 to 847:23.) Mr. Ham also recalled working with Ecklund Insulators on the new construction

13    of the University's sports complex during the 1959 to 1964 period. He worked in the same

14    mechanical room with Ecklund Insulators as they used asbestos-containing insulation materials.

15    (See id. at 855:2 to 858:25)

16        Mr. Ham also recalled working under similar circumstances with Ecklund Insulation at the

17    Nugget Casino during the 1959 to 1964 period. (See Deposition of Franklin Ham at 529:3 to

18    538:21). At the Nugget, he specifically recalled that the Ecklund Insulators suppled and used Kaylo

19    high temperature insulation. (See id. at 531:21 through 540:5). Kaylo insulation was, at the time,

20    an Owens Corning Fiberglas product that contained 15% asbestos. (See Request for Judicial Notice,

21    EPA product information published in accordance with Asbestos Information Act, at 55 Federal

22    Register 5144(20).)

23        From 1972 to 1973, Mr. Ham worked for a plumbing contractor called H.L. Murphy (See

24    Social Security records of Franklin Ham, at Exhibit F to SJP Decl.) Mr. Ham testified that Murphy

25    subcontracted almost all of his insulation work to Ecklund Insulation. (See Deposition of Franklin

26    Ham at 722:2-13, Exhibit E to SJP Decl.) Mr. Ham worked with Ecklund Insulators as they created

27    dust from their use of asbestos products at the Colonial Motor Lodge during the 1972 to 1973 period,

28    when he was employed by H.L. Murphy. (See id. at 695:21 to 702:16.) Mr. Ham worked for

LPS14
2161 Morrodge Way, #140
Sausalito, CA 94965
(415) 332-4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
4

1    Murphy during the same period on the construction of the Park & Walk hotel, where he also worked

2    in the presence of Ecklund insulators who were creating dust with asbestos products. (See id. at

3    708:3 to 711:6.) He recalled working at Titanium West in the early 1970's, where he spent three or

4    four days in the presence of Ecklund insulators who were installing insulation. (See id. at 713:9-

5    715:25.) Mr. Ham worked at the Overland Hotel in Reno on an H.L. Murphy remodel job where

6    Ecklund Insulation workers used asbestos insulation materials in his presence. (See id. at 719:7 to

7    725:15.)

8         Jerry D. Ecklund, President of Ecklund Insulation signed a declaration for this case (an

9    admission of a party within the meaning of Evidence Code § 1220). (See Declaration of Jerry D.

10   Ecklund at Exhibit G to SJP Decl.) In it, he states that his company was engaged in both the

11   installation and the sale of insulation from the 1960's through 1977. He states that his company

12   installed asbestos-containing rigid split pipe insulation and asbestos-containing insulating cement.

13   He confirms that Bill Brokavich, Lonnie Treadway and Ernie Schoppe were in fact employed by his

14   company. Mr. Ecklund recalls working with Frank Ham, whom he recalls as an instrument tech and

15   plumber who worked on jobs in the Reno during the 1964 to 1977 time period. Moreover, Mr.

16   Ecklund recalls installing asbestos rigid split pipe insulation and asbestos insulating cement on job

17   sites during this period where Mr. Ham was present. He identified several job sites that he had in

18   common with Mr. Ham, at which Ecklund installed asbestos insulating products: Fallon Naval Air

19   Station, Proctor Hug High School, Harvey's Wagon Wheel Casino, Harold's Club Casino, Harrah's

20   Casino, University of Nevada-Reno and St. Mary's Medical Center. (See Declaration of Jerry D.

21   Ecklund at Exhibit G to Patti Decl.)

22   2.   **Liability and Causation.**

23        Allan Smith is a Professor of Epidemiology at the U.C. Berkeley School of Public Health.

24   He testified in deposition in this case that Mr. Ham's mesothelioma is caused by exposure to

25   asbestos. (See Deposition Excerpt and Curriculum Vitae of Allan Smith at Exhibit H to Patti

26   Declaration.) Barry Horn, M.D., is a board-certified pulmonary specialist who testified on behalf of

27   plaintiffs in deposition in this case. He testified that his opinions in the case are summarized in his

28   report, which was attached to the deposition as an exhibit. In the report, he states that he reviewed

CPSM
2130 Maraschino Way, #140
Sausalito CA 14865
(415) 13? 4262

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE
5

1  Mr. Ham's medical records and pathology reports, and he confirms the diagnosis of malignant

2  pleural mesothelioma. He states that Mr. Ham's illness is incurable, and that he will die from the

3  disease. He states that, after reviewing Mr. Ham's deposition testimony, it is clear that he had "both

4  direct and bystander exposure to asbestos." He specifies that Mr. Ham was exposed to asbestos,

5  "when insulators were installing molded insulation and mixing up asbestos cement." He states that

6  Mr. Ham's asbestos exposure is confirmed pathologically by the presence of pleural plaques.

7  Finally, he opines that, "All of Mr. Ham's asbestos exposure should be considered a contributing

8  factor in the development of his malignancy."

