G. David Godwin, No. 148272
Raymond J. Tittmann, No. 191298
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone:     415.989.5900
Facsimile:      415.989.0932
Email:            dgodwin@cbmlaw.com
                      rtittmann@cbmlaw.com

Attorneys for Defendant
The Continental Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Franklin Ham and Dana Ham,<br><br>                    Plaintiffs,<br><br>    v.<br><br>The Continental Insurance Company;<br>and Does 1 through 50,<br><br>                    Defendants. | No. CV 08 1551 SC<br><br>**DEFENDANT THE CONTINENTAL INSURANCE COMPANY'S REPLY BRIEF SUPPORTING MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CERTAIN CLAIMS**<br><br>**Date:**          July 11, 2008<br>**Time:**          10:00 a.m.<br>**Courtroom:**  1<br><br>**Hon. Samuel Conti** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL AND LEGAL ISSUES [L.R. 7-4(3)] ................................................................. 1

III. LEGAL ANALYSIS ............................................................................................................... 2

    A. Plaintiffs' Arguments in Defense of the Third Cause of Action Alleging a Breach of the Duty To Settle Misapply California Law .................................... 2

        1. Continental's Alleged Conduct in December 2007 Could Not Have Caused a Default Judgment in June 2007 ................................................. 2

        2. The Complaint Itself Demonstrates that the Alleged Settlement Demand Was Not Definite ........................................................................ 4

    B. Plaintiffs Have Tried To Restyle their Seventh Cause of Action "By Third-Party Tort Claimant" as a "Judgment Creditor" Claim Under Section 11580, But that Must Be Done in an Amended Complaint .................. 6

    C. Plaintiffs Cannot Seek Punitive Damages Under Illinois or California Law ................................................................................................................... 8

        1. Illinois Has No Interest in Promoting a Punitive Damage Claim Against Companies Domiciled Within Its Borders ..................................... 8

        2. Plaintiffs Have Yet To Allege a Proper Judgment Creditor Claim, and the Claim They Contend Is A Judgment Creditor Claim Does Not Seek Punitive Damages .................................................................... 9

    D. Plaintiffs Cannot Claim a Cause of Action for Unfair Claims Practices Under Nevada Law ......................................................................................... 12

IV. CONCLUSION ................................................................................................................... 16

# Table of Authorities

Page(s)

**Cases**

*Arno v. Club Med, Inc.*,
 22 F.3d 1464 (9th Cir.1994) .................................................................................. 9

*Chenoweth v. Financial Indemn Co.*,
 476 P. 2d 519 (1970) ............................................................................... 2, 3, 15

*Coleman v. Gulf Insur. Group*,
 41 Cal. 3d 782 (1986) ................................................................................. 10, 11

*Comunale v. Traders & Gen. Insur. Co.*,
 50 Cal. 2d 654 (1958) ....................................................................................... 2, 3

*Continental Ins. Co. v. Superior Court*,
 37 Cal. App. 4th 69 (1995) .............................................................................. 11

*Frontier Oil Corp. v. RLI Insur. Co.*,
 153 Cal. App. 4th 1436 (2007) ......................................................................... 14

*Hand v. Farmers Ins. Exchange*,
 23 Cal. App. 4th 1847 (1994) ..................................................................... 10, 11

*Hughes v. Mid-Century Insur. Co.*,
 38 Cal. App. 4th 1176 (1995) ................................................................... 2, 6, 11

*Hurtado v. Superior Court*,
 11 Cal. 3d 574 (1974) ..................................................................................... 8, 9

*Jane D v. Ordinary Mutual*,
 32 Cal. App. 643 (1995) ..................................................................................... 9

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
 313 U.S. 487 (1941) ........................................................................................... 9

*Ladas v. Cal. State Auto. Assn.*,
 19 Cal. App. 4th 761 (1993) .............................................................................. 4

*Maxwell v. Fire Insur. Exch.*,
 60 Cal. App. 4th 1446 (1998) ..................................................................... 10, 11

*McLoughlin v. National Union Fire Insur.*,
 23 Cal. App. 4th 1132 (1994) ............................................................................ 5

*Murphy v. Allstate Ins. Co.*,
 17 Cal. 3d 937 (1976) ................................................................. 1, 2, 4, 7, 9, 10, 11

*Pioneer Chlor Alkali Co. v. Nat'l Union*,
 863 F. Supp. 1237 (D. Nev. 1994) .................................................................. 15

