

**CLAPPER
PATTI
SCHWEIZER
& MASON**

2330 Marinship Way, Suite 140
Sausalito, CA 94965
Toll-free number: (800) 440-4262
Phone: (415) 332-4262
Fax: (415) 331-5387

July 8, 2008

Teresa De Martini
Clerk, United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 1, 17th Floor
San Francisco, CA   94102

      Re:  Franklin and Dana Ham v. The Continental Insurance Co.
           Case No. C 08-01551 SC

Dear Ms. De Martini:

    We are the attorneys for plaintiffs Franklin and Dana Ham in the above-referenced matter.

    Defendant The Continental Insurance Company recently filed its reply brief in support of its Motion to Strike and Dismiss portions of Plaintiffs' complaint.  The reply brief raised a new ground for its Motion to Dismiss the Third Cause of Action (Breach of the Duty to Settle).

    In light of the Court's order vacating the hearing of Continental's motion, we respectfully request that the Court consider the attached letter brief.   The letter brief contains Ninth Circuit authority that we believe is contrary to Continental's newly-raised ground, which we have not previously had the opportunity to present to the Court.

                           Very truly yours,

                           Steven J. Patti

cc:  G. David Godwin, Esq.
     Raymond J. Tittman, Esq.
     Carroll, Burdick & McDonough LLP
     Counsel for The Continental Insurance Company



**CLAPPER
PATTI
SCHWEIZER
& MASON**

2330 Marinship Way, Suite 140
Sausalito, CA 94965
Toll-free number: (800) 440-4262
Phone: (415) 332-4262
Fax: (415) 331-5387

July 8, 2008

The Honorable Samuel Conti
Senior Judge, United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 1, 17th Floor
San Francisco, CA   94102

  Re: Franklin and Dana Ham v. The Continental Insurance Co.
    Case No. C 08-01551 SC

Dear Judge Conti:

  This letter is submitted in response to the reply brief of The Continental Insurance Company ("Continental"), filed in support of its Motion to Strike and Dismiss portions of Plaintiffs' complaint.

  Plaintiffs respectfully request that this letter be permitted and considered because Continental's reply brief raised a new ground as a basis for its Motion to Dismiss the Third Cause of Action for Breach of the Duty to Settle. Because this new ground was not raised in Continental's moving papers, Plaintiffs have not had the opportunity to cite the Ninth Circuit authority that is contrary to Continental's argument.

  Specifically, the reply brief argues: "The duty to settle did 'extinguish' at least when Plaintiffs covenanted not to execute a judgment against Ecklund Insulation, in October 2007. Once that happened, Ecklund Insulation's risk vanished, and with it any duty Continental may have had to Ecklund Insulation." (Reply Brief, p. 3, lines 18-21.). Although Continental's motion had argued that there was no duty to settle post-judgment, it did not raise the timing of the covenant not to execute as basis to find that no such duty existed.

  In *Consolidated American Ins. Co. v. Mike Soper Marine Services*, 951 F.2d 186, 190-191 (9th Cir. Cal. 1991), the plaintiff obtained a stipulated judgment against the insured when Consolidated denied coverage, and then the plaintiff obtained an assignment of the insured's causes of action against Continental in exchange for a covenant not to execute against the insured. *After giving the insured the covenant not to execute*, the plaintiff made a policy limits demand to Consolidated, which was ignored. The plaintiff then filed suit against Consolidated

Clapper, Patti, Schweizer & Mason
Page 2
July 8, 2008

alleging, among other things, breach of the duty to settle. Consolidated argued that, because the covenant not to execute shielded the insured, there was no longer a duty to settle. The Ninth Circuit rejected this argument, holding that the duty to settle remained in force despite the covenant not to execute. *Id.* at 190. In so holding, the court noted that, "a covenant not to execute is not a release and, therefore, [does] not blot out the personal judgment against the insured nor extinguish his claim against the insurance company. A covenant not to execute does not fully protect the insured, his credit may be impaired and he may be unable to enter certain business transactions." *Id., citing Critz v. Farmers Insurance Group,* 230 Cal.App.2d 788 (1991).

    Thus, the *Consolidated American* case stands for the proposition that the duty to settle persists even where the insured has a covenant not to execute, as well as the proposition that the duty to settle persists post-judgment.

