UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN HAM and DANA HAM, | Case No. 08-1551 SC |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES AND TO DISMISS CERTAIN CLAIMS |
| v. | |
| THE CONTINENTAL INSURANCE COMPANY, and Does 1 through 50, | |
| Defendants. | |

## I.  INTRODUCTION

This matter comes before the Court on the Motion to Strike Plaintiffs' Claim for Punitive Damages and to Dismiss Certain Claims ("Motion") filed by the defendant Continental Insurance Company ("Continental" or "Defendant").  Docket No. 14.  The plaintiffs Franklin Ham and Dana Ham ("Plaintiffs"), submitted an Opposition and Defendant submitted a Reply.  Docket Nos. 17, 25. Without leave from the Court, Plaintiffs then submitted a two page surreply styled as a letter brief.  Docket No. 28.  In response, Continental filed its own letter brief.[1]  Docket No. 29.  For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

---

[1] The Court will strike further submissions that do not comply with the briefing schedules contained in the Civil Local Rules.

## II. BACKGROUND

The present action arises out of illnesses suffered by Plaintiff Franklin Ham as a result of exposure to asbestos. Plaintiffs Franklin and Dana Ham, a married couple of almost 50 years, are residents of Nevada. Sec. Am. Compl., Docket No. 13, ¶ 12 ("SAC"). In July 2006, Plaintiff Franklin was diagnosed with malignant pleural mesothelioma, a terminal disease, and was given 6-18 months to live. Id. On August 11, 2006, Plaintiffs filed a complaint in the Superior Court of San Francisco against, among others, Ecklund Insulation, Inc. ("Ecklund"), hereinafter referred to as the "Underlying Action." Id. ¶¶ 8, 9. According to Plaintiffs, Ecklund sold asbestos-containing products and performed work as a contractor using asbestos-containing products that exposed Plaintiff Franklin to asbestos dust. Id. ¶ 7. Plaintiff Franklin had worked with Ecklund's employees on multiple work sites from the early 1960's through the early 1970's. Id.

Although Ecklund is an inactive Nevada corporation, it was never dissolved and Plaintiffs served the corporation by personally serving its president, Jerry Ecklund, at his home in Washington state. Id. ¶ 10. In August or September of 2006, Ecklund tendered its defense in the Underlying Action to Defendant Continental Insurance Company. Id. ¶ 11. Plaintiffs allege that Continental is the successor in interest to Glens Falls Insurance Company and that Glens Falls had insured Ecklund in the 1960's. Id. ¶¶ 5, 6. Plaintiffs allege that Glens Falls, in June 1964, issued to Ecklund, in Reno, Nevada, a Comprehensive General Liability Insurance policy, number PCL 50-09-99, with a policy

1 limit for bodily injury of $100,000 per person and $300,000 per
2 accident.  Id. ¶ 5.  Although this policy expired in November
3 1966, Plaintiffs allege that additional policies exist that were
4 issued by Glens Falls to Ecklund in the years subsequent to 1966.
5 Id. ¶ 6.  These insurance policies, including the policy ending in
6 1966, formed the basis for Ecklund's tender of its defenses in the
7 Underlying Action to Continental as successor in interest to Glens
8 Falls Insurance Company.  Id. ¶¶ 5, 11.
9   After Ecklund tendered its defense to Continental,
10 Continental informed Ecklund that it would search for any
11 insurance policies issued to Ecklund during the relevant times.
12 Id. ¶ 11.  According to Plaintiffs, Continental then ceased
13 responding to Ecklund or Plaintiffs.  Plaintiffs then requested
14 that the Clerk of the Court for the Superior Court of San
15 Francisco enter default judgment against Ecklund, which the Clerk
16 did on June 28, 2007, in the following amounts: $671,000 for
17 economic damages and $1,300,000 in non-economic damages in favor
18 of Plaintiff Franklin and $700,000 in non-economic damages in
19 favor of Plaintiff Dana.  Id. ¶ 14.
20   On November 5, 2007, Plaintiffs obtained an assignment from
21 Ecklund of all causes of action it had against Continental in
22 exchange for a covenant not to execute.  Opp'n at 4; Compl. Ex. F.
23 On December 26, 2007, Plaintiffs sent Continental a settlement
24 offer whereby Plaintiffs offered to resolve their claims against
25 Continental for the insurance policy limits.  Id. ¶ 15.  The
26 letter further stated that the offer to settle would remain open
27 for 30 days from Continental's receipt of the letter.  Id.