9         An expert called by one of the defendants in the case, Industrial Hygienist Joel Cohen, opined

10  about the relative importance of Mr. Ham's various exposures. He testified that, "Mr. Ham's

11  greatest likelihood of what I'll refer to as significant exposure would have occurred from his work or

12  the work of others handling half-round type insulation material by far...." (See Deposition of Joel

13  Cohen at 19:3-9, Exhibit I to SJP Decl.)

14         Dr. Horn also testified about the medical and scientific "state of the art" concerning asbestos

15  hazards at his deposition. He defined this testimony as encompassing, "what was knowable to

16  anyone who would have been interested based upon what was published in the medical literature."

17  (Deposition of Barry Horn at 13:10-19, Exhibit J to SJP Decl.) He stated that, although much of the

18  relevant literature was medical in its focus, "there's plenty of literature that nonphysicians could

19  certainly understand." (Id. at 14:15-20.) Dr. Horn reviewed a vast array of such literature at his

20  deposition, going back to a 1918 publication by Hoffman which stated that the insurance industry

21  had already recognized the problem of asbestos. (Id. at 20:8-13.) By 1924, an article by Cooke in

22  the *British Medical Journal* reported on a fatal case of asbestosis. Cooke wrote another article in

23  1927 in which he coined the term "asbestosis," and in the late 20's several more reports of asbestosis

24  appeared in the literature. (Id. at 21:7 - 17.)

25         In 1930 Merewether published a landmark study in the *Journal of Industrial Hygiene* looking

26  at the incidence of asbestosis among a population of asbestos workers. Also in 1930, Lynch and

27  Smith reported on four cases of asbestosis in the *Journal of the American Medical Association*. This

28  was widely distributed throughout the United States. In the same year, Wood and Gloyne published

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

6

1    an article on the clinical presentation of asbestosis, what caused the disease, the symptoms people

2    had, and how asbestosis could be prevented. According to Dr. Horn, the information in the Wood

3    and Gloyne article would still be valid if presented in a textbook today. (See Deposition of Barry

4    Horn at 23:1-25:12, Exhibit J to SJP Decl.)

5          After 1930, the publications concerning asbestos continued to mushroom, with epidemiologic

6    studies looking at the incidence of disease in various asbestos-exposed populations, including Lynch

7    and Smith (1935) and Dreesen (1938). Both Dreesen and Lynch and Smith wrote about how to

8    prevent asbestos diseases from occurring. By the late 30's, case reports were published of lung

9    cancer in asbestos workers. By 1944 Gloyne published the results of Dr. Wedler's research in

10   Germany. Dr. Wedler published a number of reports of lung cancer in individuals with asbestos

11   exposure. In 1949, a monograph was published in the *Journal of the American Medical Association*

12   linking lung cancer to asbestos exposure. By 1955 Sir Richard Doll had written his article

13   establishing the link between lung cancer and asbestos exposure epidemiologically. By 1960

14   Wagner had written his article establishing the link between asbestos and mesothelioma. Then, in

15   1964, Dr. Irving Selikoff held his international conference in New York City, the proceedings of

16   which were published in 1965, on the incidence of mesothelioma and lung cancer in insulators.

17   (Deposition of Barry Horn at 26:1-33:17, Exhibit J to SJP Decl.) By the mid-1960's, according to

18   Dr. Horn, the state-of-the-art with regard to asbestos disease was completely developed, and there

19   were no significant developments that occurred thereafter. (Id. at 33:18-22.)

20         At least as early as 1949, California's Division of Industrial Safety enacted General Industry

21   Safety Orders that governed the handling of hazardous dusts, including asbestos, in the workplace.

22   They required employers handling asbestos at potentially harmful levels to employ general

23   ventilation, local exhaust ventilation, isolation of dusty work, wetting down the work are to control

24   dust and substitution of nonhazardous material to prevent harmful exposures. Where such control

25   measures were impossible or impracticable, respiratory protection equipment was to be supplied and

26   worn. Workers potentially exposed to exposed to hazardous dust were to be trained in the use of

27   such equipment, and were to be provided with change rooms and sanitation facilities to prevent them

28   from taking hazardous dusts home on their person. Asbestos was specifically listed in the

1   regulations one such hazardous dust to which the rules applied.  These rules were in effect through

2   the 1960's.  (See California Division of Industrial Safety General Industry Safety Orders, Title 8,

3   §§4100 et seq., attached to Request for Judicial Notice.)

4        No one from Ecklund Insulation ever warned Mr. Ham about the potential hazards of

5   exposure to the insulation products the company sold and installed.  (Deposition of Franklin Ham at

6   52:23-53:1, Exhibit E to SJP Decl.)  Nor did Ecklund Insulation take steps to protect Mr. Ham from

7   exposure to dust from their work.  Nor did they employ wet-down, isolation, ventilation or the use of

8   respiratory equipment to prevent workers such as Mr. Ham from being exposed.  Mr. Ham testified

9   in his deposition that he had no expectation that the asbestos products on his job sites could cause

10  him to develop cancer.  (See Id. at 65:7-15.)