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Reich v. Purcell,*
  67 Cal. 2d 551 (1967) ............................................................................. 8, 9, 14

*Rivera v. Southern Pacific Transp. Co.,*
  217 Cal. App. 3d 294 (1990) .............................................................................. 6

*San Diego Housing Comm. v. Industrial Indemn. Co.,*
  95 Cal. App. 4th 669 (2002) ......................................................................... 10, 11

*Softbank Content Services Inc. v. MPO Canada Inc.,*
  2007 WL 870349, Nos. 04-17129, 05-17297 (9th Cir. Mar. 22, 2007) ........................ 9

**Statutes**

Cal. Civ. Code
  § 1646 ............................................................................................................... 14

Cal. Insur. Code
  § 11580 ........................................................................................................ 1, 6, 7

**Other Authorities**

Hon. H. Walter Croskey, et al., Cal. Prac. Guide Ins. Lit., Ch. 12A-D,
  (The Rutter Guide 2008)
  § 1:20-21 ............................................................................................................ 15
  § 12:84 ................................................................................................................. 7
  § 12:85 .............................................................................................................. 7, 9
  §§ 15:1040-41 .................................................................................................... 11

## I. INTRODUCTION

Despite having filed their underlying tort suit against Ecklund Insulation, Inc. ("Ecklund Insulation") in a California Superior Court, having obtained a default judgment there, having resolved their claims against Ecklund Insulation in an agreement explicitly controlled by California law, and having brought this suit against Continental Insurance Co. ("Continental") in California, Plaintiffs now scramble to assert that a crazy-quilt patchwork of *other* states' laws applies to their claims, apparently realizing that California law bars many of them. Plaintiffs' post-hoc and self-serving efforts to recast their claims under other states' laws – even claiming that multiple states' laws apply within the same cause of action – should be rejected. The forum state's law should apply, because Plaintiffs voluntarily availed themselves of this jurisdiction at every relevant point, and no other state has a superior interest.

Under California law, Continental's Motion should be granted.

## II. FACTUAL AND LEGAL ISSUES (IN ADDITION TO THOSE PREVIOUSLY STATED)

(1) Motion to strike punitive Damages claim

- Whether any of the causes of action seeking punitive damages (Second, Third, Fourth, and Fifth) are based on judgment creditor rights rather than assignment.
- Whether any of the causes of action seeking punitive damages (Second, Third, Fourth, and Fifth) may be asserted by a judgment creditor.

(3) Motion to dismiss claim for breach of duty to settle

- Whether Plaintiffs' agreement on October 27, 2007 not to execute the judgment against Ecklund Insulation, thus removing any risk to Ecklund Insulation, extinguished any duty to settle. *See Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941 (1976) (when "a judgment in excess of policy limits present[s] no risk to the insured or to his heirs, the insurer had no duty to settle within policy limits").

(5) Motion to dismiss Plaintiffs claim "by Third Party Tort Claimant"

- Whether anything in Plaintiffs Seventh Cause of Action indicates Plaintiffs were seeking relief as a judgment creditor under Cal. Insur. Code section 11580.

- Whether judgment creditor claims may allege conduct and seek damages for pre-judgment conduct. *See Hughes v. Mid-Century Insur. Co.*, 38 Cal. App. 4th 1176, 1185 (1995) (judgment creditor status is not achieved until "*after [the judgment] becomes final*") (emphasis in original).

- Whether a judgment creditor claim may recover an excess judgment. *See Murphy*, 17 Cal. 3d at 944 ("section 11580 dos not authorize plaintiff to proceed against [the insurer] for the excess judgment over policy limits").

### III. LEGAL ANALYSIS

#### A. Plaintiffs' Arguments in Defense of the Third Cause of Action Alleging a Breach of the Duty To Settle Misapply California Law

##### 1. Continental's Alleged Conduct in *December* 2007 Could Not Have Caused a Default Judgment in *June* 2007

Plaintiffs do not dispute that California law should govern their claim for breach of duty to settle. Opp. at 5:8 – 9:1 (purporting to apply the leading case on this issue, *Comunale v. Traders & Gen. Insur. Co.*, 50 Cal. 2d 654 (1958)).

Plaintiffs rather argue that, under California law, an insurer can be liable for an excess judgment if it fails to accept a settlement demand after the judgment. Opp. at 5:23 (citing *Chenoweth v. Financial Indemn Co.*, 476 P. 2d 519 (1970)). This argument is based on equivocation. The "post-judgment" settlement demand that supported the breach in *Chenoweth* was post-*trial* judgment, but pre-*final* judgment. Here, the "post-judgment" settlement demand was, by Plaintiffs' own admission, post-*final* judgment. Opp. at 9:10.