Very truly yours,

Steven J. Patti

cc: G. David Godwin, Esq.
    Raymond J. Tittman, Esq.
    Carroll, Burdick & McDonough LLP
    Counsel for The Continental Insurance Company

LEXSEE 951 F.2D 186

**Consolidated American Insurance Company, Plaintiff-Counter-defendant-Appellant, v. Mike Soper Marine Services, et al., Defendants, and Carl Mayerhofer, individually and as Assignee of Michael Soper, Defendant-Counter-Plaintiff-Appellee.**

No. 89-55929

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

951 F.2d 186; 1991 U.S. App. LEXIS 28492; 91 Daily Journal DAR 14942

November 6, 1990, Argued and Submitted, Pasadena, California
December 6, 1991, Filed

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Southern District of California. D.C. No. CV-88-0467-JLI. J. Lawrence Irving, District Judge, Presiding. Original Opinion Reported at 1991 U.S. App. LEXIS 19315.

**COUNSEL:** Irving H. Greines and Marc J. Poster, Greines, Martin, Stein & Richland, Beverly Hills, California, for the plaintiff-appellant.

Brooks L. Iler, Shaffman, Iler, Palkowitz & Doft, San Diego, California, for the defendant-appellee.

**JUDGES:** Before: Procter Hug, Jr., William C. Canby, Jr. and Charles Wiggins, Circuit Judges. Opinion by Judge Hug.

**OPINION BY:** HUG

**OPINION**

ORDER

The first full paragraph of the opinion, filed August 23, 1991, at page 11643, is amended to read as follows:

Clearly, there is ambiguity in the word watercraft. It was never defined in the Policy and could include a barge with a crane on it but did not necessarily do so. Certainly, the crane could be viewed as a piece of equipment that was operated separately from a barge on some occasions and the mere fact that it was attached to a barge would not make the entire piece of equipment a watercraft. Construing the ambiguity against the insurer, we conclude that Mayerhofer's claim was within the Policy's coverage, [**2] and did not fall within the Watercraft Exclusion Clause.

[*187] OPINION

HUG, Circuit Judge:

This appeal concerns the duty of an insurance carrier to defend an action against the insured. In this case, after the carrier refused the defense, a settlement was reached between the injured claimant and the insured for $ 1,000,000. The insured assigned his claims against the carrier in exchange for the claimant's covenant not to execute against the insured on the judgment. The injured claimant brought this suit against the carrier asserting the insured's claim of a breach of the carrier's duty to defend and a bad faith refusal to settle within the policy limits of $ 500,000. The district court granted summary judgment against the carrier for $ 1,000,000 plus $ 123,835.39 in post-judgment interest. We affirm.

We have jurisdiction to hear this case under 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). We affirm.

I.

The facts set forth by the district court decision are undisputed and are as follows. During the period pertinent to this appeal, [**3] Mike Soper was in the marine salvage business. In June 1985, Soper sold a crane mounted on a barge to Carl Mayerhofer for Mayerhofer's use in marine salvage operations. The crane was designed to be mounted on a truck, tracks, or a barge. As the barge was not self-propelled, it needed to be towed to Mayerhofer. On November 11, 1985, while recovering a sunken boat, Mayerhofer's arm became entangled in a part of the crane mechanism causing immediate amputation of the arm just below the shoulder and several burst vertebrae. At that time, Soper was insured under a comprehensive liability policy entitled Preferred Business Package Policy Number CAL168397 ("Policy"). The Policy limit was $ 500,000.

On October 24, 1986, Mayerhofer brought a personal injury claim against Soper in state court. Soper was served with the complaint on January 29, 1987. The claim was reported in writing to Consolidated's claim

agent on February 12, 1987, and was received the following day. On March 16, 1987, Consolidated unconditionally undertook the defense of Soper Marine without any reservation of right to later contest coverage. At that time, Soper's [*188] personal attorney, Michael Vaughn, withdrew his representation [**4] of Soper.

On March 18, 1987, Consolidated was granted an extension of time to answer the complaint. In a letter dated that same day, Consolidated's Brea branch claims manager issued a report of the accident. Among other things, the letter addressed the issue as to whether there was coverage for the loss. On March 24, 1987, Soper was contacted by counsel retained on his behalf by Consolidated. Soper was instructed by his personal attorney to cooperate fully with new counsel. Nonetheless, Consolidated notified the insured by letter, dated April 30, 1987, that it was denying coverage. Subsequently, Consolidated withdrew its defense of the underlying injury on June 1, 1987, pursuant to an exclusion clause in the Policy ("Watercraft Exclusion Clause"), [1] without ever having reserved its right to contest coverage.