3

Although Continental received the letter on January 2, 2008, it did not respond to the settlement letter. Id. Plaintiffs then filed the present action in the Superior Court of San Francisco and Continental removed the action to this Court based on diversity jurisdiction. See Notice of Removal, Docket No. 1. Plaintiffs allege the following claims against Continental: (1) breach of insurance contract; (2) breach of duty to defend; (3) breach of duty to settle; (4) breach of insurer's statutory duty under Nevada law; (5) breach of implied covenant of good faith and fair dealing; (6) declaratory relief; and (7) action by third party tort claimant against Continental. See SAC. Continental filed the present motion, seeking to strike Plaintiffs' punitive damages and conspiracy claims and moving to dismiss the third, fourth, and seventh causes of action.

### III. REQUESTS FOR JUDICIAL NOTICE

Both parties requested that the Court take judicial notice of various documents. Judicial "[n]otice is a way to establish the existence of facts without evidence." Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992).

> In federal courts, notice may be taken of facts relating to the particular case, though no evidence is introduced, where the fact is "not subject to reasonable dispute," either because it is "generally known within the territorial jurisdiction," or is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Id. (citing Fed. R. Evid. 201(b)).

4

Plaintiffs seek judicial notice of the fact that Continental's principal place of business is Chicago, Illinois, and that Ecklund was incorporated in Nevada. See Pls.' Request for Judicial Notice ("Pls.' RJN"), Docket No. 19, at 1-2. Plaintiffs base this request on Continental's Notice of Removal, in which Continental states that its principal place of business is Chicago, Illinois, and upon Ecklund's Articles of Incorporation, which Plaintiffs attached to their RJN. Regarding the Articles of Incorporation, Plaintiffs' counsel, Steven Patti, submitted a declaration stating that he received the Articles of Incorporation from the Nevada Secretary of State, thereby authenticating the document. Docket No. 15. As Continental did not object to either request and the facts may be readily confirmed, they both are GRANTED.

Continental filed a Motion for Leave to File Request for Judicial Notice. Docket No. 30. In its Motion, Continental asks the Court to take judicial notice of "certified copies of the papers filed in the motion for summary judgment leading to the ruling by the District of Nevada in Pioneer Chlor Alkali Co. v. National Union, 863 F. Supp. 1237 (D. Nev. 1994)." Id. at 1-2. According to Continental, "[t]hese papers will assist the Court with respect to arguments in Continental's Reply Brief . . . ." Id. at 2. These papers, the Court notes, total approximately 170 pages. In effect, Continental is asking the Court to read briefing for another case, briefing that exceeds the page limit for Continental's Motion and Reply in the instant action by roughly 130 pages, and extract any arguments that may support

5

Continental's position. The Court declines this invitation and DENIES Continental's Motion for Leave to File Request for Judicial Notice.

### IV. **MOTION TO STRIKE**

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). Continental has moved to strike Plaintiffs' conspiracy allegations. As Plaintiffs concede that the conspiracy allegations are not properly alleged, the Court hereby STRIKES Plaintiffs' conspiracy claims.

Continental also moves to strike Plaintiffs' punitive damages claims. Continental argues that because punitive damages are not assignable in California, Plaintiffs may not seek them, as "Plaintiffs sue the Defendants as the assignee of [Eckland's] causes of actions." SAC ¶ 19.

It is undisputed, and Plaintiffs do not argue otherwise, that under California law, punitive damages may not be assigned. See, e.g., Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 942 (1976) (stating that because a purely personal tort cause of action is not assignable in California, it must be concluded that damage for emotional distress is not assignable and that same is true of a claim for punitive damages); Archdale v. Am. Int'l Specialty Lines Ins. Co., 154 Cal. App. 4th 449, 460 n.10 (Ct. App. 2007) (stating "[i]t should be noted that [the assignor] did not and, in any event, could not, as a matter of law, have assigned to the Archdales any right to recover against [Defendant] on any claim

6

1  for emotional distress or punitive damages," as such claims "are
2  purely personal and are not assignable") (internal quotation marks
3  omitted); Fireman's Fund Ins. Co. v. Nat'l Bank for Cooperatives,
4  No. C 92-2667, 1993 WL 341274, at *12 (N.D. Cal. Aug. 27, 1992)
5  (stating "as this court has already held, claims for punitive
6  damages are not assignable in California").