11  3.   **Damages**

12       A.  **Economic Damages**

13       Barry Ben-Zion, PhD., a Professor of Economics at Sonoma State University, testified in this

14  case about his analysis of Mr. Ham's economic damages.  His analysis was based upon a review of

15  documentation concerning Mr. Ham's income from pension and social security benefits, and upon

16  published data estimating the value of home services rendered by retired married men.  Dr. Ben-Zion

17  prepared a report that summarized his findings.  The components of economic damage that he

18  evaluated were future loss of Social Security retirement income ($171,700, reduced to present

19  value), future loss of union pension ($78,000), future loss of Sierra Pacific Power Company pension

20  ($77,575), and past and future loss of home services ($114,550).  All of these amounts reflect a

21  reduction of the real figures to actuarial present value.  Thus, the total economic damages calculated

22  by Dr. Ben-Zion are $441,825.  (See excerpts from Deposition of Barry-Ben Zion, attached report

23  and supporting documents, Exhibit K to SJP Decl.)  Dr. Ben-Zion's report states that his report does

24  not address Mr. Ham's past and future medical expenses, which are additional components of his

25  economic loss.

26       Dr. Barry Horn testified about the value of medical treatment that Mr. Ham was reasonably

27  likely to require in the future relating to his mesothelioma.  He estimated these costs at between

28  $75,000 and $150,000.  (Deposition of Barry Horn, p. 66, at Exhibit J to SJP Decl.)  Dr. Ben-Zion

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

8

1   explained that, due to the fact that the increase in the costs of health care over time will likely exceed

2   the short term interest rate, no discount of those future costs to present value is necessary .

3   (Deposition of Barry Ben-Zion at p. 18:11-19:15.)  Plaintiffs' bills for past medical expenses relating

4   to his mesothelioma total over $79,500.   (See Summary and Copies of Medical Bills, at Exhibit L to

5   SJP Decl.)  Thus, Mr. Ham has established **$671,000 in total economic damages.**

6       **B. Non-economic Damages**

7       Mr. Ham's non-economic damages are related to his pain, discomfort, fears, anxiety, loss of

8   enjoyment of life and other mental and emotional distress caused by his mesothelioma.  See CACI

9   3905 A. Mesothelioma is an exceptionally painful and unpleasant disease.  Dr. Horn testified that

10  the disease is terminal.  There is no cure.  Mesothelioma will kill Mr. Ham.  Mr. Ham testified that

11  he has been advised by his doctors that he has a life expectancy of between 6-18 months from

12  diagnosis. (Deposition of Franklin Ham at 72:12-23, Exhibit E to SJP Decl.)  His tumor, which first

13  occurs in the pleura (the lining of the lung), will eventually grow to the point where it

14  circumferentially involves the lung, trapping and crushing the lung tissue to the point where the lung

15  cannot become oxygenated.  As a result, Mr. Ham can expect to experience increasing shortness of

16  breath, essentially a slow suffocation.

17      Dr. Horn has testified in the past about the extreme physical pain that a mesothelioma patient

18  can expect to experience as a result of the tumor growing in the chest wall, which eventually

19  involves the sensitive nerve roots between the ribs.  The tumor contacts and irritates the nerves, and

20  as a result Mr. Ham will have increasing pain and will require increasing doses of narcotics over

21  time.  Moreover, as the tumor gets larger it will consume more and more of Mr. Ham's resources and

22  energy.  He will lose weight, he will lose muscle mass, and eventually will be able to do less and less

23  for himself, requiring care 24 hours a day, 7 days a week.  (Deposition of Dr. Barry Horn in Rebecca

24  and Jess Soria, San Francisco Superior Court No. 429989, p. 33:22 - 35:10, at Exhibit M to SJP

25  Decl.)

26      Mr. Ham testified to already having experienced some of the physical pain and suffering that

27  Dr. Horn predicts.  Before being diagnosed he experienced constant fatigue and nagging pain in the

28  right lung and chest wall.  This was upsetting to him, as he had always been active and in excellent

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

9

1   health. Although he made repeated trips to doctors in the months leading up to his diagnosis, they

2   could not find what was wrong. (Deposition of Franklin Ham at 67:18-67:21, Exhibit E to SJP

3   Decl.) Eventually, he had surgery in the form of a CT-guided biopsy, which itself was painful. That

4   surgery led to Mr. Ham's diagnosis. After the CT-guided biopsy he had a thoracentesis, which

5   involved multiple biopsies of the lymph nodes. Emotionally, being diagnosed with mesothelioma

6   was devastating to both Mr. and Mrs. Ham. (Deposition of Franklin Ham at 70:15-73:8, Exhibit E to

7   SJP Decl.) Chemotherapy was recommended to Mr. Ham as the only available treatment. He

8   underwent chemotherapy beginning in October of 2006. The treatment causes him extreme nausea

9   and weakness, which lasts for at least three days. (Deposition of Franklin Ham at 75:1-76:8, **Exhibit**

10  **E** to SJP Decl.) He also experiences inability to eat, severe pain and constipation following the

11  chemotherapy. (Deposition of Dana Ham at 25:14-18, Exhibit N to SJP Decl.)

12        Mr. Ham's mesothelioma has permanently and dramatically changed the quality of the Hams'

13  lives. Before the disease, Mr. Ham was active and helpful, performing home maintenance,

14  housework and cooking in the household. His primary avocation, however, was building their home,

15  which consumed about 40 or 50 hours of his time each week. The home was planned as an

16  alternative, "green" residence made of straw bales and heated and powered using solar panels. As

17  explained by Mrs. Ham, their plans for the home were inspired by their dream of "living a better

18  way." Mr. Ham himself had done the underground wiring, the septic system, the rebar and the hay

19  bale construction. (Deposition of Dana Ham at 16:8-18, and 26:13-27:8 Exhibit N to SJP Decl.)