The chronology in this case illustrates the importance of the distinction between a *trial* judgment and a *final* judgment. On June 28, 2007, a "final" default judgment was entered against Ecklund Insulation. Complaint ¶ 14; Opp. at 9:10. On October 27, 2007, Plaintiffs entered into a covenant not to execute the judgment against Ecklund Insulation in return for an assignment of the claim, protecting Ecklund from any risk of liability. Complaint ¶ 19, Ex. F. On December 26, 2007, Plaintiffs allege to have sent a settlement demand to Continental. Complaint ¶ 15.

In order for the December 2007 settlement demand to support the alleged breach, and recovery of the June 2007 excess default judgment, the alleged wrongdoing in *December* 2007 would have to somehow have proximately caused the alleged damage in *June* 2007. *See Comunale*, 50 Cal. 2d at 660-61 ("Section 3300 of the Civil Code provides that the measure of damages for a breach of contract is the amount which will compensate the aggrieved for all the detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result from it."). Otherwise, there is no consequential damage and the claim fails.

But the default judgment amount was fixed six months before Plaintiffs allege to have sent a settlement demand. The alleged refusal to settle therefore could not possibly, in any way, have proximately caused the earlier judgment. This is obvious.

In *Chenoweth*, the settlement demand came after the *trial* judgment but while the case was pending appeal. Refusing that settlement could still proximately cause a final judgment in excess of policy limits because the *final* judgment came *after* the settlement demand. Thus, *Chenoweth* does not speak to the point here, that refusing a settlement demand cannot cause an excess judgment fixed and final six months earlier.

The chronology also undercuts Plaintiffs' argument that the duty to settle does not "extinguish." Opp. at 5:8. The duty to the insured to settle did "extinguish" at least when Plaintiffs covenanted not to execute a judgment against Ecklund Insulation, in October 2007. *See* Complaint, Ex. F. Once that happened, Ecklund Insulation's risk vanished, and with it any duty Continental may have had to Ecklund Insulation.[1]

The duty to settle is premised on the notion "that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests." *Comunale*, 50 Cal. 2d at 659. Once a covenant to execute is in place, the policyholder has no further risk or interest to be considered; *Comunale* no

---

[1] For purposes of this motion, of course, Continental accepts the allegations of the Complaint as true. In fact, whether Continental ever had *any* duty to Ecklund Insulation remains in question, as no party has located any alleged insurance policy.

longer applies. As the California Supreme Court explained in *Murphy*, when "a judgment in excess of policy limits present[s] no risk to the insured or to his heirs, the insurer had no duty to settle within policy limits." *Murphy*, 17 Cal. 3d at 941. Therefore, when the settlement demand was allegedly issued in December 2007, two months after Ecklund Insulation was relieved of any risk, there was no duty to settle.

Plaintiffs cannot escape this result by arguing that Continental owed a continuing duty to Plaintiffs as judgment creditors. Claimants are not third-party beneficiaries to the insurance policy, and obviously suffer no risk from an excess judgment. Indeed the claimant benefits from the excess judgment:

> The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach. Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage.

*Murphy*, 17 Cal. 3d at 941. Plaintiffs cannot recover under a duty not owed to them:

> [N]either third party beneficiary doctrine nor the Financial Responsibility Law warrant granting the injured claimant the right to recover from the insurer for breach of the duty to settle.

*Murphy*, 17 Cal. 3d at 944.

The timing of the alleged settlement demand – after a final judgment ***and*** after the covenant not to execute – therefore dooms Plaintiffs' claim for breach of duty to settle. The Third Cause of Action should be dismissed with prejudice.

### 2.  The Complaint Itself Demonstrates that the Alleged Settlement Demand Was Not Definite

Plaintiffs do not contest that the validity of the alleged settlement demand should be governed by California law. *See* Opp. at 7:16 – 9:1 (citing *Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761 (1993), among other California cases).

Rather, they argue that a factual question exists as to whether the alleged settlement demand for payment of unknown "Policies' limits" could constitute a valid and definite offer. There is no factual issue because the Complaint concedes the "Policies' limits" are unknown, making the settlement demand inherently incapable of acceptance.