> 1 The Policy provided in pertinent part:
>
> Consolidated . . . subject to the limits of liability, the conditions and exclusions contained in the policy, agrees:
>
> Coverages A and B (Business Liability):
>
> 1. to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> A. bodily injury . . . sustained by any person . . . .
>
> Further, the Policy provides coverage for bodily injury if liability arises within the meaning of a "product hazard." The policy defines "Products Hazard" as:
>
> Liability of an insured for damages because of bodily injury or property damage arising out of goods or products manufactured, sold, handled or distributed by the Named Insured . . . if the occurrence or accident occurs after physical possession of such goods or products has been relinquished to others by the Named Insured . . . and such occurrence or accident occurs away from premises owned, rented or controlled by the Named Insured . . . .
>
> There is an exclusion clause, however, the relevant portion of which states:
>
> None of the Insuring Agreements in this policy applies:
>
> (b) to the ownership, maintenance, operation, use, loading or unloading of . . . (2) watercraft, if the occurrence or accident takes place away from premises owned by, rented to or controlled by the insured. This exclusion does not apply to operations performed by independent contractors; or to any watercraft under 26 feet in length provided such watercraft is neither owned by the named insured nor being used to carry persons or property for a charge. (Supplemental Endorsement.)

[**5] A stipulated default judgment was entered in favor of Mayerhofer on January 22, 1988 in the amount of $ 1 million. In exchange for Mayerhofer's covenant not to execute on the judgment, Soper assigned all rights and interest against Consolidated to Mayerhofer. On February 23, 1988, Mayerhofer tendered a settlement offer of $ 500,000, the amount of the Policy limit, to which Consolidated never responded. Shortly thereafter, Consolidated filed this federal diversity action seeking a declaration that, under California law, the Policy provided no coverage.

II.

Consolidated contends that the Watercraft Exclusion Clause contained in the Policy is plain and unambiguous. Further, Consolidated argues that Mayerhofer's claim against Soper clearly falls within the exclusion, thus, it is not liable to indemnify Soper for the amount of the stipulated judgment or any other amount. Accordingly, Consolidated maintains that because there was clearly no coverage under the terms of the Policy, there was no duty to defend Soper.

Under California law, it is well-established that "words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach [**6] to them." *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 640 P.2d 764, 767, 180 Cal. Rptr. 628 (Cal. 1982). While a court is prohibited from adopting a strained or absurd interpretation in order to create an ambiguity, if ambiguity or uncertainty does exist, it must be resolved against the insurer. *Id.* at 767-68. Moreover, in order to protect the insured's reasonable expectation of coverage in a situation where the insurer controls the language of the policy, if possible, the contract is construed in accordance with its objective of providing indemnity for losses to which the insurance relates. *Id.* at 768. In practice, the impact of [*189] this principle will vary according to whether the language to be construed is found in a clause providing coverage or in one limiting coverage, with coverage clauses being interpreted broadly, and exclusionary clauses being interpreted narrowly against the insurer. *Id.* Finally, with respect to exclusions, California courts have repeatedly held that "any exception to the performance of the basic underlying obligation must be so stated as clearly to

apprise the insured of its effect; thus, the burden rests upon the insurer to [\*\*7] phrase exceptions and exclusions in clear and unmistakable language." *Id.* (citations and internal quotations omitted).

It is equally well-settled under California law that the duty to defend remains on the carrier so long as the suit potentially seeks damages within the coverage of the Policy. *See Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263, 419 P.2d 168, 176, 54 Cal. Rptr. 104 (Cal. 1966); *accord Garriott Crop Dusting v. Superior Court,* 221 Cal. App. 3d 783, 270 Cal. Rptr. 678, 683 (Cal. App. 5 Dist. 1990) (duty to defend under a liability policy is independent of and broader than the duty to indemnify); *Ohio Casualty Ins. Co. v. Hubbard,* 162 Cal. App. 3d 939, 208 Cal. Rptr. 806, 809 (Cal. App. 2 Dist. 1984) (insurer's duty to defend is broader than the duty to indemnify and is measured by the reasonable expectations of the insured); *Miller v. Elite Ins. Co.,* 100 Cal. App. 3d 739, 161 Cal. Rptr. 322 , c 161 Cal. Rptr. 322, 330 (Cal. App. 1 Dist. 1980) (if there is doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor); *State Farm Mut. Auto. Ins. Co. v. Flynt,* 17 Cal. App. 3d 538, 95 Cal. Rptr. 296, 302 (Cal. App. 4 Dist. 1971) (if circumstances indicate that liability or potential liability [\*\*8] existed under the policy, the company will be held accountable to its insured in the action it refused to defend). In sum, the insurer's duty to defend, under California law, is broad based; even if coverage is ultimately denied the duty to defend has often still attached.