7  Plaintiffs argue instead that Illinois rather than California
8  law should govern Plaintiffs' claims. "When a federal court sits
9  in diversity, it must look to the forum state's choice of law
10 rules to determine the controlling substantive law." Patton v.
11 Cox, 276 F.3d 493, 495 (9th Cir. 2002). As this suit was filed in
12 the Superior Court of San Francisco, the Court looks to
13 California's choice of law rule. Id. California has adopted the
14 "three-part government interest test" for its choice of law rules.
15 Arno v. Club Med. Inc., 22 F.3d 1464, 1467 (9th Cir. 1994). Under
16 this test, a court "must examine each state's interest in applying
17 its law to determine whether there is a 'true conflict;' and if
18 each state has a legitimate interest we must compare the
19 impairment to each jurisdiction under the other's rule of law."
20 Id.

21 "Generally speaking the forum will apply its own rule of
22 decision unless a party litigant timely invokes the law of a
23 foreign state." Wash. Mut. Bank v. Super. Ct., 24 Cal. 4th 906,
24 919 (2001) (internal quotation marks omitted). Plaintiffs concede
25 that California, as the forum for the litigation, for the
26 Underlying Action, and for the judgment against Ecklund, has an
27 interest in the present action. Plaintiffs argue, however, that

28

7

Illinois has an overriding interest in the action because Illinois is Continental's principal place of business and because Continental was in Illinois when it failed to defend Ecklund and respond to Plaintiffs' Underlying Action.

Applying California's three-part government interest test, it is clear that, at step one, the laws of California and Illinois with respect to the assignment of punitive damages are materially different. Unlike California, Illinois permits the assignment of punitive damages. See Klenwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc., 181 Ill. 2d 214, 227 (1998) (holding that assignees may "seek punitive damages").

At the second step, the Court must determine each state's interest in having its law applied to the case. Plaintiffs argue that Illinois has a strong interest in regulating corporations doing business within its jurisdiction and in deterring their wrongful conduct. In addition, Plaintiffs argue that Continental's alleged tortious acts occurred in Illinois.

Continental asserts that Illinois has no interest in permitting punitive damages against a company domiciled within its jurisdiction. In support of this argument, Continental cites to Reich v. Purcell, 67 Cal. 2d 551 (1967). Reich was a wrongful death action arising from the collision, in Missouri, of two automobiles. Id. at 552. The defendant was a resident of California and the deceased, whose wife filed the lawsuit, was a resident of Ohio. Id. The choice-of-law issue concerned the amount of tort damages. A Missouri statute limited the amount of damages in a wrongful death action and there was no such

8

limitation under the laws of California and Ohio. Id. at 553, 555. The California Supreme Court concluded that, as California did not limit the amount of damages that could be recovered, California therefore had no interest in applying its law to the detriment of the defendant, a California resident. Id. 555-56.

Continental also cites to Hurtado v. Superior Court, 11 Cal. 3d 574 (1974). Hurtado was also a wrongful death action arising out of an automobile accident. Id. at 578. The accident occurred in California, the plaintiffs were residents of Mexico, and the defendant was a California resident. Id. The only issue for the court was whether the measure of damages would be applied according to the law of California or Mexico. Id. The law in Mexico, unlike that in California, contained a limitation on the damages that could be recovered in a wrongful death action. Id. at 578-79. Relying on Reich, the court held that Mexico had no interest in limiting the defendant's exposure to damages. The court stated: "Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has no interest in applying its limitation of damages - Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non-Mexican defendants." Id. at 581. The court further explained: "The interest of a state in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims. . . . [T]hat is, a state by enacting a limitation on damages is seeking to protect its residents from the imposition of these excessive financial burdens." Id.