20  Mrs. Ham explained that Mr. Ham, "loves to make things and do things, build things. It makes him

21  very happy." He recently helped his son Eric build his house in Winnemuca, Nevada. Mr. Ham did

22  all of the electrical work and the heating system installation. Mr. Ham even derived satisfaction

23  from helping neighbors and friends with electrical, piping and plumbing projects. Since his

24  diagnosis, however, he has been unable to do household chores, unable to work on the house, and

25  unable to build things. (Id. at 30:9-32:16.)

26        Before Mr. Ham became sick he and Mrs. Ham enjoyed raising and riding their Arabian

27  horses. They enjoyed taking walks together and traveling around the country. Mr. Ham was an avid

28  fisherman and hunter. In terms of their future, they planned to travel to Australia for an outback

CPSM
3136 Waterway Way, #540
Sausalito, CA 94965
(415) 331-4363

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

10

1  horseback riding tour, and Mr. Ham was looking forward to showing his wife some parts of the

2  United States that she had not yet seen.  Now, however, Mr. Ham is unable to walk, or hike, ride,

3  fish or hunt.  The Hams' traveling plans are on permanent hold.  His day generally consists of the

4  following, according to Mrs. Ham: "He has no activities to speak of now...[He] goes out to the

5  house, builds a fire and does a lot of contemplating.  He sits there.  I leave him alone, let him do

6  what he wants to do, and that's pretty much it."  (Id. at 27:24-28:5 and 32:2-16.)

7       Obviously, this has been devastating for both of them emotionally as well.  Mr. Ham is

8  suffering from emotional trauma, according to his wife.  He is frustrated by his inability to walk  or

9  work without shortness of breath or fatigue.  (Id. at 28:25-29:5.)  He has bouts of moodiness and

10 irritability, which was never the case before his diagnosis: "One minute he's as sweet as he's always

11 been and the next minute he's cantankerous and irritable."  Mrs. Ham understands that this is a

12 consequence of the suffering Mr. Ham is undergoing with his illness: "I know what he's going

13 through.  I know he wouldn't be that way if he could help it."  (Id. at 27:6-23.)

14      In terms of the impact on her, Mrs. Ham explained how happy and appreciative she was of

15 her husband before his illness.  "We had a great life together, and I thought about how lucky I was to

16 have him.  And how—being a stupid teenager when I got married, how lucky I was that it turned out

17 so well.  And I counted my blessings every day."  (Id. at 29:6-23.)  Now, her thoughts are consumed

18 with worries about how long Frank will be around, and she spends time praying for Frank rather than

19 counting her blessings.  (Id. at 29:6-23.)  She is no longer making any plans for her future with her

20 husband.  Instead, Mrs. Ham explains, "I'm just living day to day and doing the best I can, and I'm

21 trying to be there for him."  (Id. at 34:1-4.)

## IV.  Conclusion

23      Plaintiffs have presented more than a prima facie case supporting their prayer for damages.

24 In fact, plaintiffs have presented the court with overwhelming evidence, including an admission from

25 the President of Ecklund Insulation, of Mr. Ham's exposure to the work, activities and products of

26 Ecklund Insulation.  According to the medical experts proffered by plaintiffs, this exposure was a

27 cause of Mr. Ham's mesothelioma.  According to at least one expert who was deposed, his exposure

28 to the sorts of products used by Ecklund Insulation was "far and away" his most significant.

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS'
REQUEST FOR JUDICIAL NOTICE

11

1   Plaintiffs have presented evidence establishing economic damages in this case of $671,000.

2   Plaintiffs have also presented evidence of both Mr. and Mrs. Hams' extreme non-economic damages

3   and loss of consortium. This evidence is sufficient to establish a prima facie case for the

4   $15,000,000 in non-economic damages prayed for in plaintiffs' Statement of Damages ($5,000,000

5   pain, suffering and inconvenience; $5,000,000 emotional distress; $5,000,000 loss of consortium),

6   which, in the absence of any kind of denial, should be awarded.   Thus, plaintiffs respectfully request

7   that the court enter judgment in favor of plaintiffs in the amount of $15,671,000.

8   Dated: June 25, 2007.

Clapper, Patti, Schweizer & Mason

By: _____

Steven J. Patti
Attorney for Plaintiff

PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT, DECLARATION OF STEVEN J. PATTI, PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

12

## PROOF OF SERVICE

I declare that I am employed in the County of Marin, California; I am over the age of eighteen years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140, Sausalito, California 94965.

On June 26, 2007, I served PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF STEVEN J. PATTI; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE on the interested parties in this action by placing a true copy thereof, enclosed in a sealed box, all charges paid, addressed as follows:

ECKLUND INSULATION, INC.
Jerry D. Ecklund
141 E. Olympic Ct
Allyn, WA  98524

Richard J. Solski
Law Department
Environmental & Mass Tort Claims
CNA Plaza - 19 South
333 S. Wabash Avenue
Chicago, IL  60685

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for pick up and delivery by United Parcel Service.

The foregoing sealed box was placed for pick up and delivery this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with all charges thereon fully paid with United Parcel Service at Sausalito, California, in the ordinary course of such business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June 26, 2007, at Sausalito, California.