The Complaint defines the "Policies" to include an unknown number of policies over an unknown number of years with unknown limits. Complaint ¶¶ 5-6. It also alleges that the settlement demand was for these unknown "Policies' limits." Complaint ¶¶ 5-6, 15. When "Y" (i.e., the number of policies) and "Z" (i.e., the limits) are both unknown, Y*Z is obviously unknown as a matter of law.

Plaintiffs hypothesize that Continental's interpretation of the "Policies' limits" might change the equation (Opp. at 8:11-16), but it could not. The offer when made was intrinsically without a definite term of payment. The Plaintiffs themselves have not even attempted to proffer a definite understanding that they or anyone else could possibly have held concerning the calculation of the "Policies' limits"; nor could they. It is mathematically and otherwise impossible to generate a definite financial term by multiplying two unknown terms, and no discovery can change that fact.

Plaintiffs further hypothesize that other facts not in the Complaint might support an alternative theory, such as a failure to initiate settlement communications. Opp. at 8:18-23. This hypothesis was not alleged in the Complaint (*see* Complaint ¶ 15), and a motion to dismiss cannot be denied based on factual theories not in the Complaint.

Nor is this new hypothesis a basis to grant leave to amend. As Continental pointed out in its opening brief, the "pivotal element" in any claim for breach of duty to settle under California law is an actual "settlement offer within policy limits." *McLoughlin v. National Union Fire Insur.*, 23 Cal. App. 4th 1132, 1146 (1994). Plaintiffs have cited no cases in any of the 50 states to suggest that a failure to *initiate* settlement communications could ever constitute a breach of the duty to settle, and *McLoughlin* states precisely to the contrary.

Plaintiffs have tried to create this cause of action out of thin air, but California law does not allow it. It should be dismissed without leave to amend.

**B. Plaintiffs Have Tried To Restyle their Seventh Cause of Action "By Third-Party Tort Claimant" as a "Judgment Creditor" Claim Under Section 11580, But that Must Be Done in an Amended Complaint**

Plaintiffs cite to both California and Nevada law to support their Seventh Cause of Action by "Third Party Tort Claimant," but do not allege any conflict between the two states' laws. Plaintiffs thereby concede in effect that California law applies. *See Rivera v. Southern Pacific Transp. Co.*, 217 Cal. App. 3d 294, 298 (1990) (California law applies when the competing states' laws are "reasonably identical").

The Seventh Cause of Action is "by Third Party Tort Claimant," but there is no such thing. The expression does not appear in any published California opinion.

Without expressly admitting that this claim was improperly named, Plaintiffs' opposition brief contends this was actually intended as a judgment creditor claim under California Insur. Code section 11580. Opp. at 9:10. If that was their intent, Plaintiffs should have properly styled this cause of action accordingly, and they should be ordered now to amend their complaint and allege it properly. A "Claim by Third Party ***Tort* Claimant**" in no way connotes a ***statutory*** judgment creditor claim under section 11580.

Moreover, if Plaintiffs intend to pursue a judgment creditor claim, they are limited in their rights, and the amended cause of action must conform to those limitations. Specifically, by incorporating the allegations in paragraphs 1-15, Plaintiffs impermissibly included alleged wrongdoing ***before*** the final default judgment in June 2007. *See, e.g.,* Complaint ¶ 11 (alleging wrongdoing "in or about August or September of 2006"), ¶ 13 (alleging wrongdoing surrounding the November 30, 2006 default).

Judgment creditor status is not achieved until "*after [the judgment] becomes final.*" *Hughes v. Mid-Century Insur. Co.*, 38 Cal. App. 4th 1176, 1185 (1995) (emphasis in original). "*At that point* the insurer's duty to pay runs contractually to the plaintiff as well as the insured." *Id.* In *Hughes* the court dismissed the judgment creditor action because it was initiated pre-judgment, and a judgment creditor is not entitled to pursue claims based on pre-judgment conduct or damages. *Hughes*, 38 Cal. App. 4th at 1187. Consequently, the judgment creditor claim cannot rely on any alleged pre-judgment

breach because the claimant is owed no duties pre-judgment. Any amended claim as judgment creditor status must be limited to post-judgment conduct.

Judge Croskey's treatise on insurance law explains this well:

> The injured party is neither a party nor an intended beneficiary of the contract (at least prior to obtaining a judgment against the insured). Thus an injured party has no action against the insurer for breach of implied covenant based on the insurer's refusal to settle a claim.