We find that the Watercraft Exclusion Clause is ambiguous in its application to this case. We are aware that both parties cite cases supporting their interpretation of the application of the exclusion to the barge and crane. *See, e.g., Ison v. Roof,* 698 F.2d 294, 298 (6th Cir.) (partially sunken work barge was not a "watercraft" within the meaning of the policy because it was used as a base for a conveyance and was not used as a transportation vessel), *cert. denied,* 461 U.S. 957 , 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983); *Soil Mechanics Corp. v. Empire Mut. Ins. Co.,* 55 Misc. 2d 243, 285 N.Y.S. 2d 391, 392 (N.Y. Supp. 1967) (raft or float used to mount soil boring equipment was not within the "watercraft" exclusion), *aff'd,* 29 A.D.2d 1052, 290 N.Y.S. 2d 1020 (N.Y.A.D. 2 Dept. 1968); *but see, e.g., Snyder v. Travelers Ins. Co.,* 251 F. Supp. 76, 78 (D. Md. 1966) (specially designed floating [\*\*9] crane fell within the "watercraft" exclusion in the policy); *Sloan Steel Erectors and Equip. Rental, Inc. v. Illinois Union Ins. Co.,* 158 A.D.2d 984, 551 N.Y.S. 2d 136, 136 (N.Y.A.D. 1990) (twelve foot by thirty-one foot barge was "watercraft" within policy exclusion). We also note that there was no definition of "watercraft" contained within the Policy. Moreover, the operation of the crane, which could be assembled not only on a barge but on shore, would arguably require a separate analysis from that of the barge for purposes of the application of the exclusion. *See Ohio Casualty Ins. Co. v. Hartford Accident & Indem. Co.,* 148 Cal. App. 3d 641, 196 Cal. Rptr. 164, 167 (Cal. App. 3 Dist. 1984) ("Where two such separate and independent risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy."). Finally, we note that Soper's business, for which he purchased the business liability policy, was a watercraft machinery repair shop. Thus, there would be little coverage if Consolidated's theory were followed.

Clearly, there is ambiguity in the word watercraft. It was never defined in the Policy and could include [\*\*10] a barge with a crane on it but did not necessarily do so. Certainly, the crane could be viewed as a piece of equipment that was operated separately from a barge on some occasions and the mere fact that it was attached to a barge would not make the entire piece of equipment a watercraft. Construing the [\*190] ambiguity against the insurer, we conclude that Mayerhofer's claim was within the Policy's coverage, and did not fall within the Watercraft Exclusion Clause.

III.

The next question is whether Consolidated's breach of the duty to defend under these circumstances justified an award exceeding the $ 500,000 policy limit. The district court awarded Mayerhofer the entire amount of the stipulated judgment, plus interest. In so doing, the court stated that as Consolidated wrongfully refused to defend and refused to accept a reasonable settlement offer, it assumed the risk that it would be held liable for all damages resulting from the refusal, including the amount of the judgment exceeding the policy limits.

A breach of the duty to defend, coupled with a rejection by the insurer of a reasonable settlement offer within policy limits, may obligate the insurer to pay more than its policy limits. [\*\*11] *Samson v. Transamerica Ins. Co.,* 30 Cal. 3d 220, 178 Cal. Rptr. 343, 353, 636 P.2d 32 (1981). *See also Johansen v. California State Auto. Ass'n. Inter-Ins. Bureau,* 15 Cal. 3d 9, 123 Cal. Rptr. 288, 290, 538 P.2d 744 (1975) ("Insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits."). It is undisputed that "California law imposes upon a liability insurer a duty to accept reasonable settlement offers by third party victims within the policy limits." *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.,* 723 F.2d 700, 704 (9th Cir. 1984) (citing *Samson v. Transamerica Ins. Co.,* 30 Cal. 3d 220, 178 Cal. Rptr. 343, 636 P.2d 32 (1981); *Murphy v. Allstate Ins. Co.,* 17 Cal. 3d 937, 132 Cal. Rptr. 424, 553 P.2d 584 (1976)). Moreover, California

law mandates that when an insurer fails to accept a reasonable settlement offer within policy limits because it "believes the policy does not provide coverage assumes the risk [**12] that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits." *Samson*, 178 Cal. Rptr. at 353 (citations and internal quotations omitted). This duty does not require, however, a liability insurer to accept the settlement offer when there is no risk to the insured. *San Jose*, 723 F.2d at 704.