9

Using Reich and Hurtado, Continental argues that, according to California's choice of law rules, Illinois has no interest in exposing Continental, an Illinois-based corporation, to greater liability. Plaintiffs counter that Illinois does have an interest in regulating business within its jurisdiction and in promoting laws, such as the assignability of punitive damages, that help deter wrongful behavior by business entities.

Although such an argument resonates with the Court, the Court is nonetheless bound by California law. Interpreting this same law, another court in this district reached the same conclusion. See Marsh v. Burrell, 805 F. Supp. 1493, 1500 (N.D. Cal. 1992) (holding that "in accordance with the weight of California authority on the issue, the court finds that the Netherlands' only interest in having its damages rules applied is in protecting its own resident defendants"). Although this doctrine has been questioned by the Ninth Circuit, it has also been recognized as the law in California. See Arno, 22 F.3d at 1468 n.5 (stating "[w]hen adjudicating disputes . . ., the state may not legitimately favor a party just because that party lives within its borders. Nonetheless, this interest has qualified as legitimate in California courts.")

Under California law, Illinois has no interest in exposing Continental to greater liability. The Court is therefore obligated to conclude that California law governs Plaintiffs' causes of action.[2] See Marsh, 805 F. Supp. at 1497 (stating

---

[2] Plaintiffs' fourth cause of action invokes Nevada law. The Court discusses this claim below.

10

"[b]ecause California's governmental interests analysis embodies a presumption in favor of applying forum law, when neither jurisdiction has an interest in the application of its rule of law, California applies its own law") (citing Hurtado, 11 Cal. 3d at 581). Under California law, punitive damages may not be assigned. Any punitive damages must therefore spring from Plaintiffs' fourth cause of action, discussed below.

## V. MOTION TO DISMISS

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). All reasonable inferences are to be drawn in favor of the plaintiff. Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994). Unreasonable inferences or conclusory legal allegations cast in the form of factual allegations, however, are insufficient to defeat a motion to dismiss. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Continental moves to dismiss Plaintiffs' third, fourth, and seventh causes of action. The Court addresses each in turn.

### A. Third Cause of Action

Plaintiffs' third claim alleges that Continental breached its duty to settle. "It is undisputed that 'California law imposes upon a liability insurer a duty to accept reasonable settlement

11

offers by third party victims within the policy limits.'" Consol. Am. Ins. Co. v. Soper Marine Servs., 951 F.2d 186, 190 (9th Cir. 1991) (internal quotation marks omitted); see also Samson v. Transamerica Ins. Co., 30 Cal. 3d 220, 237 (1981) (stating "California authorities establish that an insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits") (internal quotation marks omitted)).

The issue in the present case is whether this duty to settle is extinguished by a judgment; in other words, whether a duty to settle may be breached if the offer to settle is made after judgment is entered. Under California law, the duty to defend commences upon tender of the defense and continues "to final judgment." Lambert v. Commonwealth Land Title Ins. Co., 53 Cal. 3d 1072, 1079 (1991). Continental argues that because the settlement offer was made after judgment was entered, both the duty to defend and the duty to settle had extinguished.

Although such reasoning is compelling, the Ninth Circuit reached the opposite conclusion in a case factually analogous to the one at hand. In Consolidated American Insurance, 951 F.2d at 187, an injured party sued an insured party for damages sustained from an accident involving a barge-mounted crane. Although the insurance company initially agreed to defend the insured, it subsequently withdrew its defense. Id. at 188. A stipulated judgment between the injured and the insured was then entered in

12

1  favor of the injured for an amount in excess of the policy limits.
2  Id.  The injured and the insured entered into an agreement
3  whereby, in exchange for the injured's covenant not to execute on
4  the judgment, the insured assigned all rights and interest against
5  the insurance company to the injured.  Id. at 188, 190.  One month
6  after the judgment was entered, the injured tendered a settlement
7  offer in the amount of the policy limit to the insurance company.
8  Id. at 190.  The insurance company, like Continental in the
9  present case, did not respond.  Id.