_____
Lenette Lew

EXHIBIT $\mathcal{E}$

1   Steven J. Patti, (State Bar No. 163773)
    Clapper, Patti, Schweizer & Mason
2   Marina Office Plaza
    2330 Marinship Way, Suite 140
3   Sausalito, CA 94965
    Telephone: (415) 332-4262
4   Facsimile: (415) 331-5387

5   Attorney for Plaintiffs

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10

11  FRANKLIN HAM and DANA HAM,              )   Case No. 455063
                                            )
12          Plaintiffs,                     )   NOTICE OF ENTRY OF DEFAULT
                                            )   JUDGMENT AGAINST ECKLUND
13  v.                                      )   INSULATION, INC.
                                            )
14  ACCO-AIR CONDITIONING COMPANY, et       )
    al.,                                    )
15                                          )
            Defendant.                      )
16                                          )

17  TO DEFENDANT ECKLUND INSULATION, INC.:

18      NOTICE IS HEREBY GIVEN that on June 28, 2007, judgment was entered in the above-

19  entitled action by the Honorable Charlotte W. Woolard, Judge of the Superior Court.

20      A true and correct copy of the Default Judgment Against Ecklund Insulation, Inc. entered in

21  the above-captioned action on June 28, 2007, by the Honorable Charlotte W. Woolard, is attached

22  hereto as Exhibit "A".

23  Dated: June 28, 2007.

24                                  CLAPPER, PATTI, SCHWEIZER & MASON

25

26                                  By:  _____
                                             Steven J. Patti
27                                           Attorney for Plaintiffs

28

1  Steven J. Patti, (State Bar No. 163773)
   Clapper, Patti, Schweizer & Mason
2  Marina Office Plaza
   2330 Marinship Way, Suite 140
3  Sausalito, CA 94965
   Telephone: (415) 332-4262
4  Facsimile: (415) 331-5387

5  Attorney for Plaintiffs

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

JUN 2 8 2007

GORDON PARK-LI, Clerk
BY: ____ANNA PEDIGONDA____
Deputy Clerk

6

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10      CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

11  FRANKLIN HAM and DANA HAM,          )
                                        )    Case No. 455063
12          Plaintiffs,                 )
                                        )    DEFAULT JUDGMENT AGAINST
13  v.                                  )    ECKLUND INSULATION, INC.
                                        )
14  ACCO-AIR CONDITIONING COMPANY, et   )
    al.,                                )
15                                      )
            Defendant.                  )
16                                      )

17      This action came on for a default prove-up hearing pursuant to California Code of Civil

18  Procedure Section 585 on June 28, 2006 in Department 502 of the above-entitled court, the

19  Honorable Charlotte W. Woolard presiding. Plaintiffs Franklin Ham and Dana Ham were

20  represented by their attorney of record, Steven J. Patti. Documentary evidence, recorded testimony

21  and affidavits were proffered and admitted. After considering the documentary evidence, recorded

22  testimony, affidavits and arguments of counsel, the Court finds that a prima facie case of liability for

23  the supply of a defective asbestos-containing product and for negligence has been made against

24  defendant Ecklund Insulation, Inc., sued herein as "DOE XI," and that such conduct was a

25  substantial factor in causing plaintiffs' injuries and damages.

26      NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment be

27  entered in favor of plaintiffs Franklin Ham in the amount of $ 671,000.⁰⁰ economic

28  damages and $ 1,300,000.⁰⁰ non-economic damages, and in favor of Dana Ham in the

CPSM
10 Marinship Way, #140
Sausalito, CA 94965
(415) 332-4262

Judgment Against Ecklund Insulation, Inc.

*EXHIBIT A*

amount of $ 700,000.00 _____ non-economic damages, for a total judgment to plaintiffs

of $ 2,671,000.00 _____. This judgment is subject to the addition of costs and

interest in an amount to be later determined by the Court.

Dated: June 28, 2007

Charlotte W. Woolard

The Honorable Charlotte W. Woolard
Judge of the Superior Court

1

### PROOF OF SERVICE

2      I declare that I am employed in the County of Marin, California; I am over the age of eighteen

3  years and not a party to the within action; my business address is 2330 Marinship Way, Suite 140,

4  Sausalito, California  94965.

5      On June 28, 2007, I served the attached: Notice of Entry of Default Judgment Against

6  Ecklund Insulation, Inc. in said action,

7      <u>XXX</u>                    By placing a true copy thereof, enclosed
                                 in a sealed envelope, with postage thereon
8                                fully prepaid, in the United States mail
                                 at Sausalito, California addressed as
9
   ECKLUND INSULATION, INC.
10 Jerry D. Ecklund
   141 E. Olympic Ct
11 Allyn, WA  98524

12 Richard J. Solski
   Law Department
13 Environmental & Mass Tort Claims
   CNA Plaza - 19 South
14 333 S. Wabash
   Chicago, IL 60685
15

16     I declare under penalty of perjury that the foregoing is true and correct and that this

17 declaration was executed on June 28, 2007 at Sausalito, California.