Hon. H. Walter Croskey, et al., Cal. Prac. Guide Ins. Lit., Ch. 12A-D, § 12:84 (The Rutter Guide 2008) (citations omitted). The rationale comes from the California Supreme Court's decision in *Murphy*:

> A third party should not be permitted to enforce covenants made not for his benefit, but rather for others … As to (such covenants), he becomes an intermeddler … (Because) the duty to settle is intended to benefit the insured and not the injured claimant, third party beneficiary doctrine does *not* furnish a basis for the latter to recover.

*Id.*, § 12:85 (citing *Murphy*, 17 Cal. 3d at 944) (emphasis in original).

If Plaintiffs decide to pursue a judgment creditor claim in a further amended complaint, they cannot complain of pre-judgment conduct.

For the same reason they must limit any judgment creditor claim to post-judgment damages. As noted above, post-judgment conduct cannot cause pre-judgment damages. Consequently, a judgment creditor claim cannot seek recovery for the excess judgment; it is limited to a claim for policy limits, as the California Supreme Court explained in *Murphy*: "section 11580 does not authorize plaintiff to proceed against [the insurer] for the excess judgment over policy limits." *Murphy*, 17 Cal. 3d at 944. Plaintiffs' Seventh Cause of Action – if indeed it is reworked as a judgment creditor claim – therefore cannot seek the full $2,671,000 judgment; it is limited by the policy limits.[2]

If Plaintiffs intend to make a judgment creditor claim they must limit the allegations and relief consistent with the restrictions of California law.

---

[2] The only evidence of any policy issued Ecklund Insulation is an unauthenticated Certificate of Insurance that contains no policy terms and states a limit of $100,000 per person. Complaint, Ex. A.

### C. Plaintiffs Cannot Seek Punitive Damages Under Illinois or California Law

#### 1. Illinois Has No Interest in Promoting a Punitive Damage Claim Against Companies Domiciled Within Its Borders

After asking the Court to apply California and Nevada law to Plaintiffs' causes of action, Plaintiffs then ask the Court to apply Illinois law to the remedies sought in those very same causes of action. This patch-work quilt of law cannot be allowed.

Plaintiffs base this argument on the preposterous notion that Illinois has a significant interest in charging companies principally doing business within its borders with punitive damages. Obviously states have no interest in reaching out to litigation pending in other states to impose laws to the detriment of its own citizens, as the California Supreme Court has twice recognized.

In *Reich v. Purcell*, 67 Cal. 2d 551, 555 (1967), the California Supreme Court held that California had "*no*" interest in enforcing its broad view of damages to the detriment of the defendant because the defendant was the resident of California: "since California has no limitation of damages, it also has **no interest** in applying its law on behalf of defendant." *Id.* (emphasis added). This summarily concluded any argument that California's anti-defense law should apply against its citizen. If a state has "no interest" in applying its law, there is in effect no conflict. That state's law cannot prevail.

Likewise, the California Supreme Court applied the same principle on the plaintiff side of the ledger in *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974). The Court did not follow Mexican law because the Mexican citizen was a plaintiff and would not have benefitted from Mexico's narrow view of damages on the issue:

> Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has **no interest** in applying its limitation of damages-Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by nonMexican [sic] defendants.

*Id.* (emphasis added). To remove any doubt, the Court "recapitulate[d]": "Mexico has **no interest whatsoever** in the application of its limitation of damages rule to the instant case." *Id.* at 581-82 (emphasis added). "[T]he trial court correctly chose California law." *Id.*

CBM-IPG\SF409413.1                                  8

CONTINENTAL'S REPLY BRIEF SUPPORTING MOTION TO STRIKE AND DISMISS CERTAIN CLAIMS

These holdings of the California Supreme Court are binding here. As the Ninth Circuit recently noted in *Softbank Content Services Inc. v. MPO Canada Inc.*, 2007 WL 870349, Nos. 04-17129, 05-17297 (9th Cir. Mar. 22, 2007):

> The district court was sitting in diversity in California and thus correctly recognized it was ***bound*** to follow California's choice of law rules.

*Id.* at *1 (emphasis added) (citing *Arno v. Club Med, Inc.*, 22 F.3d 1464, 1467 (9th Cir.1994) and *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Illinois' only alleged interest in this case is that Continental's principal place of business is there. But, as in *Reich* and *Hurtado*, Illinois has "no interest whatsoever" in permitting a punitive damage claim against its own party. Illinois law cannot apply.

This leaves only California law, which bars the assignment of punitive damages. *Murphy*, 17 Cal. 3d at 942.