Here, following Consolidated's withdrawal of its defense of Soper, Soper entered into a stipulated default judgment with Mayerhofer in the amount of $ 1 million, which was reasonable in light of the serious injury sustained. In exchange for Mayerhofer's covenant not to execute on the judgment, Soper assigned all his rights and interest against Consolidated to Mayerhofer. ² On February 23, 1988, Mayerhofer tendered a settlement offer of $ 500,000, the amount of the policy limit, to which Consolidated never responded.

> 2   California courts consistently hold that "an insured breaches no duty to the insurance company when he assigns his rights against the company to the injured plaintiffs in return for a covenant not to execute." *See Samson*, 178 Cal. Rptr. at 356 (and cases cited therein).

[**13] Consolidated contends that it had no obligation to Soper to settle Mayerhofer's claim against Soper after Soper entered into a stipulated judgment and became insulated from loss by the covenant not to execute. Consolidated reasons that it had no duty to accept a settlement offer within policy limits because Soper had no remaining financial interest in the outcome.

We do not agree. Consolidated's failure to settle for the policy limits leaves Soper with a judgment against him for $ 1 million. Under California law, Consolidated's act of rejecting Mayerhofer's settlement offer was a breach of its duty of good faith and fair dealing owed to Soper. Consolidated was thereafter obligated for the full amount of the judgment. We note that there is some peculiarity in the fact that Soper himself was seemingly not at risk to pay the judgment because of the covenant not to execute. He was left, however, with a judgment against him that could have [*191] collateral adverse affects in several respects, including on his future credit. *See, e.g., Critz v. Farmers Ins. Group*, 230 Cal. App. 2d 788, 41 Cal. Rptr. 401, 410 (Cal. App. 3 Dist. 1964) (a covenant not to execute is not a release and, therefore, did [**14] not blot out the personal judgment against the insured nor extinguish his claim against the insurance company). A covenant not to execute does not fully protect the insured, his credit may be impaired and he may be unable to enter certain business transactions. *See Ivy v. Pacific Auto. Ins. Co.*, 156 Cal. App. 2d 652, 320 P.2d 140, 147-48 (Cal. App. 1 Dist. 1958). It is clear then that Soper's interests remained at risk notwithstanding the covenant not to execute. Consolidated wrongfully refused to defend Soper and subsequently rejected a reasonable settlement offer within policy limits. Under these circumstances, California law requires the carrier to pay the full amount of the judgment, including the amount in excess of policy limits.

IV.

Finally, we review the district court's award to Mayerhofer of accrued interest beginning from the date of the stipulated judgment. Pursuant to California Civil Procedure Code § 685.010, ³ the district court awarded Mayerhofer $ 123,835.39 in accrued interest calculated from the time that the stipulated judgment was entered. Consolidated, while citing no authority, maintains that the district court was in error when it made this award.

> 3   Section 685.010 provides that: "Interest accrues at the rate of 10 per cent per annum on the principal amount of a money judgment remaining unsatisfied."

[**15] In *John Siebel Assoc. v. Keele*, 188 Cal. App. 3d 560, 233 Cal. Rptr. 231, 233 (Cal. App. 2 Dist. 1986), the debtor argued that stipulated judgments were not judgments rendered and, therefore, they were not subject to the constitutional interest rate. ⁴ The court held that judgments entered by courts on the stipulation of the parties have the same effect as actions tried on the merits. *Id.* Accordingly, a stipulated judgment bears interest at the statutory rate of 10%. *See id.*

> 4   Section I, Article XV, of the California Constitution provides that interest on "a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum." As discussed, the California Legislature set the post-judgment interest rate at 10% per annum "on the principle amount of the money judgment remaining unsatisfied." *See* Calif. Civ. Pro. Code § 685.010 (West 1987).

Under certain circumstances, California courts will hold the insurer liable for the entire judgment, including the amount in [**16] excess of policy limits. This amount would include the interest that accrued at the statutory rate of 10% per annum. In this case, the district court awarded Mayerhofer the accrued interest on the stipulated judgment at the rate of 10% per annum.

Accordingly, we affirm the judgment of the district court awarding Mayerhofer the amount of the stipulated judgment plus accrued interest.

*AFFIRMED.*