10  In a subsequent action in federal court, the insurance
11  company argued that "it had no obligation to [the insured] to
12  settle [the injured party's] claim against [the insured] after
13  [the insured] entered into a stipulated judgment and became
14  insulated from loss by the covenant not to execute."  Id.  The
15  insurance company contended "that it had no duty to accept a
16  settlement offer within policy limits because [the insured] had no
17  remaining financial interest in the outcome."  Id.  Even though
18  the settlement offer was made after the judgment, the Ninth
19  Circuit held that "[u]nder California law, [the insurance
20  company's] act of rejecting [the injured party's] settlement offer
21  was a breach of its duty . . . ."  Id.

22  Although there appears to be some tension between
23  Consolidated and Lambert, this Court is obligated to follow the
24  Ninth Circuit's interpretation of California law unless California
25  state courts have expressed disapproval of that interpretation.
26  "When interpreting state law, a federal court is bound by the
27  decision of the highest state court."  In re Kirkland, 915 F.2d

13

1236, 1238 (9th Cir. 1990). Moreover, the Ninth Circuit's "interpretation of California law is binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." Jones-Hamilton Co. v. Beazer Materials & Servs., Inc., 973 F.2d 688, 696 n.4 (9th Cir. 1992) (internal quotation marks omitted).

Continental has not provided, and the Court has not found, any California court decisions subsequent to Consolidated expressing disapproval of the Ninth Circuit's interpretation of California law. This Court, therefore, is bound by the decision in Consolidated. Although Continental attempts to distinguish Consolidated on numerous fronts, these efforts are unavailing. In addition, Continental argues that the settlement offer was not sufficiently defined, as it was for "unknown limits of an unknown number of policies." Def.'s Letter, Docket No. 29, at 5. Such an argument raises factual issues that preclude adjudication at this time. Continental's Motion to Dismiss Plaintiffs' third cause of action is DENIED.

### B. Fourth Cause of Action

Plaintiffs' fourth claim is for breach of an insurer's statutory duty under Section 686A.310 of the Nevada Revised Statutes. See SAC ¶ 35. Section 686A.310, titled "Unfair Practices in Settling Claims; Liability of Insurer for Damages," provides a list of unfair practices insurance companies may not engage in, including "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" and "[f]ailing to effectuate prompt, fair and

14

equitable settlements of claims in which liability of the insurer has become reasonably clear." N.R.S. § 686A.310(a), (e).

Plaintiffs apparently invoke Nevada, rather than California, law because California's corollary to § 686A.310, California Insurance Code § 790.30, does not contain a private right of action, while § 686A.310 does. See Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal. 3d 287, 304 (1988) (stating that "[n]either section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03 . . .")

Continental presents two arguments in favor of dismissal. First, Continental argues that § 686A.310 only applies to acts within the state of Nevada and Plaintiffs have failed to allege that any of the conduct occurred in Nevada. See N.R.S. § 686A.020 (stating "[a] person shall not engage in this state in any practice which is defined in NRS 686A.010 to 686A.310 . . .").

Second, Continental argues that under California's choice of law rules, California, rather than Nevada, law governs. Under California's choice of law test, a court "must examine each state's interest in applying its law to determine whether there is a 'true conflict;' and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law." Arno, 22 F.3d at 1467. As Nevada law creates a private cause of action and California law does not, there is clearly a conflict. Furthermore, as previously mentioned, California, as the forum state and the state where the Underlying Action was filed and judgment entered, has a legitimate interest

15

in litigation. The issue, therefore, is whether Nevada has a legitimate interest.

Resolution of this issue hinges on whether Plaintiffs have alleged a sufficient connection to Nevada. The Court concludes they have not. The Underlying Action and judgment were filed and obtained in state court in California. Any alleged tortious action by Defendants was committed, according to Plaintiffs, in Illinois, the state where Defendants were domiciled. Moreover, Plaintiffs, as the advocates for foreign law, have the burden of demonstrating that Nevada's interest is legitimate. Plaintiffs have failed to meet this burden. For these reasons, Continental's Motion to Dismiss the fourth cause of action is GRANTED.