18

19                                    _____
                                              Lenette Lew
20

21

22

23

24

25

26

27

28

*EXHIBIT* F

# COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS

THIS COVENANT NOT TO EXECUTE AND ASSIGNMENT OF CLAIMS ("Agreement") is entered into effective as of the 24th day of October, 2007, by and between FRANKLIN HAM and DANA HAM (hereinafter collectively referred to as "HAM") on the one hand, and ECKLUND INSULATION, INC. (hereinafter referred to as "ECKLUND") on the other hand (HAM and ECKLUND shall sometimes collectively be referred to herein as the "Parties" and separately as a "Party"), and is based upon the following facts:

## RECITALS

A.     On August 11, 2006, HAM filed a complaint for personal injuries and loss of consortium, alleging that Mr. Ham sustained injuries as a result of his occupational exposure to asbestos. HAM named several defendants, including DOE defendants, in the complaint.

B.     On August 29, 2006, HAM filed an amendment to the complaint substituting the true name of ECKLUND for the Eleventh DOE. The complaint alleges that ECKLUND sold asbestos-containing products and performed work as a contractor that exposed Mr. Ham to asbestos dust. Along with the summons and complaint, HAM served ECKLUND with a Statement of Damages, which specified that HAM sought compensatory damages totaling Eighteen Million Five Hundred Thousand Dollars ($18,500,000).

C.     ECKLUND tendered defense to CNA Insurance Companies.  However, as no responsive pleading was filed on behalf of ECKLUND, HAM obtained a default against ECKLUND on November 30, 2006. After a default prove-up hearing on June 28, 2006, the Court entered a default judgment against ECKLUND on June 28, 2007 in favor of Franklin Ham in the amount of Six Hundred Seventy One Thousand Dollars ($671,000) economic damages and One Million Three Hundred Thousand Dollars ($1,300,000) non-economic damages and for Dana Ham in the amount of Seven Hundred Thousand Dollars ($700,000) non-economic damages, for a total of Two Million Six Hundred Seventy One Thousand Dollars ($2,671,000).  The Court further ordered that the judgment was subject to the addition of costs and interest in an amount to be later determined by the Court.   The damages, costs and interests are hereinafter collectively referred to as the "JUDGMENT."

D.     The Parties now desire to resolve and settle all disputes between them.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     **Assignment of Claims**.  By execution of this Agreement, ECKLUND irrevocably

1

assigns, conveys, sells, grants and transfers to HAM any and all of ECKLUND'S rights, benefits and remedies, as well as any and all causes of action that ECKLUND might have or might have had against CNA Insurance Companies arising out of HAM's personal injury action, claims and JUDGMENT obtained against ECKLUND, and arising out of ECKLUND'S tender of defense thereof, including but not limited to, breach of the implied covenant of good faith and fair dealing, breach of the duty to defend, breach of the duty to settle and bad faith causes of action. ECKLUND further irrevocably assigns, conveys, sells, grants and transfers to HAM the right to prosecute such causes of action in HAM's name and to settle or otherwise resolve such causes of action as HAM sees fit, in HAM's sole and absolute discretion.

2.  **Covenant Not to Execute**.  In exchange for and in consideration of ECKLUND'S agreement to assign claims as set forth in paragraph 1 above, HAM agrees that it will refrain from executing or garnishing on the JUDGMENT against ECKLUND or its principals, officers, affiliates, agents, heirs, successors in interest and predecessors in interest.

3.  **Representations and Warranties**.  Each Party hereby agrees, represents and warrants to and for the benefit of the other Party as follows:

    (a)  Each Party has read this Agreement and knows and understands its contents fully. Each voluntarily executes this Agreement and without being pressured or influenced by any statement or representation of any person, acting on behalf of any other Party, including any other Party's officers, directors, employees agents and attorneys.

    (b)  Each Party has full power and authority to enter into this Agreement and to consummate the transactions described or contemplated herein.

4.  **Enforceability and Continuing Jurisdiction**.  Notwithstanding the provisions of California Evidence Code Section 1152, this Agreement shall be admissible to enforce its terms and the Parties hereby stipulate and agree that the Superior Court of San Francisco shall have jurisdiction to enforce the terms and conditions of this settlement pursuant to Code of Civil Procedure Section 664.6 and to enter judgment pursuant to this Agreement.

5.  **No Presumption Against Preparer of Agreement**.  The Parties hereby acknowledge and agree that each of the Parties have contributed to the drafting of this Agreement, and no provision hereof shall be construed against any Party as being the drafter hereof. This Agreement shall therefore be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted.

6.  **Invalid Provisions**.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future laws, such provision shall be fully severable, and the remaining provisions shall constitute the parties' agreement and shall be enforced to the greatest extent permitted by applicable law.

2

7. **Cooperation**. Each Party hereto agrees to execute all documents and instruments and to take all actions as may be necessary to implement the Parties' intentions underlying, and the terms of, this Agreement.

8. **Amendment**. This Agreement may be amended, modified or terminated only by a written instrument executed by all Parties to this Agreement.

9. **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

10. **Entire Agreement**. This Agreement represents the entire agreement between the Parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous discussions, agreements and/or representations of or between the Parties hereto regarding the subject matter hereof.

11. **Counterparts Execution**. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the Parties hereby enter into this Agreement the day and year first above written.

Dated: October 24, 2007

ECKLUND INSULATION, INC.