### 2. Plaintiffs Have Yet To Allege a Proper Judgment Creditor Claim, and the Claim They Contend Is A Judgment Creditor Claim Does Not Seek Punitive Damages

Plaintiffs argue secondarily that California law permits a judgment creditor to seek punitive damages. However, the one claim that Plaintiffs now contend asserts a judgment creditor cause of action (the Seventh Cause of Action) does not even seek punitive damages. The four claims that do seek punitive damages (Second, Third, Fourth, and Fifth) do not purport to be, and cannot be, judgment creditor claims.

Judgment creditors cannot allege a breach of the duty to settle or defend, or a breach of claims practices statutes (Second, Third and Fourth Causes of Action) because "a third party should not be permitted to enforce covenants made not for his benefit, but rather for others … As to [such covenants], he becomes an intermeddler …." *See infra* Sec. III.B (citing Hon. H. Walter Croskey, et al., § 12:85; *Murphy*, 17 Cal. 3d at 944 ("[Because] the duty to settle is intended to benefit the insured and not the injured claimant, third party beneficiary doctrine does *not* furnish a basis for the latter to recover.") (emphasis in original); *Jane D v. Ordinary Mutual*, 32 Cal. App. 643, 650 (1995) (judgment creditors cannot bring a suit for breach of duty to defend because "a

third party claimant cannot bring an action upon a duty owed to the insured"). Therefore the punitive damage aspects of these claims do not survive either under an assignment theory or a judgment creditor theory.

Plaintiffs also cannot recover punitive damages as part of their bad faith claim (Fifth Cause of Action), because it does not, and cannot, alleged a judgment creditor claim. That claim alleges only damages to Ecklund Insulation, the alleged policyholder (see Complaint ¶ 43), which makes it viable only pursuant to the assignment.

Moreover, judgment creditor actions, as noted, are limited to recovery of the policy limits. They cannot recover excess judgments (see *Murphy*, 17 Cal. 3d at 944, as discussed above), which is the lone damage sought here. This cause of action does not even try to allege a proper judgment creditor claim.

Nor could Plaintiffs amend it to allege a proper bad faith judgment creditor claim. The California Supreme Court dismissed just such a cause of action as untenable: "[A]n alleged breach of the covenant does not give rise to a cause of action by *third party claimants* such as plaintiffs herein." *Coleman v. Gulf Insur. Group*, 41 Cal. 3d 782, 794-94 (1986) (emphasis in original) (citing *Murphy*, 17 Cal. 3d at 934-44).

Ignoring the California Supreme Court's clear rulings in *Coleman* and *Murphy*, Plaintiffs represent that the court of appeal decision *Hand v. Farmers Ins. Exchange*, 23 Cal. App. 4th 1847 (1994) is the "leading case" allowing judgment creditor bad faith claims. Of course a court of appeal is not entitled to overrule a Supreme Court decision, and this Court, sitting in diversity, must follow the highest court of the forum state. Moreover, *Hand* has been repeatedly and openly questioned in its young life. After dismissing a similar attempt to seek punitive damages, the court in *Maxwell v. Fire Insur. Exch.*, 60 Cal. App. 4th 1446 (1998) refused to follow *Hand*: "To the extent that *Hand* could be deemed inconsistent with the principles we have enunciated we decline to follow it." *Maxwell*, 60 Cal. App. 4th at 1452.

As detailed in *San Diego Housing Comm. v. Industrial Indemn. Co.*, 95 Cal. App. 4th 669 (2002), Judge Croskey's treatise casts serious doubt on the analysis in *Hand*:

> It has been suggested that allowing a judgment creditor to sue for bad faith may be inconsistent with [California Insurance Code section] 11580(b)(2), which limits the creditor to an action 'to recover on the judgment' and subjects that judgment to the policy's 'terms and limitations.

*San Diego Housing Comm.*, 95 Cal. App. 4th at 687-88 (citing *Croskey*, et al., §§ 15:1040-41)). Likewise, the court in *Hughes v. Mid–Century Ins. Co.*, 38 Cal. App. 4th 1176, 1184 (1995) remarked that "the analysis in *Hand* might be viewed as improperly extending the law of tortious bad faith." *Hand* is hardly "leading" in the category of recognized authority. California law does not allow judgment creditors to pursue bad faith claims based on a covenant not intended for their benefit.