### C. Seventh Cause of Action

Plaintiffs' seventh claim is styled as an "Action by Third Party Tort Claimant" against Continental. SAC ¶ 50. In this claim, Plaintiffs include a citation to a Nevada Supreme Court case, Hall v. Enterprise Leasing Company-West, 137 P.3d 1104, 1109 (Nev. 2006). SAC ¶ 52. Although this would seem to indicate that Plaintiffs intended to assert this claim under Nevada law, Plaintiffs' Opposition proceeds to argue that the claim is also viable under California law. See Opp'n at 9-10. More importantly, Plaintiffs present no argument for why Nevada, rather than California, law should apply to this claim.

"Under the first step of the government interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." Wash. Mut. Bank, 24 Cal. 4th

16

at 919. Plaintiffs have not only failed to present any argument for why Nevada law should govern this claim, but, by arguing that their seventh cause of action is equally viable under either California or Nevada law, they have implicitly conceded that there is no difference between the laws of the two states. Where the laws of the two states are the same, courts may properly apply the law of the forum state. Id. For these reasons, the Court finds that California law governs Plaintiffs' seventh claim.

In moving to dismiss the claim, Continental argues that under California law, there is no such claim as an "action by third party tort claimant." Plaintiffs appear to concede as much, and assert, instead, that their seventh cause of action is really a claim by a judgment creditor.[3] Opp'n at 14. In Hand v. Farmers Insurance Exchange, 23 Cal. App. 4th 1847 (Ct. App. 1994), the case relied on extensively by Plaintiffs, the California Court of Appeal held that "an unreasonable, bad faith refusal to pay a judgment creditor claimant the entire amount of the judgment, after it becomes final, implicates some recognizable duty of good faith by the insurer under its policy, which was intended to benefit such a third party beneficiary." Id. at 1157. The court further explained: "[T]he duty not to withhold in bad faith payment of adjudicated claims runs not only in favor of the insured but also in favor of a judgment creditor." Id. at 1158. "To this end, once having secured a final judgment for damages, the plaintiff becomes a third party beneficiary of the policy,

---

[3] Nowhere in their claim do Plaintiffs mention "judgment creditor."

17

entitled to recover on the judgment of the policy." Id.

The holding of Hand supports Plaintiffs' argument that they have indeed alleged a valid claim. See also Hughes v. Mid-Century Ins. Co., 38 Cal. App. 4th 1176, 1185 (Ct. App. 1995) (stating "'once having secured a final judgment for damages, the plaintiff becomes a third party beneficiary of the policy, entitled to recover on the judgment of the policy. At that point, the insurer's duty to pay runs contractually to the plaintiff as well as the insured.'") (quoting Hand, 23 Cal. App. 4th at 1858).

Moreover, contrary to Continental's argument that Plaintiffs are really alleging a statutory judgment creditor claim under California Insurance Code section 11580, Hand specifically recognized that the duty to not withhold payment in bad faith of adjudicated claims exists independently of any statute. 23 Cal. App. 4th at 1859. Continental also cites to Coleman v. Gulf Insurance Group, 41 Cal. 3d 782, 795 (1986), for the proposition that "an alleged breach of the covenant does not give rise to a cause of action by third party claimants." The court in Coleman, however, also recognized that "an injured claimant may proceed directly against the insurer . . . to the extent that the insured party has assigned the claimant his cause of action . . . ." Id. As the insured in the present case has assigned his cause of action to Plaintiffs, Coleman is not a bar to Plaintiffs' seventh cause of action.[4]

---

[4] As discussed above, Plaintiffs, as assignees, may not seek punitive damages. Perhaps recognizing this, Plaintiffs did not seek punitive damages under their seventh cause of action.

18

The Court thus holds that, under the liberal pleading standard of Federal Rule of Civil Procedure 8, Plaintiffs' seventh cause of action as currently pled states a claim for relief. Continental's Motion to Dismiss this claim is DENIED.

## VI. CONCLUSION

For the reasons stated above, Continental's Motion to Strike Plaintiffs' Claims for Conspiracy and Punitive Damages is GRANTED. Continental's Motion to Dismiss is DENIED with respect to Plaintiffs' third and seventh causes of action and GRANTED with respect to Plaintiffs' fourth cause of action.

IT IS SO ORDERED.

Dated: September 16, 2008

UNITED STATES DISTRICT JUDGE

19