By: _____

Its: _____PRESIDENT_____

Dated: October 5, 2007

By: _____
       FRANKLIN HAM

Dated: ~~October ___, 2007~~
11/5/2007

By: _____
       DANA HAM

3

EXHIBIT B

# ARTICLES OF INCORPORATION

## OF

## ECKLUND INSULATION INC.

### FILED AT THE REQUEST OF

Cooke and Roberts, Attys.
P. O. Box 2229, Reno, Nevada

September 27, 1963
(DATE)

*John Koontz*

JOHN KOONTZ, SECRETARY OF STATE

*John F. Walker*

(BY) DEPUTY SECRETARY OF STATE

No 1762-63

FILING FEE $ 40.00



# State of Nevada

# Department of State

I, JOHN KOONTZ, Secretary of State of the State of Nevada, do hereby certify

that _____

did on the _____ day of _____ 19___, file in this office

the original Articles of incorporation; that said Articles are now on file and of record in the office

of the Secretary of State of the State of Nevada, and further,

that said Articles contain all the statements of facts required

by the law of said State of Nevada.

In Witness Whereof, I have hereunto set my hand and affixed

the Great Seal of State, at my office in Carson City, Nevada, this

_____ day of _____ A. D. 19___

John Koontz
Secretary of State

Deputy

ARTICLES OF INCORPORATION

O F

ECKLUND INSULATION INC.

--oOo--

KNOW ALL MEN BY THESE PRESENTS:

That we, the undersigned, have this day associated ourselves together to establish a corporation under the provisions of and subject to the requirements of an Act of the Legislature of the State of Nevada entitled "An Act Providing a General Corporation Law"; approved March 21, 1925, and the acts amendatory thereof and supplemental thereto, for the purpose of and under the corporate name hereinafter stated, and to that end we hereby certify as follows:

I.

The name of the corporation is to be

ECKLUND INSULATION INC.

(hereinafter referred to as the "corporation")

II.

The principal office and place of business in the State of Nevada of said corporation is to be located at 1400 Montello Street, Reno, Washoe County, Nevada.

III.

The nature of the business of the corporation and the

COOKE & ROBERTS
ATTORNEYS
18 E. 1ST STREET
RENO, NEVADA

objects or purposes proposed to be transferred, promoted or carried on by it are:  To engage in any lawful activity.

### IV.

That the maximum number of shares which the corporation is authorized to have outstanding at any time shall be Seventy-five Thousand (75,000) of the par value of One Dollar ($1.00) per share, and there shall be but one class of stock, to-wit: common stock.

### V.

That the members of the governing board of the corporation shall be styled directors and shall be three (3) in number. The names and post office addresses of the members of the first Board of Directors are as follows:

| Name | Post Office Address |
| --- | --- |
| Jerry D. Ecklund | 1840 Windsor Way, Reno, Nevada |
| Leonard E. Shaunce | 1400 Montello, Reno, Nevada |
| Janet Ecklund | 1840 Windsor Way, Reno, Nevada |

### VI.

The capital stock of the corporation shall not be subject to assessment.

### VII.

The corporation shall have perpetual existence.

### VIII.

The name and post office address of each incorporator signing this Certificate of Incorporation are as follows:

| Name | Post Office Address |
|------|---------------------|
| Jerry D. Ecklund | 1840 Windsor Way, Reno, Nevada |
| Leonard E. Shaunce | 1400 Montello, Reno, Nevada |
| Janet Ecklund | 1840 Windsor Way, Reno, Nevada |

IX.

The corporation reserves the right to amend, alter, change, or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

IN WITNESS WHEREOF, we have hereunto subscribed our names this 26th day of September, 1963.

*[signatures]*

COOKE & ROBERTS
ATTORNEYS
15 E. 1ST STREET
RENO, NEVADA

3.

STATE OF NEVADA  )
                     : SS
COUNTY OF WASHOE )

       On this ___ day of September, 1963, before me, a
Notary Public, personally appeared JERRY D. ECKLUND, LEONARD
E. SHAUNCE, and JANET ECKLUND, known to me to be the persons
described in and who executed the foregoing instrument, who
acknowledged to me that they executed the same freely and
voluntarily and for the uses and purposes therein mentioned.

       IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my Official Seal, the day and year in this Certificate
first above written.

                                     Notary Public

                          In and for said County and
                                State

DORTHA M. TRIMBLE
Notary Public, Washoe County, Nevada
My Commission Expires ___

COKE & ROBERTS
ATTORNEYS
10 E. 1ST STREET
RENO, NEVADA

1762-63

BEFORE FILLING OUT FORM READ NOTE AT BOTTOM OF PAGE

## LIST OF OFFICERS, DIRECTORS AND AGENT

OF

### ECKLUND INSULATION INC,

A _____ **Nevada** _____ Corporation

**For the Filing Period July 1, 196<u>3</u> to July 1, 196<u>4</u> SIXTY DAY LO**

To the Honorable Secretary of State of the State of Nevada:

As required by NRS 1937, secs. 78.150 to 80.180, as amended, I, **JERRY D. ECKLUND** _____ (Name of Officer)

do hereby certify under corporate seal of said corporation, that I am the _____ **President** _____ thereof; that the (Title of Officer)

following is a full, true and correct list of all the officers and directors of said corporation at the date of this certificate with their addresses, to wit:

| OFFICERS AND DIRECTORS | | Post office box or street and number, also city or town and state |
|---|---|---|
| Jerry D. Ecklund | President | 1840 Windsor Way, Reno, Nevada |
| Leonard E. Shaunce | Vice President | 1400 Montello St., Reno, Nevada |
| | Vice President | |
| Janet Ecklund | Secretary and Treasurer | 1840 Windsor Way, Reno, Nevada |
| | Director | |
| | Director | |
| | Director | |
| | Director | |
| | Director | |

| OFFICERS WHO ARE NOT DIRECTORS | |
|---|---|
| NAME | Post office box or street and number, also city or town and state |
| | |
| | |
| | |

Furthermore, that the corporation's principal office in the State of Nevada is located at Room No. _____ **603** _____

**Medical Dental** Building, No. **130 North Virginia** Street, City or Town of _____ **Reno** _____

County of _____ **Washoe** _____, Nevada, and that _____ **Thomas A. Cooke** _____ is the duly appointed

resident agent of said corporation in charge of said office upon whom process can be served.