Finally, Plaintiffs cannot convert the bad faith claim into a judgment creditor claim because bad faith claims require an economic loss to which any punitive damages could be incidentally attached. *Continental Ins. Co. v. Superior Court*, 37 Cal. App. 4th 69, 85-86 (1995). The excess judgment does not qualify because judgment creditors cannot recover excess judgments, under *Murphy*. Likewise, "a delay in paying policy benefits, even if in an unreasonable manner," does not qualify because it "does not in itself establish economic loss to the plaintiff." *Maxwell*, 60 Cal. App. 4th at 1450. And plaintiffs have alleged no other post-judgment economic losses to support their own judgment creditor bad faith claim independent of the assignment.

Moreover, judgment creditor claims should not be commingled with assigned claims as the underlying basis and right of recovery are vastly different, as set out in *Murphy*, *Coleman*, and *Hughes*, among other cases. If Plaintiffs wish to amend to assert a judgment creditor claim, they must amend their Complaint to allege it separately from the assigned claims and subject to all the noted limitations mandated by California law.

Consequently, the currently alleged claims for punitive damages in the four assigned causes of action (Second, Third, Fourth, and Fifth), none of which are judgment creditor claims, must be stricken with prejudice.

### D. Plaintiffs Cannot Claim a Cause of Action for Unfair Claims Practices Under Nevada Law

Plaintiffs agree that their Fourth Cause of Action (alleging breach of statutory obligations) cannot survive if California law governs Continental's claims practices, since California law does not allow a private cause of action for breach of the claims practices statute. Opp. at 22:23-24. Plaintiffs' cause of action survives only if Plaintiffs can justify a departure from the forum state's law in favor of Nevada law.

In arguing that Nevada law applies, Plaintiffs assert that Continental is attempting to evade Nevada law to seek the benefit of California law. In fact it is *Plaintiffs* who chose to sue Ecklund Insulation in California, *Plaintiffs* who hired California counsel, *Plaintiffs* who reached an assignment and covenant-not-to-execute agreement explicitly governed by California law, and *Plaintiffs* who filed this action in California. Plaintiffs further rely on California law to support multiple claims for relief against Continental. Only when it advantages them to claim another state's law applies do Plaintiffs argue otherwise. Plainly, it is Plaintiffs who are seeking to evade *California* law, on certain issues only, and without consistency or substantial foundation.

Plaintiffs do not provide an adequate reason to evade California law.

To determine which state has the greatest interest in governing **this cause of action**, it is crucial first to identify the relevant events. This cause of action alleges improper claims handling practices. The handled claim at issue is Ecklund's claim for coverage of the underlying litigation, *Ham v. Arco, et al.*, filed in the San Francisco Superior Court. That claim arose no earlier than August 2006, when Ecklund Insulation was added to the underlying complaint and allegedly tendered it to Continental. Complaint, ¶¶ 9-11. Anything that happened before might be relevant to **other** choice-of-law issues, but it is not the significant part of *this* cause of action.

Accordingly, the issue here is what state has the greatest interest in governing Continental's claims practices from August 2006 to the present.

None of the alleged improper claims practices occurred in Nevada. The Complaint contains only four paragraphs alleging wrongful claims practices (*see* Complaint, ¶¶ 11-14) and it is worth examining each allegation to demonstrate this point:

1. "In or about August or September of 2006, the Insured [by its former President, from his current home in Washington] tendered the defense of the Underlying Action [pending in California] to CNA [through its claims handler in Chicago]."
2. "CNA [in Chicago] responded, stating that it would search [in its files in Chicago] for any insurance policies issued to the Insured and requested any documentation related to the Policies."
3. On information and belief, "the Insured [from Washington] sent CNA [in Chicago] a copy of the Certificate of Insurance for the 1966 Policy."
4. "Plaintiffs [through counsel in California] also ... sen[t] CNA [in Chicago] a copy of the Certificate of Insurance for the 1966 Policy."
5. "CNA [in Chicago] never responded to the Insured [in Washington] or to Plaintiffs [counsel in California]."
6. "There was a substantial likelihood that Plaintiffs' recovery in the underlying lawsuit [in California] would exceed the Policies' limits."
7. "As a result of CNA's refusal and failure to defend the Insured [in the California litigation], upon Plaintiff's request, the [San Francisco] Clerk of the Court entered default judgment against the Insured on November 30, 2006 [in the California litigation]."
8. "Plaintiffs [counsel in California] provided notice to Jerry Ecklund, President of the Insured [in Washington] and to Richard Solski of CNA [in Chicago] of the Request for Entry of Default ...."
9. "On June 28, 2007, the [San Francisco Superior] Court ordered judgment [in the California litigation ..."
10. "A copy of the Notice of Entry of Default Judgment ... was served on CNA [in Chicago, by Plaintiff's counsel in California] ..." (*see* Complaint E (proof of service

     listing addresses for Plaintiff's counsel, Continental's claims handler, and the insured representative, Jerry Ecklund)

11. Plaintiffs [counsel in California] sent CNA [in Chicago] a letter via certified mail on December 26, 2007 offering to resolve Plaintiffs' claims against CNA ...."