(Impress corporate seal here)

_Jerry D. Ecklund_
(Name of officer)

_President_
(Title)

### CERTIFICATE OF ACCEPTANCE OF APPOINTMENT BY RESIDENT AGENT

I, _____ **THOMAS A. COOKE** _____, hereby accept the appointment as Resident agent of the above-named corporation.

In Witness Whereof, I have hereunto set my hand this _____ day of _____ **October** _____ 196__

_Thomas A Cooke_
Resident Agent

NOTE

1762-63

**OFFICERS, DIRECTORS AND DES-IGNATION OF RESIDENT AGENT**

OF

**ECKLUND INSULATION INC.**

Filed ____ OCT 8 ____ by ____

Cooke and Roberts, Attys.
P. O. Box 2239, Reno, Nevada

**JOHN KOONTZ,**
*Secretary of State.*

By ____
*Deputy Secretary of State.*

163

1963-64 & Sixty Day LO
$10.00 Paid Balance

*EXHIBIT* C

**E-Filed**

Colorado Secretary of State
Date and Time: 07/24/2007 02:39 PM
Id Number: 19871070246

Document number: 20071341034

Document processing fee
  If document is filed on paper        $100.00
  If document is filed electronically  **$ 10.00**
Late fee if entity is in noncompliant status
  If document is filed on paper        $ 50.00
  If document is filed electronically  $ 20.00
Fees & forms/cover sheets
  are subject to change.
To file electronically, access instructions
  for this form/cover sheet and other
  information or print copies of filed
  documents, visit www.sos.state.co.us
  and select Business Center.
Paper documents must be typewritten or machine printed.

ABOVE SPACE FOR OFFICE USE ONLY

## Annual Report

filed pursuant to §7-90-301, et seq. and §7-90-501 of the Colorado Revised Statutes (C.R.S)

ID number:                                   19871070246

Entity name:                                 THE CONTINENTAL INSURANCE COMPANY

Jurisdiction under the law of which the
entity was formed or registered:            Pennsylvania

**You must complete line 1.**

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

1. Name(s) and address(es) of the individual(s) causing the document to be delivered for filing:

| Dority | Neifia | O. | |
|--------|--------|-----|-----|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

333 S. Wabash Ave., 28th Floor
*(Street name and number or Post Office Box information)*

| Chicago | IL | 60604 |
|---------|-----|--------|
| *(City)* | *(State)* | *(Postal/Zip Code)* |

| | |
|--|--|
| *(Province – if applicable)* | *(Country – if not US)* |

(The document need not state the true name and address of more than one individual. However, if you wish to state the name and address of any additional individuals causing the document to be delivered for filing, mark this box ☐ and include an attachment stating the name and address of such individuals.)

☐ **Mark the box if** information requested below is current in the records of the Secretary of State **OR** complete Questions 2 through 7.

2. Principal office street address:

333 S. Wabash Ave.
_____
(Street name and number)

Chicago                    IL        60604
_____
(City)              (State)        (Postal/Zip Code)
                  United States
_____
(Province - if applicable)    (Country - if not US)

3. Principal office mailing address:
(if different from above)

333 S. Wabash Ave., 28th Floor
_____
(Street name and number or Post Office Box information)

Chicago                    IL        60604
_____
(City)              (State)        (Postal/Zip Code)
                  United States
_____
(Province - if applicable)    (Country - if not US)

4. Registered agent name:  (if an individual)
_____
(Last)        (First)        (Middle)        (Suffix)

**OR** (if a business organization)  The Corporation Company
_____

5. The person identified above as registered agent has consented to being so appointed.

6. Registered agent street address:

1675 Broadway Ste 1200
_____
(Street name and number)

Denver                    CO        80202
_____
(City)              (State)        (Postal/Zip Code)

7. Registered agent mailing address:
(if different from above)

1675 Broadway, Suite 1200
_____
(Street name and number or Post Office Box information)

Denver                    CO        80202
_____
(City)              (State)        (Postal/Zip Code)
                  United States
_____
(Province - if applicable)    (Country - if not US)

**Disclaimer:**

This form, and any related instructions, are not intended to provide legal, business or tax advice, and are offered as a public service without representation or warranty. While this form is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form. Questions should be addressed to the user's attorney.

# NOTICE:

*This "image" is merely a display of information that was filed electronically. It is not an image that was created by optically scanning a paper document.*

*No such paper document was filed. Consequently, no copy of a paper document is available regarding this document.*

*Questions? Contact the Business Division. For contact information, please visit the Secretary of State's web site.*