12. "CNA [in Chicago] has not contacted Plaintiffs [counsel in California] in response ..."

Plaintiffs do not allege a single communication, action, failure to communicate, or failure to act that occurred in Nevada.

The insured's state of incorporation 45 years ago has little relevance to the choice of law on the ***claims-handling*** cause of action. Courts look to the location of the parties involved "***at the time of the accident***," not 45 years earlier. *Reich*, 67 Cal. 2d at 555. The "accident," for purposes of Plaintiffs Fourth Cause of Action is Continental's alleged improper claims practices damaging Ecklund Insulation. *See* Complaint ¶ 36.

But at the time of the alleged wrongdoing (2006-2007), Ecklund Insulation was non-existent as a corporate entity. In fact it was the state of Nevada that suspended Ecklund Insulation's corporate charter thirty years ago. *See* Complaint, Ex. D, at 2:5-7. Where the insured no longer exists and has no assets, and where it no longer has any meaningful presence, physical or otherwise, in Nevada, but is sued in another state merely to recover on a long-expired and lost insurance policy, the original state of incorporation alone can interest Nevada minimally, if at all.

Plaintiffs point to events other than the claims practices that connect to Nevada, such as the underwriting of the alleged policy (Opp. at 21:10-11), the underlying asbestos injury (Opp. at 21:6-7), and Ecklund Insulation incorporation in Nevada 45 years ago. It may be that Nevada law could apply to those issues. *See, e.g.*, Cal. Civ. Code § 1646; *Frontier Oil Corp. v. RLI Insur. Co.*, 153 Cal. App. 4th 1436, 1442-43 (2007) (the anticipated place of performance determines the state's law applicable to contract interpretation, but not disputes unrelated to contract interpretation).

But the issue in this cause of action does not concern underwriting, policy interpretation, asbestos exposure, or corporate formation. This cause of action alleges improper claims practices, and those are alleged to have occurred entirely out of Nevada.

In addition, the Nevada statute does not apply by its own terms. Plaintiffs argue that the Nevada claims practices statute, which expressly govern only practices "in this state," applies to Continental's claims practices out of state based on a misreading of *Pioneer Chlor Alkali Co. v. Nat'l Union*, 863 F. Supp. 1237 (D. Nev. 1994). *Pioneer*, a Nevada district court opinion applying Texas choice-of-law principles, ruled that Nevada's claims practices statute could apply to a first-party insurance claim for contamination in Nevada. But first-party insurance claims are vastly different from third-party insurance claims with respect to where the insurer is asked to provide coverage.

In a "first-party" case, the insured seeks coverage for a loss it sustained ***at its own site*** (in *Chenoweth* this was in Nevada). In a "third-party" case, the insured asks the insurer to defend and indemnify ***litigation*** (here, that is in California). *See generally* Croskey, et al., § 1:20-21. Thus the claims-handling in a first-party case concerns the site of damage; in a third-party case it concerns the location of the underlying litigation.

Plaintiffs' contention that *Pioneer* rejected Continental's interpretation misunderstands Continental's position. Continental has never said that the Nevada statute does not apply merely because Continental was located out of Nevada. *See* Opp. at 20:3-4. The point Continental made was that "***none*** of the conduct complained of transpired in Nevada." Opening Brief at 12:16. *Pioneer* simply does not address these facts.

Continental therefore respectfully submits that Plaintiffs' Fourth Cause of Action fails for two independent reasons. Nevada's claims practices statute does not apply, and the state have an interest in applying it to these out-of-state claims practices.

## IV. CONCLUSION

Continental therefore respectfully asks this Court to strike Plaintiffs' claim of punitive damages, and to dismiss their Third, Fourth, and Seventh Causes of Action. Plaintiffs do not oppose Continental's motion to strike Plaintiffs conspiracy claim.

Dated: June 27, 2008

CARROLL, BURDICK & McDONOUGH LLP

By   /S/*Raymond J. Tittmann*
G. David Godwin
Raymond J. Tittmann
Attorneys for Defendant
The Continental Insurance Company